ANDERSON KILL & OLICK, P.C.
R. Mark Keenan
John M. O'Connor
Peter A. Halprin
1251 Avenue of the Americas
New York, New York 10020
(212) 278-1000

Attorneys for Plaintiffs
Sea Trade Maritime Corporation and
George Peters

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SEA TRADE MARITIME CORPORATION and
GEORGE PETERS,

                          Plaintiffs,

        v.                                              Civil Action No.: 09 CIV 00488 (BSJ)

STELIOS COUTSODONTIS, FRANCESA ELENI
COUTSODONTIS, GENERAL MARITIME
ENTERPRISES CORPORATION, ATTIKA
INTERNATIONAL NAVIGATION SA, IASON
SHIPPING LTD., PINTO SHIPPING LTD. and
KARTERIA SHIPPING LTD.,

                          Defendants.

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION
TO DISQUALIFY THE LAW FIRM OF POLES TUBLIN AS COUNSEL
FOR DEFENDANT COUTSODONTIS**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT.................................................................................... 1

ARGUMENT............................................................................................................ 3

THE FIVE GROUNDS FOR DISQUALIFICATION................................................... 3

    1.      GROUND 1:  THE "ADVICE OF COUNSEL" DEFENSE ................................... 3

    2.      GROUND 2:  POLES TUBLIN'S ADMISSIONS DIRECTLY
              CONTRADICT DEFENDANT'S CLAIMS ........................................... 6

    3.      GROUND 3:  THE SHAM ACTION AGAINST SEA TRADE ............................... 8

    4.      GROUND 4: POLES TUBLIN ARE FACT WITNESSES AS TO THE
              IMPROPER INTERVENTION IN THE SALE OF THE ATHENA ...................... 10

    5.      GROUND 5:  PUNITIVE DAMAGES ................................................................ 11

THE "HARDSHIP" DEFENSE.................................................................................. 12

THE ENTIRE FIRM MUST BE DISQUALIFIED ...................................................... 14

IMMEDIATE DISQUALIFICATION ......................................................................... 14

CONCLUSION ....................................................................................................... 15

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

Bluebird Partners L.P. v. Bank of N.Y.,
   21 Misc. 3d 1140(A), 2008 WL 5131174 (N.Y. Sup. Ct. 2008) ...................................... 13

Brunetti v. Musallam,
   11 A.D.3d 280 (1st Dep't 2004)..................................................................................... 10

Cole Mech. Corp. v. National Grange Mut. Ins. Co.,
   No. 06 Civ. 2875, 2007 WL 2593000 (S.D.N.Y. Sept. 7, 2007) ....................................... 1

Corona v. Hotel and Allied Servs. Union Local 758,
   No. 04 Civ. 10074, 2005 WL 2086326 (S.D.N.Y. Aug. 30, 2005) .................................. 10

Coutsodontis v. Peters,
   No. 600511/05, 2006 WL 721255 (N.Y. Sup. Ct. Feb. 1, 2006)....................................... 8

Crossroads Systems (Texas), Inc. v. Dot Hill Systems Corp.,
   No. A-03-CA-754-SS, 2006 WL 1544621 (W.D. Tex. May 31, 2006) ............... 3, 4, 5, 14

Decker v. Nagel Rice LLC,
   716 F. Supp. 2d 228 (S.D.N.Y. 2010).......................................................................... 6, 8

Eastway Construction Corp. v. City of New York,
   762 F.2d 243 (2d Cir. 1985) ...................................................................................... 9, 10

Elizabeth St. Inc. v. 217 Elizabeth St. Corp.,
   301 A.D.2d 481 (1st Dep't 2003)............................................................................. 6, 7, 8

Fairview at Old Westfield, L.P. v. European Am. Bank,
   186 A.D.2d 238 (2d Dep't 1992)..................................................................................... 7

Finkel v. Frattarelli,
   No. 05-CV-1551, 2010 WL 3724373  (E.D.N.Y. Sept. 15, 2010) ................................. 4, 5

Fulfree v. Manchester,
   945 F. Supp. 768 (S.D.N.Y. 1996) ................................................................................ 15

Gatz v. Otis Ford, Inc.,
   274 A.D.2d 449 (2d Dep't 2000).................................................................................... 12

Gorbaty v. Wells Fargo Bank, N.A.,
   No. CV-10-3291, 2011 WL 318090 (E.D.N.Y. Feb. 1, 2011) ......................................... 14

Innovative Networks, Inc. v. Young,
   978 F. Supp. 167 (S.D.N.Y. 1997) ................................................................................ 11

Lelekakis v. Kamamis,
   41 A.D.3d 662 (2d Dep't 2007)....................................................................................... 7

## TABLE OF AUTHORITIES
### (continued)

Page(s)

Mercado v. City of New York,
No. 08 Civ. 2855 (BSJ)(HBP), 2010 WL 3910594 (S.D.N.Y. Sept. 30, 2010) ............... 11

Miller v. Schweickart,
413 F. Supp. 1059 (S.D.N.Y. 1976) .............................................................................. 9

Murray v. Metropolitan Life Ins. Co.,
No. 09-3716-cv, 2009 WL 3080462 (2d Cir. Sept. 29, 2009)........................................ 15

Neufeld v. Neufeld,
No. 93CIV8131, 1994 WL 267811 (S.D.N.Y. June 15, 1994) ....................................... 13

People v. Lewis,
2 N.Y.3d 224 (2004)...................................................................................................... 7

Price v. Price,
289 A.D.2d 11 (1st Dep't 2001)..................................................................................... 14

Renner v. Townsend Fin. Servs. Corp.,
No. 98 Civ 926, 2002 WL 1013234 (S.D.N.Y. May 20, 2002)......................................... 3

Reynolds v. Pegler,
123 F. Supp. 36 (S.D.N.Y. 1954) .................................................................................. 12

St. Barnabas Hosp. v. N.Y. City Health and Hosps. Corp.,
7 A.D.3d 83 (1st Dep't 2004).......................................................................................... 13

Solow v. W.R. Grace & Co.,
83 N.Y.2d 303 (1994)...................................................................................................... 13

U.S. v. Locascio,
357 F. Supp. 2d 536 (E.D.N.Y. 2004)............................................................................. 14

U.S. v. Peng,
602 F. Supp. 298 (S.D.N.Y. 1985) ................................................................................. 6

Unker v. Joseph Markovits, Inc.,
643 F. Supp. 1043 (S.D.N.Y. 1986) .............................................................................. 12

Weinberg v. G.S.W. Realty Corp.,
116 Misc. 2d 503 (N.Y. Sup. Ct. 1982).......................................................................... 11

Wilf v. Halpern,
194 A.D.2d 508 (1st Dep't 1993)................................................................................... 10

## TABLE OF AUTHORITIES
**(continued)**

Page(s)

## RULES AND STATUTES

Fed. R. Civ. P. 11 ............................................................................................................ 9

MODEL CODE OF PROF'L RESPONSIBILITY DR 5-1010(b).................................................... 1

N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1a ....................................................................... 9

New York Rules of Professional Conduct Rule 1.7 ......................................................... 1, 10, 11

American Bar Association Model Rules of Professional Conduct Rule 1.7 ................................. 1

## PRELIMINARY STATEMENT

"[T]he attorney's role in [litigation] is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case." <u>Cole Mech. Corp. v. National Grange Mut. Ins. Co.</u>, No. 06 Civ. 2875, 2007 WL 2593000, at *7 (S.D.N.Y. Sept. 7, 2007) (disqualifying counsel). Rule 1.7 of the New York Rules of Professional Conduct specifically states:

> A lawyer **shall** not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact. (emphasis added).

American Bar Association ("ABA") Model Rules of Professional Conduct Rule 1.7 states:

> a lawyer **shall not** act as advocate at a trial in which the lawyer is likely to be a necessary witness . . . . (emphasis added).

MODEL CODE OF PROF'L RESPONSIBILITY DR 5-1010(b) states:

> [a] lawyer **shall not** accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client. (emphasis added).

These canons of ethics are clear, all saying that a lawyer **shall not** act as an advocate in a matter he is likely to be a witness. Yet according to Poles Tublin, these canons can be violated without consequence.

Poles Tublin cites to a high standard yet overlooks the fact that the Plaintiffs have clearly set forth five (5) separate grounds for disqualification in this case. If there is any case where disqualification is called for, it is here. The five grounds for disqualification as set forth in Plaintiffs' moving papers include:

(1)     Poles Tublin's "advice of counsel" defense to Plaintiffs' claims that the ATHENA was improperly arrested <u>ex parte</u> – twice. The <u>ex parte</u> applications were ruled improper – by four separate courts! The <u>ex parte</u> arrest applications were made in bad faith and Defendant's only defense is "advice of counsel";

(2)     Poles Tublin's admissions before Judge Buchwald that directly conflict with its client's defamation of Plaintiffs;

(3)     Poles Tublin's bad faith filing of a sham action against Sea Trade based on a legal theory Judge Cahn rejected as inconsistent with the documents Poles Tublin filed - the claim was based on an alleged stock interest that was belied by the very terms stated on that stock certificate itself;

(4)     Poles Tublin's interference in the sale of the ATHENA causing a reduction in the sales price when it knew that such actions were improper and a breach of fiduciary duty; and

(5)     Damages, particularly punitive damages.

Poles Tublin's response sets forth ten pages of erroneous diatribe replete with factual mistakes under the heading of "Statement of Facts,"[1] yet pleads for the mercy of the Court alleging that disqualification would be a hardship to the client (without filing a client affidavit) and asserting that the only reason for the disqualification motion is Plaintiffs' effort to "avoid" discovery.  Nothing could be further from the truth: Plaintiffs have actively pursued this case and has recently filed a motion for summary judgment before Judge Jones.

This is a dispute over the ownership interests in a small corporation known as Sea Trade.  Poles Tublin claims that its client has such a shareholder interest.  Instead of filing a declaratory judgment in New York against Sea Trade on this point, Poles Tublin had (1) Sea Trade's sole asset improperly arrested twice ex parte, inflicting great damage on Sea Trade, (2) filed papers knowingly defaming Peters while giving contradictory statements before another tribunal, (3) filed an action without any legal basis and (4) interfered with the sale of the Athena that only served to reduce the eventual sale price of Sea Trade's single asset – the ATHENA.

---

[1]  The factual errors are too numerous to refute here and irrelevant to this motion. For example, Poles Tublin states Peters somehow awarded himself a $3 million compensation package – a point that is absurd.  In addition, Poles Tublin harps on a Greek court decision regarding Defendant's alleged "inheritance" of Sea Trade stock which applies incorrect law on the stock restriction.  Defendant has never bothered to use this decision (currently on appeal) as a basis of a suit in New York regarding any interest in Sea Trade.

In response, Poles Tublin argues that its testimony would not be "necessary" or adverse to its client. This is absurd. Just on the first two grounds, their testimony regarding advice of counsel is necessary and their admissions contradicting their client's defamation is clearly adverse. Any review of the basis for disqualification clearly shows that Poles Tublin's testimony regarding its own actions will take up a substantial amount of time if the trial proceeds.

## ARGUMENT

## THE FIVE GROUNDS FOR DISQUALIFICATION

1.   **GROUND 1: THE "ADVICE OF COUNSEL" DEFENSE**

The "advice of counsel" defense requires that Defendant show that he: (1) made complete disclosures to counsel; (2) sought advice as to the legality of his conduct; (3) received advice that his conduct was legal, and; (4) relied on that advice in good faith. See Renner v. Townsend Fin. Servs. Corp., No. 98 Civ 926, 2002 WL 1013234, at *8 n. 8 (S.D.N.Y. May 20, 2002). This "advice" apparently contradicted the holdings of four different courts. Poles Tublin will testify on these vital issues of fact that are necessary to probe Defendant's defense. No speculation or "leap of faith" is required. Poles Tublin attorneys will be called to testify and there are only two possible outcomes, both of which are problematic. In the interest of avoiding a malpractice lawsuit, Poles Tublin will have to argue that it properly presented valid legal options to its client. If Poles Tublin had followed well-settled maritime law – as stated in the four court decisions that vacated the ex parte arrests, this would make sense. However, in the face of the illegal and improper arrests, if this were true, Defendant ignored their advice. This would suggest that he acted in bad faith. On the other hand, perhaps Poles Tublin provided improper and illegal advice. This would render Poles Tublin liable for malpractice and bad faith and raise issues of collusion between client and lawyer.

Poles Tublin attempts to avoid the classic advocate-witness issue raised in any "advice of counsel" defense by completely ignoring Crossroads Systems (Texas), Inc. v. Dot Hill Systems Corp., No. A-03-CA-754-SS, 2006 WL 1544621 (W.D. Tex. May 31, 2006)

("Crossroads"), a case that was discussed extensively in Plaintiffs' motion and is factually directly on point to this case.  In Crossroads, the court disqualified counsel immediately -- on the basis of the assertion of an "advice of counsel defense."  There, as here, the advice of counsel defense is central to the litigation and it is therefore obvious that "[plaintiffs] will be seeking to attack the reasonableness of [the defendant's] reliance on the opinions given by [the] attorneys, in part, by attacking the accuracy and validity of the opinions themselves as well as the work underlying the formulation of the opinions." Crossroads, 2006 WL 1544621, at *10.  "Moreover, the reasonableness of [defendant's] reliance on the opinions will necessarily raise other factual questions, such as what relevant, nonprivileged facts . . . were communicated between [defendant] and its opinion counsel."  Id.

How does Poles Tublin attempt to get around the holding in Crossroads?  By stating that the "advice of counsel" defense does not make the attorneys' testimony necessary only the client's testimony.

If Poles Tublin's argument were true, there would never be grounds for disqualification in any advice of counsel case.  It is an inherently flawed argument, yet PT Opp. Br.[2] at pp. 14-17 clearly states:  "In other words, it is Capt. Coutsodontis' beliefs that are in question and not the beliefs and quality of legal advices of the lawyers at Poles Tublin."  Id. at p. 14.  Indeed, "**[s]uch testimony would not be 'necessary'** because it would not prove the beliefs of Capt. Coutsodontis regarding the arrests . . .." Id. at p.15 (emphasis in original).  "Here, Capt. Coutsodontis is the . . . only source to elicit what he believed."  Id. at page 17.  This is absurd.

In making this far-fetched argument, Poles Tublin relies solely upon a series of gloriously mis-cited quotes from the case Finkel v. Frattarelli, No. 05-CV-1551, 2010 WL 3724373

---

[2]  "PT Opp. Br." refers to Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion to Disqualify Poles Tublin Statakis & Gonzalez, LLP as Counsel for Defendant Stelios Coutsodontis.

(E.D.N.Y. Sept. 15, 2010) even going so far as interspersing the names Coutsodontis and Poles Tublin in quotes from that case.  See PT Opp. Br. at pages 14-15.

What Poles Tublin fails to mention are the relevant facts regarding the Finkel case.  In Finkel, defendants sought to disqualify plaintiff's counsel because plaintiff's counsel might be called to testify about an industry standard that might be relevant to defendant's intent.  In this case, we are dealing with defendant's counsel's advice to defendant.  In Finkel, defendant was trying to disqualify plaintiff's counsel not for any advice they gave their client but because they may have had some views relevant to an industry standard that defendant would testify to.  There was no "advice of counsel" defense involved.  Plaintiff's counsel had no interaction with the defendant.  In other words, the facts in Finkel are entirely inapposite to this case; it is mixing apples and oranges.  The functional equivalent if we apply Finkel to our case, would be if Poles Tublin sought to disqualify plaintiff's counsel because defendant may call plaintiff's counsel to testify about the "industry standard" for marine arrests.  As found in Finkel, the disqualification arguments were inherently flawed, defendants could obtain other law firms to act as witnesses, and defendants had shown no interaction between plaintiff's counsel and defendants on the issue.  In any event, the key testimony regarding fraud was that of the defendants not plaintiff's counsel.  In this case, however, Poles Tublin's "advice of counsel" defense is Defendant's primary indeed only defense to Plaintiff's claims regarding the illegal arrests.

To even think of citing to the Finkel case in this matter is beyond comprehension.  To treat Finkel as the crux of Poles Tublin's opposition to disqualification is telling.

Clearly, as found in Crossroads, Poles Tublin's testimony regarding the "advice of counsel" defense is central to this litigation and calls for their immediate disqualification.

---

[4]   "Complaint" refers to Plaintiffs' Amended Complaint, dated April 3, 2009.

2.     **GROUND 2:  POLES TUBLIN'S ADMISSIONS DIRECTLY CONTRADICT
        DEFENDANT'S CLAIMS**

Another material claim in this action is that Defendant previously filed an action in bad

faith (before Judge Cahn) against Peters and made several defamatory statements including,

most importantly, that Peters was operating Sea Trade through a <u>forged</u> power of attorney (and

therefore was committing criminal and fraudulent acts).  <u>See</u> Complaint ¶¶ 115-119. [4]  This

defamation struck at the heart of Sea Trade's operations since it implied that Peters had no

legitimate authority (and was in fact a criminal).  This defamation was provided to Sea Trade's

third-party manager in order to raise questions regarding Sea Trade's and Peter's authority.

Poles Tublin was counsel to Defendant and directly involved in the preparation of the pleadings

containing the defamatory statements and in initiating the bad faith action.  Moreover, in a

subsequent litigation (before Judge Buchwald), Poles Tublin attorneys made statements in open

court directly contradicting their client's defamatory statements (i.e., counsel admitted that the

power of attorney was valid).

Based on Poles Tublin's blatant contradictions of Defendant's assertion that Peters

forged a fraudulent Power of Attorney and employment contract with Sea Trade, Poles Tublin

should be disqualified.  <u>See, e.g., Decker v. Nagel Rice LLC</u>, 716 F. Supp. 2d 228, 235

(S.D.N.Y. 2010); <u>Elizabeth St. Inc. v. 217 Elizabeth St. Corp.</u>, 301 A.D.2d 481, 482 (1st Dep't

2003).  Here, Poles Tublin attorneys made themselves crucial witnesses in order for the trier of

fact to determine whether Defendant made and filed his defamatory remarks in bad faith for the

sole purpose of maliciously injuring Peters and Sea Trade's business.  <u>See</u> Opening Brief at 11;

<u>see also</u> <u>U.S. v. Peng</u>, 602 F. Supp. 298, 300 (S.D.N.Y. 1985) (noting that the Second Circuit

has confirmed "the need to disqualify defense counsel when it becomes apparent that defense

counsel is a potential witness").

Where, as here, counsel's testimony will be adverse to the client, the conflict is obvious

and counsel must be immediately disqualified.  <u>See, e.g., Decker</u>, 716 F. Supp. 2d at 232;

People v. Lewis, 2 N.Y.3d 224, 229 (2004);  Elizabeth, 301 A.D.2d at 482; Fairview at Old

Westfield, L.P. v. European Am. Bank, 186 A.D.2d 238, 239 (2d Dep't 1992).

As discussed below, Poles Tublin's judicial admissions will be a part of Plaintiffs' case in

chief on this issue.

Further, because Poles Tublin attorneys' judicial admissions belie every other

defamatory allegation made by Defendant (i.e., fraudulent employment contract, fraudulent

financials, etc.), the trier of fact should consider Defendant's "intention" behind all of his

defamatory statements.

Poles Tublin's admissions are critical evidence to Defendant's bad faith since they tend

to show that Poles Tublin (and Defendant) knew the defamatory statements were false and

were therefore malicious.  Poles Tublin attorneys may try to explain away on the witness stand

what they meant by their judicial admissions (i.e. their "inadvertent" excuse), but Plaintiffs are

clearly entitled to have the trier of fact hear those "explanations."

> [T]he reconciliation of conflicting statements, a determination of which should be
> asserted and which rejected [and]the truthfulness and accuracy of the
> testimony . . . are issues for the trier of the facts.

Lelekakis v. Kamamis, 41 A.D.3d 662, 664 (2d Dep't 2007).

Plaintiffs will call Poles Tublin attorneys to answer questions such as:

- Did you, Mr. Stratakis, state during oral argument that "when the owner of the ship
  (Athena Eliades) was alive, she had given her nephew (George Peters) power to
  operate the ship . . . ." Did you take any steps to amend that statement?  Do you
  believe that statement was true?

- Why did you, Mr. Stratakis, contradict Mr. Coutsodontis' statement?  Did something
  transpire between the time you filed the defamatory affidavit and the time of the
  Federal Court oral argument that changed your opinion as to the truth of
  Mr. Coutsodontis' statements?

- Were you provided with copies of the Federal Court transcript by letter dated
  October 21, 2008?

- **If, as you claimed in briefing before Magistrate Judge Pittman that the above
  statements were "inadvertent," and made in the "heat of oral argument," why
  did your firm prepare an affidavit making the same inconsistent statement?**

Poles Tublin attorneys will be required to testify on these matters; their admissions already are contrary to Defendant's position and, consequently Poles Tublin should be disqualified.  See Decker, 716 F. Supp. 2d at 235; Elizabeth, 301 A.D.2d at 482.

### 3.    GROUND 3: THE SHAM ACTION AGAINST SEA TRADE

As stated, Poles Tublin, on behalf of Defendant, initiated a sham action against Sea Trade and Peters with the purpose of economically coercing Peters into surrendering one-half of Sea Trade to Defendant.  The state court action before Judge Cahn was a platform to defame Peters by calling him a forger who had no authority over Sea Trade.  See Complaint ¶¶ 115-121.  The action was based upon the knowingly false premise that there had been an "inter vivos" gift to Defendant from his sister, despite the stock restriction stating:

> No shareholder of the Corporation shall have the right or power to sell, assign, transfer or otherwise dispose of all or any part of the shares of stock of the corporation to a person who is not already a shareholder without first obtaining the unanimous written consent of all other shareholders of the Corporation.

See **Exhibit M** to the Halprin Decl. [5]  The restriction was stated prominently on the back of the Stock Certificate.  **Exhibit N** to the Halprin Decl.

The allegations regarding an "inter vivos" transfer were simply bogus and put forth in order to create the illusion that Defendant had stock interest and therefore standing to sue.  See Coutsodontis v. Peters , No. 600511/05, 2006 WL 721255, at *3 (N.Y. Sup. Ct. Feb. 1, 2006). Judge Cahn found the inter-vivos allegations to be "contradicted by the documentary evidence presented . . . and the alleged claim invalid as a matter of law."  Id.  The above stock provision requiring consent prior to transfer was never complied with despite Defendant's awareness of the restriction.

Poles Tublin was directly involved with the implementation of these false allegations and since the shares are bearer shares, Poles Tublin presumably reviewed the shares (and

---

[5]  "Halprin Decl." refers to the Declaration of Peter A. Halprin, dated February 11, 2011, submitted in support of Plaintiffs' Motion to Disqualify the Law Firm of Poles Tublin as Counsel.

therefore their transfer restrictions) before filing suit.  See id.; **Exhibit N**.  In other words, Poles

Tublin attorneys are key witnesses to this claim.

To put the issue differently, Poles Tublin either knew of, and provided advice regarding,

the documents contradicting the inter-vivos transfer allegation and the transfer restriction

expressly printed on all Sea Trade stock certificates or they did not bother to find out whether

the allegations were true before filing the bad faith action.[6]  In either case, Poles Tublin

attorneys are witnesses.

A failure to conduct due diligence to ensure that the allegations of a client, as asserted in

pleadings, are true is a violation of the Rules of the Chief Administrator of the Courts of New

York and are sanctionable.  See N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1a.  Similarly,

under the Federal Rules of Civil Procedure, an attorney making representations to a court, by

way of signing a pleading, is certifying, to the best of his knowledge, and following a reasonable

inquiry under the circumstances, that the factual contentions have evidentiary support.  See

Fed. R. Civ. P. 11(a)-(b); see also Eastway Construction Corp. v. City of New York, 762 F.2d

243, 254 (2d Cir. 1985).

In Defendant's motion to dismiss the Complaint, Poles Tublin stated that "at all relevant

times . . . Coutsodontis was acting upon the advice of competent counsel."  Defendant's Reply

Brief on the Motion to Dismiss at page 17.  Poles Tublin should also be disqualified because

there is a substantial risk that its professional judgment and testimony on this and other issues

will be clouded by its own interest in avoiding a malpractice claim and/or sanctions pursuant to

Rule 1.7 of the new York Rules of Professional Conduct, which provides (with certain

exceptions not relevant here), that "a lawyer shall not represent a client if a reasonable lawyer

would conclude that . . . there is a significant risk that the lawyer's professional judgment on

---

[6]  Miller v. Schweickart, 413 F. Supp. 1059, 1061 (S.D.N.Y. 1976).  Here, as in Eastway
Construction, cited infra, counsel brought baseless actions that had no chance of succeeding
under the law and, as per Miller, failed to confirm critical facts prior to bringing the lawsuits.

behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interest." New York Rules of Professional Conduct Rule 1.7(a)(2).

### 4.    GROUND 4: POLES TUBLIN ARE FACT WITNESSES AS TO THE IMPROPER INTERVENTION IN THE SALE OF THE ATHENA

Defendant later intervened, improperly, with the proposed sale of the ATHENA at an advantageous price. This intervention prevented Sea Trade from completing the sale and provided the buyer with a basis for canceling the contract, forcing a large reduction in the sale price. See Complaint ¶¶ 95-96. Poles Tublin was aware of the motives behind Defendant's actions and actively coordinated these actions through its affiliated office in Greece. In fact, the Greek firm used in the interference is listed on the Poles Tublin website as one of the locations of Poles Tublin's offices.

As stated previously, assuming for purposes of argument that Defendant was a shareholder of Sea Trade, his intervening to block the sale of the Athena involved a clear breach of fiduciary duty; therefore a conflict arises in that Poles Tublin may have committed a blatant ethical violation in permitting such action. See e.g. Brunetti v. Musallam, 11 A.D.3d 280 (1st Dep't 2004); Wilf v. Halpern, 194 A.D.2d 508 (1st Dep't 1993); Eastway Construction, 762 F.2d at 254.

As stated above, where an attorney is a "vital fact witness," "the dominant figure" as to key legal questions in the case, and "uniquely qualified to paint that legal landscape which lies at the heart of [the case]," he must be disqualified. Corona v. Hotel and Allied Servs. Union Local 758, No. 04 Civ. 10074, 2005 WL 2086326, at *7 (S.D.N.Y. Aug. 30, 2005).

Defendant claimed he was a 50% shareholder of Sea Trade, Poles Tublin knew or shold have known that that Defendant would then owe a fiduciary duty to Sea Trade and the other shareholders. E.g., Brunetti, 11 A.D.3d at 280 (finding shareholders in a close corporation to be equivalent to partners under New York law, and that the relationship "imposes a high degree of fidelity and good faith"). Poles Tublin also knew that it had a legal avenue available to pursue

and protect such rights – a civil action in New York against Sea Trade and Peters seeking a declaration of Defendant's alleged 50% interest.  Poles Tublin knew this because they tried it once before (but on specious grounds).  Instead of using this straightforward declaratory judgment action in New York, which would not have injured the company – Poles Tublin counseled, advised, and participated in the malicious prosecution of three ex parte proceedings that ipso facto injured Sea Trade – the two arrests and the sale interference – and which constituted per se fiduciary breaches.  See, e.g., Innovative Networks, Inc. v. Young, 978 F. Supp. 167, 183 (S.D.N.Y. 1997) (a fiduciary must not act so as to cripple or injure the corporation ); Wilf, 194 A.D.2d at 508 (exposing a partnership to an unjustified risk of financial harm is a breach of a partners' fiduciary duties); Weinberg v. G.S.W. Realty Corp., 116 Misc. 2d 503, 510 (N.Y. Sup. Ct. 1982) (a shareholder may not act to destroy or injure the corporation by foreclosing on its principal or sole asset).

Poles Tublin should be disqualified because there is such a substantial risk that its professional judgment and testimony on this and other issues will be clouded by its own interest in avoiding a malpractice claim and protecting the firm's reputation.  See New York Rules of Professional Conduct Rule 1.7(a)(2) ("a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely effected by the lawyer's own financial business, property or other personal interests"); Mercado v. City of New York, No. 08 Civ. 2855 (BSJ) (HBP), 2010 WL 3910594, at *1 (S.D.N.Y. Sept. 30, 2010).

## 5.    GROUND 5: PUNITIVE DAMAGES

As previously stated, Poles Tublin's testimony (regarding the "advice of counsel" defense, admissions, bad faith actions, etc.) are clearly relevant to the issue of damages, particularly punitive damages.  Complaint ¶¶ 23, 81, 86, 114, 121, 128, 143.

In addition, Defendant's bad faith in making the defamatory statements, as highlighted by Poles Tublin's contradictions, is highly relevant in determining Plaintiffs' entitlement to

punitive damages.   See Unker v. Joseph Markovits, Inc., 643 F. Supp. 1043, 1048 (S.D.N.Y. 1986) (punitive damages are recoverable in a defamation action "upon proof that the defendant was motivated by ill will or spite, or by a reckless disregard for the plaintiff's rights."); Gatz v. Otis Ford, Inc., 274 A.D.2d 449, 450 (2d Dep't 2000).   It is well-settled that a plaintiff is entitled to an award of punitive damages in a libel claim were the libel was "motivated by ill will or spite, or by reckless disregard for the [Plaintiff's] rights." Unker, 643 F. Supp. at 1048.  Moreover, in Reynolds v. Pegler, the court correctly allowed the trier of fact **to consider defendant's actions subsequent to the original defamatory publication** in determining that defendant acted with "malice" and with "a calculated design to injure the plaintiff in his profession and in his standing in the community." 123 F. Supp. 36, 41 (S.D.N.Y. 1954).  Thus, Poles Tublin attorneys' subsequent judicial admissions as well as the arrests and sale interference – about which Poles Tublin attorneys' will testify – will be used as proof on the issue of punitive damages as well.

### THE "HARDSHIP" DEFENSE

Poles Tublin argues that disqualification would be a hardship to its client (without submitting any client affidavit) on the sole ground that Plaintiffs have somehow waived their right to seek disqualification because of laches. PT. Opp. Br., pp. 20-23.  A review of the relevant timeline and the status of this case shows the fallacy of this argument.  After the Complaint was filed, Poles Tublin moved to dismiss the Complaint "because . . . [Coutsodontis] was represented by counsel and effectuated the arrests upon his counsel's advice . . . ." See **Exhibit D** to the Halprin Decl. (denying motion).

At the first discovery conference before Magistrate Judge Pittman, held on December 1, 2010, Plaintiffs' counsel specifically stated to the court and defense counsel that Plaintiffs would be moving to disqualify Poles Tublin because, in material part, of the "advice of counsel' defense set forth in Defendant's motion papers.  The period between Judge Jones' decision (and the relevant appeal period) and Magistrate Judge Pittman's discovery conference was less

than 3 months.  The passage of time has not prejudiced Defendant and no discovery has yet taken place.

While Poles Tublin suggests that the instant motion is a litigation tactic to prejudice Defendant and avoid discovery; it is not.  Defendant is a multi-millionaire with more than enough means to hire different counsel.  In various litigations between the parties, Defendant has hired, or been represented by, no less than three other law firms.  Defendant can certainly replace Poles Tublin and discovery, if necessary, can then proceed.  In any event, a party's "allegation of pecuniary hardship alone is insufficient to avoid disqualification."  See Neufeld v. Neufeld, No. 93CIV8131, 1994 WL 267811, at *4-5 (S.D.N.Y. June 15, 1994).  Moreover, finding new counsel later will only be more expensive.   As to Plaintiffs' activity, it is respectfully submitted that Plaintiffs have clearly been prosecuting this case and have in fact filed a motion for summary judgment before Judge Jones.

In sum, there has been no inordinate delay.  Plaintiffs' attorney advised Poles Tublin attorneys that the motion would be filed, no discovery has taken place – and Defendant has suffered no prejudice.

The cases cited by Defendant are inapposite:  all involve conflict of interest cases rather than advocate-witness cases.  See, e.g., Solow v. W.R. Grace & Co., 83 N.Y.2d 303 (1994) (claim that law firm that represented plaintiff was subject to disqualification motion by defendant, who it had previously represented, was mooted by departure of attorneys from firm); St. Barnabas Hosp. v. N.Y. City Health and Hosps. Corp., 7 A.D.3d 83 (1st Dep't 2004), (disallowing disqualification because Saint Barnabas had waived the firm's alleged conflict of interest by "St. Barnabas's express written consent to the firm's representation of HHC in matters concerning Lincoln Hospital."); Bluebird Partners L.P. v. Bank of N.Y., 21 Misc. 3d 1140(A), 2008 WL 5131174 (N.Y. Sup. Ct. 2008).  In sum, the cases cited by Poles Tublin do not involve the advocate-witness rule, which inherently involves the integrity of the judicial system, as compared to the conflict of interest cases cited, as it can be waived.  In any event,

the time period involved in bringing this disqualification motion did not involve any material delay that might have prejudiced defendant.

## THE ENTIRE FIRM MUST BE DISQUALIFIED

Poles Tublin argues that the entire law firm should not be disqualified, but rather only the five senior attorneys (out of eight total) that will actually be called as witnesses.  First, Defendant's memorandum, omits that this argument has been previously considered and rejected where the "implications of that testimony for the adversarial process" require disqualification of the entire firm, not just the representing attorney.  Price v. Price, 289 A.D.2d 11, 13-14 (1st Dep't 2001).  Moreover, as discussed in Crossroads, supra, when an attorney will provide testimony adverse to its other client, then the entire law firm must be disqualified.  See supra, pg. 4.  "Since both the credibility and legal acumen of [the] attorneys will be in issue at the trial, if other [attorneys of the firm] were permitted to serve as trial counsel, they would be placed in the awkward and unseemly position of having to advocate for the credibility and reliability of the testimony of their law partners."  Crossroads, 2006 WL 1544621, at *10.  "Even worse, if the testifying . . . attorneys were to give testimony that was adverse to [the client's] interests, the attorneys serving as trial counsel would be squarely confronted with a conflict of interest in grappling with competing duties to the client and to the firm."  Id.

## IMMEDIATE DISQUALIFICATION

The rationale for immediate disqualification in these circumstances is clear.  Poles Tublin's involvement with the underlying events is pervasive and will be repeatedly brought to the attention of the trier of fact.  Gorbaty v. Wells Fargo Bank, N.A., No. CV-10-3291, 2011 WL 318090 (E.D.N.Y. Feb. 1, 2011).  Under Crossroads, immediate disqualification is required.  The conflict between the desire to continue representing the client on the one hand, and protecting the firm and its reputation on the other, renders Poles Tublin's continued representation impossible.  See, e.g., U.S. v. Locascio, 357 F. Supp. 2d 536, 556 (E.D.N.Y. 2004).  Further, the inherent conflict caused by this situation may also create an incentive for a testifying attorney to

distort the truth as a result of bias in favor of his paying client. See Murray v. Metropolitan Life Ins. Co., No. 09-3716-cv, 2009 WL 3080462, at * 4 (2d Cir. Sept. 29, 2009). This incentive alone supports Poles Tublin's immediate disqualification in order to prevent the appearance of a lack of "integrity of the judicial process." Id.; Fulfree v. Manchester, 945 F. Supp. 768, 771-72 (S.D.N.Y. 1996). In Fulfree, this Court found that the attorney's testimony might prejudice his own client, and held that "[t]here is no justification for allowing [the attorney] to represent plaintiff during the pre-trial aspect of [the] litigation when it is clear that he may be a material witness at trial, and it is clear that he is required to testify." Id. at 771-72. Further, it makes no sense to permit an attorney to continue as pre-trial counsel only to require someone new to come in to learn the case when it goes to trial. Fulfree, 945 F. Supp at 772. For the same reasons here, the entire Poles Tublin firm should be disqualified.

### CONCLUSION

For the foregoing reasons, especially the public's interest in an untainted judicial process, it is respectfully submitted that this Court grant Plaintiffs' motion and immediately disqualify the law firm of Poles Tublin from serving as counsel to Defendant in this matter.

Dated: March 11, 2011

By:  /s/ Peter A. Halprin
R. Mark Keenan
John M. O'Connor
Peter A. Halprin

ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, New York 10020
Telephone: 212-278-1000

Attorneys for Plaintiffs
SEA TRADE MARITIME CORPORATION and
GEORGE PETERS