UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEA TRADE MARITIME CORPORATION and
GEORGE PETERS,

                    Plaintiffs,

        - against -                                    Civil Action No. 09-CIV 00488 (BSJ)

STELIOS COUTSODONTIS, FRANCESCA         **AFFIDAVIT OF GEORGE C. PETERS**
ELENI COUTSODONTIS, GENERAL
MARITIME ENTERPRISES CORPORATION,
ATTIKA INTERNATIONAL NAVIGATION SA,
IASON SHIPPING LTD., PINTO SHIPPING
LTD., AND KARTERIA SHIPPING LTD.,

                    Defendants.

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NEW YORK )

        GEORGE C. PETERS, being duly sworn, deposes and says:

        1.      I have been an active, well-respected member of the international

and Greek shipping communities since 1992 and am currently employed as the sole

attorney-in-fact of Sea Trade Maritime Corporation ("Sea Trade").

        2.      I respectfully submit this affidavit in opposition to General

Maritime's Motion to Dismiss the Complaint dated February 7, 2011 ("Motion") on the

alleged grounds that General Maritime supposedly has "no" relationship with Defendant

Stelios Coutsodontis ("Coutsodontis") and is not involved with the facts underlying

Plaintiff's Complaint.  Both statements are flagrantly untrue.

### Relationship

3.    Defendant Coutsodontis is directly related with the family (Theodore Papangelopoulos and Nikolaos A. Kotakis) that manages General Maritime;

4.    Defendant Coutsodontis is a partner of and joint venturer with General Maritime and has been since at least 1992;

5.    Defendant Coutsodontis' marine vessels are all managed and operated by General Maritime;

6.    General Maritime profits from its joint business with Defendant Coutsodontis and will directly profit if Sea Trade is taken from Plaintiff;

7.    General Maritime receives substantial fees from managing the ships of Coutsodontis, including, but not limited to, the Karteria and the Athenoula.

### Prior Joint Efforts to Interfere with Plaintiff

8.    On numerous prior occasions, Defendant Coutsodontis and General Maritime interfered with the operations of Sea Trade and defamed Plaintiff before the other shareholders of Sea Trade (in an effort to wrest control of Sea Trade):

    a.    From the beginning of Sea Trade, Defendant Coutsodontis and Theodore Papangelopoulos (General Maritime) regularly and falsely accused me of mismanagement before the shareholders of Sea Trade;

    b.    On these occasions, Defendant Coutsodontis and Theodore Papangelopoulos (General Maritime) would tell Sea Trade's shareholders that, among other things: (i) I was incapable; (ii) I did not have the knowledge to run Sea Trade and that, therefore, their

investment would be lost; (iii) I was lining my pockets; and (iv) I was not looking out for their interests;

c.      General Maritime (Papangelopoulos) and Defendant Coutsodontis constantly, and on many occasions, also demanded internal, proprietary corporate documents of Sea Trade (when they had no corporate rights to such information) claiming the failure to provide such information was indicative of fraud on Sea Trade's shareholders;

d.      A few years after Sea Trade's inception, when the Athena was in Greece for dry dock, Defendant Coutsodontis and General Maritime representatives, including Nikolaos A. Kotakis, improperly boarded the Athena for the purpose of disparaging Sea Trade's management before Sea Trade's shareholders.

9.      Defendant Coutsodontis and General Maritime (Papangelopoulos) repeatedly interfered with plaintiff's management asking for the minutes books, stock ledger, all books and records of Sea Trade, all invoices since the purchase of the ship, copies of all bids for dry dock work, the bill of sale, the management agreement, etc. – again when they had no right to same.

10.      Despite Sea Trade's stock prohibition against Coutsodontis' ownership of any Sea Trade shares, Defendant Coutsodontis and General Maritime persisted in their efforts to disparage and defame me in an attempt to wrest control of the Athena.

11.     In General Maritime's moving papers, however, the (false) impression is mounted that General Maritime was not involved in these disparaging activities -- and, in fact, that General Maritime had and has "no relationship" with Defendant Coutsodontis.  See Defendant's Memorandum of Law in Support of Motion to Dismiss dated February 7, 2011; Declaration of Nikolaos A. Kotakis dated February 4, 2011.  This is a lie.

12.     As noted previously, in addition to the above, General Maritime and Defendant Coutsodontis share ownership in among other things, the Karteria (60%/40%), as well as the Athenoula (100% owned by Coutsodontis, managed by General Maritime) but the ownership decisions (purchase, sale, terms, ultimate approval of charter contracts) were made by Defendant Coutsodontis residing in New York and carried out by General Maritime.

13.     It should be noted that in Greece, familial relationships are all important and the "Greek way" is to disguise ownership interests and corporate relationships whereas in the U.S., a greater transparency exists where legal documents would show joint partnership or corporate director/officer relationships.  This cultural difference should not be used as a basis for Defendant General Maritime to hide its involvement with the New York Defendant Coutsodontis (who resides in New York) and their involvement and attempted benefit from the most recent of the defamations asserted against me.  Further, this lack of transparency is also prevalent in the shipping industry.

14.     The continuing efforts to disguise the Coutsodontis/General Maritime relationship include the payment of $3,000,000 from the UBS Trust in 2003 to

Mr. Coutsodontis, which was distributed to Mr. Coutsodontis (and paid to General Maritime) so he could make the down payment on the Athenoula so that General Maritime could take delivery of the ship.  This clearly shows the joint venture relationship between the two – and their attempts to disguise it.

15.   In sum,

a.   Defendant Coutsodontis and General Maritime are partners.

b.   The relationship is longstanding and profit-making.

c.   They are first cousins.

d.   They have been acting in concert to bring yet another profit making deal to General Maritime – the Athena.

e.   Defendant Coutsodontis has been even more careful to keep his interest below the table – because of his long conflict with Sea Trade he cannot afford to have it disclosed (hence, the missing $3,000,000).

f.   Defendant Coutsodontis has in the past acted in concert to defame Sea Trade, and Sea Trade's management to its shareholders.

g.   Defendant Coutsodontis and General Maritime have in the past acted in concert to have Sea Trade's principal asset, the Athena, transferred to General Maritime and otherwise interfere with the operations of the Athena.

h.   Defendant Coutsodontis and General Maritime acted in concert to defame Sea Trade and George Peters which is the subject of this action, and to interfere in Sea Trade's operations.

i. For example, Plaintiff can show that in 2003, the financial interests of Nikolaos A. Kotakis ("Mr. Kotakis"), the admitted Secretary and Treasurer of General Maritime, and Ekaterini N. Kotakis ("Ms. Kotakis"), the Vice-President of General Maritime, were directly aligned with Mr. Coutsodontis through various business enterprises.

j. By way of example, the Kotakis family was jointly involved with Coutsodontis through Attika International Navigation, S.A. ("Attika"), a Panamanian company that was the registered owner of the M/V Athenoula from December 2003 until August 2007 – the same time period in which the defamatory statements were made by Coutsodontis.

k. Specifically, the Commercial Registry of Panama indicates that at the time of its founding, the officers of Attika were as follows: Stylianos Coutsodontis; President; Nikolaos A. Kotakis, Secretary; and Francesca Eleni Coutsodontis, Vice President and Treasurer.

l. The bill of sale for the purchase of the M/V Athenoula names Ms. Kotakis as the representative of Attika with the power of attorney to carry out the purchase.  The purchase of the M/V Athenoula was largely funded by Mr. Coutsodontis.  Notably, the M/V Athenoula was later sold to Beekman Shipping Corporation (represented by Mr. Kotakis) for the nominal value of "one dollar and other considerations of value."

m.    It is also noteworthy that Francesca Eleni Coutsodontis
(Coutsodontis' daughter) also served an internship with General
Maritime in the past.

16.    Lastly, in light of the direct evidence of  (1) the joint relationship
between Coutsodontis and General Maritime; (2) the strong family relationship; (3) the
prior efforts to interfere with the operations of Sea Trade and the Athena; (4) the
conspiracy to defame Plaintiff; (5) the joint efforts to take Sea Trade from Plaintiff; and
(6) the joint efforts to disguise this relationship (before this Court and elsewhere), it is
clear that further evidence of the conspiracy, agency, joint relationship etc. would be
solely and peculiarly within General Maritime's and Coutsodontis' unilateral control. As a
result, it is  respectfully submitted that sufficient facts have been set forth to deny
General Maritime's motion to dismiss and at the very least should the Court believe
further facts are needed, to permit fact discovery on those specific issues.

George Peters

Sworn to before me this
8th  day of March, 2011.

Notary Public

PATRICIA E. WARD
Notary Public, State of New York
No. 01WA4690492
Qualified in Westchester County
Commission Expires July 31, 2013