UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SEA TRADE MARITIME CORPORATION and
GEORGE PETERS,

                              *Plaintiffs*,

   -against-

STELIOS COUTSODONTIS, FRANCESCA
COUTSODONTIS, GENERAL MARITIME
ENTERPRISES CORPORATION, ATTIKA
INTERNATIONAL NAVIGATION S.A., and
IASON SHIPPING LTD.,

                              *Defendants.*
------------------------------------------------------------X

No. 09 Civ. 488 (BSJ) (HBP)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS COMPLAINT AGAINST
<u>GENERAL MARITIME ENTERPRISES CORPORATION</u>**

BROWN GAVALAS & FROMM LLP
Attorneys for Defendant
GENERAL MARITIME
ENTERPRISES CORPORATION
355 Lexington Avenue
New York, New York 10017
Tel: (212) 983-8500
Fax: (212) 983-5946

*Of Counsel:*
PETER SKOUFALOS
PATRICK R. O'MEA

Defendant General Maritime Enterprises Corporation ("General Maritime") submits this reply memorandum of law in further support of its motion to dismiss the Amended Complaint ("Complaint") of plaintiffs Sea Trade Maritime Corporation ("Sea Trade") and George Peters ("Peters") (collectively "Plaintiffs"), and in reply to Plaintiffs' opposition to said motion.

## PRELIMINARY STATEMENT

It is clear from Plaintiffs' opposition submissions that their claim against General Maritime is based on an assumption – not alleged in the Complaint – that Coutsodontis and General Maritime are co-conspirators and that General Maritime controls Coutsodontis in Coutsodontis's personal crusade against Plaintiffs. Besides being absurd on its face, Plaintiffs have not shown any facts to support this theory. Accordingly, the Complaint must be dismissed.

It is telling that the word "conspiracy" does not appear in the Complaint. Indeed, the Complaint does not allege that General Maritime and Coutsodontis entered into an agreement or otherwise acted in concert. Instead, the Complaint alleges only that Coutsodontis acted on General Maritime's behalf in pursuing his "blood feud" against Peters. Likewise, the "facts" alleged in the Affidavit of George Peters ("Peters Aff.") do not show an agreement between General Maritime and Coutsodontis. Instead, Peters dwells on a vague discussion of familial relationships, and bizarre claims that Coutsodontis and General Maritime are "first cousins" and that Coutsodontis controls General Maritime in the "Greek way." [Peters Aff. ¶¶ 15(c), 13]. However, Peters's Affidavit contains no specific, plausible factual allegations that amount to a claim against General Maritime.

This action is an attempt by Peters to obtain sole control of Sea Trade. It does not involve General Maritime in any way and Plaintiffs' unsupported assertion of conspiracy does not amount to a claim against General Maritime. Likewise, there is no personal jurisdiction over

1

General Maritime because Plaintiffs' theory of personal jurisdiction relies wholly on the existence of a conspiracy.

Finally, Plaintiffs' damages have no substantial connection to vessels in navigation, so the Court lacks maritime subject matter jurisdiction. The Complaint should be dismissed accordingly.

## ARGUMENT

### POINT I

### PLAINTIFFS' UNSUPPORTED ASSERTION OF CONSPIRACY, RAISED FOR THE FIRST TIME IN THEIR OPPOSITION, DOES NOT STATE A CLAIM AGAINST GENERAL MARITIME

Plaintiffs have no claim against General Maritime because Coutsodontis and General Maritime are not engaged in a conspiracy. Plaintiffs' unsupported allegation in their opposition memorandum of a "corrupt agreement" between Coutsodontis and General Maritime is not found in either the Complaint or the Peters Affidavit. Likewise, Peters's vague assertion of a "familial and business relationship" between Coutsodontis and General Maritime does not amount to an agreement to harm Plaintiffs.

Where liability is based on a claim of conspiracy, "more than a conclusory allegation of conspiracy or common purpose is required to state a cause of action against [a] nonactor." *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 119 (S.D.N.Y. 2009). Indeed, a claim for conspiracy will not lie absent an "allegation of independent culpable behavior" against the nonacting party. *Schwartz v. Society of the N.Y. Hosp.*, 199 A.D.2d 129, 130 (1st Dep't 1993) (dismissing agency and conspiracy claims against co-conspirators based on unsupported statement that the principal was acting on "their behalf") (*cited by Meisel*, 651 F. Supp. 2d at 119).

As set forth in General Maritime's initial motion papers, the Complaint does not allege

2

that General Maritime did any of the acts giving rise to their claims. Instead, Plaintiffs rely solely on assertions that Coutsodontis acted "on behalf of" General Maritime. [*See* Gen. Mar. Mem. pp. 4-6]. Likewise, Plaintiffs' opposition papers do not identify any affirmative act by General Maritime related to their causes of action. The conclusory and unsupported claim that Coutsodontis acted on behalf of General Maritime in allegedly defaming Plaintiffs and arresting the vessel does not amount to a conspiracy.

Plaintiffs' reliance on the Affidavit of George Peters to oppose General Maritime's motion is also unavailing. This affidavit discusses – without factual support – alleged familial ties and vessel ownership interests that link Coutsodontis to "the family that manages General Maritime." [Peters Aff. ¶ 3]. Peters does not disclose the basis for his claims or explain why the vessels discussed in his affidavit are not mentioned in the Complaint. [*Compare* Peters Aff. ¶12 *with* Am. Compl. ¶ 5]. Nevertheless, the alleged family ties do not amount to an ownership or controlling interest in General Maritime, nor do they show an agreement between Coutsodontis and General Maritime. Indeed, Plaintiffs themselves allege only that the Peters Affidavit supports "the existence of a long standing familial and financial relationship" and "improper intent." [Opp. Mem. p. 12]. An alleged family relationship is not the same as a conspiracy.

Significantly, to satisfy the remaining prongs of the test for conspiracy, Plaintiffs rely only on alleged acts of Coutsodontis, not General Maritime. Therefore, other than the conclusory claim that an agreement exists between Coutsodontis and General Maritime, Plaintiffs rely *solely* on Coutsodontis's activities to show an overt act in furtherance of the conspiracy, the parties' intentional participation in furtherance of the plan, and resulting damage or injury. [Opp. Mem. pp. 10-11].

Plaintiffs do not allege that General Maritime itself did any act in furtherance of the

3

conspiracy, besides unsupported claims that "Coutsodontis and General Maritime interfered" by defaming Peters. [*Id.* pp. 12-13]. Unsupported statements are not entitled to consideration. *Iqbal*, 129 S. Ct. 1937, 1949-50. Finally, Plaintiffs allege no harm from any act by General Maritime, as opposed to the unilateral acts of Coutsodontis. Plaintiffs do not allege that General Maritime made any disparaging remarks or used its position in the industry to harm Plaintiffs in any way. Here, again, Plaintiffs rely solely on Coutsodontis's acts to show injury. [Opp. Mem. pp. 13-14].

Plaintiffs' reliance on an alleged family relationship and unilateral acts attributed to Coutsodontis to show a conspiracy with General Maritime are insufficient to establish a corrupt agreement. Peters's affidavit's list of vague familial ties and alleged joint ventures between Coutsodontis and employees of General Maritime, in addition to his more bizarre claims, does not meet Plaintiffs' burden. Bare conclusions against General Maritime are insufficient to state a cause of action against General Maritime, and the Complaint must be dismissed.

## POINT II

### THE COURT LACKS PERSONAL JURISIDICTION OVER GENERAL MARITIME BECAUSE COUTSODONTIS IS NOT GENERAL MARITIME'S AGENT

Plaintiffs also fail to satisfy their burden of demonstrating that this Court has personal jurisdiction over General Maritime. Plaintiffs' assertion of personal jurisdiction rests entirely on the unsupported assumption that Coutsodontis is General Maritime's agent and co-conspirator. Plaintiffs proffer no basis for jurisdiction independent of Coutsodontis's activities.

As shown in Point I, above, Coutsodontis and General Maritime are not co-conspirators, and Plaintiffs give no other basis for an agent/principal relationship. Thus, Coutsodontis's activities cannot be imputed to General Maritime and cannot support personal jurisdiction over General Maritime. Moreover, Plaintiffs fail to allege any other acts by General Maritime that

4

could support personal jurisdiction under CPLR §§ 301 or 302, such as substantial, continuing business activities in New York or any transaction of business, tortious act, or ownership of real property from which Plaintiffs' causes of action arise.

General Maritime, of course, has no connection to New York at all, and has only representative office and a place of business in Piraeus, Greece. (Kotakis Decl.[1] ¶ 3). General Maritime does not own or lease property in New York. (*Id.* ¶ 4) and is not authorized by the New York Secretary of State to do business in New York. (*Id.* ¶ 7). General Maritime has never maintained a telephone listing, answering service, or mailing address in New York, and has no officers, directors, or employees in the State of New York or an agent for service of process in New York. (*Id.* ¶ 5-7). General Maritime does not advertise, solicit, transact, or conduct business in New York. (*Id.* ¶ 9).

Mr. Coutsodontis is not now and never has been a director, officer, or shareholder of General Maritime. (*Id.* ¶ 11). Mr. Coutsodontis has never transacted or conducted any business on behalf of General Maritime. (*Id.* ¶ 12-13). Mr. Coutsodontis's alleged tortious conduct was not undertaken on behalf of General Maritime, and Mr. Coutsodontis does not act with the knowledge, consent, or under the control of General Maritime. (*Id.* ¶ 13-14).

Finally, Plaintiffs are not entitled to discovery on personal jurisdiction, as they fail to show that evidence would exist to support their theory. To obtain jurisdictional discovery, Plaintiffs must offer tangible evidence that would make a "sufficient start" towards showing that jurisdiction may exist. *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 426 (S.D.N.Y. 2010). Put another way, Plaintiffs must show that evidence supporting jurisdiction is likely to exist before discovery may be granted. *Grove Valve & Reg. Co. v. Iranian Oil Servs.*, 87

---

[1] Citations to "Kotakis Decl." refer to the Declaration of Nikolaos A. Kotakis, dated February 4, 2011.

5

F.R.D. 93, 96 n. 3 (S.D.N.Y. 1980) ("Plaintiffs must make a threshold showing that discovery might uncover a basis for jurisdiction; but if no such possibility exists, to permit discovery would not be proper."). "[C]onclusory non-fact-specific jurisdictional allegations" are insufficient to expose a foreign corporation to jurisdictional discovery. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998).

Here, Plaintiffs allege no facts showing the existence of an agency agreement or conspiracy between Coutsodontis and General Maritime. Nor do they point to any jurisdictional facts that could be uncovered by limited jurisdictional discovery. Consequently, Plaintiffs are not entitled to jurisdictional discovery, and the Complaint must be dismissed for lack of personal jurisdiction over General Maritime.

## POINT III

## THIS COURT LACKS MARITIME SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIM

The Court lacks maritime subject matter jurisdiction over this matter because Plaintiffs' alleged damages relate mainly to Plaintiffs' reputations, not their vessel. Therefore, this dispute is not maritime in nature and not subject to maritime subject matter jurisdiction.

To determine whether maritime subject matter jurisdiction exists, the Court must find that the alleged tort has a significant relationship to traditional maritime activity. Here, Plaintiffs do not identify any traditional maritime harm caused by the vessel's arrest, such as income lost while the vessel was under arrest or increased crewing or fuel costs. Instead, Plaintiffs only allege damage to their reputation. Damage to reputation does not affect vessels in navigation, so maritime jurisdiction does not exist.[2]

---

[2] Plaintiffs also argue that maritime jurisdiction is "law of the case." However, in denying Coutsodontis's earlier motion to dismiss, the Court explicitly stated that the motion was actually "directed at the merits of Plaintiffs' Complaint and, thus, must be considered pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which

6

As discussed in General Maritime's moving papers, the only damages allegedly caused by the arrests are the loss of a potential, unexecuted charter agreement and difficulty obtaining future charters. [Gen. Mar. Mem. pp. 20-21]. Plaintiffs' opposition papers do not refute this or identify any maritime losses directly related to the vessel's operations, such as executory charter agreements that could not be met due to the vessel's unavailability, or costs incurred because of the vessel's inactivity. Instead, Plaintiffs admit that the sole injury caused by the allegedly wrongful arrests is "damage to Sea Trade's reputation" that "made it more difficult to secure another charter." [Opp. Mem. 25]. Plaintiffs' difficulty in finding profitable employment for their vessel due to a perceived diminished commercial reputation is not a basis for maritime jurisdiction.[3] Thus, the Court lacks subject matter jurisdiction over Plaintiffs' claims.

Unlike the reputation damages alleged in Plaintiffs' Complaint here, all of the cases cited by Plaintiffs involve traditional maritime damages caused by the owners' inability to use their vessels. For example, in *Pace Shipping Servs. Network S.A. v. M/V OCEAN D*, No. 00 Civ. 475, 2003 U.S. Dist. LEXIS 12772 (E. D. La. Jul. 21, 2003), the arrest actually prevented the vessel from meeting its next fixture and caused the vessel to remain idle for over five days until another fixture could be obtained. *Id.* at 3. Notably, the *Pace Shipping* court did not consider whether it had maritime jurisdiction. In *Del Mar Seafoods Inc. v. Cohen*, No. 07 Civ. 2952, 2008 WL 2491073 (N.D. Cal. Jun. 19, 2008), the court found that the two month, one week arrest directly led to the vessel's lost income. Notably, as in *Pace*, the *Del Mar* court did not consider the issue

---

relief can be granted" even though the motion was captioned as a motion to dismiss for lack of jurisdiction. August 5, 2010 Order at 2 n.2. Thus, the Court did not determine that it has maritime jurisdiction over Plaintiffs' claim.

[3]   Plaintiffs' claim that damage to their reputation led to their inability to profitably charter the vessel must itself be taken with a grain of salt in light of the prevailing and well-known market conditions at the time. The Spanish arrest occurred in July 2008, and the vessel's last charter ended on October 15, 2008. The Baltic Dry Index (a benchmark index of shipping rates) dropped 84% in that period, and thereafter continued to fall until December 2008, when it leveled off 94% below its all-time high six months earlier. See http://www.bloomberg.com/apps/quote?ticker=BDIY:IND. Modern, efficient vessels saw their charter rates drop by factors of tens and even hundreds; a twenty-nine year old vessel such as the ATHENA was practically worthless.

of maritime jurisdiction in its June 19, 2008 decision. However, a subsequent decision found maritime jurisdiction because the claim arose from a ship's mortgage. 2007 U.S. Dist. LEXIS 64426, at *7 (N.D. Cal. Aug. 17, 2007). In *Exeter Shipping Ltd. v. Kilakos*, 301 F. Supp. 2d 1301 (N.D. Ga. 2004), the vessel arrests caused "damages resulting from the Plaintiffs' inability to use or charter their vessels." *Id.* at 1307. Thus, the damages were caused by the arrest itself, not third parties' perceptions of the plaintiff's desirability as a contractual counterparty.

Plaintiffs' citation to *Result Shipping Co. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394 (2d Cir. 1995 is confusing, as that case involved neither a claim for wrongful arrest nor a question of maritime jurisdiction. The vessel was arrested by a non-party, the Jordanian Ministry of Supply. The claims and counterclaims related solely to the quality of grain loaded aboard the vessel, as the plaintiff claimed that the grain was loaded in damaged condition and the defendant claimed that the plaintiff caused the damage.

Plaintiffs' discussion of *Terranova, Inc. v. S/Y TERRA-NOVA*, No. 2000-13, 2003 U.S. Dist. LEXIS 5134 (D.V.I. Mar. 18, 2003) is also disingenuous. Plaintiffs imply that the only relevant claims were for "maritime lien and wrongful arrest" and that the court "held" that maritime jurisdiction existed. [Opp. Mem. 24]. In fact, the parties' various claims and counterclaims included "breach of partnership agreement, fraud, conversion, entitlement to an accounting, maritime lien, wrongful discharge, declaratory relief, and wrongful arrest of the vessel." *Id.* at *2. Although subject matter jurisdiction was not an issue in that case, the court noted that it had jurisdiction "pursuant to section 22(a) of the Revised Organic Act of 1954, 28 U.S.C. § 1332, and 28 U.S.C. § 1333." *Id.* at *3. Thus, *Terranova* hardly stands for the proposition that any case involving a ship arrest automatically confers maritime jurisdiction.

8

## POINT IV

### PLAINTIFFS' "EVIDENCE" IS INADMISSIBLE AND SHOULD BE DISREGARED BY THE COURT

Plaintiffs' opposition submissions rely on "evidence" that is either inadmissible or has no bearing on the instant motion and should be disregarded by the Court. Exhibits 1 and 5 of the Halprin Declaration are conclusory and unsubstantiated affidavits purportedly from a private investigator hired by Plaintiffs, which do not appear to be based upon personal knowledge and are riddled with opinions and conjecture. Exhibits 2, 3, and 4 of the Halprin Declaration are in a foreign language without translation. Finally, Peters's own affidavit does not appear to be based upon personal knowledge, and is too conclusory and self-serving to be credible.

Exhibits 2, 3, and 4 of the Halprin Declaration are internet printouts and governmental documents in a foreign language for which no translated version is provided. These documents must be disregarded. *See United States v. Rivera-Rosario*, 300 F.3d 1, 5, 7 n.4 (1st Cir. 2002) (refusing to consider un-translated foreign-language evidence, noting that "[i]t is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English.").

Exhibits 1 and 5 of the Halprin Declaration should also be disregarded. These documents are both affidavits of a Mr. Juval Aviv, and both bear the caption of a different action involving these parties in the United States District Court in the Southern District of New York and are dated 2006. However, the Aviv Affidavits do not appear to have been filed in that action, and Plaintiff provides no explanation of their provenance.

More importantly, the Aviv Affidavits are conclusory and unsubstantiated by any particularized factual assertions. The factual basis for both of Mr. Aviv's affidavits is that he:

> traveled several times to the U.K., and Switzerland. I also conducted investigations in Liberia and Greece. I conducted field investigations, developed certain travel and communication information through

9

> sources and from certain targets' homes and businesses (retrieving documents discarded as public property), and examined their prior business dealings, financial alliances [sic].
>
> * * *
>
> I also developed and interviewed sources close to the targets and their families, as well as sources who had assisted the targets with their finances.

These "grounds" do not demonstrate personal knowledge of the facts discussed in the affidavits, so the affidavits must be disregarded. See *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (refusing to consider affidavit that "contains no information to indicate a basis in personal knowledge for the affiant's conclusory statement"). Mr. Aviv's affidavits are based on investigations that he apparently did not participate in, and on interviews of undisclosed third parties and, therefore, are entitled to no weight.

The absurd nature of Mr. Aviv's investigation is clear from the conclusory nature of his "determinations." For example, Mr. Aviv "determined" that "Stelios Coutsodontis intended to harm George Peters by forwarding the documents to the HWRMA (the ATHENA's insurer)" Halprin Decl. Ex. 5, at ¶6(d). Mr. Aviv does not state how he obtained access to Coutsodontis's internal thoughts, but it can be assumed that it was not from personal knowledge or observation. Likewise, Mr. Aviv reports on a visit to General Maritime's offices in Greece, even though he states that he traveled only to the United Kingdom and Switzerland. Halprin Decl. Ex. 1, at ¶6(a).

Finally, Peters's affidavit is inadmissible because it is based on his opinions, not facts. For example, Peters equates General Maritime with an individual named "Theodore Papangelopoulos" and imputes all of Mr. Papangelopoulos's activities to General Maritime, but he never explains how Mr. Papangelopoulos is related to General Maritime. Moreover, Peters's affidavit is irrelevant because it does not allege the existence of an agreement between General

10

Maritime and Coutsodontis to conduct the activities alleged in the Complaint, such as the vessel arrests or alleged defamations. Instead, Peters discusses irrelevant family relationships and makes factual assertions without offering any proof. The absurdity of Peters's affidavit is clear from allegations such as his claim that General Maritime and Coutsodontis "are first cousins." [Peters Aff. ¶ 15(c)]. Plaintiff's affidavit is too conclusory and self-serving to be credible, and thus must be disregarded by the Court.

## CONCLUSION

For the foregoing reasons, General Maritime respectfully requests that the Court dismiss the Complaint and grant General Maritime costs, attorneys' fees, and such further and different relief as the Court deems just and proper.

Dated: New York, New York
April 6, 2011

BROWN GAVALAS & FROMM LLP
Attorneys for Defendant
GENERAL MARITIME
ENTERPRISES CORPORATION

Peter Skoufalos (PS-0105)
Patrick R. O'Mea (PO-0424)
355 Lexington Avenue
New York, New York 10017
Tel: (212) 983-8500
Fax: (212) 983-5946