ANDERSON KILL & OLICK, P.C.
R. Mark Keenan
1251 Avenue of the Americas
New York, New York 10020
(212) 278-1000

Attorneys for Plaintiffs
Sea Trade Maritime Corporation and
George Peters

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SEA TRADE MARITIME CORPORATION and
GEORGE PETERS,

      Plaintiffs,

 v.

STELIOS COUTSODONTIS, FRANCESA
ELENI COUTSODONTIS, GENERAL
MARITIME ENTERPRISES CORPORATION,
ATTIKA INTERNATIONAL NAVIGATION SA,
IASON SHIPPING LTD., PINTO SHIPPING
LTD. and KARTERIA SHIPPING LTD.,

      Defendants.

Civil Action No.: 09 CIV 00488 (BSJ)

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

NYDOCS1-966010.1

Plaintiffs Sea Trade Maritime Corporation ("Sea Trade") and George Peters ("Peters") have moved for summary judgment on the two key issues of this litigation: (1) that Defendant Stelios Coutsodontis ("Coutsodontis") does not have a shareholder interest in Sea Trade because of the consent restriction expressly stated in Sea Trade's Articles of Incorporation and on its share certificates, and (2) alternatively, if the Court determines that the consent restriction should not be given effect and holds that Coutsodontis does have a shareholder interest, Plaintiffs are entitled to summary judgment for his patent breaches of fiduciary duty resulting from his improper arrests of Sea Trade's ship and his interference with the sale of that ship.  As set forth below, the breaches of fiduciary duty caused damages which far exceed the value of Sea Trade, and require forfeiture of any shares held by Coutsodontis.

In his opposition papers, Coutsodontis does not claim (nor can he) that the required shareholder approval was ever obtained.  Further, Coutsodontis provides no defense to the <u>per</u> <u>se</u> fiduciary breaches set forth in Plaintiffs' moving papers.  What he did is the functional equivalent of "arresting" all the trucks of a truck delivery company.

Instead, Coutsodontis proffers an opposition consisting of immaterial invective based on material misstatements and untruths which we dispute.

For the sake of brevity, Plaintiffs will focus only upon the material (but mistaken) arguments raised in the opposition papers:

(1)   A Greek Probate Court "adjudicated" that Coutsodontis is the owner of 250 shares of Sea Trade, which decision is "entitled" to comity;

(2)   Liberian law provides that the probate succession "trumps" Sea Trade's consent requirements;

(3)   Delaware law is not followed in Liberia;

(4)   Plaintiffs have "failed to prove that the consent restriction exists on Coutsodontis' shares";

(5)   Plaintiffs have allegedly blocked discovery by making this motion for summary judgment;

(6) Plaintiffs should be sanctioned for failure to highlight the Greek probate decision (currently on appeal); and

(7) Coutsodontis did not breach any fiduciary duties to Plaintiffs (this opposition is found in the heading at page 15 but no where else in the brief). There is no case law or arguments opposing the law cited in over 10 pages in Plaintiffs' Opening Brief[1]

In summary form, each of these "defenses" can be exposed for what they are: nonsense.

1. <u>The Greek Probate Court Decision and Comity</u>: Plaintiffs previously cited this decision and have noted that it was on appeal (with a hearing before the appellate court next month). The Greek Court has applied the wrong governing law (Greek law instead of Liberian law) on the issue of the consent restrictions. Nevertheless, Coutsodontis argues that the Greek Probate Court decision is entitled to comity. This is wrong as a matter of law for five (5) different reasons:

(1) <u>Wrong Governing Law</u>: A Federal Court sitting in the State of New York must apply the law of the state of incorporation in deciding a case, as here, involving the "internal affairs" of a foreign corporation. <u>CRTF Corp. v. Federated Dep't Stores</u>, 683 F. Supp. 422, 427 (S.D.N.Y. 1988), <u>Hart v. General Motors Corp.</u>, 129 A.D.2d 179, 184 (1st Dep't 1987).[2] In this case, the governing law is Liberian law. At page 13 of Defendant's Opposition Brief,[3] Coutsodontis admits that "Liberian Law Controls." This fact alone means that the Greek decision should not be given preclusive effect. See <u>Zeevi Holdings Ltd. v. Republic of Bulgaria</u>, No. 09 Civ. 8856, 2011 WL 1345155, n. 3 (S.D.N.Y. Apr. 5, 2011)

(2) <u>Lack of Finality</u>: More importantly, Coutsodontis fails to mention that under Greek law, since the probate court decision is on appeal, it is unenforceable in Greece and entitled to no <u>res judicata</u> or collateral estoppel effect. Spaidiotis Aff., p. 1. <u>Herbsten v. Bruetman</u>, 743 F. Supp. 184, 188 (S.D.N.Y. 1990; <u>See</u> <u>In re Perry H. Koplik & Sons, Inc.</u>, 357 B.R. 231, 245 (Bankr. S.D.N.Y. 2006). This prevents any preclusive effect here in the United States. The pendency of an

---

[1] "Plaintiffs' Opening Brief" refers to Plaintiffs' Memorandum of Law In Support of Its Motion For Summary Judgment, dated February 16, 2011.

[2] See accompanying Sworn Statement Under Oath of Konstantinos Spaidiotis, dated April 7, 2011 with certified English translation ("Spaidiotis Aff."). A copy is attached as Exhibit A to the accompanying Declaration of Vianny M. Pichardo in Further Support of Plaintiffs' Motion for Summary Judgment, dated April 15, 2011 ("Pichardo Decl.").

[3] "Defendant's Opposition Brief" refers to Defendant Stelios Coutsodontis's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment, dated March 25, 2011.

appeal against the judgment sought to be given preclusive effect as a matter of comity, "bars collateral estoppel from being invoked." <u>Schoenbrod v. Siegler</u>, 20 N.Y.2d 403, 409 (1967).

(3) <u>No Binding Effect in Greece</u>: "Generally, there is no reason to give more conclusive effect to a foreign judgment than would be accorded by the courts of the jurisdiction which rendered it. " <u>Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp.</u>, 550 F.2d 1320, 1323 (2d Cir. 1977).

(4) <u>Not the Same Parties</u>: Further, under Greek law, even if affirmed on appeal, the decision will have no <u>res judicata</u> or similar effect on non-parties. <u>Id</u>.[4] Neither Sea Trade nor Peters are parties to the Greek probate court litigation. Therefore, the Greek decision cannot have preclusive effect in the United States. See <u>Gordon and Breach Science Publishers S.A., STBS, Ltd. v. American Institute of Physics</u>, 905 F. Supp. 169, 178-79 (S.D.N.Y. 1995).

(5) <u>Elements of Res Judicata Missing</u>: Under American law no binding effect under comity will be given unless the basic requirements of <u>res judicata</u> and collateral estoppel are met. <u>Id.</u>[5] This is particularly so where, as here, no binding effect is provided in the country where the judgment was rendered. In this case, the Greek Probate Court decision: (1) lacks jurisdiction over the same parties, (2) lacks finality, (3) is unenforceable and without binding effect in the rendering country, and (4) applies the wrong law.[6]

---

[4] Coutsodontis also claims that Plaintiffs "mischaracterized" the Greek probate decision by stating that the Greek court ignored Liberian law and the consent requirement in the stock restriction. Suffice it to say that Coutsodontis' sophistry overlooks Webster's dictionary definition of "ignore" which includes "rejected" which is what was meant. Defense counsel also fails to highlight that they agree that Liberian law controls (Defendant's Opposition Brief, p. 13).

[5] The Greek decision would also be rejected on public policy grounds because of its conclusion that any restriction on transfer of property (via mortgage, liens, zoning restrictions and the like) is meaningless under Greek law by the simple device of testamentary disposition which thereby obliterates the restriction. Such a principle even if accurate under Greek law would be considered in the United States as being violative of public policy. <u>Hilton v. Guyot</u>, 159 U.S. 113 (1895).

[6] The cases cited by Coutsodontis do not address or overcome these infirmities. Not one of these cases involved restrictions placed upon the transfer of shares of stock. Such restrictions are similar in concept to restrictions placed on real property, such as easements -- the property must be taken as it is found and a testator cannot simply erase the restriction by the simple expedient of attempting to bequeath in contradiction of the restriction. This is not a question as to whether probate proceedings should be conducted in New York or in another state or a foreign country. See, e.g., <u>In re Turton</u>, 8 N.Y.2d 311 (1960), <u>In re Stern</u>, 91 N.Y.2d 591 (1998), and <u>Watkins v. Eaton</u>, 173 F. 133 (N.D.N.Y. 1909). Neither does this case present a question as to who are the heirs of the decedent. <u>In re Estate of Yuska</u>, 128 Misc. 2d 98 (Surr. Ct. Kings Cnty. 1985); <u>In re Estate of Hahnel</u>, 88 Misc. 2d 524 (Surr. Ct. N.Y Cnty. 1976). Moreover, in <u>In re Estate of Hahnel</u>, all the contestants participated in the proceedings in the German Court. <u>Ecoban Finance Ltd. v. Grupo Acerero Del Norte, S.A. DE C. V.</u>, 108 F. Supp. 2d 349 (S.D.N.Y. 2000) (parties also agreed that Mexican law would apply). <u>In re Keller</u>, 168 A.D. 2d 449 (2d Dep't 1990) does not even concern comity.

2.     <u>Liberian Law</u>:  As set forth in the opinion of Mr. G. Constantatos, dated April 16, 2008[7] and the accompanying opinion of Mohamedu F. Jones, dated April 8, 2011 ("Jones Opinion") (Exhibit B to the Pichardo Decl.), Liberian law gives effect to the consent restriction and would trump any alleged testamentary gift.  The opposing "opinion" is entirely conclusory, without reasoning; it is also wrong, as shown at length in the Jones opinion.  Sea Trade's consent restriction is unambiguous, applies very broad language limiting "the right or power to sell, assign, transfer or otherwise dispose of all or any part of the shares" (without the unanimous written consent of all the other shareholders) and such a consent restriction is expressly permitted by Liberian statute.  The founding shareholders relied upon the application of Liberian law and the stock restriction, the major purpose of which was to prevent family fights and specifically the intrusion of Steve Coutsodontis.  <u>See</u> accompanying affidavit of George C. Peters, dated April 14, 2011.[8]

3.     <u>Delaware Law</u>:  Liberian law follows Delaware law on corporate matters.  Under Delaware law the consent restriction would be fully upheld.  <u>See</u> Opinion of the Delaware law firm Potter Anderson & Corroon LLP dated July 16, 2009 (Exhibit E to Halprin Decl.).  Delaware law is followed in Liberia as set forth in Plaintiffs' Opening Brief (pp. 5, 7-9 and Coutsodontis cites no contrary authority).  <u>See</u> also Liberia: Jane Marc Wells, *Vessel Registration in Selected Open Registries*, 6 Mar. Law. 221, 239 (1981) ("Liberian corporation law uses the Delaware model."); and Philip Wood, <u>The Law and Practice of International</u>

---

[7]  A copy was previously attached as Exhibit D to the Declaration of Peter A. Halprin in Support of Plaintiffs' Motion for Summary Judgment, dated February 16, 2011 ("Halprin Decl.").

[8]  Coutsodontis also tries to make something out of the fact that a letter was written to him saying that because of the consent restriction he was not a shareholder of Sea Trade and in the event some Court ruled otherwise (we believe improperly), the existing shareholders would seek dissolution because they had no desire to work with him.  This is entirely consistent with the accompanying affidavit of George C. Peters which states that the material reason for the restriction was to prevent Coutsodontis from intruding into the affairs of Sea Trade.

Finance Series Volume 1: Principles of International Insolvency, 91, § 5-003 (Sweet and Maxwell ed., 2d ed. 2007) ("[Liberian] Corporate law is based on Delaware law.")

4. <u>Consent Restriction</u>: The consent restriction exists in Sea Trade's Articles of Incorporation and all the share certificates issued by Sea Trade. Coutsodontis however makes the facile argument that Plaintiffs have not proven the consent restriction exists on the flip side of Coutsodontis' shares – without (very clever) either stating that it does not exist on the back of Coutsodontis's share certificate or proffering that certificate. This is insufficient to raise a material fact in opposition for a motion for summary judgment. <u>Stein v. Churchville-Chili Cent. School Dist.</u>, No. 09-CV-6061L, 2011 WL 160629, at *3 (W.D.N.Y. Jan. 19, 2011) (a plaintiff cannot defeat summary judgment by relying upon "unsupported assertions"); <u>Chemical Bank v. PIC Motors Corp.</u>, 58 N.Y.2d 1023 (1983) (proof in admissible form must be provided to present a triable issue of fact).

5. <u>Discovery</u>: Plaintiffs have not blocked discovery and instead have provided more information then responding to their discovery requests in this summary judgment motion. Coutsodontis has withdrawn his deposition notices and ignored the prior discovery served by Plaintiffs. More importantly, in opposition to this motion, Coutsodontis has not set forth any issues of material fact which are in dispute, and has not filed any counter statement of disputed issues of fact under Rule 56.[9]

6. <u>Request for Sanctions</u>: Coutsodontis has offered an unintelligible argument[10] apparently based upon what the Coutsodontis's feels is Plaintiffs' failure to highlight the

---

[9] A review of Coutsodontis' discovery clearly show the irrelevant and burdensome nature of the requested discovery (e.g. provide every charter agreement entered into since 2003). These requests: (1) presuppose Coutsodontis' right to such information as a shareholder; and (2) presupposes that Coutsodontis has filed a claim in this action – where none in fact has been filed. In any event, the fact that discovery has not been completed does not prevent summary judgment. <u>Chemical Bank v. PIC Motors Corp.</u>, 448 N.E.2d 1349 (N.Y. 1983).

[10] Coutsodontis cites Rule 56(h) but does not cite what affidavit or declaration he is referring to or what "fact" is wrong. It appears that Coutsodontis' attack is based upon Coutsodontis' misrepresentation of the evidence and is seeking "sanctions" based on that misinterpretation.

NYDOCS1-966010.1

Greek probate court decision[11] -- which (as previously noted) is on appeal, applies the wrong law, lacks privity, is unenforceable in Greece, and has no res judicata effect or collateral effect in Greece or here.

    7.    <u>Coutsodontis' Per Se Breaches of Fiduciary Duty</u>:  As set forth at length in Plaintiffs' Opening Brief, pp. 12-22, Coutsodontis directly injured Sea Trade (and the other shareholders) by:

(1) Coutsodontis' ex parte arrest of the Athena, Sea Trade's sole asset, for 19 days, in Spain thereby preventing the Athena from obtaining business income and a lucrative charter of the ship, at the cost of millions of dollars.  This arrest was subsequently vacated as improper as a matter of law by two Spanish Courts.

(2) Shortly after the improper Spanish arrest was vacated, Coutsodontis again conducted an ex parte arrest of the Athena, for 20 days in New Orleans, utilizing the same (invalid) grounds asserted in Spain (while failing to inform the authorities of the Spanish Court decisions).  Once again, this improper conduct injured Sea Trade's operations as well as its value (who wants to charter a cargo vessel that is constantly being subjected to arrest).  Once again, two courts vacated the New Orleans arrests as improper as a matter of law.[12]

(3) Several months later Coutsodontis, again through his own ex parte efforts, interfered with the sale of the Athena causing the ultimate contract sale price to be substantially reduced.

Each of these actions was improper.  Each of the arrests was invalidated as a matter of law.  Each of these actions constitutes a blatant per se breach of fiduciary duty.  Plaintiffs' Opening Brief, Part II B.

The stated purpose of each of these breaches was solely Coutsodontis' self-interest -- to "confirm" Coutsodontis' <u>personal interest</u>, his (alleged) 50% shareholder interest in Sea Trade.  Of course Coutsodontis knew how to "confirm" his shareholder interest <u>without</u> damaging Sea Trade – through a declaratory action in New York (after all, he tried it once

---

[11] Coutsodontis also cites to an exhibit that he misreads to try to make his point (allegedly that the Spanish arrest did not prevent a certain charter).  Yet the exhibit <u>does</u> state that the Spanish arrest prevented the charter in question which is further supported by the Affidavit of Jeffrey J. Hill dated April 23, 2010 ("Hill Affidavit").  A copy is attached as Exhibit C to the Pichardo Decl.

[12] Coutsodontis attempts to reargue the "authority" for such arrests in its current opposition (at pp. 18-20).  Coutsodontis is wrong.  It is a matter of res judicata – by four different courts.

before, and the two remaining shareholders of Sea Trade are long-term residents of New York where Sea Trade's operations are located). Instead (and in breach of his fiduciary duties) Coutsodontis pursued a "scorched earth" campaign to hold Sea Trade's sole asset, the Athena, hostage in order to economically coerce Sea Trade and Peters into surrendering to Coutsodontis' personal demands.

As stated in Plaintiffs' Opening brief, the law is clear that Coutsodontis cannot enhance his own personal interest at the expense of the interests of the enterprise. See Berman v. Sugo LLC, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008) (collecting cases). The issues of bad faith and malice are not relevant as they are not elements of breach of a fiduciary duty. Id. 580 F. Supp. 2d at 204. Importantly, a cause of action will lie for breach of fiduciary duty, despite the fact that the activities that give rise to the suit are otherwise lawful (if brought by others) outside of the fiduciary relationship. See Pace v. Perk, 81 A.D.2d 444, 454-55 (2d Dep't 1981). Where a fiduciary, induces a breach of contract for his own benefit (as distinct from for the benefit of the enterprise), he is liable for breach of fiduciary duty. The Savage is Loose Co. v. United Artists Theatre Circuit, Inc., 413 F. Supp. 555, 560 (S.D.N.Y. 1976); Ehrlich v. Alper, 1 A.D.2d 875, 875 (1st Dep't 1956).[13]

### **DEFENDANT COUTSODONTIS' CONCESSION**

In response to ten pages of facts, argument and citations showing that Plaintiffs are entitled to summary judgment on this issue, what does Coutsodontis proffer in defense? Nothing! Not one case cite, not one argument distinguishing any of Plaintiffs' cases – nothing!

---

[13] To put it differently, since the fiduciary obligations of corporate directors, partners or shareholders in a close corporation are the same, Lichtyger v. Franchard Corp., 18 N.Y.2d 528 (1966), can there be any question whether a corporate director or officer commits a per se breach of fiduciary duty if he executes an ex parte arrest of the company's sole ship, or similarly "arrests" the company's delivery trucks, in order to in order to "press" his position in an internal squabble as compared to asserting his interests directly or through a declaratory action, arbitration or mediation?

NYDOCS1-966010.1

Coutsodontis has no defense. Coutsodontis expressly admits that he had fiduciary obligations as a shareholder in his Answer.[14] Coutsodontis "admits that . . . Capt. Coutsodontis has fiduciary obligations . . . ." See Coutsodontis' Answer, ¶ 151. Moreover, there are no material issues of fact. There is no dispute that Coutsodontis caused the ex parte arrests and the sale interference. He does not deny it. He filed no Rule 56 statement in response to the Rule 56 statement filed by the Plaintiffs.

The damages caused by the improper arrests and sale interference are substantial -- in the millions of dollars. But that is not the only damage inflicted by these acts. As set forth in the Hill Affidavit, the multiple arrests damaged Sea Trade's standing in the market for future charters, "since most vessel arrests are caused by outstanding debts or unpaid obligations of the ship owner and other creditors might subsequently attach [the Athena]." Hill Affidavit, ¶ 10. This would obviously scare off prospective purchasers, which would also adversely affect the value of the ship. During the period between the arrests, and the sale interference (July 16, 2008 and January 14, 2009), the shipping market was crashing (as were other world markets) from a high in the summer of 2008 to dramatically lower in early 2009. As set forth in the accompanying Hill and Peters Affidavits, but for the arrests, and Coutsodontis' actions, Sea Trade would have been actively seeking to sell the ship due in part because of its age and an upcoming "survey" requiring the expenditure of millions of dollars. As set forth in the Hill Affidavit (at page 5) citing a well-known shipping credit report (attached as Exhibit C to Pichardo Decl.) the market fell approximately 90% during this period:

> This precipitous decline is shown by the Daily Index of Market Reports issued by the Baltic Exchange in its Baltic Panamax Index ('BPI'), which shows the relative earning capacity for vessels of between approximately 60,000 and 80,000 deadweight tons, that are referred to as Panamax vessels (the most

---

[14] "Answer" or "Coutsodontis' Answer" refers to Answer filed by Coutsodontis, dated August 19, 2010. A copy of the cited paragraph is attached as Exhibit D to the Pichardo Decl.

appropriate Index for this size Vessel). The Baltic Exchange canvasses brokers around the World on a daily basis to determine the rates for time and voyage charter for various cargos on various routes to arrive at a daily average that are expressed in this Index as points (similar to a stock market index). The market collapse is shown by the BPI which was at about 7500 points in the beginning of August 2008 and at less than 700 points at the end of October 2008, for a decline of over 90 per cent.

During the same period, as shown by the defendant himself, the value of the Athena dropped from at least $20 million to approximately $2 million. This decline is directly attributable to Coutsodontis' actions.

In the ex parte Spanish arrest proceedings, Coutsodontis sought to increase Sea Trade's bonding requirements and submitted an Affidavit of John G. Poles and Christ Stratakis of Coutsodontis' New York law firm, Poles Tublin, dated July 23, 2008 (see Exhibit E to the Pichardo Decl.) along with a Gray Page Intelligence Services report, which set forth the value of the Athena as $20 million. However, after the dramatic decline in the market (and Coutsodontis' breaches of fiduciary duty), an eventual sale did take place in early 2009 – at the price of $2,263,435.50. Coutsodontis' actions, including the two improper arrests of Athena, which prevented a sale during the favorable market and his interference with the sale in the lower market, reduced the value of the Athena from $20 million to less than $2.3 million.[15] In sum, during the rapidly declining market, Coutsodontis' actions prevented the sale of the Athena, using Coutsodontis' own "numbers" from $20 million to an eventual sale price of $2,263,435.50. Coutsodontis is responsible to Sea Trade for his breach of fiduciary duty for at least the amount of the difference – $17,736,362.50. ABKCO

---

[15] Coutsodontis' insinuation that the Athena was worth more upon its sale, is belied by his unilateral intervention which enabled him to prevent and delay the sale but at no time did he object to the sale price and the proceeds were placed in a joint escrow by stipulation. Opposing counsel's insinuation in his own affirmation is not based upon personal knowledge and is insufficient to raise an issue of fact on a summary judgment motion. Chemical Bank v. PIC Motors Corp., 58 N.Y.2d 1023 (1983) (the fact that "defendants had not completed discovery did not interdict the grant of summary judgment" and in opposing plaintiff's motion, defendant's "failed to tender an affidavit or affidavits averring the existence, in admissible form, of proof which would present a triable issue of fact or, if hearsay, an acceptable excuse for the failure to present firsthand knowledge").

Music, Inc. v. Harrisongs Music, Ltd., 722 F.2d 988 (2d Cir. 1983) (once a breach of fiduciary duty is established, imposition of liability is warranted even without showing a strict "but for " relationship between the breach and the damages).

This amount alone, without including the expenses and losses directly caused by the Spanish arrest ($6,000,000 plus), the New Orleans arrest (amount not yet ascertained) and without netting the outstanding debts of Sea Trade, and the sale interference ($250,000) are more than 7 times the present value of Sea Trade (which currently is nothing more than a shell corporation with approximately $2.3 million in escrow) and significant current debts.

In sum, Coutsodontis is liable to Sea Trade and the other shareholders in damages (to be determined) and forfeiture of any shares, if the Court determine he is entitled to any. Id., Blommer Chocolate Co. v. Blommer, Civ. A. No. 12693, 1992 WL 245969, at *7 n.2 (Del. Ch. Sept. 28, 1992), Lee v. Dahlin, 159 A.2d 679 (Pa. 1960); Middleton v. Newport, 56 P.2d 508, 510 (Cal. 1936).

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Plaintiffs are entitled to summary judgment on the issues presented:  (1) defendant has not fulfilled the consent requirement and therefore is not a shareholder, (2) defendant is liable for breaches of his fiduciary duties requiring forfeiture and damages to be determined at a later date.

Dated:   April 15, 2011
         New York, New York         By:   /s/ R. Mark Keenan
                                          R. Mark Keenan, Esq.
                                          John M. O'Connor, Esq.
                                          Vianny M. Pichardo, Esq.

                                          ANDERSON KILL & OLICK, P.C.
                                          1251 Avenue of the Americas
                                          New York, New York  10020
                                          Telephone:  212-278-1000

                                          Attorneys for Plaintiffs
                                          SEA TRADE MARITIME CORPORATION and
                                          GEORGE PETERS

NYDOCS1-966010.1