# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEA TRADE MARITIME CORPORATION and
GEORGE PETERS,

                        Plaintiffs,

      v.

STELIOS COUTSODONTIS, FRANCESA
ELENI COUTSODONTIS, GENERAL
MARITIME ENTERPRISES CORPORATION,
ATTIKA INTERNATIONAL NAVIGATION SA,
IASON SHIPPING LTD., PINTO SHIPPING
LTD. and KARTERIA SHIPPING LTD.,

                        Defendants.

Civil Action No.: 09 CIV 00488 (BSJ)

**DECLARATION OF MOHAMEDU F.
JONES IN SUPPORT OF
PLANTIFFS' MOTION FOR
SUMMARY JUDGMENT**

Mohamedu F. Jones, states as follows:

1.     I am an attorney authorized to practice in the Republic of Liberia.  The

purpose of this Declaration is to place before the Court documents to which Plaintiffs Sea Trade

Maritime Corporation and George Peters refer in their accompanying Reply Memorandum of Law

in Support of its Motion for Summary Judgment.

2.     Attached hereto as Exhibit 1 is a true and correct copy of my Certificate of

Admission.

3.     Attached hereto as Exhibit 2 is a true and correct copy of my Legal Opinion

dated April 8, 2011.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts contained in the foregoing are true and correct.

Dated:     April 8 , 2011
           Bowie, Maryland

By: _____
     Mohamedu F. Jones, Esq.

# EXHIBIT 1

REPUBLIC OF LIBERIA

# IN THE CIVIL LAW COURT, SIXTH JUDICIAL CIRCUIT, MONTSERRADO COUNTY



# CERTIFICATE OF ADMISSION

*THIS IS TO CERTIFY THAT* **Mohamedu F. Jones**
Esquire, having been found duly qualified is this
day admitted and enrolled as an Attorney-at-Law
in the Civil Law Court, Sixth Judicial Circuit,
Montserrado County, Republic of Liberia.

In witness whereof I————LAURENCE C.D. MEYH————Clerk
of said Court, and by order of said Cour have
hereunto set my hand and affixed the seal of this
Honourable Court in the City of Monrovia, County
and Republic aforesaid this 22ND day of JULY
A. D. 19 88 —and of the Republic the One thou-
sand Nine Hundred and '88 (A. D. 19 88 )

Approved:

*Jesse Banks, Jr.*
Judge of the Circuit Court Presiding

———————————————
Clerk of the aforesid Court

# EXHIBIT 2

Mohamedu F. Jones
Attorney at Law*

Tel: 240-888-5576
Fax: 240-209-0729

mohamedu.jones@liberianlegal.com
www.liberianlegal.com

## Legal Opinion

### Profile

I am an attorney authorized to practice law in the Republic of Liberia; I was admitted to the bar of the Republic of Liberia in 1988.

I received a Bachelor of Laws (*summa cum laude*) from the Louis Arthur Grimes School of Law, University of Liberia, Monrovia, Liberia in 1988, where I was the editor-in-chief of the Liberian Law Journal. In 1990, I obtained the degree *ad gradum Magistrii in Legibus* (Master of Laws) from Harvard Law School, Cambridge, Massachusetts. In 1975, I graduated from the University of Northern Iowa, Cedar Falls, Iowa, with a Bachelor of Arts degree in Political Science.

I maintain an overseas practice on matters of Liberian law, offering legal consultation to the international business and legal communities, and was an associate editor of the Liberian Law Reports, the official reporter of the Supreme Court of Liberia. As part of my practice, I have submitted sworn affidavits on issues of Liberian law to courts in England and the United States. In addition, I have also served as legal consultant, and have provided legal opinions, on matters of Liberian law questions to international businesses and attorneys in the United States, Canada, and Australia, and several nations in Africa, Asia and Europe.

### Opinion

A.  Share Transfer Restrictions

Sea Trade Maritime Corp. (Sea Trade) is a Liberian chartered corporation formed in 1992 under provisions of the Business Corporation Act (BCA), Association Laws of Liberia, 5 Liberian Code of Laws Revised (Amended, 2002).  The Articles of Incorporation of Sea Trade contains a restriction on transfers of the shares of the corporation, expressly providing that:

1

> No shareholder of the Corporation shall have the right or power to sell, assign, transfer or otherwise dispose of all or any part of the shares of stock of the Corporation to a person who is not already a shareholder without first obtaining the unanimous written consent of all the other shareholders of the Corporation.

As required by law (BCA §5.2.3), the share transfer restriction of Sea Trade imposed under its Articles of Incorporation was duly noted "conspicuously" on the back of its bearer shares.

In a statement dated April 16, 2008, the Consulate General of the Republic of Liberia located in Paraeus, Greece, found that Sea Trade share transfer restriction was legal under Liberian law.

The purpose of this Legal Opinion is to determine whether or not Sea Trade's share restriction is valid and enforceable under Liberian law.

Copies of the following documents were provided by the client and reviewed in preparing this Legal Memorandum:

(a) Articles of Incorporation of Sea Trade Maritime Corp.

(b) Bearer Share Certificate of Sea Trade Maritime Corp. (back and front).

(c) April 14, 2008 Legal Opinion of George E. Henries, Liberian Law Consultant (the Henries Opinion).

(d) April 16, 2008 Statement of G. Constantatos, Consulate General of the Republic of Liberia in Paraeus, Greece.

The following Liberian law resources were reviewed in preparing this Legal Memorandum:

(a) Business Corporation Act, Association Laws of Liberia, 5 Liberian Code of Laws Revised (as amended, 2002).

(b) Decedents Estates Law of Liberia, 2 Liberian Code Revised.

(c) Other provisions of Liberian Code of Law Revised.

(d) Pertinent Opinions of the Supreme Court of Liberia.

The Liberian Supreme Court has not issued an opinion directly addressing the specific issues under consideration here; however, its teachings regarding statutory construction and encumbrances offer sufficient guidance on how the BCA §5.2.2 may be appropriately interpreted and applied.

2

Section 5.2 of the BCA is the governing statutory provision related to restrictions on transfers of shares of Liberian corporations: It outlines a series of legally permissible restrictions on share transfers, including the consent requirement, which were not intended to be exhaustive, noting the qualifying phrase, "restrictions on the transfer of shares which are permissible include those which," in the text of the statute. Restrictions on the transfer of shares of a corporation may be imposed in the following prescribed manners under §5.2: (1) by the articles of incorporation, (2) by the bylaws, (3) by agreement among shareholders, or (4) by agreement among shareholders and a corporation.

The restriction on the transfer of shares of Sea Trade was imposed through its Articles of Incorporation, as permitted by §5.2.1 of the BCA. By including them within its Articles of Incorporation, the share transfer restrictions of Sea Trade were legally in place prior to the issuance of any shares. The BCA expressly provides that share transfer restrictions that absolutely prohibit the transfers of shares are void. It is observed that Sea Trade does not absolutely prohibit transfers of shares of the corporation.

The BCA §5.2.2 provides wide latitude to shareholders to restrict share transfers, should they elect to. It outlines a series of legally permissible restrictions on share transfers, which were not intended to be exhaustive, noting the qualifying phrase "include those which," in the text of the statute. It is further observed that the legislation pointedly states that §5.2.2 does not limit the provisions of §5.2.1.

Under the share transfer restriction in the articles of Sea Trade, obtaining "unanimous written consent of all other shareholders," is a mandatory pre-condition "to sell, assign, transfer or otherwise dispose of all or any part of the shares of stock of the Corporation to a person who is not already a shareholder." The restriction is analogous to the legal nature of a "lien" or other legal encumbrance which does not prohibit the transfer of property, but which must be cured or satisfied before title may be lawfully transferred. In *Wenna v Tay*, 31 Liberian Law Reports (LLR) 90, 95 (1983), the Supreme Court

3

of Liberia held that a lien is "a charge, or security or incumbrance upon property." The Court observed

that an encumbrance "constitutes a charge or security" on property that confers a "proprietary interest"

granting an exercisable qualified right over the property of another to the holder of the encumbrance.

The unanimous consent requirement confers an exercisable proprietary interest in each shareholder in

the shares of every other shareholder in a lawfully permissible manner. In order for transfer of shares in

Sea Trade to be consummated, the consent of all other shareholders is legally required.

    The broad latitude allows shareholders and corporations under the BCA to impose share

transfer restrictions. It also makes the "unanimous written consent" requirement of Sea Trade legal as a

form of "regulatory" clause, which offers clear opportunity to any beneficial owner of the shares of the

corporation to seek the unanimous consent of shareholders at any time prior to a proposed transfer,

including at the point of intention to provide for a testamentary transfer. The "conspicuous" nature of

the transfer requirement on the share certificate is sufficient legal notice of the existence of the

restriction to potential acquirers of the restricted shares.

    A review of the history of share transfer restrictions under Liberian corporate jurisprudence

shows an evolution toward granting wider latitude for imposing share restrictions, either at formation

through the articles of incorporation, or subsequently by shareholder agreement. The 1948 and 1956

statutes directly imposed mandatory statutory restrictions, as well as permissible restrictions on

transfers of shares. In contrast, the 1976 revision (1976 BCA), which first introduced the "Business

Corporation Act" or BCA, removed the statutory restrictions, and permitted or granted the right to

impose share transfer restrictions to an expanded category of persons described in the law, making the

imposition of such restrictions optional. As with the earlier versions of the statute, the 1976 BCA

provided for limited restrictions to be placed on the transfer of shares of a corporation.

    The principal permissible restriction in the older codes (pre-1976) was that current shareholders

or the corporation had preferential first rights of refusal to acquire the shares before it could be offered

4

to outsiders. The 1976 BCA expanded the class of preferential first refusals beyond current shareholders and the corporation to include any "other holders of securities" or "any person." Holder of securities as defined in the BCA includes holders of "stocks, bonds, notes convertible debentures, warrants, or other documents that represent a share in a company."

Subsequent amendments to the BCA after 1976 introduced additional permissible restrictions, including the "consent" restriction under consideration here. The BCA share transfer consent restriction, §5.2.2 (c), states:

> Require the corporation or the holder of the shares to consent to any proposed transfer of the restricted shares or to approve the proposed transferee of the restricted shares.

In *Liberia Water & Sewer Corporation v Kollie*, 37 LLR 239, 244 (1983), the Supreme Court held that even if statutes were "harsh, unfair, or may afford the opportunity for abuse in the manner of application, may create hardships or inconvenience, or may be oppressive, mischievous in their effects, burdensome on the people, and of doubtful proprietary," none of these outcomes offered sufficient legal grounds to declare legislation invalid that did not violate the Constitution of Liberia. The Court concluded that courts "must conform to the law as it stands" and that relief from law that "works an injury" must be sought from the "lawmaking power, and not the courts." The Court ruled that the sole function of courts in interpreting and constructing statutes is to give effect to the "manifest" intention of the Legislature as gathered from the statute itself.

The General Construction Law of Liberia, 3 Liberian Codes Revised, §2.19 provide:

> In the construction of Liberian laws and statutes, including this Code, words and phrases shall be read and construed in their context and shall, unless inconsistent with the manifest intent of the Legislature or unless another of different meaning is expressly indicated, be given their usually accepted meaning according to the approved usage of the language. Technical words and phrases having a special or accepted meaning in the law shall be construed in accordance with such technical or special and accepted meaning.

5

The history of the restricted share provision of the BCA in its evolution from limited restrictions of first refusals to granting wider latitude to corporations and shareholders to restrict share transfers including providing for the express consent of existing shareholders as a condition of transfer, is evidentiary of the manifest intent of the Legislature. Analysis of the consent provision of the BCA within the context of permissible restrictions on share transfer demonstrates that its plain and ordinary meaning is that the consent of existing shareholders must be obtained as a condition of transfer. There are no exceptions provided for in the statutes and courts may not lawfully create a testamentary exception.

The use of the word "proposed" is an indication that the statute was contemplated to include a future transfer, which would cover testamentary transfers. If the Legislature had intended to exclude testamentary transfers from restrictions on share transfers, it would have done so. The sole limitation that the Legislature placed on shareholders and corporations in respect to restricted shares is that share transfers could not be prohibited, indicating the regulatory nature of the restricted share provisions. The proposition that the Legislature intended to provide a means by which an existing shareholder could avoid the consent restrictions by transferring the shares without the consent of existing shareholders through testamentary transfer is not legally tenable.

"Consent" is a technical legal word, which special or accepted meaning is "agree." Under the General Construction Law, it must be construed in accordance with its "technical or special and accepted meaning." The BCA permits a corporation or its shareholders, as in the case of Sea Trade, to require that they must agree to any share transfer or the transferee. Under the restricted share transfer clause of the Articles of Incorporation of Sea Trade, existing shareholders must agree to any share transfer; a holder wishing to transfer shares cannot circumvent this requirement merely by utilizing their will to accomplish what they would not be able to otherwise.

6

In *Freeman v Lewis*, 40 LLR, 103, 104 (2000), the Supreme Court outlined four principles of

statutory construction that are applicable to the issue under consideration:

> (a) When the language of a statute is clear and unambiguous, there is no need for
>     construction.
>
> (b) Each statute must be construed with reference to the intended objective of the
>     legislation.
>
> (c) To ascertain the objective of a statute, the court will examine the reason for its
>     enactment, the defect in the former law, and the remedy provided in the new law.
>
> (d) A statute must be given the construction that is best calculated to secure the
>     intended benefits of the statute.

Applying the "clear and unambiguous" principle, the consent requirement of the BCA needs no

construction because §5.2.2(c) unequivocally and unmistakably permits a corporation to lawfully require

consent as a restriction on share transfers. Even if arguably, §5.2.2(c) had to be constructed, analysis

under the "intended objective" principle shows that the legislative intent is to give corporations the

option to require consent as a condition of share transfer. The "reason" principle of statutory

construction is a three part examination. When applied to §5.2.2(c), the reason or purpose of the

consent clause, the first part, is apparently to expand the share restriction options legally available to

Liberian corporations. The defect in the former law, the second part, was that the restriction provision

only permitted the right of first refusal as a share restriction option. The third part of the reason analysis

is the remedy provided in the new law, which in §5.2.2(c), was to expand the restrictive options to

include the consent requirement. The "benefits principle" of statutory construction requires that a

statute must be constructed to reach the intended benefit of the legislation, which in the case of

§5.2.2(c), is to permit corporations to require consent for share transfers without exceptions not

provided for in the statute.

Sea Trade does not absolutely prohibit share transfers, which would be unlawful. The consent

requirement regulates how shares are to be transferred, which is lawful. The consent requirement is

also in the nature of a legal encumbrance that extends qualified proprietary interest in each share to all other shareholders of Sea Trade, which is similarly lawful. The share transfer restriction of Sea Trade was placed in the Articles of Incorporation, which makes it binding on all shares issued upon the coming into existence of the corporation. The consent restriction conspicuously appears on the back of the bearer share, which serves sufficient notice to any subsequent acquirer as to the existence of the restriction. Requiring the consent of existing shareholders as a share transfer restriction is one of the statutorily permissible restrictions specifically included in the BCA §5.2.2.

B.   The Henries Opinion

A legal opinion dated April 14, 2008, issued by George E. Henries, Liberian Law Consultant, in this matter, offered the following conclusions,[1]

1. The Liberian Business Corporation Act, Section 5.2(c), provides that the requirement of consent to proposed transfer of restricted shares is permissible, but this provision, like the Company's Articles of Incorporation, does not apply with respect to shares in the event of death of a shareholder.

2. If the restriction is silent as to transfers by will or by intestacy, the restriction would not be construed to limit the succession of the Owner's shares and, therefore, the restriction would not survive the death of the Owner. The testamentary succession laws would take precedence over the share restrictions.

3. The restriction of unanimous consent to transfer by other shareholders would not be construed by a Liberian court as prohibiting the Owner from bequeathing her shares free of restriction. The law does not require a testator to obtain the consent of anyone in order to transfer property by will or by intestacy. Again, the testamentary succession laws would supersede the restrictions.

4. Given the general rule that share transfer restrictions cannot be an unreasonable restraint on alienation, a Liberian court would strictly construe such restrictions and not extend them to include transfers by will or by intestacy in the absence of an express provision to the contrary.

It is observed that none of the conclusions proffered in the Henries Opinion are supported by citation to any statutes or case law. The Henries opinion does not provide analysis and reasoning undergirding

---

[1] The Liberian Supreme Court has not issued an opinion addressing the issues traversed by the Henries Opinion, and his opinion offers no case or statutory support for its conclusions.

these far-reaching and broad conclusions. The statements are summary and conclusory, without demonstrated support in the laws of Liberia.

> 1. *The Liberian Business Corporation Act, Section 5.2(c), provides that the requirement of consent to proposed transfer of restricted shares is permissible, but this provision, like the Company's Articles of Incorporation, does not apply with respect to shares in the event of death of a shareholder.* (Henries Opinion)

The first part of the statement above regarding the legality of the consent requirement is not in dispute.

Included in the second part of the statement above is the proposition that the restriction provision "does not apply with respect to shares in the event of the death of a shareholder." Examination of the Liberian corporation's laws of 1948 and 1956, and the BCA shows a long statutory history in Liberia of permitting expanding degrees of restrictions to be placed on the transfer of shares of a corporation. The evolution of the restrictive share transfer provisions of the corporate laws of Liberia shows that it has continuously expanded the restrictive options, but has never provided for any exemptions. Even in those instances where there are no provisions for transfer restrictions in articles of incorporation, the BCA permits shareholders to enter into agreements restricting their right to transfer shares with the limitation that such agreements must not be inconsistent with any provisions of the BCA.

Similarly, in those instances where the restrictions were not contained in the articles of incorporation, as a means of protecting existing shareholders, share transfer restrictions are not binding on shares issued and held prior to the adoption of the restriction, unless the holder of the shares are parties to the agreement or approve of the restrictions. It is indisputable that the only "line in the sand" regarding restrictions on transfers shares in Liberia has been placed solely on restrictions that "absolutely prohibit the transfers shares."

The second part of the statement also notably makes a reference to the "Company's Articles of Incorporation." This does not convey meaningful legal information. It is unclear in which specific regards

9

corporate articles of incorporation do "not apply with respect to shares in the event of the death of a shareholder." Under this proposition of the Henries Opinion, presumably provisions of §5.1 of the BCA, regulating shares that are included in articles of incorporation would cease to apply with respect to the shares of a corporation in the event of the death of a shareholder. The BCA §5.1 regulates the number of shares, classes of shares, series of shares, par value, registered or bearer, voting power, special rights, convertibility, redeemability, qualifications, limitations, or restrictions. It appears that according to the Henries Opinion, none of these regulations will be applicable on the death of any shareholder.[2] If this were the case, Liberian corporations would be de facto partnerships operating under the guise of corporations. As a general proposition, the death of a shareholder has no impact in any form on articles of incorporation of Liberian corporations, and articles of incorporation survive the death of any shareholder intact.

The Henries Opinion's conclusory statement that the restriction on share transfers does not apply in the event of the death of a shareholder is not supported by Liberian corporate law.

   2. *If the restriction is silent as to transfers by will or by intestacy, the restriction would not be construed to limit the succession of the Owner's shares and, therefore, the restriction would not survive the death of the Owner. The testamentary succession laws would take precedence over the share restrictions.* (Henries Opinion)

The Henries Opinion offers no legal support for this summary conclusion. There is no provision of the BCA that directly or impliedly addresses this issue. In those instances where the articles of incorporation do not provide for share transfer restrictions, the BCA requires a shareholder's agreement in order to make any subsequent share transfer restriction binding on that shareholder. The BCA simply does not provide in any form that "if the restriction is silent as to transfers by will or by intestacy," such "restriction would not survive the death of the owner."

---

[2] It is unclear whether this proposition would extend only in respect of the shares held by the deceased shareholder or to all shares.

10

The testamentary succession law of Liberia, the Decedents Estates Law, recognizes that a testator must have a legal entitlement to dispose of property for the law to give effect to any testamentary disposition. Subchapter C, "Rules of Construction Governing Testamentary Disposition," §2.21, under the caption, "What a testamentary disposition includes," states that "a disposition by the testator of all of his property passes all of the property he was entitled to dispose of at the time of his death (emphasis added)." The Decedents Estates Law clearly recognizes that a testator can only lawfully dispose of property that he or she is "entitled to dispose of," which obviously means that they cannot lawfully dispose of property that they are not entitled to, and no court in Liberia would sanction the unlawful disposition of property.

Under this proposition of the Henries Opinion, none of the enumerated restrictions outlined in §5.2.2 would limit the transfers of shares by will or intestacy, unless the restrictions specifically stated its applicability to transfers by will or intestacy. This would apply to the offer of first refusal restriction in §5.2.2(a); the specified purchase price restriction in §5.2.2(b); the prohibited persons or classes of persons restriction in §5.2.2(d); the business advantage maintenance restriction in§5.2.2(e); as well as the consent restriction under consideration here. This theory would effectively render the share transfer restriction of the BCA meaningless upon the death of any shareholder.

3. *The restriction of unanimous consent to transfer by other shareholders would not be construed by a Liberian court as prohibiting the Owner from bequeathing her shares free of restriction. The law does not require a testator to obtain the consent of anyone in order to transfer property by will or by intestacy. Again, the testamentary succession laws would supersede the restrictions.* (Henries Opinion)

As with the other conclusory statements contained in the Henries Opinion, there is no legal support provided for this statement. In *Roberts v Roberts*, 7 Liberian Law Reports (LLR) 350, 365 (1942), the Supreme Court of Liberia approvingly quoted the following rule regarding the construction of statutes, "the mention of one thing implies the exclusion of another thing," and that the "enumeration of certain powers in a statute relating to corporations implies the exclusion of all others not fairly

11

incidental to those enumerated." Under this principle, the BCA specifically grants the power to a corporation to include a consent restriction without providing for any form of exemption, suggesting its purposeful exclusion.

The Supreme Court in *Simpson v Caranda*, 13 LLR 121, 124 recognized that a will may contain an invalid gift. The Court held that under these circumstances, the invalid transfer may be "expunged without changing the scheme of the whole will" and "the valid portion...will be upheld and given effect."

The Decedents Estates Law also recognizes that testamentary dispositions are subject to the rights of others. In §2.42, the statute provides that if an agreement is made by a testator "to convey any property" to another that was previously granted to a beneficiary in a "prior testamentary disposition," the subsequent agreement does not revoke the testament bequest, "but such property passes under the will to the beneficiaries, subject to whatever rights were created by such agreement." This is a clear recognition in Liberian law that testamentary bequests are subject to the rights of others under circumstances analogous to the share transfer restriction.

For a court to hold that the share transfer restriction in this case does not apply would not only render the BCA §5.2.2 meaningless, but it would also imply that a person may dispose of property by testamentary gift in a manner in which they could not lawfully dispose of during their lifetime, representing a sea change in Liberian law.

4. *Given the general rule that share transfer restrictions cannot be an unreasonable restraint on alienation, a Liberian court would strictly construe such restrictions and not extend them to include transfers by will or by intestacy in the absence of an express provision to the contrary.* (Henries Opinion)

The consent requirement is not an "unreasonable restraint"; it is expressly enumerated in the BCA §5.2.2. It is important to note that Sea Trade's share transfer restriction is distinguishable from a "restriction which absolutely prohibits the transfer of shares," which is unlawful. In *CFAO (Liberia) Limited v. Cooper*, 39 LLR 511, 519 (1999), the Court recognized the reasonable standard to be an objective test that indicates the understanding or conduct of a "reasonable man in the situation." While

12

the reasonable standard does not vary, the nature of the conduct required to meet the standard will vary under the specific facts under consideration.

The facts surrounding Sea Trade's share restriction meet accepted standards of reasonableness. There is a notation on the bearer shares of Sea Trade stating the existence of the restriction and providing due notice to shareholders. There is reliance on the part of shareholders on the restriction, which is implicit in their acquisition of shares of Sea Trade. The existence of the restriction did not impose an unreasonable hardship on shareholders, including decedent. Similarly, enforcement of the consent requirement is not unreasonable. The inclusion of the restriction evidences the apparent legitimate purpose of the incorporators to control ownership of the corporation, which purpose was mutually assented to by shareholders, including decedent, by virtue of acquisition of the restricted shares. Sea Trade's share transfer restriction is not an absolute restraint prohibiting the transfer of shares.

Enforcing Sea Trade's share restriction is not against the public policy of Liberia; it is expressly and unambiguously provided for by statutes. Professor Phillip A. Z. Banks, III[3] in his Liberia: World Corporate Domicile, Treatise, Statutes, Cases and Legal Materials (1998) concluded that one of the goals of the corporate law of Liberia is to offer "a uniformed pattern for corporate formation and operations" (P. A-4). He described Liberia as "a world corporate leader, with tens of thousands of corporations being formed under its law" (P. A-5), with the history of the origins of Liberian corporate law being rooted in "fulfilling the economic goals of Liberia" (P. A-4).

Professor Banks pointed out that it is important to Liberia that "businesses, investors, managers, and the courts are fully aware of the laws of the state of incorporation, especially as they relate to the rights and liabilities of the corporations, their shareholders, directors, officers, creditors and other

[3] Professor Banks is a former Dean of the Law School of the University of Liberia, former Legal Adviser to the National Constitution Commission of Liberia, former Minister of Justice and Attorney General of Liberia, and a former member of the Governing Council of State of the Liberian National Transitional Government (collective presidency).

13

security holders" (P. A-6). It would be contrary to the public policy of Liberia's corporate domiciliary, to read into its corporate laws meanings that are outside of the unambiguous wording of statute, thereby creating uncertainty. The objective of the Business Corporation Act is to establish "a uniformed and simplified set of Liberian corporate laws" that permits corporations to be created conveniently and subject corporations, their shareholders, directors, and officers to reasonable requirements (P. A-3).

The purported requirement under Liberian law, proffered by the Henries Opinion, that there must be an express inclusion of share transfer restrictions from testamentary or intestate successions to give it applicability to such transfers is nothing more than a resourceful lawyer's creation that has no demonstrable support in Liberian law. There is neither case law nor statute that supports this proposition within Liberian jurisprudence. In *CFAO v Cooper*, the Court defined construction of statutes or written instruments as an "art of determining the sense, real meaning or proper explanation of obscure, complex or ambiguous terms or provisions in a statute, written instrument, or oral agreement, or the application of such subject to the case in question." *Id*. at 519. The BCA §5.2.2 does not provide the exclusion asserted by the Henries Opinion.

It is the law of Liberia that "when the wording of the statute is devoid of ambiguity, the plain wording must be given to its proper effect." *Cooper v Republic of Liberia*, 19 LLR 269, 280 (1969). Moreover, "this is especially true where the plain wording, if given an interpretation other than its natural meaning, would serve to confuse other statutes which must be read in conjunction." *Id.* The plain wording of the statute permitting the share transfer restriction contained in Sea Trade's Articles of Incorporation, and notated on the back and front of its bearer shares is unambiguous; it applies to transfers by any means, including testamentary, and should be given full effect under Liberian law. The statute expressly and explicitly authorizes a corporation to require its consent or that of shareholders "to any proposed transfer of the restricted shares or to approve the proposed transferee of the restricted shares." This clear and unambiguous provision of the statute permitting corporations or

14

shareholders to impose a consent requirement applies to all forms of transfers, including selling, assigning, or any other disposition to any person who is not already a shareholder. The statute does not expressly nor impliedly allow for exceptions.

In *Re Estate of John W. H. McClain*, 14 LLR 334, 337 (1961), the Supreme Court, in defining the duties of an executor or administrator of a deceased's estate, described such a person as "the owner of the decedent's personal property though his ownership is not beneficial." As the non-beneficial owner of personal property in the form of Sea Trade shares, the executor of the deceased shareholder of Sea Trade is in precisely the same legal position as the decedent: he is bound by the share transfer consent requirement. In order to effect the wishes of the decedent as expressed in her will, the executor must seek the unanimous consent of the other shareholders and would be bound by their decision. The Court in the *McClain* stated that an executor's "ownership" will be terminated upon completion of his duties, but while carrying out these duties, "the personal representative and not the estate is the one with whom the courts and third persons are concerned."

These principles as expressed in the *McClain* case do not support the proposition that a Liberian court would hold that the consent requirement does not extend to testamentary gifts in the absence of an express provision in the articles of incorporation when there is an owner in the person of the executor, who has "important rights and duties in connection with the settlement of his decedent's affairs,"[4] which would include seeking the required unanimous consent of other shareholders. Even if a testator is not legally "required to obtain the consent of anyone in order to transfer property by will," what is required is that the executor, as the legal owner, must obtain the consent of the other shareholders to effectuate this transfer.

---

[4] *McClain* at 337.

15

C. Conclusion

The Henries Opinion comprises a series of conclusory statements made without analysis showing the reasoning and the legal basis of the findings. They represent declaratory statements made without any demonstration of their foundation in Liberian law. As stated earlier, the specific issues under consideration here have not been addressed by the Liberian Supreme Court; however, examination of Liberian case and statutory laws offer sufficient guidance on how the BCA §5.2.2 may be appropriately interpreted and applied in cases of testamentary dispositions.

Analysis of the history of the evolution of the statutory provisions governing restrictive shares in Liberian law shows an expansion of share restriction options available to shareholders, rather than a narrowing of them. This history also suggests that had the Liberian Legislature intended to create exceptions for testamentary dispositions, it would have done so. The Decedents Estates Law specifically provides that a testator can only dispose of property he or she is entitled to dispose of and recognizes that testamentary dispositions may be subject to limitation imposed by acts of the testator prior to their demise. Liberian law further recognizes that where an invalid gift is contained in a will, the invalid disposition will not be upheld and given effect by a Liberia court, but will be removed from the will, and the valid portions upheld and given effect. Also under Liberian law, the executor or administrator is the non-beneficial legal owner of personal property disposed of in a will and, accordingly, can have no greater powers than the testator had during his or her lifetime.

Enforcement of Sea Trade's consent requirement is in consonance with the public policy of Liberia, which is to provide certainty in a uniformed and simplified corporate law system. The restriction expresses a legitimate corporate purpose and does not impose an absolute restraint on share transfers. In the act of acquiring the shares, each shareholder mutually assented to the restriction, and by virtue of this assent relied on the restriction. Enforcement of the restriction is not unduly burdensome and is required by Liberian law.

It is my legal opinion that Sea Trade Maritime Corp.'s share transfer restriction contained in its Articles of Incorporation conforms to and meets the statutory standards of the consent requirement of the Business Corporation Act of Liberia. It is lawful and enforceable under Liberian law, and there is no testamentary transfer exception provided in the BCA §5.2.2. Reading a testamentary exception into §5.2.2 would be counter to Liberia's statutory construction principle regarding unambiguous statutes.

A consent restriction conforming to the BCA §5.2.2 survives the testator, and the executor of the will of the deceased shareholder of Sea Trade as her personal representative and the non-beneficial legal owner of the shares under Liberian law, must first obtain the unanimous consent of all remaining shareholders to pass ownership of the bearer shares to the legatees named in the will. The executor and the legatees will be legally bound by the decision of the shareholders in this matter.

**[Remainder of this page intentionally left blank]**

17

For these reasons, it is my legal opinion that the conclusions of the Henries Opinion are not supportable under Liberian law, and that Sea Trade's share restriction is valid and enforceable.


Mohamedu F. Jones

Dated this 8th day of April 2011