UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

SEA TRADE MARITIME CORPORATION     :
and GEORGE PETERS,
                                   :
                Plaintiffs,
                                   :
       -against-                          09 Civ. 488 (BSJ)(HBP)
                                   :
STELIOS COUTSODONTIS, FRANCESA
ELENI COUTSODONTIS, GENERAL        :      OPINION
MARITIME ENTERPRISES CORPORATION,         AND ORDER
ATTIKA INTERNATIONAL NAVIGATION    :
SA, and IASON SHIPPING LTD.,
                                   :
                Defendants.
                                   :
----------------------------------X


          PITMAN, United States Magistrate Judge:


I.  Introduction


          By notice of motion dated February 11, 2011 (Docket

Item 27), plaintiffs Sea Trade Maritime Corporation ("Sea Trade")

and George Peters move for an Order disqualifying counsel Poles

Tublin Stratakis & Gonzalez, LLP ("Poles Tublin") from represent-

ing defendant Stelios Coutsodontis.  For the reasons set forth

below, the motion is granted in part.  Within ten days from the

date of this Order, plaintiffs are directed to identify no more

than two Poles Tublin attorneys that they wish to call to testify

on the issue of the advice of counsel defense asserted by

Coutsodontis with respect to the arrests of the cargo ship

Athena.  Upon being identified, these attorneys will be disquali-
fied.

II.  Facts

    A.  Background

        Since 2005, the parties have filed numerous state,
federal and international lawsuits with respect to the ownership
of plaintiff Sea Trade.  For the sake of brevity, I shall recite
only the facts necessary to an understanding of the present
motion.

        Plaintiff Sea Trade is a maritime shipping company
whose principal asset was the cargo ship Athena, which was sold
in February 2009 (Amended Complaint, dated April 3, 2009
("Amended Compl.") (Docket Item 4), at ¶¶ 12, 29, 35, 100).
Defendant Stelios Coutsodontis owns fifty percent of the shares
of Sea Trade, although plaintiffs have appealed a judgment in
Greece recognizing his ownership (Amended Compl. at ¶¶ 15, 61-
62).  Coutsodontis is the uncle of plaintiff George Peters, who
is an undisputed part-owner of Sea Trade (Amended Compl. at ¶ 13;
Affirmation of Scott R. Johnston, dated March 4, 2011 ("Johnston
Aff.") (Docket Item 37), at ¶ 5).  Coutsodontis is the brother of
Anna Peters, George Peters' mother, and Athena Eliades, the

deceased widow of Sea Trade founder Elias Eliades (Amended Compl. at ¶ 13; Johnston Aff. at ¶ 1).

1.   Formation
of Sea Trade

In or about July 1992, Elias Eliades formed Sea Trade under the laws of the Republic of Liberia, and the company issued 500 "bearer" shares -- 475 to Elias Eliades, and 25 to George Peters (Amended Compl. at ¶¶ 29-30).  Sea Trade's Articles of Incorporation stated that no shareholder could "sell, assign, transfer or otherwise dispose of" any shares to a non-shareholder without the "unanimous written consent of all the other share- holders" (Amended Compl. at ¶ 31; Ex. M, annexed to Declaration of Peter A. Halprin, dated February 11, 2011 ("Halprin Decl.") (Docket Item 29)).  On August 18, 1992, George Peters took control of Sea Trade's day-to-day operations through a written power of attorney (Amended Compl. at ¶ 34).  On or about December 10, 1992, Sea Trade purchased the Athena (Amended Compl. at ¶ 35).  On or about July 24, 1994, Elias Eliades cancelled the 475 bearer shares he owned and redistributed them as follows:  300 to himself, 150 to Anna Peters and 25 to George Peters (Amended Compl. at ¶¶ 37-38).  At the time of his death in September 1996, Elias Eliades held 300 shares, Anna Peters held 150 shares and

George Peters held 50 shares of Sea Trade (Amended Compl. at ¶¶ 38-39).

> 2.   Transfer of
>      Elias Eliades' Shares

When Elias Eliades died, his wife, Athena Eliades, inherited his 300 shares (Amended Compl. at ¶ 39).  On August 2, 2000, Athena Eliades attempted to execute a holographic will that stated she owned 500 shares of Sea Trade and was devising 250 shares each to Anna Peters and Coutsodontis.  Coutsodontis v. Peters, 11 Misc. 3d 1066(A), 816 N.Y.S.2d 694, 2006 WL 721255 at *1 (Sup. Ct. Feb. 1, 2006) (unpublished) (citation omitted). Plaintiffs claim that Athena Eliades was coerced into drafting the holographic will by Coutsodontis, who they claim was unaware that she only owned 300 shares (Amended Compl. at ¶¶ 42-46). Defendants deny that any coercion occurred (Answer, dated August 19, 2010 (Docket Item 19) at ¶¶ 44-45).

In any event, Athena Eliades drafted a second holographic will on September 14, 2000, devising 250 of her 300 shares to Coutsodontis and the remaining 50 shares to Anna Peters (English Translation of Letter by Athena Eliades, dated September 14, 2000, annexed as Ex. A to Johnston Aff.).  Plaintiffs also allege this will was executed through coercion, which defendants

deny (Amended Compl. at ¶ 49; Answer at ¶ 49).  Athena Eliades died on January 7, 2003 (Amended Compl. at ¶ 51).  Following her death, Coutsodontis and Anna Peters retrieved the Sea Trade shares from a safe and took possession of 250 shares and 50 shares, respectively (Amended Compl. at ¶¶ 53-54).

         3.   Commencement
              of Lawsuits
              in Greece
              <u>and New York</u>

In early 2005, the parties sought declaratory judgments in different courts.  In January 2005, Anna Peters commenced an action in Greek court seeking, <u>inter alia</u>, a declaratory judgment that Athena Eliades' holographic wills "were null and void because of fraud." <u>Coutsodontis v. Peters</u>, <u>supra</u>, 2006 WL 721255 at *2.  On February 9, 2005, Coutsodontis commenced an action in the Supreme Court of the State of New York seeking a declaratory judgment that he was the rightful owner of 250 shares of Sea Trade as a result of an <u>inter vivos</u> gift from Athena Eliades (Amended Compl. at ¶ 55; <u>Coutsodontis v. Peters</u>, <u>supra</u>, 2006 WL 721255 at *2).  Although Anna Peters withdrew the action in Greece after Coutsodontis filed the New York action, she subse-quently commenced a second action in Greece for the same relief. <u>Coutsodontis v. Peters</u>, <u>supra</u>, 2006 WL 721255 at *2.

5

Coutsodontis filed a counterclaim in Greece (Ex. B, annexed to Johnston Aff., at 1).

On February 1, 2006, the Honorable Herman Cahn, Justice of the New York Supreme Court, New York County, held that the validity of Athena Eliades' holographic wills was "better left to the Greek courts." Coutsodontis v. Peters, supra, 2006 WL 721255 at *2.  However, Justice Cahn dismissed Coutsodontis' complaint for failure to state a claim, because Athena Eliades' writings were "not evidence of an inter vivos gift." Coutsodontis v. Peters, supra, 2006 WL 721255 at *2.

On January 16, 2009, the Multi-Member Court of First Instance of Athens held that Athena Eliades' holographic wills were valid and enforceable and that Coutsodontis was the rightful owner of 250 shares of Sea Trade (Ex. B, annexed to Johnston Aff., at 5-6).  Plaintiffs have appealed that decision (Amended Compl. at ¶ 61).

            4.  Arrests of
                the Athena

On or about July 10, 2008, Coutsodontis brought an ex parte petition in a court in Tarragona, Spain, for the arrest of the Athena (Amended Compl. at ¶¶ 63-64).  The Athena was arrested and confined to port on the same date (Amended Compl. at ¶ 65).

On or about August 4, 2008, a Spanish court vacated the arrest, holding that the true dispute was over ownership in shares of Sea Trade, which was not sufficient to support the arrest of the Athena (Amended Compl. at ¶ 66; Decision in Issues 312/2008, dated August 4, 2008, of Section 2 of the Commercial Court 1 Tarragona, annexed as Ex. C to Halprin Decl., at 3, 9-10).

Coutsodontis appealed the decision, and the appeal was dismissed on February 19, 2009 (Amended Compl. at ¶ 68; Appeal of Decision in Issues 312/2008, dated February 19, 2009, of Section 2 of the Commercial Court 1 Tarragona ("Spanish Appellate Decision"), annexed as Ex. C to Halprin Decl.).  The appellate court held that "the application made by the appellant before the Greek courts does not constitute a claim, let alone a maritime claim" (Spanish Appellate Decision at 3).  The appellate court further stated that it rejected the argument that a claim for an inherited share of a company that owns a ship was equivalent to a maritime claim for the co-ownership of the ship (Spanish Appellate Decision at 3).

On or about August 27, 2008, Coutsodontis commenced an action in the United States District Court for the Eastern District of Louisiana again seeking to arrest the Athena, pursuant this time to Rule D of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil

7

Procedure (Amended Compl. at ¶ 69).  In a verified complaint, Coutsodontis argued "that by virtue of his 50% stock ownership in Sea Trade, he is also the 50% owner of the M/V ATHENA." Coutsodontis v. M/V ATHENA, Civil Action No. 08-4285, 2008 WL 4330236 at *1 (E.D. La. Sept. 16, 2008).  The court issued a warrant authorizing the arrest.  Coutsodontis v. M/V ATHENA, supra, 2008 WL 4330236 at *1.  On September 12, 2008, the court vacated the arrest because Coutsodontis' claim was "not subject to this court's admiralty jurisdiction."  Coutsodontis v. M/V ATHENA, supra, 2008 WL 4330236 at *2.  The court held that "[i]t is clear from plaintiff's verified complaint that the nature of this dispute is over the division of profits that have been earned by Sea Trade.  While this dispute concerns a vessel, that alone does not color a maritime claim."  Coutsodontis v. M/V ATHENA, supra, 2008 WL 4330236 at *2 (footnote omitted).  On June 18, 2009, the decision was affirmed by the Court of Appeals for the Fifth Circuit.  Coutsodontis v. Sea Trade Mar. Corp., 571 F.3d 1341, 1341 (5th Cir. 2009).

In their memorandum of law supporting their motion to dismiss the present action, defendants acknowledged that Coutsodontis applied for the arrest of the Athena in Spain "upon the advice of his counsel in New York and Tarragona, Spain" (Memorandum of Law in Support of Defendant's Motion to Dismiss,

8

dated May 28, 2009 ("Defs.' Motion to Dismiss") (Docket Item 10), at 7). Manuel Gonzalez Rodriguez, Esq., represented Coutsodontis in Spain, while Poles Tublin represented him in New York (Defs.' Motion to Dismiss at 7 nn.20-21). Rodriguez consulted Poles Tublin attorneys Christ Stratakis and John G. Poles during the Spanish arrest (Sworn Statement of Manuel Gonzalez, dated August 7, 2008, annexed as Ex. B to Halprin Decl., at 1-2). Defendants also acknowledged that Coutsodontis applied for the arrest of the Athena in New Orleans "upon advice of legal counsel in New York and New Orleans" (Defs.' Motion to Dismiss at 8). Chaffe McCall LLP represented Coutsodontis in New Orleans, while Poles Tublin represented him in New York (Defs.' Motion to Dismiss at 8 n.26). Defendants reiterated that "[i]t is undisputed that throughout both arrests of the vessel, Capt. Coutsodontis was represented in New York, New York by Poles Tublin" (Defs.' Motion to Dismiss at 14).

       5.   Injunction in
           Greece Preventing
           Sale of Athena

On or about January 6, 2009, Sea Trade negotiated a sale of the Athena for $2,625,000.00, with delivery scheduled for January 20, 2009 (Amended Compl. at ¶ 87). On or about January 14, 2009 -- two days before the court in Athens held that

Coutsodontis was the rightful owner of 250 shares of Sea Trade --
Coutsodontis commenced an action in Piraeus, Greece, seeking a
declaratory judgment of his ownership rights to Sea Trade and an
injunction to maintain "the status quo" and prevent the sale of
the Athena (Amended Compl. at ¶ 89; Johnston Aff. at ¶ 31).  The
injunction was granted.  The Athena's buyer subsequently
cancelled the original sale and negotiated a new deal for a sale
price that was $250,000 lower (Amended Compl. at ¶¶ 90, 96).  On
January 27, 2009, plaintiffs and Coutsodontis entered into an
agreement to permit the sale of the vessel to go forward (Amended
Compl. at ¶ 99; Johnston Aff. at ¶ 34 and Ex. T).  On February
11, 2009, the Athena was sold, and Sea Trade received
$2,263,437.50, with the proceeds placed in escrow "until final
non-appealable judicial determination of Coutsodontis' ownership
rights in Sea Trade and Coutsodontis' entitlement to those funds,
if any" (Amended Compl. at ¶ 100; Ex. T, annexed to Johnston Aff.
at ¶ 6).

> 6.  Plaintiffs' Previous Motion
>     to Disqualify Poles Tublin
>     for Allegedly Adverse Statements
>     <u>with Respect to Defamation Claim</u>

On November 17, 2009, George Peters moved to disqualify
Poles Tublin from appearing for Coutsodontis in an action in New

York Supreme Court, New York County which Peters commenced for libel per se and common law unfair competition (see Letter from Peter A. Halprin to undersigned, dated February 25, 2011 ("Halprin Letter"); Docket in Peters v. Coutsodontis, 0600482/2007; Peters v. Coutsodontis, 21 Misc. 3d 1141(A), 875 N.Y.S.2d 823 (Sup. Ct. Nov. 26, 2008) (unpublished)).  The grounds for the motion were some allegedly contradictory statements made by Coutsodontis and his attorneys.  In a 2005 action between the parties, Coutsodontis alleged that George Peters' power of attorney was fraudulently obtained (see Affidavit of Captain Stelios Coutsodontis in Coutsodontis v. Peters, 05-600511, dated June 13, 2005, annexed as Ex. I to Halprin Decl., at ¶ 20 ("I have reviewed two different purported Powers of Attorney, each of which I believe contains what I believe is an erroneous and forged signature of my sister.")).  In a 2008 action between the parties filed in this district,[1] Coutsodontis

---

[1]On September 26, 2008, Sea Trade commenced an action in this Court requesting an injunction preventing Coutsodontis from arresting the Athena again (Complaint in Sea Trade Maritime Corporation v. Coutsodontis, 08 Civ. 8299, dated September 26, 2008 (Docket Item 1), at ¶ 9).  On September 26, 2008, the Honorable Naomi Reice Buchwald, United States District Judge, issued a temporary restraining order and Order to Show Cause temporarily prohibiting Coutsodontis from effecting further arrests of the Athena and directing Coutsodontis to show cause why a preliminary injunction should not be issued against him (Docket Item 8).  The parties conducted oral argument before

(continued...)

subsequently stated, "[b]ased on a power of attorney signed by
Athena [Eliades] on August 18, 1992 . . . George Peters . . . was
authorized to manage the company's assets" (Affidavit of Stelios
Coutsodontis in Sea Trade Maritime Corporation v. Coutsodontis,
08 Civ. 8299, dated October 1, 2008 (Docket Item 6), at ¶ 6).
Plaintiffs claim that Coutsodontis' 2005 allegation that the
power of attorney was fraudulently obtained is defamatory and was
directly contradicted by Coutsodontis' 2008 statement (Pls.' Mem.
at 12-13).

Furthermore, plaintiffs alleged that Coutsodontis'
attorneys made statements during oral argument in a 2008 action
before Judge Buchwald that were also contradictory to
Coutsodontis' 2005 statement.[2]  In the 2008 action before Judge
Buchwald, attorney Christ Stratakis stated that "when the owner
of the ship was alive, she had given her nephew [George Peters]
powers to operate the ship . . . ." (Oral Argument Transcript in
Sea Trade Maritime Corporation v. Coutsodontis, 08 Civ. 8299,
dated October 2, 2008, annexed as Ex. A to Halprin Decl., at 20).

---

[1](...continued)
Judge Buchwald on October 2, 2008 (Minute Entry in Docket Sheet
in Sea Trade Maritime Corporation v. Coutsodontis, 08 Civ. 8299,
dated October 2, 2008).  On March 26, 2009, Judge Buchwald issued
an Order dismissing the case as moot because the Athena had been
sold (Docket Item 20).

[2]Plaintiffs have supplied only a partial transcript of the
oral argument, not the entire transcript.

Additionally, Coutsodontis' counsel Scott Johnston stated, "George Peters has proceeded under a power of attorney, but George Peters is . . . not a shareholder.  They claim he is a shareholder.  This is news to us" (Oral Argument at 36).  Plaintiffs claim that these statements contradict Coutsodontis' 2005 statement that George Peters' power of attorney was fraudulently obtained (Pls.' Mem. at 13).

On April 2, 2010, the Honorable Barbara R. Kapnick, Justice of the New York Supreme Court, New York County, denied the motion to disqualify as "premature" (Decision/Order, annexed to Halprin Letter).  Justice Kapnick suggested that the parties needed to conduct discovery on the issue (Transcript, annexed to Halprin Letter, at 17).  Plaintiffs currently seek disqualification here on the same grounds asserted before Justice Kapnick as well as other grounds.

B.  <u>The Present Action</u>

Plaintiffs commenced the present action against Coutsodontis on January 16, 2009 (Complaint (Docket Item 1)).  They seek equitable relief and compensatory and punitive damages, alleging that Coutsodontis engaged in illegal, willful, wanton and malicious acts "designed to cause the financial ruin of Sea Trade" (Amended Compl. at ¶¶ 14, 20-23).  Specifically,

13

plaintiffs claim that Coutsodontis:  (1) interfered with Sea Trade's operations through the arrests and injunction; (2) defamed George Peters; (3) filed vexatious litigation; (4) tortiously interfered with a contract, and (5) breached his fiduciary duty to the shareholders (Amended Compl. at ¶¶ 63-128, 149-56).[3]  On May 28, 2009, Coutsodontis filed a motion to dismiss (Docket Item 9).  The Honorable Barbara S. Jones, United States District Judge, denied the motion by Order dated August 5, 2010 (Docket Item 18).

C.  The Present Motion

Plaintiffs now move to disqualify counsel Poles Tublin from representing Coutsodontis on the theory that the firm's attorneys are necessary witnesses with respect to the following issues:  (1) Coutsodontis' use of an advice of counsel defense to support the two arrests of the Athena; (2) Coutsodontis' attorneys' alleged contradiction, in court, of their client's previous defamatory statements; (3) Poles Tublin's initiation of "a sham action" in New York state court in 2005 on behalf of Coutsodontis; (4) Poles Tublin's assistance to Coutsodontis in

_____

[3]Although plaintiffs contest that Coutsodontis is a part-owner of Sea Trade, they assume that he is a part-owner for the purpose of alleging breaches of fiduciary duty.

the filing of an injunction prohibiting the sale of the Athena,
and (5) punitive damages (Plaintiffs' Memorandum of Law in
Support of Its Motion to Disqualify, dated February 11, 2011
("Pls.' Mem.") (Docket Item 28); Plaintiffs' Reply Memorandum of
Law in Further Support of Its Motion to Disqualify, dated March
11, 2011 ("Pls.' Reply") (Docket Item 40), at 11-12)).  In
response, defendants argue that all of the grounds for disquali-
fication are without merit.  Specifically, defendants assert
that:  (1) disqualification is disfavored in the Second Circuit;
(2) Poles Tublin's attorneys will not testify to significant
issues of fact; (3) plaintiffs' arguments are subject to, and
fail, strict scrutiny; (4) disqualification would represent a
substantial hardship to Coutsodontis; (5) any testimony by Poles
Tublin's attorneys would not be prejudicial to Coutsodontis, and
(6) under no circumstances should the entire firm be disqualified
(Memorandum of Law in Opposition to Plaintiffs' Motion to Dis-
qualify, dated March 4, 2011 ("Defs.' Mem.") (Docket Item 38)).

III.  <u>Analysis</u>

    A.   <u>Legal Standard</u>

        A motion to disqualify an attorney is committed to the discretion of the District Court.  <u>Cresswell v. Sullivan & Cromwell</u>, 922 F.2d 60, 72 (2d Cir. 1990), <u>abrogated on other grounds as recognized in</u> <u>In re Hunter</u>, 66 F.3d 1002, 1005-06 (9th Cir. 1995).  "While New York law governs the professional conduct of attorneys in this state, '[t]he authority of federal courts to disqualify attorneys derives from their inherent power to pre-serve the integrity of the adversary process.'"  <u>Air Italy S.p.A. v. Aviation Techs., Inc.</u>, 10-CV-20 (JG)(JMA), 2011 WL 96682 at *3 (E.D.N.Y. Jan. 11, 2011), <u>quoting</u> <u>Hempstead Video, Inc. v. Inc. Vill. of Valley Stream</u>, 409 F.3d 127, 132 (2d Cir. 2005) (inter-nal quotation marks omitted).  The Second Circuit has held that "[a]lthough our decisions on disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules . . . such rules merely provide general guidance and not every violation of a disciplin-ary rule will necessarily lead to disqualification."  <u>Hempstead Video, Inc. v. Inc. Vill. of Valley Stream</u>, <u>supra</u>, 409 F.3d at 132 (citations omitted); <u>Solow v. Conseco, Inc.</u>, 06 Civ. 5988 (BSJ)(THK), 2007 WL 1599151 at *3 (S.D.N.Y. June 4, 2007) (Katz,

M.J.).  "Disqualification is only warranted in the rare circum-
stance where an attorney's conduct 'poses a significant risk of
trial taint.'"  Decker v. Nagel Rice LLC, 716 F. Supp. 2d 228,
231 (S.D.N.Y. 2010) (Scheindlin, D.J.), quoting Glueck v. Jona-
than Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981).  However, "in
the disqualification situation, any doubt is to be resolved in
favor of disqualification."  Hull v. Celanese Corp., 513 F.2d
568, 571 (2d Cir. 1975) (citation omitted).

        In view of their potential for abuse as a tactical
device, motions to disqualify opposing counsel are subject to
particularly strict scrutiny.  See Correspondent Servs. Corp. v.
J.V.W. Inv., Ltd., 99 Civ. 8934 (RWS), 2000 WL 1174980 at *14
(S.D.N.Y. Aug. 18, 2000) (Sweet, D.J.), citing Lamborn v.
Dittmer, 873 F.2d 522, 531 (2d Cir. 1989); Decora Inc. v. DW
Wallcovering, Inc., 899 F. Supp. 132, 135 n.2 (S.D.N.Y. 1995)
(Koeltl, D.J.).  Courts are also reluctant to grant motions to
disqualify because they inevitably result in delay and added
expense.  Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir.
1983) (disqualification motions "inevitably cause delay");
D.R.T., Inc. v. Universal City Studios, Inc., 02 Civ. 0958
(BSJ)(JCF), 2003 WL 1948798 at *2 (S.D.N.Y. Apr. 24, 2003)
(Francis, M.J.) (motions to disqualify "cause undue delay [and]
add expense").  For all these reasons, "the Second Circuit

17

requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel . . . ." Kubin v. Miller, 801 F. Supp. 1101, 1113 (S.D.N.Y. 1992) (Kram, D.J.), citing Gov't of India v. Cook Indus., 569 F.2d 737, 739 (2d Cir. 1978); accord Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C., 440 F. Supp. 2d 303, 309 (S.D.N.Y. 2006) (Katz, M.J.); Evans v. Artek Sys. Corp., supra, 715 F.2d at 791 (same); Paramount Commc'ns, Inc. v. Donaghy, 858 F. Supp. 391, 394 (S.D.N.Y. 1994) (Sweet, D.J.) (same).

It is the duty of the Court "to preserve, to the greatest extent possible, both the individual's right to be represented by counsel of his or her choice and the public's interest in maintaining the highest standards of professional conduct and the scrupulous administration of justice." Hull v. Celanese Corp., 513 F.2d 568, 569 (2d Cir. 1975). "[T]he conclusion in a particular case can be reached only after a painstaking analysis of the facts and precise application of precedent." Board of Ed. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979), citing Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225, 227 (2d Cir. 1977), quoting United States v. Standard Oil Co., 136 F. Supp. 345, 367 (S.D.N.Y. 1955) (Kaufman, D.J.).

B.   <u>Advocate/Witness Rule</u>

Effective April 1, 2009, New York adopted the Rules of Professional Conduct ("Rules"), replacing the Code of Professional Responsibility ("Code").  Rule 3.7 provides guidance concerning when a lawyer who will also be a witness should be disqualified:

> (a) A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
>
> > (1) the testimony relates solely to an uncontested issue;
> >
> > (2) the testimony relates solely to the nature and value of legal services rendered in the matter;
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client;
> >
> > (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or
> >
> > (5) the testimony is authorized by the tribunal.
>
> (b) A lawyer may not act as advocate before a tribunal in a matter if:
>
> > (1) another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client . . . .

22 N.Y.C.R.R. § 1200.0 (2009).

Rule 3.7(a) is "[c]ommonly referred to as the 'advo-cate-witness' rule."  Decker v. Nagel Rice LLC, supra, 716 F. Supp. 2d at 231.  The Second Circuit has

> identified four risks that Rule 3.7(a) is designed to alleviate:  (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

Murray v. Metro. Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009), citing Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 282-83 (2d Cir. 2004) (internal citations and alterations omitted).

The Second Circuit has stated that Rule 3.7(a) "is substantially the same as" Disciplinary Rule ("DR") 5-102(A) of the Code.  Ramchair v. Conway, 601 F.3d 66, 74 n.6 (2d Cir. 2010).[4]  Under the Code, different standards for disqualification

---

[4]     [A]lthough the Canons of the Code of Professional Responsibility in the State of New York have been replaced with the newly implemented New York State Rules of Professional Conduct, the Court notes that the case authority interpreting the old canons continues to be probative on issues that are analyzed under the new rules, especially where (as with the applicable rules in the instant case) the new rule generally incorporates the substance
(continued...)

applied depending on whether an attorney was expected to testify
on behalf of a client or a party other than the attorney's
client.  In <u>Lamborn v. Dittmer</u>, <u>supra</u>, 873 F.2d at 531, the
Second Circuit analyzed DR 5-102(A), which stated that:

> If, after undertaking employment in contemplated or
> pending litigation, a lawyer learns or it is obvious
> that he or a lawyer in his firm ought to be called as a
> witness on behalf of his client, he shall withdraw from
> the conduct of the trial and his firm, if any, shall
> not continue representation in the trial. . . .

The Court then held that "[t]he test under subdivision
(A) is whether the attorney's testimony could be significantly
useful to his client.  If so, he should be disqualified regard-
less of whether he will actually be called."  <u>Lamborn v. Dittmer</u>,
<u>supra</u>, 873 F.2d at 531 (citation omitted).  Courts in this
Circuit have stated that "[w]hen considering the necessity of
testimony, '[a] court should examine factors such as the signifi-
cance of the matters, weight of the testimony, and availability

---

[4](...continued)
> of the old canons.  <u>See</u>, <u>e.g.</u>, <u>Pierce & Weiss, LLP</u>
> <u>v. Subrogation Partners LLC</u>, 701 F.Supp.2d 245,
> 251 (E.D.N.Y.2010) ("Even though the Canons have
> been replaced by the New York Rules of
> Professional Conduct, the new rules still
> incorporate much of the substance of the old
> rules.  Therefore, much of the precedent
> interpreting the old rules still remains
> applicable." (citation omitted)).

<u>Finkel v. Frattarelli Bros., Inc.</u>, 740 F. Supp. 2d 368, 372 n.1
(E.D.N.Y. 2010).

of other evidence.'"   Finkel v. Frattarelli Bros., Inc., supra,
740 F. Supp. 2d at 373, quoting Kubin v. Miller, supra, 801 F.
Supp. at 1113 (internal quotation marks and citation omitted).

DR 5-102(B) addressed circumstances in which a lawyer
or a member of the lawyer's firm "may be called as a witness
other than on behalf of his client;" it provided that the lawyer
"may continue the representation until it is apparent that his
testimony is or may be prejudicial to his client."   Lamborn v.
Dittmer, supra, 873 F.2d at 531, quoting DR 5-102(B).   A party
bringing a motion under this subsection "carries the burden to
show both the necessity of the testimony and the substantial
likelihood of prejudice."   Ragdoll Prods. (UK) Ltd. v. Wal-Mart
Stores, Inc., 99 Civ. 2101 (DLC), 1999 WL 760209 at *2 (S.D.N.Y.
Sept. 27, 1999) (Cote, D.J.), citing Nat'l Union Fire Ins. v.
L.E. Myers Co. Grp., 937 F. Supp. 276, 281 (S.D.N.Y. 1996) (Kram,
D.J.); and Stratavest Ltd. v. Rogers, 903 F. Supp. 663, 667
(S.D.N.Y. 1995) (Sweet, D.J.).   Testimony is deemed prejudicial
where it is "sufficiently adverse to the factual assertions or
account of events offered on behalf of the client, such that the
bar or the client might have an interest in the lawyer's inde-
pendence in discrediting that testimony."   Murray v. Metro. Life
Ins. Co., supra, 583 F.3d at 178, quoting Lamborn v. Dittmer,
supra, 873 F.2d at 531 (internal quotation marks omitted); Decker

22

v. Nagel Rice LLC, supra, 716 F. Supp. 2d at 231.  The Second Circuit explained that DR 5-102(B) is implicated "where a law-yer's testimony would contradict or undermine his client's factual assertions."  Lamborn v. Dittmer, supra, 873 F.2d at 531. However, "[b]ecause the courts must guard against tactical use of motions to disqualify counsel . . . they are subject to fairly strict scrutiny, particularly motions under subdivision (B)." Lamborn v. Dittmer, supra, 873 F.2d at 531 (citation omitted).

In the Second Circuit, an even stricter test governs motions that seek to disqualify an entire firm through imputa-tion.  In Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 178, the Second Circuit analyzed Rule 3.7(b) of the Rules, stating that "[b]ecause the tribunal is not likely to be misled when a lawyer acts as advocate in a trial in which another lawyer in the lawyer's firm will testify as a necessary witness, [Model Rule 3.7(b)] permits the lawyer to do so except in situations involv-ing a conflict of interest."  Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 178, quoting A.B.A. Model Rules of Prof'l Conduct § 3.7 cmt. 5.  The Second Circuit held that "a law firm can be disqualified by imputation only if the movant proves by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result.  This new formulation is

23

consistent with our prior efforts to limit the tactical misuse of the witness-advocate rule."  Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 178-79.

C.  Application of the Foregoing
    Principles to the Present Case

Judged by the standards set forth above, I conclude that disqualification of some Poles Tublin attorneys is necessary in this action, but that there is no basis to disqualify the entire firm.  As noted above, plaintiffs seek disqualification because they argue that the testimony of Poles Tublin's attorneys is necessary with respect to five issues.  I address these issues in turn.

1.  Coutsodontis' Use of an
    Advice of Counsel Defense
    to Support the Athena's Arrests

Plaintiffs first allege that Coutsodontis twice ef-fected ex parte arrests of the Athena in bad faith and in breach of his fiduciary duty to Sea Trade's shareholders (Pls.' Mem. at 9).  Plaintiffs claim that these arrests were improper and illegal because

> [i]t is a fundamental principle of admiralty law
> that a claim based upon ownership, or alleged owner-
> ship, of a company (Sea Trade) that owns a vessel (the
> ATHENA) is not a valid basis for the arrest of a vessel

24

> because (in admiralty jargon) no maritime lien is
> present.  There is no jurisdiction.  This is black
> letter admiralty law throughout the world.  This law
> was well-settled before the arrest of the ATHENA.

(Pls.' Mem. at 4-5 (citations omitted)).  Plaintiffs further note

that both arrests were vacated by the courts, and that those

vacaturs were affirmed by appellate courts (see Spanish Appellate

Decision; Coutsodontis v. M/V ATHENA, supra, 2008 WL 4330236 at

*1-*2; Coutsodontis v. Sea Trade Mar. Corp., supra, 571 F.3d at

1341).

In response, defendants assert an advice of counsel

defense to the arrests, which was first asserted in support of

their motion to dismiss the present action (Defs.' Motion to

Dismiss at 7-8, 14-15; Defs.' Mem. at 6-7).  Plaintiffs now seek

disqualification because of the asserted advice of counsel

defense, arguing that "the entire firm is implicated and all

members may be subject to examination as to their role in provid-

ing advice regarding the arrests" because there were only eight

attorneys in the firm as of February 2011 and four have worked on

the "various actions" in which Coutsodontis was a party (Pls.'

Mem. at 5 n.2).[5]

---

[5]The four attorneys identified by plaintiffs are Scott R.
Johnston, John G. Poles, Christ Stratakis and John C. Stratakis.
However, in their reply brief, plaintiffs refer to "five senior
attorneys (out of eight total) that will actually be called to
(continued...)

In Frontera Fruit Co. v. Dowling, 91 F.2d 293, 297 (5th Cir. 1937) -- a case cited by both parties -- the United States Court of Appeals for the Fifth Circuit considered a claim for wrongful seizure of a vessel.  The Court held that a showing of "bad faith, malice, or gross negligence of the offending party" was required.  Frontera Fruit Co. v. Dowling, supra, 91 F.2d at 297; accord Furness Withy (Chartering), Inc., Panama v. World Energy Sys. Assocs., Inc., 854 F.2d 410, 411 (11th Cir. 1988); Central Oil Co. v. M/V Lamma-Forest, 821 F.2d 48, 51 (1st Cir. 1987); Ocean Ship Supply, Ltd. v. MV Leah, 729 F.2d 971, 974 (4th Cir. 1984); see also Walsh Transp. Co. v. Iroquois Transit Corp., 16 F.2d 475, 475-76 (S.D.N.Y. 1926) (Thacher, D.J.) (gross negligence or malice required for wrongful attachment of vessel).

The Fifth Circuit indicated that the advice of counsel may be a defense to a wrongful seizure claim, specifically stating that

> the advice of competent counsel, honestly sought and acted upon in good faith is alone a complete defense to an action for malicious prosecution.  Cragin v. De Pape (C.C.A.) 159 F. 691.  See, also, Staunton v. Goshorn (C.C.A.) 94 F. 52, and Widmeyer v. Felton (C.C.) 95 F. 926.  The same principle controls the case at bar.  The

---

(...continued)
testify" (Pls.' Reply at 14).  Plaintiffs do not identify the fifth attorney, although Nathan C. Gaudio is listed as a lead attorney in the Docket Sheet and is also listed on correspondence to the undersigned with respect to this motion.

> claim of the right to subrogation based on the advice
> of its attorney, erroneous though it may have been,
> honestly obtained and reasonably accepted, gave appel-
> lant access to the process of the court until that
> claim of right could be adjudicated, and no damages can
> be assessed against it for fairly submitting it for
> determination.

Frontera Fruit Co. v. Dowling, supra, 91 F.2d at 297; see also

Michael H. Bagot, Jr. & Dana A. Henderson, Seize and Desist:

Damages for Wrongful Maritime Seizure, 25 Tul. Mar. L.J. 117,

128-31 (Winter 2000).

To invoke an advice of counsel defense in the Second

Circuit, a party must "show that he made complete disclosure to

counsel, sought advice as to the legality of his conduct, re-

ceived advice that his conduct was legal, and relied on that

advice in good faith."  Markowski v. S.E.C., 34 F.3d 99, 105 (2d

Cir. 1994), citing S.E.C. v. Savoy Indus., Inc., 665 F.2d 1310,

1314 n.28 (D.C. Cir. 1981); Renner v. Townsend Fin. Servs. Corp.,

98 Civ. 926 (CSH), 2002 WL 1013234 at 8 n.8 (S.D.N.Y. May 20,

2002) (Haight, D.J.); LNC Inv., Inc. v. First Fid. Bank, 92 Civ.

7584 (MBM), 1997 WL 528283 at *22 (S.D.N.Y. Aug. 27, 1997)

(Mukasey, D.J.) ("Thus to prove reliance on advice of counsel and

satisfy the prudent person standard, a [party] must show the

advice it received and that it relied upon that advice, and that

it made complete disclosure to counsel.").

27

Because Frontera Fruit Co. v. Dowling, supra, has been cited with approval by three other Circuits and I can find no contrary authority in the Second Circuit, I assume that the advice of counsel can be a valid defense to plaintiffs' wrongful seizure claim.  Consequently, Coutsodontis' liability for the wrongful seizures of the Athena will turn on whether he exhibited bad faith, malice, or gross negligence.  The viability of an advice of counsel defense will turn on whether Coutsodontis can prove he honestly sought and acted upon "the advice of competent counsel. . . in good faith."  Frontera Fruit Co. v. Dowling, supra, 91 F.2d at 297.  Thus, Coutsodontis must establish that he completely disclosed all material facts to his attorneys, sought their advice as to the legality of his actions, received advice that the arrests were legal, and relied on that advice in good faith.  Markowski v. S.E.C., supra, 34 F.3d at 105 (citation omitted).

I conclude that attorneys at Poles Tublin are "likely to be [] witness[es] on a significant issue of fact," 22 N.Y.C.R.R. § 1200.0, and, thus, they must be disqualified.  The attorneys who counseled Coutsodontis concerning the arrests

"could be significantly useful" witnesses.  <u>Lamborn v. Dittmer</u>,

<u>supra</u>, 873 F.2d at 531 (citation omitted).[6]

Attorneys from Poles Tublin can clearly provide rele-
vant evidence for at least three aspects of the advice of counsel
defense.  Their testimony is relevant on the issues of whether
Coutsodontis provided all material facts, whether he sought
advice concerning the legality of the arrests and whether Poles
Tublin attorneys told him that the arrests were legal.  Further-
more, such testimony would create at least three of the four
risks that the Second Circuit concluded that Rule 3.7(a) was
designed to alleviate, namely (1) the lawyers might be vouching
for their own credibility; (2) some might fear that the attorneys
would distort the truth because of bias on behalf of
Coutsodontis, and (3) the line between argument and evidence
might be blurred and the jury confused.  <u>See</u> <u>Murray v. Metro.</u>
<u>Life Ins. Co.</u>, <u>supra</u>, 583 F.3d at 178 (citation omitted).
Therefore, disqualification is appropriate.

In analyzing the necessity of these attorneys' testi-
mony, I have examined "the significance of the matters,

---

[6]In the absence of an express or implied overruling of
<u>Lamborn v. Dittmer</u>, <u>supra</u>, 873 F.2d at 531, I believe its test
remains controlling, particularly in light of the Second
Circuit's statement that Rule 3.7(a) "is substantially the same
as" DR 5-102(A).  <u>Ramchair v. Conway</u>, <u>supra</u>, 601 F.3d at 74 n.6.

weight of the testimony, and availability of other evidence."
Finkel v. Frattarelli Bros., Inc., supra, 740 F. Supp. 2d at 373
(internal quotation marks and citation omitted).  All three
factors favor plaintiffs.  First, the matter is of the utmost
significance, because it involves a defense to one of plaintiffs'
principal claims in this action.  Second, the weight of the
testimony by the attorneys is substantial, because they have
first-hand knowledge of the conversations regarding the legality
of the arrests and are not interested in the outcome of this
case.  Third, defendants do not cite any other available evidence
-- beyond Coutsodontis' own testimony -- to address whether the
elements of the advice of counsel defense are met.

Finally, immediate disqualification is necessary.  See
Gorbaty v. Wells Fargo Bank, N.A., CV-10-3291 (NGG), 2011 WL
318090 at *3 (E.D.N.Y. Feb. 1, 2011) (finding that "efficiency
and the orderly progress of the case will be better served by
disqualification early in the proceedings, when there will be
time for plaintiff to find a new attorney to represent her
without delaying the trial, for any new attorney to become
familiar with the case now and not on the eve of trial, and for
counsel who will try the case to be involved in framing the
pleadings, taking discovery and bringing any appropriate pretrial
motions."); Soberman v. Groff Studios Corp., 99 Civ. 1005 (DLC),

1999 WL 349989 at *8 (S.D.N.Y. June 1, 1999) (Cote, D.J.) ("As
the sole witness to many of the relevant communications, counsel
for plaintiff is an essential witness and cannot also represent a
party to this lawsuit" and a failure to testify "would undoubt-
edly by prejudicial to the plaintiff."); Fulfree v. Manchester,
945 F. Supp. 768, 772 (S.D.N.Y. 1996) (Chin, D.J.) ("There is no
justification for allowing [the attorney] to represent plaintiff
during the pre-trial aspect of this litigation when it is clear
that he may be a material witness at trial, and it is clear that
he could be required to testify."); Gleason v. Zocco, 941 F.
Supp. 32, 35-36 (S.D.N.Y. 1996) (Rakoff, D.J.).

     In Gleason v. Zocco, supra, 941 F. Supp. at 35-36, the
Honorable Jed S. Rakoff, United States District Judge, disquali-
fied plaintiff's counsel at the beginning of the case.  There,
Judge Rakoff held that an attorney's "extensive personal involve-
ment in every aspect of the underlying controversies that led to
this lawsuit require his disqualification," in part "because of
the likelihood that he will be a necessary witness."  Gleason v.
Zocco, supra, 941 F. Supp. at 35.  Similarly here, defendants
acknowledge Poles Tublin's attorneys' extensive involvement in
the two arrests, and I have determined that they are necessary
witnesses.  Therefore, immediate disqualification is appropriate.

Defendants have represented that Christ Stratakis and Poles assisted Coutsodontis' Spanish counsel with respect to the first arrest of the Athena (Sworn Statement of Manuel Gonzalez at 1-2).  However, plaintiffs may choose their witnesses.  Therefore, I direct plaintiffs to identify no more than two Poles Tublin attorneys who they wish to call to testify on the issue of the advice of counsel defense.  I impose this limitation in order to "guard against tactical use" of plaintiffs' motion.  See Lamborn v. Dittmer, supra, 873 F.2d at 531.  Upon identification, these attorneys will be immediately disqualified.[7]

---

[7]Furthermore, it is of no matter that defendants believe that the Poles Tublin attorneys advising Coutsodontis on the arrests are not necessary witnesses, or that the defendants would be unwilling to call them to testify.  The Second Circuit has stated that the test is whether an attorney "ought" to testify on behalf of his client.  J.P. Foley & Co., Inc. v. Vanderbilt, 523 F.2d 1357, 1359 (2d Cir. 1975) (per curiam); Ulster Scientific, Inc. v. Guest Elchrom Scientific AG, 181 F. Supp. 2d 95, 103 (N.D.N.Y. 2001); Wickes v. Ward, 706 F. Supp. 290, 292 (S.D.N.Y. 1989) (Kram, D.J.) ("The test for disqualifying counsel under this disciplinary rule is not whether the attorney will be called as a witness, or whether the plaintiff presently plans to call the attorney, but whether the attorney 'ought' to be called."); Munk v. Goldome Nat'l Corp., 697 F. Supp. 784, 786-87 (S.D.N.Y. 1988) (Edelstein, D.J.); Sheldon Elec. Co. v. Blackhawk Heating & Plumbing Co., 423 F. Supp. 486, 489 n.5 (S.D.N.Y. 1976) (Cannella, D.J.).  Moreover, in Sheldon Elec. Co. v. Blackhawk Heating & Plumbing Co., supra, 423 F. Supp. at 489 n.5, the Honorable John M. Cannella, United States District Judge, stated that where an attorney ought to be called as a witness, the failure to do so "will likely result in ineffective assistance of counsel for his client.  Such a result will not be tolerated."

While it is true that disqualification is disfavored in the Second Circuit, "any doubt is to be resolved in favor of disqualification." Hull v. Celanese Corp., supra, 513 F.2d at 571 (citation omitted).  In their brief, defendants quote one of my prior opinions, Interpharm, Inc. v. Wells Fargo Bank, N.A., 08 Civ. 11365 (RJH)(HBP), 2010 WL 1141201 at *4 (S.D.N.Y. Mar. 25, 2010), for the proposition that "disqualification under subdivision (a) [of Rule 3.7] is warranted only where the lawyer-witness will actually advocate before the jury" (citing Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 179).

The facts in this case are distinguishable from both Interpharm, Inc. v. Wells Fargo Bank, N.A., supra, and Murray v. Metro. Life Ins. Co., supra.  In Interpharm, Inc. v. Wells Fargo Bank, N.A., supra, 2010 WL 1141201 at *1, I denied plaintiff's motion to disqualify an attorney and his former firm from representing defendant.  Plaintiff alleged breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with business expectations, unjust enrichment and breach of fiduciary duty.  2010 WL 1141201 at *3.  Forbearance agreements signed by the parties were at issue, and plaintiff moved to disqualify the attorney because of his alleged involvement in the agreements. 2010 WL 1141201 at *3.  However, the attorney in question had apparently moved to another firm that was not

33

representing defendant in the action, 2010 WL 1141201 at *1 n.1,
and plaintiff offered "no evidence whatsoever that [the attorney]
will offer any testimony or has any information that would
warrant his disqualification under Rule 3.7(a) or the disqualifi-
cation of his firm under rule 3.7(b)."  2010 WL 1141201 at *5.  I
concluded that "plaintiff has shown neither that [the attorney]
has admissible, non-privileged and non-cumulative testimony that
would even be of use to either side nor that the concerns under-
lying the disfavor of advocate-witnesses are implicated at this
early pre-trial stage."  2010 WL 1141201 at *6.

      In Murray v. Metro. Life Ins. Co., supra, the Second
Circuit reversed a trial court's disqualification order and
reinstated the law firm Debevoise & Plimpton LLP ("Debevoise") as
trial counsel in the underlying securities litigation.  583 F.3d
at 180-81.  There, the trial court had disqualified Debevoise on
conflict of interest grounds.  583 F.3d at 175.  The trial court
held that Debevoise's prior representation of the corporate
defendant meant that it had also represented defendant's policy-
holders, who were now plaintiffs in a securities fraud class
action.  583 F.3d at 175.  The Second Circuit reversed, holding
that (1) Debevoise did not have an attorney-client relationship
with the policyholders by virtue of its prior representation of
the corporate defendant, and (2) that plaintiffs could not

establish a violation of the advocate-witness rule that would warrant disqualification.  583 F.3d at 175.

In response to plaintiffs' statement that they wished to call three Debevoise transactional attorneys and a member of the trial team as witnesses, the Court of Appeals analyzed Rule 3.7 and determined that because none of the witnesses would be advocates at trial, none of the witnesses were "properly considered trial counsel for purposes of Rule 3.7(a)."  583 F.3d at 179 (citation omitted).  The Court of Appeals identified the four risks that Rule 3.7 was intended to alleviate and stated that "the concerns motivating Rule 3.7 are attenuated where, as here, the witness-'advocate' is <u>not</u> someone who will be trying the case to the jury."  583 F.3d at 178-79.  The Second Circuit then analyzed the facts and determined that disqualification of the entire firm by imputation was not warranted under Rule 3.7(b). 583 F.3d at 179-80.

Here, plaintiffs seek to disqualify attorneys who are current members of the firm presently representing defendants, which makes this case completely distinguishable from <u>Interpharm, Inc. v. Wells Fargo Bank, N.A.</u>, <u>supra</u>.  Furthermore, in <u>Murray v. Metro. Life Ins. Co.</u>, <u>supra</u>, the Second Circuit stated that the attorneys that plaintiffs wished to call would not be advocates -- which is a conclusion I cannot draw here.  It is impossible to

tell whether the attorneys selected by plaintiffs would have been defendants' trial counsel.  Neither party has addressed this issue.  I note, however, that four attorneys' names appear on Poles Tublin's opposition brief to the Court:  Scott Johnston, Christ Stratakis, John G. Poles and Nathan Gaudio, and it appears, therefore, that any or all of these attorneys may take some advocacy role.  It is simply unclear at this stage.

Moreover, while I acknowledge that "the concerns motivating Rule 3.7 are attenuated" if a trial team member is not trial counsel, Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 179, these concerns are not eliminated.  The risk remains present that "some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client," in this case, Coutsodontis.  Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 178.  This consideration alone is sufficient to disqualify the attorneys, as the Second Circuit's guiding principle is whether "an attorney's conduct 'poses a significant risk of trial taint.'"  Decker v. Nagel Rice LLC, supra, 716 F. Supp. 2d at 231, quoting Glueck v. Jonathan Logan, Inc., supra, 653 F.2d at 748.  As a final point, the Second Circuit has stressed that "the ultimate reason for disqualification [is] harm to the integrity of the judicial system."  Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 178.

36

Therefore, I conclude that the Poles Tublin attorneys identified by plaintiffs should be disqualified from representing Coutsodontis in this action.

Defendants also argue that disqualification would represent a substantial hardship to Coutsodontis. I disagree. "Because of the strong policy considerations in support of the advocate-witness rule, courts have given the 'substantial hardship' exception 'a very narrow reading.'" United States v. Peng, 602 F. Supp. 298, 303 (S.D.N.Y. 1985) (Edelstein, D.J.), aff'd 766 F.2d 82 (2nd Cir. 1985), quoting United States v. Johnston, 690 F.2d 638, 642 n.9 (7th Cir. 1982). "The exception expressly qualifies the hardship that must be shown to permit continued representation as one that arises because of the distinctive value of the lawyer or his firm as counsel in the particular case." MacArthur v. Bank of N.Y., 524 F. Supp. 1205, 1210 (S.D.N.Y. 1981) (Sofaer, D.J.) (internal quotation marks omitted). Indeed, "if the expense and delay routinely incident to disqualification satisfied the substantial-hardship exception, that exception would soon swallow the rule." MacArthur v. Bank of N.Y., supra, 524 F. Supp. at 1210.

Defendants argue that "disqualifying [Coutsodontis'] counsel so far along in representation would be detrimental, substantial and unfair" (Defs.' Mem. at 21). But elsewhere in

37

their brief, defendants acknowledge that no discovery had been taken when the present motion was filed (Defs.' Mem. at 2).  It is hard to conclude how, if no discovery had been taken, the representation is "so far along."  While it is true that the motion to disqualify was filed February 11, 2011, or more than two years after the complaint was filed (see Docket Items 1, 27), this is not determinative.  Rather, the pertinent issue is whether defendants can demonstrate that their attorneys have distinctive value as trial counsel, and they have not made this showing.  See MacArthur v. Bank of N.Y., supra, 524 F. Supp. at 1210-11.

Defendants cite a New York State case where a disqualification motion was denied on the ground of laches (see Defs.' Mem. at 21, citing Bluebird Partners, L.P. v. Bank of N.Y., 21 Misc. 3d 1140(A), 2008 WL 5131174 at *7 (Sup. Ct. Nov. 6, 2008)). However, another court in this district rejected a laches argument even where the disqualification motion was not made until the first day of trial, because "insofar as 'disqualification is in the public interest, the court cannot act contrary to that interest by permitting a party's delay in moving for disqualification to justify the continuance of a breach of the Code of Professional Responsibility.'"  Sheldon Elec. Co. v. Blackhawk Heating & Plumbing Co., Inc., supra, 423 F. Supp. at 490, citing

38

Emle Indus., Inc. v. Patentex, Inc., 478 F.2d 562, 574 (2d Cir. 1973).  Therefore, I reject defendants' substantial hardship argument.

Defendants also argue that any testimony would not be "prejudicial" to the relationship between Coutsodontis and Poles Tublin (Defs.' Mem. at 15-17).  There is no requirement that testimony be prejudicial in order to disqualify an individual attorney.  See Rule 3.7(a); DR 5-102(A); Lamborn v. Dittmer, supra, 873 F.2d at 531 (citation omitted).  However, this argu-ment relates to defendants' final argument that disqualification should not impute to the entire firm.  I agree that no showing has been made that would justify the disqualification of the entire law firm of Poles Tublin.

The Second Circuit clearly stated in Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 178-79, that "a law firm can be disqualified by imputation only if the movant proves by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result."  Plaintiffs offer no evidence that Poles Tublin's attorneys' testimony about their advice to Coutsodontis with respect to the Athena's arrests will be ad-verse, arguing only that the testimony "will be at least poten-tially adverse" (Pls.' Mem. at 18; see also Pls.' Reply at 3).

39

Therefore, a showing has not been made that the testimony would be prejudicial to defendants.  Thus, disqualification of the entire firm of Poles Tublin is not warranted.

> 2.  Coutsodontis' Attorneys'
>     Alleged Contradiction of Their
>     Client's Defamatory Statements

Plaintiffs argue that Poles Tublin attorneys Christ Stratakis and Johnston are necessary and prejudicial witnesses with respect to Coutsodontis' belief as to the validity of George Peters' power of attorney.  Specifically, plaintiffs claim that Coutsodontis made allegations that George Peters' power of attorney was procured by fraud, and plaintiffs further claim that Coutsodontis' attorneys subsequently accepted the validity of the power of attorney during oral argument before Judge Buchwald in 2008.  Plaintiffs assert that Poles Tublin's attorneys will provide adverse testimony that will be prejudicial to Coutsodontis.  Plaintiffs argue that this testimony is necessary to prove an element of plaintiffs' defamation claim -- specifically, that Coutsodontis knew that his allegations were false (see Pls.' Mem. at 20-21).

Upon review of the oral argument transcript, I conclude that these attorneys should not be disqualified on the basis of this argument.  Plaintiffs have not established a "substantial

likelihood of prejudice" with respect to the testimony.  Ragdoll Prods. (UK) Ltd. v. Wal-Mart Stores, Inc., supra, 1999 WL 760209 at *2 (citation omitted).  Specifically, they have not demonstrated that the testimony would be "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 178 (citation omitted).

Plaintiffs supplied a partial transcript of the oral argument before Judge Buchwald, and they argue that disqualification is warranted because of two statements.  The first statement is Stratakis' acknowledgment that "when the owner of the ship was alive, she had given her nephew [George Peters] powers to operate the ship . . . ." (Oral Argument Transcript at 20).  I agree that this statement suggests an acknowledgment that powers were rightfully transferred.  Defendants made no challenge to the legality or validity of the transfer during this statement.

Plaintiffs identify a second statement made by Johnston, who stated, "George Peters has proceeded under a power of attorney, but George Peters is . . . not a shareholder.  They claim he is a shareholder.  This is news to us" (Oral Argument Transcript at 36).  I do not believe that this statement is

41

necessarily adverse to Coutsodontis.  Stating that someone has proceeded under a power of attorney is not necessarily the same as recognizing a power of attorney as valid.  I believe that the statement itself is ambiguous.  Defendants argue that their attorneys inadvertently omitted the word "alleged" during Stratakis and Johnston's statements due to "the heat of oral arguments" (Defs.' Mem. at 17).

Additionally, I identified a third statement in the oral argument transcript that was not cited by plaintiffs and which I conclude undercuts their argument.  Prior to the two statements cited by plaintiffs, Stratakis stated -- in reference to plaintiffs -- that "[a]ll they have here is George Peters claiming to be an attorney in fact employed by Sea Trade . . . ." (Oral Argument Transcript at 20).  This statement seems to suggest that defendants did not accept George Peters' "claim[]" that he was an attorney in fact.  Rather, it suggests that defendants were calling that representation into question and that the subsequent statements merely summarized or paraphrased plaintiffs' arguments.

Because I believe that Johnston's statement is ambiguous, plaintiffs have not established that his testimony is "sufficiently adverse to the factual assertions or account of events offered on behalf of the client."  <u>Murray v. Metro. Life</u>

42

Ins. Co., supra, 583 F.3d at 178 (citation omitted).  Similarly, because one of Christ Stratakis' statements appears to be adverse to Coutsodontis' position but another statement undercuts plaintiffs' position, plaintiffs have not met the "sufficiently adverse" standard with respect to this attorney, either.  Therefore, disqualification is not warranted on the basis of plaintiff's second argument.

3.  Poles Tublin's Initiation
    of 2005 "Sham Action"
    in New York State Court

Plaintiffs next argue that Poles Tublin's attorneys are necessary witnesses with respect to Coutsodontis' 2005 filing of a "sham action" in state court seeking a declaratory judgment that he was a rightful owner of 250 shares of Sea Trade as the result of an inter vivos gift from Athena Eliades.  Coutsodontis v. Peters, supra, 2006 WL 721255 at *1.  Plaintiffs argue that the action was filed on a "knowingly false premise" (Pls.' Reply at 8).  They argue that this issue relates to a claim that Coutsodontis acted in bad faith "with the purpose of economically coercing [George] Peters into surrendering one-half of Sea Trade" (see Pls.' Mem. at 14-15).

Plaintiffs assert that "Poles Tublin attorneys are witnesses to the issues relating to the stock restriction and to

43

the phony 'inter-vivos gift' argument and therefore should be disqualified as they will be called to testify on this issue [sic]" (Pls.' Mem. at 24 (citation omitted)).  However, the only attorney mentioned by name with respect to this issue is Poles, who issued the complaint in the action allegedly commenced in "bad faith" action (Pls.' Mem. at 11-12).

In their supporting memo, plaintiffs argue that "Poles Tublin undoubtedly reviewed the shares" (Pls. Mem. at 15).  Later, in their reply brief, they state that "Poles Tublin presumably reviewed the shares" and add that "Poles Tublin either knew of, and provided advice regarding, the documents contradicting the inter-vivos transfer allegation and the transfer restriction expressly printed on all Sea Trade stock certificates" (or they did not bother to find out whether the allegations were true before filing the bad faith action" (Pls.' Reply at 8-9).

I conclude that Poles, the only attorney identified by name with respect to this issue, should not be disqualified on this ground.  Plaintiffs have not established that Poles' testimony "could be significantly useful to his client." Lamborn v. Dittmer, supra, 873 F.2d at 531.  They do not establish that Poles "is likely to be a witness on a significant issue of fact." 22 N.Y.C.R.R. § 1200.0.  Plaintiffs merely mention Poles' name as the attorney who filed a complaint in an action that plaintiffs

44

believe to be a "sham," and this is clearly an insufficient
showing.  While Justice Cahn granted George Peters' motion to
dismiss the 2005 action against Coutsodontis and held that
"Coutsodontis' allegations [were] contradicted by the documentary
evidence presented," Justice Cahn did not describe the action as
fraudulent, frivolous, phony, a "sham" or an action made in bad
faith.  Coutsodontis v. Peters, supra, 2006 WL 721255 at *2.  He
did not characterize the action in any of the terms plaintiffs
now use when he had the entire record of the action before him.[8]
Because plaintiffs have not made a more persuasive argument that
the 2005 action was a "sham" action made in bad faith, I cannot
conclude that Poles would likely be a witness on a significant
issue of fact.  Plaintiffs make inconsistent and conclusory
arguments without support, and they speculate as to possible
avenues of testimony.  Their assertions fall far short of the
burden they need to meet for disqualification.

          Furthermore, the thrust of plaintiffs' argument seems
to be that Poles Tublin should be disqualified as a whole.  But
plaintiffs do not establish "by clear and convincing evidence"

_____

          [8]The Appellate Division, First Department subsequently
stated that "the only determination made on the merits is that no
inter vivos gift was made to plaintiff under New York law."
Coutsodontis v. Peters, 39 A.D.3d 274, 275, 831 N.Y.S.2d 902, 902
(1st Dep't 2007).

                                  45

that Poles' testimony "will provide testimony prejudicial to the
client," Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 178-
79, and they mention no other attorneys by name for this issue.
Therefore, disqualification by imputation is also unwarranted.

> ### 4.   Poles Tublin's Assistance
>         in Filing Injunction in Greece

Plaintiffs next argue that Poles Tublin's attorneys are
necessary witnesses with respect to the action Coutsodontis filed
in 2009 in Piraeus, Greece, which sought to enjoin the sale of
the Athena (Amended Compl. at ¶¶ 89-90; Johnston Aff. at ¶ 31).
Plaintiffs claim this action "had no legal justification and was
filed in bad faith" (Pls.' Mem. at 3).  Plaintiffs argue that
Coutsodontis' attempt to block the sale was a breach of his
fiduciary duty to Sea Trade's shareholders, and "therefore a
conflict arises in that Poles Tublin may have committed a blatant
ethical violation in permitting such action" (Pls.' Mem. at 25).
Plaintiffs further state that "Poles Tublin was aware of the
motives behind Coutsodontis' actions and actively coordinated
these actions through its affiliated office in Greece," which was
listed on Poles Tublin's website (Pls.' Mem. at 15).  They state
that "Poles Tublin's testimony and 'advice' regarding this action
will be key on this bad faith action" (Pls.' Mem. at 16).

Defendants acknowledge that "at all times Plaintiffs had been actively engaged and represented by counsel in all of the afore-described Greek actions since their respective commencements," but they have not expressly asserted an advice of counsel defense with respect to this issue (Defs.' Mem. at 9). In the absence of an advice of counsel defense or proof that counsel was consulted in furtherance of a crime or fraud, Poles Tublin's communications with Coutsodontis are privileged.

I conclude that plaintiffs have not met their burden here, either.  Therefore, I also decline to disqualify Poles Tublin with respect to the commencement of the 2009 Piraeus action.  Plaintiffs never mention a Poles Tublin attorney by name with respect to the action.  Therefore, it is impossible for me to analyze how an individual attorney "is likely to be a witness on a significant issue of fact."  22 N.Y.C.R.R. § 1200.0. Moreover, in order to disqualify the firm by imputation, the burden remains with plaintiffs to establish by clear and convincing evidence how one of Poles Tublin's attorneys' testimony will be prejudicial.  Murray v. Metro. Life Ins. Co., supra, 583 F.3d at 178-79.  Plaintiffs' statement that the firm may have violated ethical obligations is not sufficient.  Neither is plaintiffs' conclusory statement that the firm's "testimony and 'advice' . . . will be key."  Plaintiffs' allegations are otherwise unsup-

47

ported by evidence -- beyond a reference to Poles Tublin's website -- and their arguments do not touch upon the relevant standard for disqualification, either for an individual or for a law firm.

     5.  <u>Punitive Damages</u>

Plaintiffs' final argument is that Poles Tublin's attorneys are necessary witnesses with respect to punitive damages.  Plaintiffs first raise this argument in their reply brief (<u>compare</u> Pls.' Reply at 11-12, <u>with</u> Pls.' Mem.).  It is inappropriate to grant relief on new theories first raised in reply where the non-moving party does not have an opportunity to reply to such theories.  <u>Scherer v. Equitable Life Assurance Soc'y</u>, 01 Civ. 10193 (CSH), 2004 WL 2101932 at *5 n.1 (S.D.N.Y. Sept. 21, 2004) (Haight, D.J.), <u>citing</u> <u>Ernst Haas Studio, Inc. v. Palm Press, Inc.</u>, 164 F.3d 110, 112 (2d Cir. 1999) (<u>per</u> <u>curiam</u>); <u>Hughes v. J.P. Morgan Chase & Co.</u>, 01 Civ. 6087 (BSJ), 2004 WL 1403337 at *3 n.3 (S.D.N.Y. June 22, 2004) (Jones, D.J.); <u>accord</u> <u>Blake v. Fiit Int'l, Inc.</u>, 05 Civ. 6150 (HBP), 2007 WL 980362 at *10 (S.D.N.Y. Mar. 30, 2007) (Pitman, M.J.).  Therefore, I refuse to disqualify Poles Tublin or any of its attorneys with respect to this issue.

IV.   Conclusion

Accordingly, for all the foregoing reasons, plaintiffs' motion to disqualify counsel is granted in part.  Within ten days of the date of this Order, plaintiffs' counsel is to identify no more than two Poles Tublin attorneys that they wish to call to testify concerning the arrests of the cargo ship Athena.  Upon identification, these attorneys will be immediately disqualified. Plaintiffs' motion is denied in all other respects.

Dated:  New York, New York
        July 25, 2011

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Gregory S. Hansen, Esq.
Robert M. Keenan, Esq.
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, New York  10020

Nathan C. Gaudio, Esq.
Scott R. Johnston, Esq.
Poles Tublin Stratakis & Gonzalez, LLP
46 Trinity Place
New York, New York  10006

Peter Skoufalos, Esq.
Brown Gavalas & Fromm LLP
355 Lexington Avenue
New York, New York  10017