**POLES TUBLIN STRATAKIS & GONZALEZ LLP**
46 Trinity Place – Fifth Floor
New York, New York 10006
(212) 943-0110

Attorney for Defendant, Stelios Coutsodontis

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEA TRADE MARITIME CORPORATION and GEORGE PETERS, <br><br> Plaintiffs, <br><br> – v – <br><br> STELIOS COUTSODONTIS, <br><br> Defendant. | CIVIL ACTION NO.: 09 CIV 00488 (LOS)(HBP) |

**MEMORANDUM IN OPPOSITION TO ANDERSON KILL P.C.'S
PETITION TO ENFORCE ATTORNEY'S LIEN AND JUDGMENT**

**TABLE OF CONTENTS**

page

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.  ANDERSON KILL DOES NOT HAVE A NY CLS JUD. LAW §475
        CHARGING OR RETAINING LIEN AGAINST
        CORPUS OF THE ESCROW AGREEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.  THE CHARGING LIEN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.  THE RETAINING LIEN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        C.  THE ESCROW AGREEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        D.  AS A MATTER OF LAW, ANDERSON KILL IS NOT ENTITLED
            TO A CHARGING LIEN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        E.  AS A MATTER OF LAW, ANDERSON KILL IS NOT ENTITLED
            TO A RETAINING LIEN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        F.  ANDERSON KILL HAS VIOLATED ITS FIDUCIARY DUTY
            TO CAPT. COUTSODONTIS BY ENTERING INTO THE
            SETTLEMENT AGREEMENT WITH SEA TRADE AND
            GEORGE PETERS AND THEN PETITIONING
            THIS HONORABLE COURT
            TO INVADE THE ESCROW FUNDS. . . . . . . . . . . . . . . . . . . . . . . . . . 11

    II.  ANDERSON KILL'S SETTLEMENT AGREEMENT
        IS ATTEMPTING TO PAY GEORGE PETERS'
        LEGAL BILLS FROM ESCROW FUNDS OF WHICH
        GEORGE PETERS IS NOT AN OWNER. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

page

C<small>ASES</small>

*99 Commercial Street. Inc. v. Goldberg,*
    811 F. Supp. 900 (S.D.N.Y. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Desmond v Socha,*
    38 App Div 2d 22, 327 NYS2d 178 (3rd Dept 1971)
    aff'd 31 NY2d 687, 337 NYS2d 261, 289 NE2d 181 (1972).. . . . . . . . . . . . . . . . . . . . . 3, 5

*Dish Network Corp. v. DBSD N. Am., Inc.* (*In re DBSD N. Am., Inc.*),
    634 F.3d 79 (2nd Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Entertainment & Amusements v Barnes,*
    49 Misc 2d 316, 267 N.Y.S.2d 359 (Sup. N.Y. SpecialTerm,
    Onondaga County 1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*George Peters and Sea Trade Maritime Corporation v. Stelios Coutsodontis,*
    *General Maritime Enterprises Corporation, Attika International*
    *Navigation SA, Iason Shipping LTD., Pinto Shipping LTD., and*
    *Karteria Shipping LTD.,* Index No. 600206/09. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*George Peters v. Stelios Coutsodontis, General Maritime Enterprises*
*Corporation, Attika International Navigation SA, Iason Shipping LTD.,*            P i n t o
*Shipping LTD., and Karteria Shipping LTD.,* Index No.   600482/07. . . . . . . . . . . . . . . . . . . . 13

*Hooker Atlanta Corp. v. Hocker,*
    155 B.R. 332 (Bankr. S.D.N.Y. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hoxsey v Hoffpauir,*
    180 F2d 84 (5th Cir. 1950) cert den 339 US 953, 94 L Ed 1366, 70 S Ct 841 (1950). . . 3, 8

*In re Heinsheimer,*
    214 NY 361, 108 NE 636 (1915). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*In re Treiling,*
    21 B.R. 940 (Bkrtcy. E.D.N.Y. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Keene Corp. v. Acstar Ins. Co.* (*In re Keene Corp.*),
    162 B.R. 935 (Bankr. S.D.N.Y. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Matter of Cohn,*
      118 A.D.2d 15, 503 N.Y.S.2d 759 (1st Dept. 1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*National Union Fire Ins. Co. v. Proskauer Rose Goetz & Mendelsohn,*
      634 N.Y.S.2d 609, 165 Misc. 2d 539 (N.Y.Sup. 1994),
      aff'd 227 A.D.2d 106, 642 N.Y.S.2d 505 (1st Dept. 1996).. . . . . . . . . . . . . . . . . . . . . . 12

*Natole v Natole,*
      744 NYS2d 227 (3rd Dept. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Petition of Albrecht,*
      225 App Div 423, 233 NYS 383 (1929) aff'd 253 NY 537, 171 NE 772 (1930). . . . . . . . 3

*Pilitz v Inc. Vill. of Freeport,*
      762 F Supp 2d 580 (E.D.N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Regan v Marco M. Frisone, Inc.,*
      54 App Div 2d 1125, 388 NYS2d 798 (4th Dept 1976). . . . . . . . . . . . . . . . . . . . . . . . . 5

*Robinson v. Rogers,*
      237 N.Y. 467 (1924). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Rosenfeld v. Fairchild Engine & Airplane Corp.,*
      309 N.Y. 168, 128 N.E.2d 291 (1955). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Rosenman & Colin v Richard,*
      850 F2d 57 (2nd Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

*Sea Trade Maritime Corporation and George Peters v. Stelios Coutsodontis,*
      *Francesa Eleni Coutsodontis, General Maritime Enterprises Corp.,*
      *Attika International Navigation SA, and Iason Shipping Ltd.,* Index No. 650511/09. . . . 13

*Sea Trade Maritime Corporation and George Peters v. Stelios Coutsodontis,*
      *Francesa Eleni Coutsodontis, General Maritime Enterprises Corp.,*
      *Attika International Navigation SA, and Iason Shipping Ltd.,*
      Civ. No.: Civil Action No.: 09 CIV  00488 (LOS)(HBP). . . . . . . . . . . . . . . . . . . . . . . 13

*Theroux v Theroux,*
      145 App Div 2d 625, 536 NYS2d 151 (2nd Dept. 1988). . . . . . . . . . . . . . . . . . . . . . 4, 9

*United States v. J.H.W. & Gitlitz Deli & Bar, Inc.,*
      499 F. Supp. 1010 (S.D.N.Y. 1980).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 11

## STATUTES

NY CLS JUD. LAW §475. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-5, 8, 9

## MISCELLANEOUS

BLACK'S LAW DICTIONARY (5th Ed. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

BLACK'S LAW DICTIONARY (5th Ed. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

## PRELIMINARY STATEMENT

Anderson Kill P.C.'s (hereinafter '*Anderson Kill*') PETITION TO ENFORCE ATTORNEY'S LIEN AND JUDGMENT (hereinafter '*Petition*') alleges that it provided legal services to Sea Trade Maritime Corporation (hereinafter '*Sea Trade*') and George Peters for which it has not been compensated.  The Petition also alleges that Anderson Kill entered into a settlement agreement with Sea Trade and Peters for the payment of a negotiated reduced legal fee, for which it now seeks payment by invading a certain January 27, 2009 escrow agreement among Anderson Kill, Sea Trade, and Stelios Coutsodontis (hereinafter '*Capt. Coutsodontis*')  the afore-described January 27, 2009 Escrow Agreement[1] hereinafter '*Escrow Ageement*').[2]  It appears to be Anderson Kill's and George Peters' plan to pay Anderson Kill's reduced legal fees out of a certain portion of the escrow funds that Anderson Kill's Petition repeatedly refers to as "Peters' share of the Sea Trade Escrow Account." See, *e.g.* PETITION, ¶4. Anderson Kill and George Peters speciously propose to this Honorable Court that such invasion is sanctioned under NY CLS JUD. LAW §475 (attorney's lien in action, special or other proceeding, hereinafter '*Jud. §475*').  As discussed *infra*, not only is George Peters not a party to the Escrow Agreement, not only does he not have a "share" of the Escrow Agreement corpus, even if he did possess an interest in the escrow funds, on the facts of this case, no charging or retaining

---

[1] Exhibit B to the Affidavit of Edward J. Stein in Support of Petition to Enforce Attorney's Lien and Judgment, Document 102-2 in this action.

[2] THIS ESCROW AGREEMENT [ ] is made as of January 27, 2009, among ANDERSON KILL [ ], a New York professional corporation having its principal place of business at 1251 Avenue of the Americas, New York, New York 10020 ([ ] "Escrow Agent"), Sea Trade Maritime Corporation [ ] and Stelios Coutsodontis [ ].

ESCROW AGREEMENT, pg. 1.

1

lien is available or sanctioned under JUD.§475 nor has Anderson Kill pled any other ground justifying the invasion of the Escrow Agreement for the payment of its reduced legal fees. Further, Anderson Kill, by seeking the invasion of the Escrow Agreement's corpus, is violating its fiduciary duty to Capt. Coutsodontis and, as such, should be order to pay Capt. Coutsodontis' costs and attorneys' fees in his defending this action.

## LEGAL ARGUMENT

### I. ANDERSON KILL DOES NOT HAVE A NY CLS JUD. LAW §475 CHARGING OR RETAINING LIEN AGAINST CORPUS OF THE ESCROW AGREEMENT

The starting point in the evaluation of Anderson Kill's Petition is the statute upon which it is relying, JUD. §475. JUD. §475 reads as follows:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, or the initiation of any means of alternative dispute resolution including, but not limited to, mediation or arbitration, or the provision of services in a settlement negotiation at any stage of the dispute, the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

The liens available to an attorney are of two kinds: A retaining lien on all papers, securities or moneys belonging to the client which come into the possession of the attorney in the course of his professional employment, which is a general lien for the entire balance of the account,

dependent, however, on possession; and secondly a charging lien not dependent on possession and not a lien for the general balance of the account, which attaches from the commencement of the action or special proceeding and is upon the client's cause of action, claim or counterclaim and which attaches to the verdict, report, decision, judgment, or final order in the client's favor and the proceeds thereof in whosoever hands they may come.  See *In re Heinsheimer,* 214 NY 361, 108 NE 636 (1915).

### A.  THE CHARGING LIEN

A lien under JUD. §475 pertains to the fee earned by the attorney in a particular case and **proceedings to enforce such a lien** are considered as **proceedings *in rem* and may be enforced only against the proceeds of the judgment secured <u>in the particular case involved</u>**. *Hoxsey v Hoffpauir,* 180 F2d 84, 87 (5th Cir. 1950) cert den 339 US 953, 94 L Ed 1366, 70 S Ct 841 (1950).  Thus, where there is no affirmative recovery in the litigation, a lien under this section does not attach.  *Id.*  "This section does not give a lien for general services, but only for work done in the particular action or proceeding in which the determination is made." *Petition of Albrecht,* 225 App Div 423, 233 NYS 383 (1929) aff'd 253 NY 537, 171 NE 772 (1930) citing *Robinson v. Rogers,* 237 N.Y. 467 (1924) and *In re Heinsheimer,* 214 NY 361, 108 NE 636 (1915).  "An attorney may have a general or retaining lien on books or papers in his possession or a special or charging lien upon a cause of action and the proceeds of it.  **He has no other  lien**." (*Emphasis added*.)  *Desmond v Socha,* 38 App Div 2d 22, 23–24, 327 NYS2d 178,180 (3rd Dept 1971) aff'd 31 NY2d 687, 337 NYS2d 261, 289 NE2d 181 (1972).  In other words, "before there can be a charging lien, there must be something awarded by the judgment to which the lien can attach. (*Citations omitted*.)" *Id.*  Thus,

3

where an attorney's services "consist solely of defending a title or interest already held by the client, there is no lien on that title or interest. (*Citation omitted*.)" *Theroux v Theroux,* 145 App Div 2d 625, 627–628, 536 NYS2d 151, 153 (2nd Dept. 1988).  In other words, an attorney cannot enforce a charging lien because it only has a lien on the proceeds of its client's recovery.  Where the client recovers nothing, the firm has nothing to which its lien can attach. *Natole v Natole,* 744 NYS2d 227, 229 (3rd Dept. 2002).

"The charging lien of an attorney has been likened to the lien of an artisan or mechanic.  But even the lien of an artisan or mechanic will be lost if the terms of payment are inconsistent with its existence. (*Citation omitted*.) **If the work is done, not on the credit of the thing itself, but solely on the credit of the owner, there is a waiver of the lien**." (*Emphasis added*.)  *In re Heinsheimer* at 366, 108 NE at 638.  It has also been held that in instances where the attorney seeking the charging lien has been replaced as counsel of record and the relieved firm's pretrial preparation and other work product was not used in the creation of the ultimate settlement of the action, the relieved firm was not entitled to a charging lien under Jud. §475 against the plaintiff's settlement recovery. See *Pilitz v Inc. Vill. of Freeport,* 762 F Supp 2d 580 (E.D.N.Y. 2011).

Because a J<span style="font-variant:small-caps">UD</span>. §475 lien is available only to attorneys seeking recovery of a fee which is limited to the judgment awarded "in his client's favor," an attorney who merely defends or protects his or her client's interest in property without obtaining affirmative recovery is not entitled to a lien on property that his or her client retains as a result of an attorney's actions. See *Rosenman & Colin v Richard,* 850 F2d 57, 61 (2nd Cir. 1988); *Theroux* at 626, 536 NYS2d at 152; *United States v. J.H.W. & Gitlitz Deli & Bar, Inc.,* 499 F. Supp. 1010, 1015 (S.D.N.Y. 1980).

**The statutory attorney's lien is not a lien for general balance of any account owing to lawyer from the client**, but only for the value of services rendered in the particular action which produced the recovery sought to be charged. *Regan v Marco M. Frisone, Inc.,* 54 App Div 2d 1125, 388 NYS2d 798 (4th Dept 1976). "If there is no charging lien, the remedy does not lie and the attorney must bring a plenary action to determine and recover his fee." *Desmond* at 24, 327 NYS2d at 181.

### B.  THE RETAINING LIEN

The counterpart to JUD. §475's charging lien is a retaining lien.  Under JUD. §475 an attorney holds a retaining lien for the entire amount owed him by a particular client on all money, papers, and property of that client coming into his possession in the course of professional employment; "a retaining lien does not attach to funds that are merely deposited with attorney in escrow for payment to others, unless escrow agreement specifically authorizes payment of attorney's legal fees out of escrow fund." *United States v J.H.W. & Gitlitz Deli & Bar, Inc.,* 499 F Supp 1010, 1015 (S.D.N.Y. 1980).

### C.  THE ESCROW AGREEMENT

The final piece necessary for a proper analysis of the case at bar is a review of the Escrow Agreement.  BLACK'S LAW DICTIONARY (5th Ed. 1979) defines an 'escrow' as:

> A writing, deed, **money**, stock, or other property delivered by the grantor, promisor or obligor into the hands of a third person, **to be held** by the latter **until** the happening of a contingency or **performance of a condition, and then** by him **delivered to the grantee, promisee or obligee**.  A system of document transfer in which a deed, bond, or **funds** is delivered to a third person **to hold**

5

> until **all** **conditions in a contract are fulfilled**; *e.g.* delivery of deed to escrow agent under installment land sale contract until full payment for land is made. (*Emhasis added*.)

*Id.* at 489. In the case of the Escrow Agreement, the escrow was created to hold certain funds described as follows:

> "Escrow Funds" shall mean all proceeds from the Transaction [the sale of the ocean-going vessel M/V ATHENA on or about January 28, 2009], net of any commissions and or costs related to the Transaction which may be transferred or delivered to [Anderson Kill] in relation to the Transaction together with interest, if any, that may accrue thereon.

ESCROW AGREEMENT, pg. 2.[3]

The Escrow Agreement was established "**in order to define their respective rights and obligations with respect to the Escrow Funds** (as defined herein)." ESCROW AGREEMENT, pg. 1. It further specifically mandated, at Section 2.01 (B), that "the Escrow Funds shall be retained or disbursed only in accordance with the terms hereof," ESCROW AGREEMENT, pg. 3, to wit:

> <u>Disbursement of Amounts in Escrow Account</u>. [Anderson Kill] shall disburse the Escrow Funds as follows:
> (1)   Pursuant to jointly signed written instructions from the Parties, or
> (2)   Upon the final non-appealable judicial determination of [Capt.] Coutsodontis' ownership interest in Sea Trade and [Capt.] Coutsodontis' entitlement to the Escrow Funds, if any.

ESCROW AGREEMENT, pg. 3, Section 2.02. **Neither of these contingencies has occurred.**[4]

---

[3] Further described in the Escrow Agreement as "all proceeds from the Transaction, net of the 4.25% commission relating to the Transaction, shall be held and disbursed by [Anderson Kill], or ifs successor, in accordance with the terms and conditions of this Escrow Agreement." ESCROW AGREEMENT, pg. 1.

[4] In addition to the foregoing, the Escrow Agreement also contained a provision specifying that it "shall be governed by and construed in accordance with the laws of the State of New York

6

As to the Escrow Agreement, there are several points of note. First, Anderson Kill represented Sea Trade at the time of the drafting of the Escrow Agreement. Indeed, Anderson Kill drafted the Escrow Agreement, was and is a party to the Escrow Agreement, and has been and continues acting as the escrow agent holding the Escrow Funds. As such, Anderson Kill is intimately aware that it was the intended purpose of the Escrow Agreement to remove and isolate the Escrow Funds from Sea Trade in 2009 while awaiting a determination in the Greek courts as to the ownership of the Escrow Funds. It is for this reason that the Escrow Agreement provides for only two contingencies for the release of the Escrow Funds: (1) mutual agreement by the parties, and (2) a final, non-appealable decision by the Greek courts. **Neither of these contingencies has occurred.** Indeed, at the very best, Sea Trade has nothing more than a contingent equitable reversionary interest to some undivided, yet to be determined portion of the Escrow Funds. It was, and remains, the parties' intention that the determination as to respective interest in the Escrow Funds is to be determined by the Greek Supreme Court in the case now pending before it (*i.e.* a final non-appealable decision by the Greek courts).

Second, the Escrow Agreement contains no provision for the payment of Anderson Kill's legal fees, either for its creation, Anderson Kill's representation of Sea Trade and/or George Peters during the period of the Escrow Agreement's creation, or for the payment of any of Sea Trade's and/or George Peters' legal bills. Anderson Kill drafted the Escrow Agreement. Had it been the parties intention that the Escrow Funds be invaded for Anderson Kill's legal bills, such provision could have been drafted in to the Escrow Agreement. It was not.

---

without reference to principles of conflicts of law or choice of law," ESCROW AGREEMENT, pg. 5, Section 4.02, as well as a merger /non-amendment provision, ESCROW AGREEMENT, pg. 6, Section 4.05.

### D. AS A MATTER OF LAW, ANDERSON KILL IS NOT ENTITLED TO A CHARGING LIEN

Anderson Kill's Petition and its Settlement Agreement (together with its remaining supporting documents) are insufficient as a matter of law to create or act as a charging lien pursuant to JUD. §475. Further, Anderson Kill's reliance on *Dish Network Corp. v. DBSD N. Am., Inc.* (*In re DBSD N. Am., Inc.*), 634 F.3d 79 (2nd Cir. 2011) is misplaced. *Dish Network* is inapposite as it discusses the fixing principle for reorganizations under the bankruptcy code, not the application of JUD. §475 to legal fees. The proper analysis is as follows.

First, proceedings to enforce such a lien are considered as proceedings *in rem* and may be enforced only against the proceeds of the judgment secured **in the particular case involved**. *Hoxsey v Hoffpauir,* 180 F2d 84, 87 (5th Cir. 1950) cert den 339 US 953, 94 L Ed 1366, 70 S Ct 841 (1950). Nowhere has Anderson Kill pled (or even can plead) that the Escrow Funds are the proceeds of an affirmative judgment against which Anderson Kill has a lien. Indeed, Anderson Kill fails to match a single recovery (if any) to a single legal invoice—a requisite to a charging lien. By its own admission, the Settlement Agreement Anderson Kill is attempting to enforce is a conglomeration of numerous legal services bills purportedly provided to Sea Trade and/or George Peters over a great deal of time. The settlement agreement even fails to identify to whom the legal services were being provided (Sea Trade, George Peters, someone else). More specifically, there is not a single example, let alone a specific allegation, that the source of the Escrow Funds are tied to a specific legal matter in which Anderson Kill represented Sea Trade and/or George Peters either as plaintiff seeking an affirmative award or a defendant seeking a counterclaim and there was an affirmative award. In reality, Anderson Kill cannot make such a claim.

The Escrow Funds are the net proceeds of the sale of Sea Trade's ocean-going vessel M/V ATHENA on or about January 28, 2009. The sale of the vessel does not represent an affirmative recovery, but merely the protection of an interest already owned by Sea Trade and, therefore, Anderson Kill is not entitled to lien the proceeds, let alone the Escrow Funds. *Rosenman* at 61; *Theroux* at 626, 536 NYS2d at 152. Further, Anderson Kill, as the escrow agent, is only a custodian of the Escrow Funds, and has no lien on the escrow funds entrusted to it as compensation for services or expenses in connection with the establishing of the escrow. *Matter of Cohn,* 118 A.D.2d 15, 40, 503 N.Y.S.2d 759, 770 (1st Dept. 1986) citing *Entertainment & Amusements v Barnes,* 49 Misc 2d 316, 267 N.Y.S.2d 359 (Sup. N.Y. SpecialTerm, Onondaga County 1966). JUD. §475 requires that Anderson Kill segregate its legal invoices, identify the parties to whom it is providing legal services, and identify the nature of those services. It then must match those legal services to the

> commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, or the initiation of any means of alternative dispute resolution including, but not limited to, mediation or arbitration, or the provision of services in a settlement negotiation at any stage of the dispute

JUD. §475. Finally, Anderson Kill must be able to point to an affirmative award. Then, and only then, is Anderson Kill entitled to a charging lien and even in such case, only to the extent of legal services performed in that particular action (limited to the amount of the award in that action). Anderson Kill Petition alleges none of the foregoing. Indeed, Anderson Kill has done none of the foregoing and, thus, is not entitled to a charging lien on the Escrow Funds.

Turning to the Escrow Funds, specifically, and Anderson Kill's ovations to the contrary notwithstanding, the Escrow Funds—not even the one half alleged as belonging to George

9

Peters—are Sea Trade's or George Peters' to access.

> In most jurisdictions, such as New York, legal title to property placed in escrow remains with the grantor until the occurrence of the condition specified in the escrow agreement. (*Citation omitted*.) However, the deposit of property placed in escrow
>
>> creates in the grantee such an equitable interest in the property that upon full performance of the conditions according to the escrow agreement, title will vest at once in him. Hence, although pending full performance of the conditions, the legal title remains in the grantor, and is subject to ... the lien of a judgment against him to the extent of his interest therein, it has been held that such lien, obtained with notice of the escrow agreement, **is subject to the equity of the grantee**.
>
> (*Citation omitted*.) **The grantee's equity just described may not be diminished or eradicated by the grantor because a valid escrow requires an irrevocable delivery of property.** (*Citation omitted*.) Although the grantor retains a contingent right to repossess the property if the specified condition does not occur, **while the property is in the hands of the escrow agent it must be beyond the possession and control of the grantor**. If the grantor reserves the right to revoke the agreement, there is no escrow. (*Citation omitted*.) (*Emphasis added*.)

*Hooker Atlanta Corp. v. Hocker,* 155 B.R. 332, 339 (Bankr. S.D.N.Y. 1993); *Keene Corp. v. Acstar Ins. Co.* (*In re Keene Corp.*), 162 B.R. 935, 942 (Bankr. S.D.N.Y. 1994).

> *Both* parties to an escrow agreement own the escrow account for purposes of acts that an escrow agent undertakes in accordance with the terms of the escrow agreement.
>
> \* \* \* \* \* \*
>
> Once funds or documents are deposited with the escrow agent, the grantor loses control over the instruments, and the grantee does not obtain title until the condition is satisfied. (*Citation omitted*.) In a very real sense, **ownership is held in stasis, the instrument available neither to grantor nor grantee**, awaiting disposition by the agent in accordance with the terms of the agreement. Absent dissolution of the trust by consent of both parties, abandonment of a claim against the trust, violation of a condition by the grantee, or

10

compliance with the conditions, the escrow continues in effect. (*Citation omitted*.)

*99 Commercial Street. Inc. v. Goldberg,* 811 F. Supp. 900, 905–906 (S.D.N.Y. 1993); *Keene Corp. v. Acstar Ins. Co.* (*In re Keene Corp.*), 162 B.R. 935, 942 (Bankr. S.D.N.Y. 1994).

### E.  AS A MATTER OF LAW, ANDERSON KILL IS NOT ENTITLED TO A RETAINING LIEN

The Escrow funds are not funds passing through Anderson Kill in the normal course of business dealings with Sea Trade or George Peters.  They are escrow funds.  As such, Anderson Kill "did not receive the funds in [its] capacity as an attorney; they were received by [it] in [its] role as escrow agent.  Absent specific authorization to draw upon the funds for the payment of legal services claimed to be due [it], [it] was not entitled to a retaining lien on the fund.  (*Footnote omitted*.)" *United States v. J.H.W. & Gitlitz Deli & Bar, Inc.,* 499 F. Supp. 1010, 1015 (S.D.N.Y. 1980).

### F.  ANDERSON KILL HAS VIOLATED ITS FIDUCIARY DUTY TO CAPT. COUTSODONTIS BY ENTERING INTO THE SETTLEMENT AGREEMENT WITH SEA TRADE AND GEORGE PETERS AND THEN PETITIONING THIS HONORABLE COURT TO INVADE THE ESCROW FUNDS

The escrow agent's powers are limited by the terms of the escrow agreement (*citation omitted*).  The escrow agent becomes trustee of the parties who have a beneficial interest in the subject matter of his or her trust  (*citation omitted*) and as a result, the escrow agent becomes liable to his or her principals for damage proximately resulting from the breach of trust  (*citation omitted*).  The escrow agent as trustee owes "the highest kind of loyalty" (*citations omitted*). As trustee the escrow agent must make whole the party to which he

11

Case 1:09-cv-00488-LGS-HBP   Document 108   Filed 12/20/13   Page 17 of 20

> or she owes a fiduciary duty for any damages arising from the breach of the fiduciary's duty, and the appropriate measure of damages requires placing the beneficiary in the same position it would have been in had the wrong not occurred (*citation omitted*).
>
> The escrow agent must take whatever steps may be necessary to fulfill his or her duties properly. Here, defendants' duty was to strictly execute the terms of the escrow agreement (*citation omitted*), and failure to fulfill the duty entitled the third-party beneficiary of the subject matter of the escrow (herein [Capt. Coutsodontis]) to bring an action against the escrow agent without joining the promisor (herein [Anderson Kill]). (*Citation omitted*.)

*National Union Fire Ins. Co. v. Proskauer Rose Goetz & Mendelsohn,* 634 N.Y.S.2d 609, 615, 165 Misc. 2d 539, 546 (N.Y.Sup. 1994), aff'd 227 A.D.2d 106, 642 N.Y.S.2d 505 (1st Dept. 1996); *99 Commercial Street. Inc. v. Goldberg,* 811 F. Supp. 900, 906 (S.D.N.Y. 1993). "Any misappropriation of the deposited property is a conversion subjecting the escrowee to damages for his failure (*citation omitted*)." *In re Treiling,* 21 B.R. 940, 943 (Bkrtcy. E.D.N.Y. 1982)

## II. ANDERSON KILL'S SETTLEMENT AGREEMENT IS ATTEMPTING TO PAY GEORGE PETERS' LEGAL BILLS FROM ESCROW FUNDS OF WHICH GEORGE PETERS IS NOT AN OWNER

It is important to note that Capt. Coutsodontis, despite being an adjudicated 50% owner of Sea Trade (an adjudication which is currently on appeal before the Supreme Court of Athens, Greece) has not seen Petitioner's invoices for the purported services rendered; has not seen Petitioner's retention agreements; was not asked, nor ultimately participate in the fee litigation (and its attendant discovery) leading to Anderson Kill's settlement agreement and, thus, is not in a position to comment here and now as to the veracity of all of Anderson Kill's allegations as to the legal fees alleged due it. The foregoing notwithstanding, Petitioner now argues to this Honorable Court that

12

Anderson Kill's purported legal fees, which include representation of George Peters, individually, should be paid in total by Sea Trade out of the Escrow Funds. Not only does Anderson Kill not have a charging or retaining lien on the Escrow Funds, the law does not allow such payment by Sea Trade of George Peters' individual obligations.

In point of fact, in no fewer than four of the cases involving Capt. Coutsodontis, George Peters has appeared individually as a plaintiff:

>Before the New York State Supreme Court, County of New York:
>
>***George Peters*** *and Sea Trade Maritime Corporation v. Stelios Coutsodontis, General Maritime Enterprises Corporation, Attika International Navigation SA, Iason Shipping LTD., Pinto Shipping LTD., and Karteria Shipping LTD.,* Index No. 600206/09
>
>***George Peters*** *v. Stelios Coutsodontis, General Maritime Enterprises Corporation, Attika International Navigation SA, Iason Shipping LTD., Pinto Shipping LTD., and Karteria Shipping LTD.,* Index No. 600482/07
>
>*Sea Trade Maritime Corporation **and George Peters** v. Stelios Coutsodontis, Francesa Eleni Coutsodontis, General Maritime Enterprises Corp., Attika International Navigation SA, and Iason Shipping Ltd.,* Index No. 650511/09
>
>Before the United States District Court for the Southern District of New York
>
>*Sea Trade Maritime Corporation **and George Peters** v. Stelios Coutsodontis, Francesa Eleni Coutsodontis, General Maritime Enterprises Corp., Attika International Navigation SA, and Iason Shipping Ltd.,*   Civ. No.: Civil Action No.: 09 CIV 00488 (LOS)(HBP)

As clearly enunciated in *Rosenfeld v. Fairchild Engine & Airplane Corp.,* 309 N.Y. 168, 128 N.E.2d 291 (1955), the leading case on the subject in New York, while shareholders may "make reasonable and proper expenditures, subject to the scrutiny of the courts when duly challenged, from the corporate treasury for the purpose of persuading the stockholders of the correctness of their position and soliciting their support of policies which the directors believe, in

13

good faith, are in the best interests of the corporation,"[5] **shareholders cannot raid the corporate treasury for purely personal power contests**.[6] The cases involving Capt. Coutsodontis, including the case before this Honorable Court, have, as their goal, the removal of Capt. Coutsodontis as a shareholder of Sea Trade. This is the quintessential example of personal power play. Thus, to the extent that Anderson Kill is entitled to payment of its fees, it must look to George Peters, personally, for payment as Sea Trade funds cannot be used to fund personal power plays. Stated another way, Anderson Kill's invoices for services rendered must be scrutinized to make a determination as to what services were performed for whom so that Sea Trade, in which Capt. Coutsodontis has an ownership interest, is not further unfairly burdened by having to pay George Peters' individual power play.

---

[5] *Id.* at 173, 128 N.E.2d at 293. (*Emphasis added*.)

[6] *Id.*

## CONCLUSION

For all of the foregoing reasons, Capt. Coutsodontis respectfully submits that Anderson Kill's Petition dismissed, and that Capt. Coutsodontis be granted his costs, attorneys' fees, together with such further and other and different relief as this Court deems just and proper.

Dated: New York, New York
December 20, 2013

>POLES TUBLIN STRATAKIS & GONZALEZ, LLP
>*Attorneys for Defendant, STELIOS COUTSODONTIS*
>
>by:  s/ Scott R. Johnston
>Scott R. Johnston (SJ-0179)
>46 Trinity Place – Fifth Floor
>New York, New York   10006-2288
>Tel:  (212) 943-0110
>Fax:  (212) 269-9875
>sjohnston@polestublin.com