UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

SEA TRADE MARITIME CORPORATION, et al., :

Plaintiffs, : 09 Civ. 488 (LGS)(HBP)

-against- : REPORT AND RECOMMENDATION

STELIOS COUTSODONTIS, et al., :

Defendants. :
-----------------------------------X

APPLICATION OF ANDERSON KILL P.C. :

-----------------------------------X

PITMAN, United States Magistrate Judge:

TO THE HONORABLE LORNA G. SCHOFIELD, United States District Judge,

## I. Introduction

The law firm of Anderson Kill P.C. ("AK") formerly represented plaintiffs Sea Trade Maritime Corporation ("Sea Trade") and George Peters in this and several other actions brought in state and federal court; AK claims that when it withdrew from this action in 2012 it was owed legal fees for its work in all the actions that totaled more than $1 million.

By a document entitled "Petition to Enforce Attorney's Lien and Judgment," dated November 26, 2013 (Docket Item 101) (the "Petition"), AK seeks to enforce (1) a judgment entered in its favor against plaintiff Sea Trade for the unpaid fees and (2) a putative charging lien. For the reasons set forth below, I respectfully recommend that the Petition be denied for lack of subject matter jurisdiction.

## II. Facts

### A. Background

Sea Trade is a maritime shipping company that previously owned a bulk carrier vessel called the Athena; George Peters claims to be Sea Trade's attorney-in-fact, manager and a shareholder (Amended Complaint, dated Apr. 3, 2009 (Docket Item 4) ("Am. Compl."), ¶¶ 1, 34-36). Defendant Stelios Coutsodontis is Peters' uncle and claims to be at least the owner of 50% of Sea Trade's stock (Am. Compl. ¶¶ 13, 15).

AK represented Sea Trade and Peters in this action from its inception on January 16, 2009 until August 1, 2012 when AK withdrew on consent (see Complaint, dated Jan. 16, 2009 (Docket Item 1); Consent to Change Attorneys, dated July 23, 2012 (Docket Item 75)).

B. The Underlying Action

The Amended Complaint describes this as "an action related to a long standing blood feud between Coutsodontis and Mr. Peters over the management, control and ownership of Sea Trade" (Am. Compl. ¶ 12). At its core, the action arises out of a dispute between Coutsodontis and Peters concerning what percentage of Sea Trade's stock is owned by each. Sea Trade and Peters allege that the Court has subject matter jurisdiction over the underlying claims in this action based on (1) the Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and (2) supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (Am. Compl. ¶ 10). In this action, plaintiffs seek, among other things, "equitable relief ordering Coutsodontis to forfeit whatever ownership interest he may have in Sea Trade" (Am. Compl. ¶ 21) due to his allegedly "malicious and unlawful actions" (Am. Compl. ¶ 20).

Among the alleged actions detailed in the Amended Complaint are: (1) Coutsodontis' defamation of Peters "both individually and in his profession," including filing an action "accusing [Peters] of committing the crime of forging the power of attorney" and "distributing the defamatory statements to parties outside the action, including Hellenic War Risk Mutual

Association ("Hellenic") and other members of the shipping industry," which defamatory statements were "intended to destroy Peters' ability to operate in the shipping industry which, in turn, would make it impossible for Sea Trade to continue operations" (Am. Compl. ¶¶ 115-21); (2) Coutsodontis' 2008 ex parte petition for the arrest of the Athena in Spain, which the Spanish Court later determined "was wrongful and that Sea Trade was entitled to damages against Coutsodontis" (Am. Compl. ¶¶ 63-68) and (3) Coutsodontis' 1997 interference with Sea Trade's contractual relationship with its insurer, Hellenic, after Sea Trade brought a claim which caused Sea Trade "to incur extensive legal fees in pursuing various actions against Hellenic, which were made more difficult and complex by Coutsodontis' interference with the relationship" (Am. Compl. ¶¶ 107-14).

### C. The Fee Dispute and Other Relevant Actions

By its Petition, AK "seeks an order of this Court allowing distribution of $763,130.14 from an escrow account that holds approximately $2.3 million in funds owned by Sea Trade (the

'Escrow Account'), pursuant to the terms of a settlement between AK, Sea Trade and Peters" (Petition ¶ 2).[1]

The Escrow Account was established by an agreement between Coutsodontis and Peters, on behalf of Sea Trade, with AK as the escrow agent; it is not the product of any Order issued by this Court. The approximately $2.3 million in the Escrow Account are the proceeds from Sea Trade's 2009 sale of the Athena (Petition ¶ 3; Escrow Agreement, dated Jan. 27, 2009 and attached to the Affidavit of Edward J. Stein, Esq. in Support of Petition to Enforce Attorney's Lien and Judgment, dated Nov. 26, 2013, (Docket Item 102) ("Stein Aff."), as Exhibit B ("Escrow Agmt."); Memorandum in Opposition to Anderson Kill P.C.'s Petition to Enforce Attorney's Lien and Judgment, dated Dec. 20, 2013 (Docket Item 108) ("Def.'s Mem.") at 9).

The settlement on which AL bases its claim resolved a state court action captioned Anderson Kill & Olick, P.C. v. Sea Trade Maritime Corp. et al. (New York Supreme Court, New York County, Index No. 150306/2013) (the "Collection Action"), which

---

[1]AK asserts that "[t]his Court has full authority to determine and enforce charging liens under N.Y. Jud. Law Section 475 and the state court judgment and should not hesitate to do so, through the exercise of supplemental jurisdiction under 28 U.S.C. Section 1367" and cites the Court of Appeals' decision in Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 444 (2d Cir. 1998), as support (Petition ¶ 8).

AK initiated to collect attorneys' fees claimed to be in excess of $1.25 million, for its representation of Sea Trade and Peters over the course of approximately eleven years (Petition ¶¶ 1-2). The unpaid attorneys' fees that were the subject of the Collection Action were incurred as a result of AK's representation of Sea Trade and Peters in numerous state and federal court actions (Collection Action Complaint, dated Jan. 11, 2013, attached as Ex. H to the Stein Aff. ("Coll. A. Compl.") ¶ 16), including the following:

> **a.** Peters v. Coutsodontis, 21 Misc. 3d 1141, 875 N.Y.S.2d 823, 2008 WL 5146840 (Sup. Ct. N.Y. Co. Nov. 26, 2008), in which Peters sued Coutsodontis for libel and common law unfair competition alleging he "maliciously sought [Peters'] financial destruction by attempting to injure his business reputation" by initiating an action accusing Peters of forging powers of attorney signatures and then distributing the documents containing the defamatory allegations to shipping industry players including Hellenic. Peters v. Coutsodontis, supra, 2008 WL 5146840 at *1.
>
> **b.** Sea Trade Maritime Corp. v. Coutsodontis (Sup. Ct. N.Y. County, Index No. 653407/11), in which Sea Trade sought "to enforce a Spanish court's award of damages as against defendant [Coutsodontis] who improperly commenced a proceeding to arrest plaintiff's ship in Spain." Sea Trade Maritime Corp. v. Coutsodontis, 111 A.D.3d 483, 483, 978 N.Y.S.2d 115, 116 (1st Dep't 2013).
>
> **c.** Sea Trade Maritime Corp. v. Hellenic Mutual War Risks, (Sup. Ct. N.Y. County, Index No. 602648/02) and a related action, in which Sea Trade sought "to recover under a war risk insurance policy," Sea Trade Maritime Corp. v. Hellenic Mut. War Risks Ass'n (Bermuda) Ltd., 79 A.D.3d 601, 602, 914 N.Y.S.2d 27, 27 (1st Dep't

2010), appeal dismissed, 17 N.Y.3d 783, 952 N.E.2d 1079, 929 N.Y.S.2d 84 (2011), under which it "was insured against war risks by Hellenic" for the Athena vessel, "which sustained damage in May 1997 at Trincomalee, Sri Lanka, resulting from the explosion of a bomb allegedly planted by Tamil terrorists." Sea Trade Maritime Corp. v. Hellenic Mut. War Risks Ass'n (Bermuda) Ltd., 7 A.D.3d 289, 290, 776 N.Y.S.2d 255, 256 (1st Dep't), appeal dismissed, 3 N.Y.3d 766, 821 N.E.2d 974, 788 N.Y.S.2d 669 (2004).

**d.** Sea Trade Maritime Corp. v. Coutsodontis, 09 Civ. 0488 (LGS)(HBP) (S.D.N.Y.), the present in action, in which Sea Trade seeks to divest Coutsodontis of his alleged 50% ownership in Sea Trade.

**e.** Peters v. Lamplight Farms, Inc., 11 Civ. 3351 (JSR) (S.D.N.Y.), an unrelated action in which Peters sued for negligence and strict products liability (Amended Complaint, dated May 20, 2011 (11 Civ. 3351, Docket Item 5)). The action arises out of Peters' alleged ingestion of lamp oil that was allegedly packaged in a misleading manner.

The settlement agreement resolved all of AK's claims for fees in return for a payment of $750,000. The settlement agreement further provided that if the settlement amount was not paid by November 2, 2013, AK could enter judgment by confession for $750,000 plus interest (Settlement Agreement, dated Sept. 12, 2013, attached as Ex. J to Stein Aff., ¶¶ 1, 4). Because the settlement amount was not paid in a timely manner, AK caused a Judgment upon Confession to be entered against Sea Trade on November 22, 2013 in New York State Supreme Court in the aggre-

gate amount of $763,130.14[2] (Judgment upon Confession, dated Nov. 22, 2013, attached as Ex. A to Stein Aff.). It is this judgment that AK seeks to enforce by its Petition.

As set forth in AK's Petition to recover the fees in the present action, the obstacle to satisfying the judgment is the subject of this action, namely Coutsodontis' claim to an ownership stake in Sea Trade:

> AK makes this application herein because Coutsodontis is the Defendant in this action, but is not a party to the Collection Action. As detailed below, Sea Trade and Peters agreed to pay the settlement consideration solely from Peters' share of the Sea Trade Escrow Account, with no prejudice to the potential rights of Defendant Coutsodontis, whose claim to a 50% equity stake in Sea Trade is at issue in the present action. Peters has consented to disbursement of settlement proceeds from his share of the escrow funds. Coutsodontis has refused to do so, even though this disbursement would be solely from the share of the Sea Trade escrow funds otherwise due to Peters and would not affect any share of the escrow funds to which Coutsodontis might ultimately be entitled if he establishes an equity interest in the corporation.

(Petition ¶ 4) (internal citations omitted). Coutsodontis' counsel confirmed that his client opposed the payment in a letter to the Court:

> At its core, all of the disputes in which Petitioner [AK] represented Plaintiffs had, as their ultimate goal, not the welfare of Sea Trade but, rather, the

---

[2]This sum represents the settlement amount of $750,000 plus interest at the statutory rate of 9% from September 12, 2013 through the entry of judgment.

> personal power struggle of George Peters to strip Capt. Coutsodontis of his ownership interest in Sea Trade. Indeed, the matter before this Honorable Court prays for that very goal. Petitioner, however, ignores and evades several issues, the first of which is fatal to its Petition.
>
> . . . Petitioner now argues to this Honorable Court that Petitioner's purported fees should be paid by Sea Trade. Under these circumstances, the law does not allow such payment by Sea Trade. As clearly enunciated in . . . the leading case on the subject in New York, . . . **shareholders cannot raid the corporate treasury for purely personal power contests.** Thus, to the extent that Petitioner is entitled to payment of its fees, it must look to George Peters, personally, for payment.

(Letter to the Honorable Lorna G. Schofield from Scott R. Johnston, Esq., dated Dec. 3, 2013 (Docket Item 103), at 1-2 (footnote omitted, first emphasis added); see Def.'s Mem. at 13-14).

## III. Analysis

A threshold issue that the parties ignore almost entirely in their submissions is whether the Court has subject matter jurisdiction to entertain AK's Petition.

An analysis of the Court's subject matter jurisdiction must begin with recognition of the following principles: (1) federal courts are courts of limited jurisdiction, (2) the presumption in any civil case is that a federal court lacks jurisdiction and (3) the party seeking relief bears the burden of

establishing jurisdiction. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). In addition "[f]ederal courts have a duty to inquire into their subject matter jurisdiction sua sponte, even when the parties do not contest the issue." D'Amico Dry Ltd. v. Primera Maritime (Hellas) Ltd., No. 11-3473-cv, 2014 WL 2609648 at *8 (2d Cir. June 12, 2014).

Although a federal court must give full faith and credit to a state court's judgment, 28 U.S.C. § 1738, a federal court does not necessarily have jurisdiction to enforce state court judgment. "[A] a federal court cannot enforce a state--court judgment without first independently establishing its own jurisdiction over the subject matter and parties." Threlkeld v. Tucker, 496 F.2d 1101, 1104 (9th Cir. 1974), citing United States v. Potter, 19 F.R.D. 89 (S.D.N.Y. 1956) (Bicks, D.J.) and United States v. Fairbank Realty Corp., 50 F. Supp. 373 (E.D.N.Y. 1943), aff'd on other grounds sub nom., Rottenberg v. United States, 142 F.2d 151 (2d Cir. 1944); accord Bronkovic v. Sandholm, CV 95 3134 (RJD), 1996 WL 743346 at *1 (E.D.N.Y. Dec. 6, 1996).[3]

---

[3]Fed.R.Civ.P. 69, which incorporates by reference the enforcement mechanisms available under the law of the state in which a federal court sits, is applicable to federal judgments only. Bronkovic v. Sandholm, supra, 1996 WL 743346 at *1; Pierre v. Bd. of Comm'rs of Port of New Orleans, No. 92-2607, 1993 WL 54397 at *3 (E.D. La. Feb. 18, 1993); United States v. Potter, supra, 19 F.R.D. at 90; 12 Charles A. Wright, Arthur R. (continued...)

It is well settled in this Circuit that a district court has supplemental jurisdiction to resolve fee disputes between and attorney and his or her client arising out of an action over which the court has subject matter jurisdiction. Levitt v. Brooks, 669 F.3d 100, 103 (2d Cir. 2012), quoting Chesley v. Union Carbide Corp., 927 F.2d 60, 64 (2d Cir. 1991); Alderman v. Pan Am World Airways, 169 F.3d 99, 101-02 (2d Cir. 1999); Itar-Tass Russian News Agency v. Russian Kurier, Inc., supra, 140 F.3d at 447. As explained in Kleiman v. O'Neill, 03-CV-3829 (ERK), 2008 WL 5582453 at *2 (E.D.N.Y. Dec. 30, 2008) (Report & Recommendation):

> Supplemental jurisdiction, governed by 28 U.S.C. § 1367, allows a court to hear disputes that are part of the "same case and controversy" as the underlying action. See Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335-36 (2d Cir. 2006). A fee dispute arising out of an attorney's representation of a party in federal court has been held to present a "common nucleus of operative fact" that supports the exercise of supplemental jurisdiction. See, e.g., Achtman, 464 F.3d at 336 (stating that fee disputes are the proper subject of supplemental jurisdiction due to the "clear hallmarks of a common nucleus of operative fact."). A federal court thus has the power to hear such a dispute, on the theory that the court has "obtained total familiarity with the subject matter of the [underlying] suit and the professional services of the moving parties thereon and of the virtual totality of all the

[3](...continued)
Miller, Mary K. Kane, Richard L. Marcus, Adam N. Steinman, Federal Practice & Procedure § 3011 at 141 (2d ed. 1997) ("Rule 69 has no application to state court judgments.").

> compensation arrangements contended for and disputed." See id. (quoting Itar-Tass Russian News Agency, et al., v. Russian Kurier, Inc., 140 F.3d 442, 445 (2d Cir. 1998)).

Thus, this Court clearly has subject matter jurisdiction to address AK's claim for fees arising out of this action. The jurisdictional issue in this case is complicated, however, by the fact that the judgment in the Collection Action satisfies not only claims for fees arising out of this action, but also satisfies claims for fees arising out of several other actions.

The fact that the fee dispute arises out of other actions does not automatically deprive the court of subject matter jurisdiction so long as all the actions arise out of a common nucleus of operative facts. For example, in Cluett, Peabody & Co., Inc. v. CPC Acquisition Co., Inc., 863 F.2d 251 (2d Cir. 1988), the law firm that represented one of the parties -- Paul Bilzerian -- in a corporate takeover litigation sued for its fees. Two actions gave rise to the fee dispute. Bilzerian commenced one of the actions in the Southern District of New York while the target corporation commenced the second action in the Eastern District of California. Although it was the first filed, the California action was transferred to the Southern District of New York where it was consolidated with the action pending here.

The District Court concluded that it had subject matter jurisdiction with respect to the fees incurred in both actions, and the Court of Appeals affirmed, stating:

> Bilzerian contends, however, that even if the lower court properly invoked its ancillary jurisdiction, the scope of that jurisdiction was impermissibly broad. Specifically, he asserts that ancillary jurisdiction may be exercised only with respect to services rendered in the underlying litigation, citing Pay Television of Greater New York, Inc. v. Sheridan, 766 F.2d 92, 94 (2d Cir. 1985), and National Equip. Rental, 323 F.2d at 786-87. We disagree. Pay Television requires only that the fees "arise from the underlying action" rather than "work done on unrelated actions." 766 F.2d at 94. National Equip. Rental precluded the exercise of ancillary jurisdiction as to "some eight state court actions and other litigated matters . . . unrelated to the pending litigation." 323 F.2d at 787.
>
> Here, on the contrary, both the litigation below and all the services for which compensation was sought related to the Cluett takeover. The district court's exercise of ancillary jurisdiction was accordingly well within its discretion. Cf. Petition for Rosenman Colin Freund Lewis & Cohen, 600 F. Supp. at 531 (court's ancillary power extends to disputes that arise after the initial litigation is no longer before the court) (citing Application of Kamerman, 278 F.2d 411 (2d Cir. 1960)). It would have been wasteful and duplicative, under the circumstances, to require a bifurcated procedure in which part of the fee dispute would be resolved by a federal court in Manhattan and another part by a state court in Sacramento, California.

Cluett, Peabody & Co., Inc. v. CPC Acquisition Co., Inc., supra, 863 F.2d at 256-57.

Thus, the court's subject matter jurisdiction over a fee dispute is not ipso facto defeated by the fact that the fees

were incurred in other actions so long as the other actions can be fairly characterized as part of the same case or controversy and as arising out of a common nucleus of operative facts.

The fee claims that underlie the judgment in issue here, however, do not all arise out of the same "operative facts" no matter how broadly that term is construed. As noted above, the Collection Action was based on AK's representation of Sea Trade and Peters in several different actions. One of those actions was Peters v. Lamplight Farms, Inc., 11 Civ. 3351 (JSR) (S.D.N.Y.) in which Peters alleged that he was injured when he accidentally ingested lamp oil that was packaged in a misleading way (Amended Complaint, dated May 20, 2011 (11 Civ. 3351, Docket Item 5)). Cousodontis was not a party to that action nor was there any issue in the case concerning the ownership of Sea Trade. Two of the other actions that gave rise to the fees sought in the Collection Action involved claims by Sea Trade "to recover under a war risk insurance policy," Sea Trade Maritime Corp. v. Hellenic Mut. War Risks Ass'n (Bermuda) Ltd., supra, 79 A.D.3d at 602, 914 N.Y.S.2d at 27, for damages the Athena suffered as a result of a bomb allegedly planted by Tamil terrorists. Sea Trade Maritime Corp. v. Hellenic Mut. War Risks Ass'n (Bermuda) Ltd., supra, 7 A.D.3d at 290, 776 N.Y.S.2d at 256. Again, Cousodontis was not a party to that action nor was there

any issue in the case concerning the ownership of Sea Trade. Even if I were to construe the subject matter of this action broadly and as including all aspects of the dispute between Peters and Coutsodontis for control of Sea Trade, Peters' personal injury action and Sea Trade's coverage dispute with its insurer simply cannot be said to arise out of the same facts as this action.

At oral argument, AK suggested that if I concluded there was no subject matter jurisdiction with respect to the judgment because the Collection Action included unrelated litigations, some portion of the judgment could be allocated to the fees arising out of this action and the judgment enforced as to that portion. This argument fails because, as a matter of law, AK no longer has a claim for fees related to this action independent of the Collection Action judgment. Because judgment in AK's favor was entered in the Collection Action, AK's claim for fees arising out of this action is now merged in the Collection Action judgment and extinguished by that judgment so that only the judgment debt survives. As explained by the Honorable Leonard B. Sand, United States District Judge, in Orix Credit Alliance, Inc. v. Horten, 965 F. Supp. 481, 485 (S.D.N.Y. 1997):

> Under the doctrine of merger, "[w]hen a valid and final personal judgment is rendered in favor of the plaintiff . . . [t]he plaintiff cannot thereafter

> maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment." Restatement (Second) of Judgments § 18 (1980). Thus, "[plaintiff's] original claim is extinguished and rights upon the judgment are substituted for it." Id. cmt. a. The doctrine of merger is based primarily on the policy of preventing multiple lawsuits based on the same cause of action -- thus, it is "closely related" to the doctrine of res judicata. Jay's Stores, Inc. v. Ann Lewis Shops, Inc., 15 N.Y.2d 141, 256 N.Y.S.2d 600, 603, 204 N.E.2d 638, 641 (1965).

Accord City of Memphis v. United States, 97 U.S. 293, 296 (1877) ("In this case the relator recovered his judgment against the city on the 16th of March, 1875. Into that judgment his contract was merged, and it no longer had any legal existence."); Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 102 (2d Cir. 2004) ("The general rule under New York and federal law is that a debt created by contract merges with a judgment entered on that contract, so that the contract debt is extinguished and only the judgment debt survives."); Kotsopoulos v. Asturia Shipping Co., 467 F.2d 91, 95 (2d Cir. 1972) ("Once a claim is reduced to judgment, the original claim is extinguished and merged into the judgment; and a new claim, called a judgment debt, arises."); United States v. Solon, 294 F. Supp. 880, 882 (E.D.N.Y. 1968) ("Whether the underlying substantive theory in a civil action is valid or invalid, a money judgment obtained from a competent court operating in accordance with minimum standards of proce-

dural due process extinguishes and supercedes the original claim.") (Weinstein, D.J.);[4]

Finally, I note that the dismissal of AK's petition does not leave it without a remedy. AK has a what appears to be a valid judgment for its fees entered by the New York State Supreme Court and can, therefore, invoke all the enforcement tools provided in New York's Civil Practice Law and Rules in New York's courts.[5]

## IV. Conclusion

Accordingly, for all the foregoing reasons, I respectfully recommend that AK's Petition to Enforce Attorney's Lien and Judgment (Docket Item 101) be denied for lack of subject matter jurisdiction.

## V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have

---

[4]This same rationale also precludes AK from being awarded a charging lien in this action. Having reduced its claim for fees to a judgment in the Collection Action, it cannot re-litigate the claim here.

[5]Because I conclude that the Court lack subject matter jurisdiction to consider AK's fee application, I express no opinion as to whether the Petition is the proper procedural vehicle to enforce a state court judgment in federal court.

fourteen (14) days from receipt of this Report to file written objections. See also Fed. R. Civ. P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Lorna G. Schofield, United States District Judge, 40 Centre Street, Room 201, New York, New York 10007 and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Schofield. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated: New York, New York
July 30, 2014

Respectfully submitted,

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Edward J. Stein, Esq.
Anderson Kill, P.C.
1251 Avenue of the Americas
New York, New York 10020

Jason H. Berland, Esq.
Beys, Stein & Mobargha LLP
405 Lexington Avenue
New York, New York 10174

Scott R. Johnston, Esq.
John G. Poles, Esq.
Poles Tublin Stratakis
Gonzalez & Weichert, LLP
46 Trinity Place
New York, New York 10006

Peter Skoufalos, Esq.
Brown Gavalas & Fromm LLP
355 Lexington Avenue
New York, New York 10017