UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SEA TRADE MARITIME CORPORATION, and
GEORGE PETERS,

               Plaintiffs;          Index No. 09 Civ.488 (BSI) (HBP)

STELIOS COUTSODONTIS, FRANCESA
ELENI COUTSODONTIS, GENERAL MARITIME
ENTERPRISES CORPORATION, ATTIKA
INTERNATIONAL NAVIGATION SA. AND
IASON SHIPPING LTD.

               Defendants.

---

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS UNDER FEDERAL RULE 37

TABLE OF CONTENTS

page

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      Analysis of the Amended Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      Analysis of Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

   1.   THERE HAS BEEN NOT FINDING OF THE REQUISITE
       BAD FAITH, MALICE, OR GROSS NEGLIGENCE
       TO ALLOW THE AWARDING OF DAMAGES
       FOR WRONGFUL ARREST. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          a.   The New Orleans Arrest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          b.   The Tarragona, Spain Arrest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          c.   The Arrest Was Effected with the Advice of Competent Counsel,
              Honestly Sought and Acted upon in Good Faith. . . . . . . . . . . . . . . . . . . . 13

   II.  "RELEVANCE" OF MATERIAL SOUGHT IN DISCOVERY
       SHOULD BE "FIRMLY APPLIED". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

   III.  PLAINTIFFS ARE NOT ENTITLED TO ATTORNEY FEES. . . . . . . . . . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

                                                                                                                       page

**Cases**

*Cardinal Shipping Corp. v. M/S Seisho Maru*,
    744 F.2d 461 (5th Cir. 1984).............................................. 12

*Collens v. City of New York*,
    222 F.R.D. 249 (S.D.N.Y. 2004).......................................... 14

*Frontera Fruit Co. v. Dowling*,
    91 F.2d 293 (5th Cir. 1937)............................................ 11, 13

*Herbert v. Lando*,
    441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed. 2d 115 (1979)....................... 14

*Noritake Co., Inc. v. M/V Hellenic Champion*,
    627 F.2d 724 (5th Cir. 1980).............................................. 12

*Oppenheimer Fund, Incorporated. v. Sanders*,
    437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed. 2d 253 (1978)....................... 14

*Platoro Ltd., Inc. v. Unidentified Remains of a Vessel, Her Cargo, Apparel,*
*Tackle, and Furniture, in a Cause of Salvage, Civil and Maritime*,
    695 F.2d 893 (5th Cir. 1983).............................................. 12

**PRELIMINARY STATEMENT**

Defendants Stelios Coutsodontis and Francesca Eleni Coutsodontis (hereinafter, collectively, '*Defendants*') have responded to PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT STELIOS COUTSODONTIS AND FRANCESCA ELENI COUTSODONTIS (hereinafter '*Plaintiffs' Document Request*') by serving Plaintiffs with certain documents requested together with their objections to the production of certain other requested documents.[1] In order to more fully understand and properly frame Defendants' objections, it is necessary to examine Plaintiffs' Amended Complaint[2] and the proceedings heretofore had in this case.

**RELEVANT FACTS**

The instant action was commenced by Plaintiffs' 156 paragraph Amended Complaint in 2009.[3] The Amended Complaint makes bountiful use of such unsupported and unsupportable terms as 'illegal,' 'unlawful,' 'malice,' 'vendetta,' 'interference,' and numerous others in an attempt to create the illusion of open hostility by Defendants against Plaintiffs. In point of fact, there is no hostility on the part of Defendants directed towards Plaintiffs, nor has any such hostility ever been supported by Plaintiffs or anyone else. Simply, on or about January 7, 2003, Defendant Stelios Coutsodontis inherited 250 shares of Sea Trade Maritime Corporation (hereinafter '*Sea Trade*') stock. Plaintiff George Peters promptly informed Capt. Coutsodontis, through George Peters' then

---

[1] See AFFIRMATION OF JOHN G. POLES, affirmed September 5, 2014 (hereinafter '*Poles 9-5-14 Affirmation*'), Exhibit 1 thereto (a copy of Defendants Response to Plaintiffs' Document Request).

[2] See POLES 9-5-14 AFFIRMATION, Exhibit 2 thereto (a copy of Plaintiffs' Amended Complaint).

[3] *Id.*

1

counsel,[4]. "In all events, **my client** [George Peters] **will not accept your client** [Capt. Coutsodontis] **as a shareholder** ... **they will not operate the corporation with your client as a 50% shareholder**. (*Emphasis added*.)[5]

In order to protect his interests in Sea Trade and its asset, the ocean-going vessel M/V ATHENA, and **on the advice of counsel,** Capt. Coutsodontis authorized the vessel arrest in Spain and, later, in New Orleans. In both instances, there was no finding by the court of malice, bad faith, or gross negligence on the part of Capt. Coutsodontis—the mandated precursor to the finding of any liability when effecting the maritime arrest of a vessel.[6]

*Analysis of the Amended Complaint*

Reduced to its essentials, the Amended Complaint sounds in three causes of action. **The first cause of action** is based upon an allegation of Capt. Coutsodontis' 'fraudulent' claim of ownership of Sea Trade stock and that he caused damage to Sea Trade, most specifically by arresting the vessel in Spain and New Orleans. **The second cause of action** is based upon an allegation of Capt. Coutsodontis' 'fraudulent' claim of ownership of Sea Trade stock and his alleged "illegal" arrests of the vessel which Plaintiffs' believe requires the forfeiture of his shares of Sea Trade. **The third cause of action** is based upon an allegation of Capt. Coutsodontis' 'fraudulent' claim of ownership of Sea Trade stock and his alleged "illegal" arrests of the vessel which Plaintiffs believe

---

[4] Newman & Cahn, LLP, One Old Country Road – Suite 295, Carle Place, New York 11514-1889. See POLES 9-5-14 AFFIRMATION, Exhibit 3 thereto (a copy of the Newman & Cahn 8-26-04 letter).

[5] *Id.* at pg. 2.

[6] We note here that under Spanish civil procedure, the arresting party is always liable for the operating costs of the vessel while it is under arrest. Such costs are not a finding of malice, gross negligence, or bad faith nor was there any such finding by the Spanish court.

2

represents a breach of his fiduciary duty to Sea Trade and that he should forfeit his shares of Sea Trade. Thus, based upon the allegations of the Amended Complaint, Plaintiffs' claims are based upon the alleged 'fraudulent' claim of ownership of Sea Trade stock. Indeed, Plaintiffs describe Capt. Coutsodontis' ownership of Sea Trade stock the "ultimate issue" at page 9 of their MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS UNDER FEDERAL RULE OF CIVIL PROCEDURE 37 (hereinafter '*Moving Memorandum*'). It is upon this claim of stock ownership that Capt. Coutsodontis arrested the vessel thereby allegedly interfering with the operations of Sea Trade.

By Plaintiffs' own admission, their allegations of Capt. Coutsodontis' 'fraudulent' claim of ownership of Sea Trade stock is without merit. At Paragraph 15 of the Amended Complaint, Plaintiff admits that "the Greek Court has entered a preliminary determination that Coutsodontis inherited 250 shares of Sea Trade stock. This Greek decision is not final and is subject to appeal."[7] Indeed, the alleged "preliminary determination" was the unanimous decision of the **three-judge panel** of the Multi-Member Court of First Instance of Athens [Greece], Decision 1391-2009[8] that Capt. Coutsodontis was and is the lawful owner of 250 bearer shares (50%) of the stock of Sea Trade. This decision was appealed and upheld in Decision 1391-2009 of the **unanimous three-judge panel** of the Court of Appeals of Athens [Greece], Decision 4184-2011,[9]

---

[7] See POLES 9-5-14 AFFIRMATION, Exhibit 2 thereto (a copy of Plaintiffs' Amended Complaint), ¶15.

[8] See POLES 9-5-14 AFFIRMATION, Exhibit 4 thereto (a copy of the Greek Trial Court Decision).

[9] See POLES 9-5-14 AFFIRMATION, Exhibit 5 thereto (a copy of the Greek Appellate Court Decision).

which decision, pursuant to Greek law, **constitutes *res judicata*.**[10] And while this decision is also being appealed to the Greek Supreme Court, Capt. Coutsodontis' ownership nonetheless has since been recognized by the New York State Supreme Court in an action in which both Plaintiffs were defendants and actively participated.[11]

In an action captioned *Stelios Coutsodontis v. Sea Trade Maritime Corporation, George Peters, Anna Peters, and Colonial Navigation Co., Inc.,* Index No. 653956/2012, the court held that Stelios Coutsodontis

> **has established prima facie evidence of ownership of stock of Sea Trade**, as judicially declared by the Multi-Member Court of First Instance of Athens [Greece], Decision 1391-2009, and upheld on appeal by the Court of Appeals of Athens [Greece], Decision 4184-2011. Petitioner has provided copies of the Greek court decrees and the sworn affidavit of Nikolaos Skorinis, Esq., in which he avers that "[a]ny filing of an appeal before the Supreme Court of Greece by Anna Peters does not stay, delay, suspend or otherwise affect **the unanimous Multi-Member [Court] of First Instance of Athens decision, which constitutes, pursuant to Greek law, res judicata**."
>
> In their opposition, respondents **Sea Trade, George Peters, and Anna Peters do not dispute the existence of these Greek court decrees declaring Petitioner owner of the stock**, but rather contend in a conclusory fashion, without more, that decisions are not authenticated, not final, and not binding upon Sea Trade and George Peters. **These arguments are unavailing and unsupported based on the record before the Court.** (*Emphasis added*.)[12]

---

[10] See POLES 9-5-14 AFFIRMATION, Exhibit 6 thereto (a copy of the Judge Rakower's Decision and Order).

[11] *Id.*

[12] *Id.* It should be noted here that the Greek courts equated Stelios Coutsodontis' 250 shares of stock to a 50% ownership interest in Sea Trade (and, concomitantly, Anna Peters' 50 shares of stock to a 10% ownership interest in Sea Trade) based upon Anna Peters' representations to the Greek courts that she already controlled 200 shares of Sea Trade. However, the only ownership of Sea Trade stock that can be conclusively established, indeed, tested before any court, is that of

4

*Analysis of Discovery*

Defendants do not dispute that Plaintiffs' former counsel had served discovery requests on Defendants. Nor do Defendants deny that discovery was stayed until July 23, 2013 and that a new scheduling order was issued on September 16, 2013. Unsaid in the narrative of Plaintiffs' Moving Memorandum is that on or about February 18, 2011 Defendants served notices of depositions, interrogatories, and requests for document production on Plaintiffs. Unlike Plaintiffs, upon the lifting of the stay, Defendants pursued discovery from Plaintiffs, but none was produced. Unsatisfied, Defendants raised the issue of the unsatisfied discovery requests with the Court during the March 20, 2014 scheduling conference. The Court directed Plaintiffs to comply with Defendants' requests which ultimately produced the purported ten (10) boxes of documents.[13] Such pursuit of discovery by Plaintiffs is not pled or supported in Plaintiffs' Moving Memorandum. Importantly, there is no evidence of recalcitrance or resistance by Defendants in responding to Plaintiffs' discovery. Indeed, Defendants even agreed to a joint request to the Court to extend discovery six weeks so that Plaintiffs' former counsel could complete its discovery of Defendants. Plaintiffs never made the request to the Court—not even at the March 20, 2014 scheduling conference. It is inequitable and disingenuous to blame Defendants for Plaintiffs' own lack of pursuit of its discovery requests, either informally or formally.

The inequity is all the more pointed when viewed through the lens of what was

---

Stelios Coutsodontis' 250 shares and Anna Peters' 50 shares. **As a result, Stelios Coutsodontis has an 83.33% ownership interest in Sea Trade and Anna Peters has a 16.67% ownership interest in Sea Trade**.

[13] Defendants note for the record that Plaintiffs have admitted that this was a "document dump' in violation of Fed. R. Civ. Proc. 34(b).

discovered in Plaintiffs' documents production—that in 1998[14] and 2002 (six months before her death) **Athena Eliades owned all 500 shares of Sea Trade.**[15]

In 1998, Robert V. Corbett of the New York law firm of Cardillo & Corbett represented Sea Trade in connection with the $2,500,000.00 refinancing of the M/V ATHENA with the First National Bank of Maryland in connection with repairs to the vessel.[16] **Those corporate documents disclose that Athena Eliades was the sole shareholder of Sea Trade in 1998.** [17]

**In 2002, Sea Trade again refinanced the M/V ATHENA, this time with AllFirst Bank, N.A.** (in the amount of $1,385,000.00).[18] The corporate work was again handled by the New York law firm of Cardillo & Corbett. Athena Eliades is again specifically identified as the **sole shareholder** of Sea Trade. Importantly, the 2002 refinancing was a mere six months prior to Athena Eliades death on January 13, 2003.[19]

Significantly, Anna Peters, George Peters' mother and Stelios Coutsodontis' sister, witnessed and attested both the May 15, 2002 Shareholders' Written Consent, wherein it stated "Athena Eliades, **the owner of all the issued and outstanding shares of Sea Trade** Maritime

---

[14] See POLES 9-5-14 AFFIRMATION, Exhibit 7 thereto (copies of the 1998 Bank Refinancing Documents).

[15] See POLES 9-5-14 AFFIRMATION, Exhibit 8 thereto (copies of the 2002 Bank Refinancing Documents).

[16] See POLES 9-5-14 AFFIRMATION, Exhibit 7 thereto (copies of the 1998 Bank Refinancing Documents).

[17] *Id.* at CN772 (¶5) and CN782 (¶1).

[18] See POLES 9-5-14 AFFIRMATION, Exhibit 8 thereto (copies of the 2002 Bank Refinancing Documents).

[19] See POLES 9-5-14 AFFIRMATION, Exhibit 2 thereto (a copy of Plaintiffs' Amended Complaint), ¶51.

Corp.," (*emphasis added*)[20] and the May 21, 2002 Negative Pledge Agreement wherein it stated "ATHENA ELIADES (the "Shareholder")" and "**The Shareholder is the owner of all of the issued and outstanding capital stock of the Borrower** [Sea Trade]." (*Emphasis added*.)[21] Further, George Peters also not only actively participated in, but coordinated and implemented the refinancing with the help of Sea Trade's counsel, Cardillo & Corbett.[22] Finally, while Cardillo & Corbett represented Sea Trade during both refinancings, in the 2002 refinancing, Christophil B. Costas, Esq. submitted an attorney opinion letter to AllFirst Bank wherein, "as counsel to Seatrade Maritime Corp." he stated

> In rendering this opinion, we have examined, among other things, executed originals or copies certified to our satisfaction of the following documents:
> \* \* \* \* \*
> c. **the Negative Pledge**.
> \* \* \* \* \*
> We have also examined the Articles of Incorporation, Bylaws, **shareholders' and directors' resolutions**, ... and such **certificates of the officers or representatives of the Borrower** as we have deemed relevant and necessary ... [23]

Thus, Athena Eliades declared and attested to AllFirst Bank that she was the **sole shareholder** of Sea Trade; **Anna Peters witnessed and attested that Athena Eliades was the sole shareholder of Sea Trade;** and Cardillo & Corbett, likewise, represented to the bank that it had reviewed the loan documents, including those documents wherein Athena Eliades and Anna Peters

---

[20] See POLES 9-5-14 AFFIRMATION, Exhibit 8 thereto (copies of the 2002 Bank Refinancing Documents), pg. CN1311.

[21] *Id.* at pg. CN1438, ¶¶(1) & (B) respectively and pg. CN1439.

[22] *E.g. Id.* at pgs. CN1440, CN1441, and CN1554.

[23] *Id.* at pgs. CN1644–1648.

7

attested to Athena Eliades being the sole shareholder of Sea Trade.

Based on the foregoing, the allegations in the Amended Complaint that, at the time of her death, Athena Eliades owned only 300 shares of Sea Trade stock, with the remaining shares belonging to George Peters and his mother, Anna Peters, are false.[24] Furthermore, George Peters' allegation that he took over the control of Sea Trade through a broad-based power-of-attorney is also inaccurate.[25] First, there is nothing in the corporate records produced by Plaintiffs authorizing the issuance of a "broad power of attorney" 22 years ago or at any time since to anyone, let alone George Peters. However, even if we were to assume, *arguendo,* that such board power-of-attorney was valid in 1992 when it was allegedly issued, it became null and void when Athena Eliades, the sole shareholder of Sea Trade died in 2003. The purported power-of-attorney was never renewed. Hence, it is George Peters (and Anna Peters) who are making false allegations and using Sea Trade as a facade to perpetrate these claims. It is George Peters (and Anna Peters) who have no clean hands in this case and their authority to enforce discovery in this action is nonexistent.

What is now crystal clear is that upon Athena Eliades' death, she willed 250 shares of Sea Trade stock to Capt. Coutsodontis and 50 shares of Sea Trade stock to Anna Peters, making

---

[24] "37. On or about July 24, 1994, Elias [Eliades] cancelled the orginal 475 shares and redistributed them as follows: 150 shares to Anna Peters, 25 shares to Mr. [George] Peters and Mr. Eliades maintained the remaining 300 shares of Sea Trade.
    38. After this transfer, Mr. [George] Peters held 50 shares, Anna Peters held 150 shares and Mr. Eliades held 300 shares of Sea Trade.
    39. Upon Mr. Eliades'death in September of 1996, Mrs. Eliades inherited his 300 sahres of Sea Trade."
See POLES 9-5-14 AFFIRMATION, Exhibit 2 thereto (a copy of Plaintiffs' Amended Complaint), ¶¶37–39.

[25] See POLES 9-5-14 AFFIRMATION, Exhibit 2 thereto (a copy of Plaintiffs' Amended Complaint), ¶34.

the ownership of Sea Trade 83.3% in Capt. Coutsodontis and 16.7% in Anna Peters. **George Peters has no ownership interest and had no ownership interest at the time he commenced the instant action**—this is confirmed by an analysis of the corporate books.[26] Further, George Peters cannot rely upon the purported 1992 power-of-attorney as there is no corporate support for its issuance or its continuation after the death of Sea Trade's sole shareholder, Athena Eliades, in 2003.[27] Indeed, Sea Trade had been operated in violation of TITLE 5 ASSOCIATIONS LAW OF THE 1976 LIBERIAN CODES OF LAWS REVISED (hereinafter '*Associations Law*')[28] as well as its own By-Laws which, at Section 2. require an annual meeting of shareholders at 2:00 P.M., July 8th in each year following its formation.[29] In other words, there was no fraud on the part of Capt. Coutsodontis in claiming stock ownership in Sea Trade or his attempting to protect his interests therein. He is both a *de facto* and a *de jure* shareholder in Sea Trade. Indeed, it is George Peters who, through his unsupportable

---

[26] See POLES 9-5-14 AFFIRMATION, Exhibit 9 thereto (a copy of Sea Trade's corporate book). This Honorable Court should also note that NOT included with the corporate documents produced:
- **19 years** of Minutes of Annual Meeting of Stockholders (for the years **1995 to date**);
- **19 years** of Minutes of Annual Meeting of Board of Directors (for the years **1995 to date**);
- Copies of Share Certificates Numbers 3 – 10;
- **22 years** of **financial records** detailing, without limiation, the worldwide earnings, profits, and expenses of Sea Trade; and
- **22 years** of complete sets of all tax filings for Sea Trade.

[27] *Id.*

[28] By way of example, and without limitation, Sea Trade (i) failed to keep correct and complete books and records of account, as well as failing to keep minutes of all meetings (Associations Law §8.1), (ii) failed to hold annual elections of directors (Associations Law §7.1.2.), (iii) failed to hold annual shareholders meetings (Associations Law §7.7.1.), (iv) failed to allow Capt. Coutsodontis to vote (Associations Law §7.11.), and (v) failed to allow the corporation to be managed by the board of directors (Associations Law §6.1.). See also POLES 9-5-14 AFFIRMATION, Exhibit 12 thereto (Associations Law).

[29] See POLES 9-5-14 AFFIRMATION, Exhibit 9 thereto (a copy of Sea Trade's corporate book), By-Laws, Section 2.

Amended Complaint and harassing fishing expedition discovery, is making false claims.

Finally, when the Court agreed to reopen discovery to a limited extent, it was intended that Plaintiffs' would limit their requests to germane and relevant discovery. The Court, in its order, did not allow Plaintiffs responses to all of their requests but, instead, allowed Plaintiffs the right to move to compel so that the requested discovery sought could be reviewed by the Court for reasonableness and relevancy. Defendants have produced the documents for those requests which they have deemed germane and relevant to the Amended Complaint and prepared specific objections to those requests which they have deemed to have nothing to do with the issues in the Amended Complaint for this Honorable Court's review and make a determination.

## LEGAL ARGUMENT

The facts are clear and unequivocal—Capt. Coutsodontis has not only acted in good faith, but is both the *de facto* and *de jure* owner of 250 shares of stock of Sea Trade (representing a 83.3% ownership interest). Plaintiffs' allegations of fraudulent ownership of Sea Trade stock are without merit.

Plaintiffs' allegations that Capt. Coutsodontis' arrests of the vessel were illegal, thereby necessitating the awarding of damages, is also misplaced and meritless.

### 1. THERE HAS BEEN NOT FINDING OF THE REQUISITE BAD FAITH, MALICE, OR GROSS NEGLIGENCE TO ALLOW THE AWARDING OF DAMAGES FOR WRONGFUL ARREST

The gravamen of the right to recover damages for wrongful seizure or detention of vessels is the **bad faith**, **malice**, or **gross negligence** of the offending party. (*Citations omitted*). The reasons for the award of damages are analogous to those in cases of malicious prosecution. The defendant is required to respond in damages for

10

> causing to be done through the process of the court that which would have been wrongful for him to do himself, having no legal justification therefor and acting in bad faith, with malice, or through a wanton disregard of the legal rights of his adversary. The courts are institutions for the settlement of disputes both as to law and facts. **Where citizens reasonably disagree concerning their rights, powers, and privileges, the doors should be kept open for an orderly determination of their differences. It has been held by this court that the <u>advice of competent counsel</u>, honestly sought and acted upon in good faith <u>is alone a complete defense</u> to an action for malicious prosecution.** (*Citations omitted*). (*Emphasis added*).

*Frontera Fruit Co. v. Dowling,* 91 F.2d 293, 297 (5th Cir. 1937).

It is undisputed that throughout both arrests of the vessel, Capt. Coutsodontis was represented in New York, New York by Poles Tublin, in New Orleans, Louisiana by Chaffe McCall, and in Tarragona, Spain by Manuel González Rodríguez, Esq.,[30] and that it was upon their advises and counsel that the arrests were effected.[31]

Indeed, the courts are even loath to award attorney's fees in connection with the arrest of a vessel (the same standard being applied).

> In this case, there was a bona fide dispute over the [Capt Coutsodontis' ownership interests]. **Given the scarcity of Fifth Circuit precedent in this area, the parties could have legitimately and honestly believed that a lien would stand up. There is no evidence of wantonness, bad faith, or malice. Thus, the record does not support an award of attorney's fees.**
>
> [Sea Trade] may sail away on its vessel but not with the lienors' dollar nailed to the mast. (*Emphasis added*).

---

[30] Mr. Rodríguez was assisted by local counsel in Tarragona, Spain, María Antonia Ferrer Martínez, Esq., whose name appears in the decision of the court in the Spanish Action.

[31] See POLES 9-5-14 AFFIRMATION, Exhibit 1 thereto, Defendants' Response to Request No. 1 (a copy of Defendants' Response to Plaintiffs' Document Request).

11

*Cardinal Shipping Corp. v. M/S Seisho Maru,* 744 F.2d 461, 475 (5th Cir. 1984); *see also Noritake Co., Inc. v. M/V Hellenic Champion,* 627 F.2d 724 (5th Cir. 1980); *Platoro Ltd., Inc. v. Unidentified Remains of a Vessel, Her Cargo, Apparel, Tackle, and Furniture, in a Cause of Salvage, Civil and Maritime,* 695 F.2d 893 (5th Cir. 1983).

### a. The New Orleans Arrest

In order to lift the arrest of the vessel in New Orleans, Plaintiff's argued the wrongfulness of the arrest. It should go without saying that the Eastern District and the United States Court of Appeals for the Fifth Circuit (hereinafter the '*Fifth Circuit*') are two of the more knowledgeable courts in the United States in addressing issues of admiralty. While Capt. Coutsodontis disagrees with the decision of the Eastern District concerning the lifting of his arrest of the M/V ATHENA in New Orleans, that court's analysis of the New Orleans Arrest demonstrated a complete review and analysis of the facts and circumstance surrounding that arrest. Its sole response to Plaintiff's wrongfulness arguments was a lifting of the arrest citing lack of jurisdiction pursuant to Supplemental Rule D. There was no award of damages nor, more importantly, a finding of bad faith, malice, or gross negligence on the part of Capt. Coutsodontis.[32]

### b. The Tarragona, Spain Arrest

As with the court in New Orleans, the Spanish court did not find wrongfulness on the

---

[32] See POLES 9-5-14 AFFIRMATION, Exhibit 10 thereto (a copy of *Coutsodontis v. M/V Athena,* 2008 WL 4330236 (E.D.La.), Civil Action No. 08-4285). Capt. Coutsodontis was and is represented in New Orleans, Louisana by CHAFFE MCCALL L.L.P., 1100 Poydras Street – Suite 2300, New Orleans, Louisiana 70163-2300. See POLES 9-5-14 AFFIRMATION, ¶11. It also should be noted that although Defendants' arrest of the vessel was lifted, the vessel had been simultaneously arrested by HELLENIC MUTUAL WAR RISKS ASSOCIATION (BERMUDA) LIMITED and remained under its arrest for more than 24 hours <u>after</u> the lifting of Defendants' arrest (together with the payment of a surety bond by Sea Trade). *id.* at ¶12.

part of Capt. Coutsodontis rising to the level of "bad faith, malice, or gross negligence."[33]

### c. The Arrest Was Effected with the Advice of Competent Counsel, Honestly Sought and Acted upon in Good Faith

Without a finding of "bad faith, malice, or gross negligence" by the finders of fact, particularly when the arrests were precipitated on "**the <u>advice</u> <u>of</u> <u>competent</u> <u>counsel</u>, honestly sought and acted upon in good faith,**" *Frontera Fruit Co. v. Dowling,* 91 F.2d 293, 297 (5th Cir. 1937), as Defendants' document production clearly demonstrates, Plaintiffs are faced with a **complete defense to an action for malicious prosecution**, *i.e.,* and consequent damages.

It is against this legal and factual background that Defendants have objected to certain of Plaintiffs' document requests as the requests are not germane and relevant to Plaintiffs' claims. **Indeed, Plaintiffs have no cognizable claims**.

## II. "RELEVANCE" OF MATERIAL SOUGHT IN DISCOVERY SHOULD BE "FIRMLY APPLIED"

While the United States Supreme Court has reiterated a broad standard in discovery, it has also directed that

> the requirement of *Rule 26 (b)(1)* that the material sought in discovery be "relevant" **should be <u>firmly</u> <u>applied</u>**, and **the district courts should not neglect their power to restrict discovery where "justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."** *Rule 26 (c)*. With this authority at hand, **judges should not hesitate to exercise appropriate control over the discovery process**. (*Emphasis added*.)

---

[33] See POLES 9-5-14 AFFIRMATION, Exhibit 11 thereto (a copy of the Tarragona Trial Court Decision). not only did the Tarragona Trial Court fail to find "bad faith, malice, or gross negligence," it opined that "the plea of a maritime claim is the correct legal solution to the problem of the Courtsodontis [SIC] family." *Id.* at pg. 9.

13

*Herbert v. Lando,* 441 U.S. 153, 177, 99 S. Ct. 1635, 1649, 60 L. Ed. 2d 115, 134 (1979). The Court also referenced the admonition that the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action." *Id.* (citing Fed. R. Civ. P. 1). See *Oppenheimer Fund, Incorporated. v. Sanders,* 437 U.S. 340, 351-352, 98 S. Ct. 2380, 2389-2390, 57 L. Ed. 2d 253, 265 (1978) ("Discovery of matter not 'reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26(b)(1)." (further citation omitted)).

> While Rule 26(b)(1) still provides for broad discovery, **courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses**. (*Citations omitted*.) (*Emphasis added*.)

*Collens v. City of New York,* 222 F.R.D. 249, 253 (S.D.N.Y. 2004).

Plaintiffs' Document Request is the quintessential poster child for the 'fishing expedition" tactic foreclosed by the court. Plaintiffs claim, at page 9 of their Moving Memorandum, that the documents requested "are integral in determining **the ultimate issue** in this action, namely, whether Defendants have an ownership interest in Sea Trade." (*Emphasis added*.) The 'ultimate issue' has already been determined by two courts in Greece, which determination has been recognized in a contested action by and before the courts of the State of New York—an action in which Plaintiffs actively participated. Three courts that have adjudicated Capt. Coutsodontis the lawful owner of 250 shares of Sea Trade stock. How does this remain the "ultimate issue" to be determined before this Honorable Court?

If being the adjudicated owner were not enough, Capt. Coutsodontis' is also the *de facto* owner of 250 shares (83.3%) of Sea Trade stock. Notably, George Peters' has no stock

14

ownership in Sea Trade **and has no authority to bring this action**. The source for this revelation is Plaintiffs' own documents.[34]

Finally, Plaintiffs have failed to identify how General Maritime factors into Athena Eliades' bequest to Capt. Coutsodontis of 250 shares (83.3%) of Sea Trade stock—the sole source of Capt. Coutsodontis' ownership of Sea Trade stock. Indeed, Plaintiffs have also failed to identify how "a company name[d] Arrowroot,"[35] a company name[d] Pinewood,"[36] Beekman Corp.,[37] Beekman Wilton Corp.,[38] Attika International Corp.,[39] or Defendants' personal overseas bank accounts (to the extent same may exist) factor into Athena Eliades' bequest to Capt. Coutsodontis of 250 shares (83.3%) of Sea Trade stock—Plaintiffs' self-identified "ultimate issue." **Clearly, they do not.** They represent nothing more than the quintessential "fishing expedition."

By Plaintiffs' own admission, the issues before this Honorable Court have already been decided and should not be recognized as cognizable claims. Defendants believe that this action is now ripe for a motion for summary judgment.

It is for the foregoing reasons that Defendants have made objections specific requests propounded in Plaintiffs' Document Request and respectfully request that this Honorable Court

---

[34] See POLES 9-5-14 AFFIRMATION, Exhibits 7–9 thereto (copies of the 1998 Bank Refinancing Documents, copies of the 2002 Bank Refinancing Documents, and a copy of Sea Trade's corporate book).

[35] See POLES 9-5-14 AFFIRMATION, Exhibit 1 thereto (Plaintiffs' Document Request), ¶¶5 & 9.

[36] *Id.* at ¶¶6 & 8.

[37] *Id.* at ¶¶13–14.

[38] *Id.* at ¶¶15–16.

[39] *Id.* at ¶¶11–12.

instruct Plaintiffs to cease their "fishing expedition."

### III. PLAINTIFFS ARE NOT ENTITLED TO ATTORNEY FEES

There has been no willful disobedience on the part of Defendants. Plaintiffs admit that they had not pursued discovery. This is five-year-old case. Plaintiffs admittedly failed to pursue discovery throughout. Plaintiffs admittedly failed to meet the Court's September 16, 2013 Scheduling Order dates. Plaintiffs thereafter sought another scheduling conference for March 20, 2014 to reschedule the prior order of the Court. Plaintiffs then admittedly waited another four weeks before issuing Plaintiffs' Document Request (on April 17, 2014)—a mere five weeks before the close of discovery. Indeed, Plaintiffs' failed to produce discovery in response to Defendants' demands for over three years and then only produced discovery after being ordered to do so by this Honorable Court.

Plaintiffs now disingenuously claim that Defendants have displayed willful disobedience and should be sanctioned while all the time ignoring their own behavior and the fact that George Peters is without authority to have even commenced the instant actions and has purposely withheld information regarding his lack of authority from Defendants and this Honorable Court throughout this marathon litigation. Defendants respectfully suggest that if anyone should be sanctioned, it should be Plaintiffs.

### CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion to Compel Production of Documents under Federal Rule 37 should be denied and Defendants should be granted their costs, attorneys' fees, together with such further and other and different relief as this Honorable Court

deems just and proper.

Dated: New York, New York
September 5, 2014

                                              POLES TUBLIN STRATAKIS & GONZALEZ LLP
*Attorneys for Defendant Stelios Coutsodontis and Francesa Coutsodontis*

/s/John G. Poles
John G. Poles (JP 4812)
46 Trinity Place, 5th Floor
New York, New York 10006
tel: (212) 943-0110
fax: (212) 269-9875
jpoles@polestublin.com