BEYS STEIN MOBARGHA & BERLAND LLP

Jason H. Berland
646.755.3604 (Direct)
jberland@beysstein.com

October 22, 2014

**VIA ECF**
Hon. Lorna G. Schofield
U.S. District Court, S.D.N.Y.
40 Foley Square – Courtroom 1106
New York, New York 10007

    Re:    *Sea Trade Maritime Corp., et al. v. Stelios Coutsodontis, et al.*
             *09-cv-488 (LGS)(HBP)*

Dear Judge Schofield:

      We represent Sea Trade Maritime Corporation ("Sea Trade") and George Peters ("Peters") in the above-referenced action. We write in response to defendant Stelios Coutsodontis's ("Coutsodontis") October 10, 2014 filing and to clarify some misinformation conveyed in the filing.

      As Coutsodontis noted, the Supreme Court of Greece has affirmed the Greek Court of Appeals' decision that he is the owner of 250 shares of Sea Trade, amounting to only a 50% ownership stake in the company. Of course, such a determination, at this juncture, holds no legal weight in a United States court. However, even assuming that this Court recognizes the decision, Coutsodontis's arguments are misguided and his lawyers' recent attempts to frame the issue of ownership are disingenuous.

      <u>First</u>, Coutsodontis claims he has an 83.3% ownership interest in Sea Trade – a patently false claim and one that contradicts the very Greek decision he cites in support of his position. At best, he has a 50% ownership interest. Quite simply, Peters and his mother, Anna Peters, have 250 of the outstanding 500 shares of Sea Trade, leaving only 250 shares for Coutsodontis to possibly own. Peters physically possesses 50 bearer shares of Sea Trade, 25 of which were given to him in 1992 by his late uncle, Elias Eliades ("Eliades"), who founded Sea Trade (Certificate No. 2), and another 25 of which were given to him in 1994 by Eliades (Certificate No. 5, which superseded Certificate No. 2, giving Peters a total of 50 shares). Moreover, Anna Peters, physically possesses 200 bearer shares of Sea Trade. In 1994, her brother-in-law, Eliades, gave her 150 shares (Certificates Nos. 3, 4, 6 and 7), and subsequently, her late sister-in-law, Athena Eliades ("Athena"), gave her an additional 50 shares (Certificate No. 10). The Corporate Register clearly illustrates these ownership rights. In short, even assuming a United

_____

The Chrysler Building, 405 Lexington Avenue, 7th Floor, New York, NY 10174
Main: 646.755.3600 • Fax: 646.755.3599
www.beysstein.com

October 22, 2014
Page 2

States court gives the decision of the Greek Supreme Court full faith and credit – which it yet has not – Coutsodontis only owns 50% of Sea Trade.

Second, counsel for Coutsodontis continues to recycle this defeated argument that Coutsodontis owns 83% of Sea Trade and that, as a result, Peters does not have "authority" to prosecute claims on behalf of Sea Trade. Coutsodontis has made this argument numerous times despite knowing that it lacks merit. The basis of this claim is that during an emergency financing, Athena represented that she owned 100% of Sea Trade. However, as plaintiffs' counsel has reiterated many times, including on July 1, 2014 in a parallel state court proceeding before the Honorable Eileen Rakower, Athena's possession of 100% of the bearer shares was only temporary. As Peters's counsel stated on the record:

> In 1997, the ship at issue was bombed in a terrorist attack by the Tamil Tigers. There were emergency repairs. Because there was an insurance claim dispute and in order to get a loan by the Bank of Maryland approved quickly, Anna Peters and George Peters physically tendered their shares back to Athena Eliades, so that Athena Eliades could correctly represent to the bank she was the sole owner and at a later time, the status quo was restored.

Despite knowing the circumstances of the emergency financing and the temporary tendering of these shares, Coutsodontis continues to recycle this argument. This tired argument is without merit and certainly not appropriate for summary judgment.

Indeed, this District has routinely found that share ownership disputes are not appropriately resolved at the summary judgment phase. *See*, *e.g.*, *Rezende v. Citigroup Global Markets*, No. 09 Civ. 9392 (HB), 2011 WL 1584603, *3 (S.D.N.Y. April 27, 2011) (disputes as to who is the recipient of bearer share certificates is a triable fact which precludes summary judgment); *Von Opel v. McGrath*, 13 F.R.D. 458 (S.D.N.Y. 1952) (dispute over plaintiff's ownership in stock contain genuine issues of fact which precluded summary judgment); *Lo v. Amsterdam & Sauer, Ltd.*, No. 91 Civ. 4389 (PKL), 1992 WL 233874, *5 (S.D.N.Y. Sept. 8, 1992) (dispute over ownership contained genuine issues of material fact).

Third, Coutsodontis argues, amazingly, that Peters's power of attorney to run Sea Trade is void. This argument exposes Coutsodontis's bad faith. Previously, Coutsodontis had inconsistently argued before the Honorable Naomi Reice Buchwald the opposite point: Namely, that Peters held a valid power of attorney. In a submitted affidavit to the Court, Coutsodontis stated, "Based on a power of attorney signed by Athena on August 18, 1992, as President of Sea Trade, [Peters] was authorized to manage [Sea Trade's] assets." In addition, during an oral argument on record, counsel for Coutsodontis stated, "When the owner of the ship was alive, she had given her nephew powers to operate the ship…. George Peters has proceeded under a power of attorney." Once again, Coutsodontis contradicts these statements on record.

October 22, 2014
Page 3

In fact, in a separate defamation case in New York State Supreme Court, involving the same parties, the Honorable Barbara R. Kapnick, upon discovering Coutsodontis's representations before Judge Buchwald, reversed her prior decision dismissing a libel *per se* claim on the grounds that the statements made before Judge Buchwald raised an issue of whether Coutsodontis's defamatory statements were made "in good faith and without malice." As context, Coutsodontis had defamed Peters in the shipping community by calling him a forger. With Coutsodontis's admissions on record that Peters <u>did</u> <u>have</u> a valid power of attorney – and that in fact, he was <u>not</u> a forger – Judge Kapnick reopened the defamation case. For Coutsodontis to revert back to lying about the validity of Peters's power of attorney speaks volumes about the tactics he and his attorneys have employed and continue to employ in these litigations.

<u>Fourth</u>, Coutsodontis argues that his wrongful arrests of the M/V Athena are not actionable since he acted on the advice of counsel, two of whom have subsequently been disqualified from working on this matter. Coutsodontis bases his argument on his claim that both the Spanish and Louisiana courts determined that his actions were not based on malice. First, the issue of malice was not before those courts. Second, the cases cited by Coutsodontis do not apply here. While it is true that a <u>vendor</u>, with a valid maritime <u>lien</u>, can validly arrest a ship assuming such an arrest is in good faith and without malice, this is not the case here. Here, Coutsodontis, an alleged shareholder who had no legal record of ownership at the time of the unlawful arrests, attempted to destroy Sea Trade and its main asset, the M/V Athena. For Coutsodontis, who is also in the shipping business and owns his own vessels, it was a way of destroying the competition. If Coutsodontis believed he was a shareholder of Sea Trade, the right course of action was not a self-help remedy involving the unlawful arrest of its main asset and the destruction of its value. Rather, it was a simple action seeking a declaratory judgment on the issue.

<u>Finally</u>, Coutsodontis's argument that a stockholder is not a fiduciary and therefore plaintiffs' breach of fiduciary claim is unfounded is simply not the law. Under New York law, "[s]hareholders in a close corporation owe each other a duty to act in good faith." *Palatkevich v. Choupak*, No. 12 Civ. 1681(CM), 2014 WL 1509236, *25 (S.D.N.Y. January 24, 2014) (internal citations omitted). The failure to do so constitutes a breach of fiduciary duty. *Id.* Coutsodontis must be aware of this settled legal principal, since he admitted in paragraph 151 of his filed Answer, that he <u>has "fiduciary obligations as a shareholder"</u> in Sea Trade. Coutsondontis's current position on this issue is not surprising given that the record is ripe with his inconsistencies.

In sum, with all these issues looming and the case ripe with factual disputes, including the issue of ownership, summary judgment is not appropriate.

                                              Respectfully,

                                              */s/Jason H. Berland*
                                              Jason H. Berland