UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SEA TRADE MARITIME CORPORATION AND
and GEORGE PETERS,

            Plaintiffs,

– v –

STELIOS COUTSODONTIS, FRANCESA
ELENI COUTSODONTIS, GENERAL MARITIME
ENTERPRISES CORPORATION, ATTIKA
INTERNATIONAL NAVIGATION SA, and
IASON SHIPPING LTD.,

            Defendant.

CASE: 1:09-CV-00488-LGS-HBP

---

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

POLES TUBLIN STRATAKIS & GONZALEZ LLP
46 Trinity Place – Fifth Floor
New York, New York 10006
(212) 943-0110

*Attorneys for Defendants Stelios Coutsodontis
and Francesca Coutsodontis*

*Of counsel*
CHRIST STRATAKIS
JOHN G. POLES

**TABLE OF CONTENTS**

page

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.  GEORGE PETERS LACKED AUTHORITY TO COMMENCE
        THE INSTANT ACTION ON BEHALF OF SEA TRADE. . . . . . . . . . . . . . . . . . 2

        A.  George Peters Had No Authority to Manage or Bind Plaintiff
            By Way of Stock Ownership in Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.  George Peters Had No Authority to Manage or Bind Plaintiff by Way
            Of a Purported 1992 Power-of-Attorney. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            1.  The Law Does Not Allow a Corporation to Be Managed
                by a Broad, Limitless Power-of-Attorney,
                Thereby Emasculating its Board of Directors. . . . . . . . . . . . . . . . . 4

            2.  Liberia Has Not Adopted the Provisions of Allowing Closely Held
                Corporations to Be Operated like Partnerships. . . . . . . . . . . . . . . . 6

    II.  THERE ARE NO TRIABLE ISSUES OF FACT IN THE COMPLAINT. . . . . . . . . . 7

        A.  As a Rule, Plaintiffs' First and Second Causes of Action Are Not
            Actionable For Wrongful Arrest and There is Absence of Malice
            or Bad Faith. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.  The Spanish Litigation Post Attachment and Consequent
            Judgment, Renders Further Claims *Res Judicata*. . . . . . . . . . . . . . . . . . 10

        C.  The New Orleans Attachment Did Not Impede or
            Delay the Vessel's Operations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        D.  Breach of Fiduciary Duty Alleged in the Third Cause of
            Action is Completely Devoid of Any Legal Basis or Merit. . . . . . . . . . . . 11

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

page

**Cases**

*Abercrombie v. Davies,*
    35 Del. Ch. 599, 123 A.2d 893 (Del. Ch., 1956), rev'd on other grounds
    36 Del. Ch. 371, 130 A.2d 338 (Del. Supr. 1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Bin Saud v. Bank of New York*,
    734 F.Supp. 628 (S.D.N.Y. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Blaustein v. Pan American Petroleum & Transport Co.,*
    263 A.D. 97, 31 N.Y.S.2d 934 (1st Dept. 1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Chapin v. Benwood Foundation, Inc.,*
    402 A.2d 1205 (Chancery, 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Clarke Memorial College v. Monaghan Land Co.,*
    257 A.2d 234 (Del.Ch., 1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cleary v. Higley,*
    154 Misc. 158, 277 N.Y.S. 63 (Sup. Ct., N.Y. County *1934*), aff'd.
    246 A.D. 698, 284 N.Y.S. 989 (1st Dept. 1935), leave to appeal denied
    270 N. Y. 673 (1936). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Frontera Fruit Co. v. Dowling*,
    91 F.2d 293 (5th Cir. 1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Gamble v. Queens County Water Co.,*
    123 N.Y. 91, 25 N.E. 201 (1890). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*J. H. Lane & Co. v. Maple Cotton Mills,*
    226 F. 692 (4th Cir., 1915). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kavanaugh v. Kavanaugh Knitting Co.,*
    226 N. Y. 185, 123 N.E. 148 (1919). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Lehrman v. Cohen,*
    43 Del. Ch. 222, 222 A.2d 800 (Del.Supr., 1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Manson v. Curtis,*
    223 N.Y. 313, 119 N.E. 559 (1918).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*McQuade v. Stoneham,*
    263 N.Y. 323, 189 N.E. 234 (1934).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Pollitz v. Wabash R. R. Co.,*
    207 N. Y. 113, 100 N.E. 721 (1912). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Portland Shipping Co. v. The Alex Gibson*,
    44 F. 371 (1890).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Schwab v. Potter Co.,*
    194 N. Y. 409, 87 N.E. 670 (1909). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stevens v. F/V Bonnie Doon,*
    655 F.2d 206 (9th Cir. 1881).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*The Adolph*,
    5 F. 114 (S.D.N.Y. 1880).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8


**Statutes**

DELAWARE GENERAL CORPORATION LAW, Title 8, Chapter 1, §141(a). . . . . . . . . . . . . . . . . . . . . 3

DELAWARE GENERAL CORPORATION LAW, Title 8, Chapter 1, §350. . . . . . . . . . . . . . . . . . . . . . . 6

FEDERAL RULES OF CIVIL PROCEDURE, Supplemental Rule D. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

NY BUS. CORP. §620(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

NY BUS. CORP. §701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

TITLE 5 ASSOCIATIONS LAW OF THE 1976 LIBERIAN CODES OF LAWS REVISED, §6.1.. . . . . . . 3, 4, 6

## PRELIMINARY STATEMENT

Defendants Stelios Coutsodontis ("Coutsodontis") and Francesca Coutsodontis ("Francesca") move for an order granting summary judgment and dismissing the Complaint on the following grounds:

1.  Plaintiff, George Peters, had no authority, power or standing to file the subject Complaint either individually, or on behalf of Plaintiff, Sea Trade Maritime Corporation ("Sea Trade"). Accordingly, Sea Trade did not authorize this action and is not a proper plaintiff in this action.

2.  Based on the facts and applicable law:

    (a) There is no liability for alleged damages resulting from the Spanish and New Orleans attachments; Defendant relied, in good faith, on advice of counsel.

    (b) In the Spanish attachment, Plaintiffs are estopped from claiming additional damages in this Court, since they have already litigated this issue before the Spanish courts and this matter **is now res judicata**.

    (c) In the New Orleans attachment, there were no delays or damages incurred by the vessel since the M/V ATHENA, while under attachment, was allowed to carry her cargo obligations unimpeded. Additionally, the vessel was also attached by another party (please see Affidavit of Daniel A. Tadros, Esq., sworn to November 15, 2014).

1

## LEGAL ARGUMENT

### I. GEORGE PETERS LACKED AUTHORITY TO COMMENCE THE INSTANT ACTION ON BEHALF OF SEA TRADE

The newly discovered evidence and court adjudication, including the recent decision by the Supreme Court of Greece, establish the following:

- all 500 authorized shares of Plaintiff were owned by Athena Eliades immediately prior to her death on January 13, 2003.

- there are no credible corporate or other records showing any stock ownership by George Peters.

- there are no credible corporate or other records supporting Anna's claim of stock ownership in excess of the 50 shares she received pursuant to Athena Eliades' Will.

#### A. George Peters Had No Authority to Manage or Bind Plaintiff By Way of Stock Ownership in Plaintiff

As set forth in the Affidavit of Christ Stratakis, Esq., sworn to November 17, 2014 ("Stratakis Affidavit"), the new evidence shows that George Peters never owned any stock in Sea Trade. However, even if we were to agree, *arguendo*, that, at one time or another, he owned shares in Sea Trade, such shares, by his own admission, were transferred to Athena Eliades **before 1998**. The new documentary evidence further establishes that she remained the 100% owner of Sea Trade up to the time of her death in January, 2003. The disposition of her shares, therefore, must be determined under her Last Will and Testament, wherein George Peters was not a named legatee.

### B. George Peters Had No Authority to Manage or Bind Plaintiff by Way Of a Purported 1992 Power-of-Attorney

It is undisputed that Plaintiff is a Liberian corporation. TITLE 5 ASSOCIATIONS LAW OF THE 1976 LIBERIAN CODES OF LAWS REVISED (hereinafter "*Associations Law*"), §6.1 provides as follows:

> Subject to limitations of the articles of incorporation and of this Act as to action which shall be authorized or approved by the shareholders, **all corporate powers shall be exercised by or under authority of, and the business and affairs of every corporation shall be managed by, a board of directors.** (Emphasis added.)

Similar language appears in Sea Trade's By-Laws (Article III, Section 1). In the absence of a body of Liberian law on point (since the Liberian Code is clear), Liberia follows the laws of the United States, most commonly, the laws of New York and Delaware. As to the management of corporations, NY BUS. CORP. §701 states:

> Subject to any provision in the certificate of incorporation ... **the business of a corporation shall be managed under the direction of its board of directors**, each of whom shall be at least eighteen years of age. (*Emphasis added*.)

Similarly, Title 8, Chapter 1, §141(a) of the DELAWARE GENERAL CORPORATION LAW reads:

> **The business and affairs of every corporation** organized under this chapter **shall be managed by or under the direction of a board of directors**. (*Emphasis added*.)

In this case, there are two points to note here. **First,** George Peters was not an officer or member of Plaintiff's board of directors. **Second,** there was no mention anywhere in the corporate records of any power-of-attorney being authorized or issued to George Peters by the Plaintiff's officers or Board of Directors.

3

George Peters is a licensed attorney in the State of New York and knew or should have known that the purported 1992 power-of-attorney was invalid and unenforceable *ab initio*. Legally, it was never valid and enforceable, George Peters never had the power to bind Plaintiff, and he knew or should have known of this **foundational legal defect**.

Furthermore, even if the purported 1992 power-of-attorney was valid, which Defendant vehemently denies, it was never renewed or ratified by Plaintiff's Board of Directors at any time for the next twenty-two years. Since Peters had no power to bind Sea Trade, this action is not authorized by the company and the name of the company, as plaintiff, must be removed.

### 1. The Law Does Not Allow a Corporation to Be Managed by a Broad, Limitless Power-of-Attorney, Thereby Emasculating its Board of Directors

ASSOCIATIONS LAW §6.1. is clear and unequivocal: "the business and affairs of every corporation shall be managed by, a board of directors." Additionally, both New York and Delaware law, with identical statutory mandates, are equally illuminating.

Case law is no different. For example, in *Manson v. Curtis,* 223 N.Y. 313, 322–323, 119 N.E. 559, 562 (1918), the New York Court of Appeals ruled as follows:

> The affairs of every corporation shall be managed by its board of directors (*citation omitted*), subject, however, to the valid by-laws adopted by the stockholders. (*Citation omitted*). In corporate bodies, the **powers of the board of directors are, in a very important sense, original and <u>undelegated</u>**. ... All powers directly conferred by statute, or impliedly granted, of necessity, must be exercised by the directors who are constituted by the law as the agency for the doing of corporate acts. ... Directors are the exclusive, executive representatives of the corporation and **are charged with the administration of its internal affairs and the management and use of its assets**. (*Citation omitted*). (*Emphasis added*.)

4

Therefore, even if the purported power-of-attorney was authorized by the Board of Directors, **which it was not**, its terms are so sweeping and limitless as to render it illegal and unenforceable, *ipso facto*. The powers of directors to manage the affairs of the corporation are so unique, **nondelegable** and exclusive, as to forbid even the stockholders to limit them, by contract.

In *McQuade v. Stoneham,* 263 N.Y. 323, 328–329, 189 N.E. 234, 236 (1934), the Court of Appeals ruled as follows:

> Stockholders may, of course, combine to elect directors. That rule is well settled. As Holmes, Ch. J., pointedly said (*citation omitted*): "If stockholders want to make their power felt, they must unite. There is no reason why a majority should not agree to keep together." **The power to unite is, however, limited to the election of directors and is not extended to contracts whereby limitations are placed on the power of directors to manage the business of the corporation by the selection of agents** at defined salaries. (*Emphasis added*.)

See also *Abercrombie v. Davies,* 35 Del. Ch. 599, 608, 123 A.2d 893, 898 (Del. Ch., 1956), rev'd on other grounds 36 Del. Ch. 371, 130 A.2d 338 (Del. Supr. 1957); see also *Chapin v. Benwood Foundation, Inc.,* 402 A.2d 1205, 1210 (Chancery, 1979); *Clarke Memorial College v. Monaghan Land Co.,* 257 A.2d 234 (Del.Ch., 1969); *Lehrman v. Cohen,* 43 Del. Ch. 222, 222 A.2d 800 (Del.Supr., 1966).

In the case at bar, the broad, sweeping, limitless powers of the purported 1992 power-of-attorney completely abrogate the statutorily sanctioned exercise of independent judgment by the company's Board of Directors. It further deprives the Board of its inherent power to carry out matters of substantial management policy for the company. It effectively nullifies the Board of Directors as a viable corporate body, thereby raising an issue (if such a document is sustained) whether Sea Trade is itself a legally functioning corporate entity with powers to sue and be sued.

>Please see *Abercrombie v. Davies,* 35 Del. Ch. 599, 610–611:
>
>... So long as the corporate form is used as presently provided by our statutes **this Court cannot give legal sanction to agreements which have the effect of removing from directors in a very substantial way their duty to use their own best judgment on management matters**. (*Citation omitted*.) (*Emphasis added*.)

### 2. Liberia Has Not Adopted the Provisions of Allowing Closely Held Corporations to Be Operated like Partnerships

Both New York[1] and Delaware[2] have adopted statutory provisions allowing closely held corporations, under very strict statutory guidelines, to be operated like partnerships. Liberia, however, has <u>not</u> adopted such provisions, statutorily or otherwise. **Liberian corporations must adhere to traditional corporate management solely by the company's board of directors.**[3] It is evident, therefore, that under Liberian law and with respect to the domestic management of a Liberian corporation, a power-of-attorney, such as **the 1992 power-of-attorney which George Peters attempts to invoke herein, cannot be sustained or relied on.**

---

[1] NY BUS. CORP. §620(b).

[2] Title 8, Chapter 1, §350 of the DELAWARE GENERAL CORPORATION LAW.

[3] Compare ASSOCIATIONS LAW, §6.1.

>Subject to limitations of the articles of incorporation and of this Act as to action which shall be authorized or approved by the shareholders, **all corporate powers shall be exercised by or under authority of, and the business and affairs of every corporation shall be managed by, a board of directors.** (*Emphasis added*.)

## II.  THERE ARE NO TRIABLE ISSUES OF FACT IN THE COMPLAINT

The Complaint contains three causes of action.  Reduced to simple terms, the allegations are as follows:

1. **First Cause of Action.**  Coutsodontis, by claiming 50% ownership of Sea Trade, made fraudulent statements and thus arrested the vessel (in Spain and New Orleans), thereby harming the company's reputation which caused damages impossible to quantify.  Additionally, the attachments caused monetary damages in excess of $15 million.

2. **Second Cause of Action.**  Coutsodontis, by claiming 50% ownership of Sea Trade and attaching the ATHENA, "precluded" the company from engaging in its corporate purpose.

3. **Third Cause of Action**.  As a 50% owner, Coutsodontis breached his "fiduciary duty" by reason of these "illegal actions."  Therefore, any ownership interest he claims to possess should be forfeited.

A thorough review of the uncontested or otherwise fully established facts, as well as the applicable law, would manifest that all three causes of action are factually and legally untenable.

### A. As a Rule, Plaintiffs' First and Second Causes of Action Are Not Actionable For Wrongful Arrest and There is Absence of Malice or Bad Faith

In the leading case of *Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937), the United States Court of Appeals for the 5th Circuit set forth the rule in determining liability for wrongful arrest:

> The gravamen of the right to recover damages for wrongful seizure or detention of vessels is the **bad faith, malice, or gross negligence** of the offending party. (*Citations omitted*).  The reasons for the award of damages

>are analogous to those in cases of malicious prosecution. The defendant is required to respond in damages for causing to be done through the process of the court that which would have been wrongful for him to do himself, **having no legal justification therefor and acting in bad faith, with malice, or through a wanton disregard of the legal rights of his adversary**. The courts are institutions for the settlement of disputes both as to law and facts. **Where citizens reasonably disagree concerning their rights, powers, and privileges, the doors should be kept open for an orderly determination of their differences. It has been held by this court that the <u>advice of competent counsel</u>, honestly sought and acted upon in good faith <u>is alone a complete defense</u> to an action for malicious prosecution.** (*Citations omitted*). (*Emphasis added*).

The Defendant in the case at bar is not a lawyer and did not and could not have acted independently. As stated in the Stratakis Affidavit, Coutsodontis was seeking to preserve his interests, which represented 50% of Sea Trade's assets. He followed the advice of counsel and authorized the arrest of the M/V ATHENA. In such a case, there is no liability for wrongful arrest if the opinion of his lawyers turns out to be erroneous. The reasoning for this rule was originally set forth in the often cited landmark case of *The Adolph*, 5 F. 114, 115 (S.D.N.Y. 1880):

>[t]he arrest of a vessel ... **is an inconvenience to which the owners must submit as one caused by the exercise of a legal right on the part of the plaintiff**. (*Emphasis added.*)

See also *Stevens v. F/V Bonnie Doon,* 655 F.2d 206 (9th Cir. 1881), where the United States Court of Appeals for the 9th Circuit, in quoting *The Adolph*, *supra*, held that:

>Appellant cannot be held liable for loss of profits resulting from having validly invoked judicial process by securing appellee's vessel.

To the same effect, see *Portland Shipping Co. v. The Alex Gibson*, 44 F. 371 (1890), where the court ruled as follows:

>... as the court finds that the libelant had no cause of action, it follows that **the arrest and detention of the ship was wrongful, and the owner suffered thereby a serious pecuniary loss. But for this he**

> **is without remedy, for in proceedings in rem the allowance of process is the act of the law**, so that **no damages are allowed** for the arrest and detention of the vessel unless there is bad faith or deceit practiced in suing out the writ, or the suit is one that may be characterized as a malicious prosecution. (*Citations omitted*). (*Emphasis added*).

The uncontested facts in this case establish that Coutsodontis did not act in a manner which is tantamount to malicious prosecution. As stated in the Stratakis Affidavit, Coutsodontis had, at all times, acted upon the advice of competent counsel that his ownership claim represented valid grounds for a maritime claim and that the laws of the respective jurisdictions not only permitted such claims, but actually provided specific procedures for asserting those claims.

Specifically, in Spain (**a civil law jurisdiction**), the vessel arrest is specifically provided for in the Brussels Convention for the Arrest of Foreign Ships of 10 May 1952, which, at Article 1, in pertinent part, reads:

> (1) "**Maritime Claim**" means a claim arising out of one or more of the following:
> \* \* \* \* \*
> (o) **Disputes as to the title to or ownership of any ship**. (*Emphasis added*.)

In the United States (**a common law jurisdiction**), the vessel's New Orleans arrest is specifically provided for in Supplemental Rules for Certain Admiralty and Maritime Claims (Possessory, Petitory, and Partition Actions) of the Federal Rules of Civil Procedure. Supplemental Rule D, in pertinent part, reads:

> **In all actions ... <u>to try title</u>** maintainable according to the course of the admiralty practice with respect to a vessel, ... and **in all actions by one or more part owners against the others** to obtain security for the return of the vessel from any voyage undertaken without their consent, ... **the process shall be by a warrant of arrest of the vessel**, cargo, or other property, and by notice in the manner provided

9

by Rule B(2) to the adverse party or parties.  (*Emphasis added*).

Based on the uncontroverted facts, therefore, there was no abuse of process or evidence of bad faith amounting to a case of malicious prosecution.

In each case, the court released the ATHENA on different grounds.  But there was no finding or evidence of bad faith or malice in either court decision.

### B. The Spanish Litigation Post Attachment and Consequent Judgment, Renders Further Claims *Res Judicata*

As set forth in the Stratakis Affidavit, Sea Trade filed multi-million dollar claims in the Tarragona Courts, allegedly flowing from the purported wrongful attachment of the vessel. After protracted litigation, the Spanish Court allowed certain claims and denied others.  Plaintiffs are now seeking to enforce that judgment in the State courts.  Accordingly, they are estopped from relitigating these claims again in this Court.  To decide otherwise would be tantamount to taking another bite at the apple.

As stated in *Bin Saud v. Bank of New York*, 734 F.Supp. 628, 632 (S.D.N.Y. 1990):

> [A] final judgment on the merits of an action precludes the parties or **their privies** from relitigating issues that were or **could have been raised in that action** (*Citations omitted*).
>
> \* \* \* \* \*
>
> **Res judicata prevents litigation of all grounds for recovery**, or defenses to recovery, that were previously available to the parties, **regardless of whether they were asserted or determined in the prior proceeding**.  (*Citations omitted*).  (*Emphasis added*).

### C. The New Orleans Attachment Did Not Impede or Delay the Vessel's Operations

As set forth in the Tadros Affidavit, the vessel was allowed to shift within the port of New Orleans at the motion of Coutsodontis, thereby fully facilitating her cargo operations. Such a motion by Defendant hardly evinces any semblance of malice or bad faith against George Peters.

More importantly, however, the ATHENA was also attached by Hellenic Mutual War Risks Association (Bermuda) ("Hellenic Mutual") a day after she was attached by Coutsodontis and was released the same day Judge Lemmon issued her order vacating the attachment (Tadros Affidavit, page 3).

Accordingly, there is no evidence of any damages in New Orleans arising out of the Coutsodontis attachment.

### D. Breach of Fiduciary Duty Alleged in the Third Cause of Action is Completely Devoid of Any Legal Basis or Merit

Amazingly, Plaintiffs assert that Defendant somehow owed a fiduciary duty to the remaining stockholders. Yet, Coutsodontis never had any control or management of Sea Trade's assets. On the contrary, the corporate records show that Plaintiff, George Peters, having control and possession of Sea Trade's assets, never gave any reports, of any kind, to the remaining stockholders.

Thus, in a reversal of roles, George Peters, the real fiduciary, asserts that Coutsodontis, as a stockholder who was kept out of the management or control of Sea Trade's affairs, is the "fiduciary" to Sea Trade and its shareholders. This, in the face of case law stating that a stockholder is not *ipso facto* a fiduciary. Indeed, if we were to apply Plaintiffs' theory that a

11

stockholder is a fiduciary, then both Anna Peters (the alleged other shareholder) and George Peters (the alleged attorney-in-fact), owe a fiduciary duty to Sea Trade and Coutsodontis.

> The fiduciary role is not assumed, and the obligation will not be imposed, until a majority stockholder usurps the functions of the directors in the management and conduct of the business of the corporation to the detriment of the corporation and the minority.

*Blaustein v. Pan American Petroleum & Transport Co.,* 263 A.D. 97, 119, 31 N.Y.S.2d 934, 956 (1st Dept. 1941) citing *Cleary v. Higley,* 154 Misc. 158, 168-169, 277 N.Y.S. 63, 76 (Sup. Ct., N.Y. County *1934*), aff'd. 246 A.D. 698, 284 N.Y.S. 989 (1st Dept. 1935), leave to appeal denied 270 N.Y. 673 (1936) ("It is only when he steps out of his role as a [majority] stockholder, and usurps the functions of the directors in the management and conduct of the business of the corporation, with utter disregard of the interests of the corporation and of the minority stockholders, that he is said actually to have become a fiduciary, instead of a mere stockholder") and *Kavanaugh v. Kavanaugh Knitting Co.,* 226 N.Y. 185, 194-195, 123 N.E. 148, 151 (1919) ("Bad faith, fraud or other breach of trust constitutes a foundation for equitable relief").

Here, Defendant not only had no management or other participation in Sea Trade, but the person in control of Sea Trade's assets refused to recognize Coutsodontis as a shareholder under any circumstances. More specifically, George Peters told Coutsodontis that

> In all events, my client [George Peters] will not accept your client [Coutsodontis] as a shareholder [of Sea Trade]. If, in fact, after litigation of the matter, a court were to recognize him as a shareholder, after all appeals have been exhausted, the other stockholders would then petition for a judicial dissolution of the corporation as they will not operate the corporation with your client as a 50% shareholder.

Stratakis Affidavit, Exhibit E.

Here it is uncontroverted that Defendant never exercised any control or dominion over Sea Trade or its board of directors. Mirroring the liability requisites for vessel arrests, "bad faith, fraud or other breach of trust constitutes a foundation for equitable relief [in the case of allegations of breach of fiduciary duty]. (*Citations omitted.*)" *Kavanaugh v. Kavanaugh Knitting Co.,* 226 N.Y. 185, 196, 123 N.E. 148, 152 (1919); citing *inter alia Pollitz v. Wabash R. R. Co.,* 207 N.Y. 113, 100 N.E. 721 (1912); *Schwab v. Potter Co.,* 194 N.Y. 409, 87 N.E. 670 (1909); *J. H. Lane & Co. v. Maple Cotton Mills,* 226 F. 692 (4th Cir., 1915); *Gamble v. Queens County Water Co.,* 123 N.Y. 91, 98, 25 N.E. 201, 202 (1890). Indeed, to find liability, Defendant's actions

> must not be so detrimental to the interests of the corporation itself, as to lead to the necessary inference that the interests of the majority of the shareholders lie wholly outside of and in opposition to the interests of the corporation and of the minority of the shareholders, and that their action is a wanton or fraudulent destruction of the rights of such minority. In such cases it may be stated that the action of the majority of the shareholders may be subjected to the scrutiny of a court of equity at the suit of the minority shareholders.

*Gamble v. Queens County Water Co.,* 123 N.Y. 91, 98, 25 N.E. 201, 202 (1890).

Here, not only did neither arresting court find such bad faith, fraud or other breach of trust, but Defendant was never in a position to exercise sufficient control over Sea Trade to effect such behavior. Indeed, it was George Peters' refusal to recognize and accept Defendant as a shareholder that precipitated the legal actions of Defendant. Defendant did not take initiate suppressive corporate actions or implement corporate policy to the detriment of the other shareholders. Rather, Defendant, when himself suppressed, went to the courts seeking judicial recognition of his stock ownership in Sea Trade for which Plaintiff now seeks to punish Defendant.

## CONCLUSION

Based upon the affidavits, exhibits, and memorandum of law in support of Defendants' motion for summary judgement, we respectfully submit that the motion for summary judgment be granted on the following grounds:

1. Plaintiff, George Peters, had no authority, power, or standing to commence this action on behalf of Sea Trade and the action by Sea Trade is not authorized.

2. Since Plaintiff George Peters had no authority to bind Sea Trade, and the action on behalf of the company was unauthorized, George Peters, standing alone as plaintiff, was not damaged from the vessel attachments. There is no credible evidence that George Peters was a stockholder of Sea Trade.

3. In the alternative, under the uncontroverted or otherwise established facts and the applicable law:

    a. The vessel attachment in Tarragona, Spain and New Orleans, Louisiana are not actionable because Defendants acted on the advice of counsel and there is no evidence of bad faith, malice, or gross negligence.

    b. Any and all claims pertaining to the Tarragona, Spain attachment were fully litigated in the Spanish courts having jurisdiction thereof and Plaintiffs are estopped from relitigating their claims before this Honorable Court.

    c. The New Orleans attachment did not cause any delays or other damages, as the vessel, at Defendants' motion, was permitted to carry out her business commitments and, in any event, she would have been under arrest by another party, even if Defendants' arrest and

not taken place.

WHEREFORE, Defendants Stelios Coutsodontis and Francesca Coutsodontis respectfully request that their motion for summary judgment be granted, the complaint be dismissed, and that Court grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
       November 17, 2014

                        Yours, etc.,
                        POLES TUBLIN STRATAKIS & GONZALEZ, LLP
                        *Attorneys for Defendants Stelios Coutsodontis and*
                                *Francesa Eleni Coutsodontis*

                 by: /s/Christ Stratakis
                     Christ Stratakis (CS 9741)
                     John G. Poles (JP 4812)
                     46 Trinity Place – Fifth Floor
                     New York, New York 10006-2288
                     Tel: (212) 943-0110
                     Fax: (212) 268-9875