BEYS STEIN MOBARGHA & BERLAND LLP
JASON H. BERLAND
646.755.3604 (Direct)
jberland@beysstein.com

December 1, 2014

**VIA ECF**

The Honorable Justice Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square – Room 1106
New York, NY 10007


Re:   *Sea Trade Maritime Corp. v. Coutsodontis, et al. (Index No. 09 Civ. 488 (LGS) (HBP)), Request for Extension of Time to File Summary Judgment Responses*

Dear Judge Schofield:

We are counsel to Plaintiffs Sea Trade Maritime Corporation ("Sea Trade") and George Peters ("Peters") in the above referenced action. We write to request a brief extension of time to file Plaintiffs' opposition to Defendants Stelios Coutsodontis's ("Coutsodontis") and General Maritime Enterprises Corporation's ("General Maritime") Motions for Summary Judgment based on Defendant Coutsodontis's continuing willful failure to produce documents – especially those concerning a $3 Million transfer to General Maritime – responsive to requests that have been outstanding for five years. Recently, Coutsodontis admitted that certain information linking him to General Maritime exists. Nevertheless, during the last five years, he has willfully failed to produce this information.

We understand that Plaintiffs must raise these issues with Magistrate Judge Pitman, but we have no choice but to request an extension to file Plaintiffs' opposition to both Defendants' summary judgment motions until we can resolve the issue of these crucial outstanding documents before Judge Pitman. The original due date for Plaintiffs' opposition papers is December 8, 2014. Due to the upcoming holidays and Coutsodontis's past persistent failure to produce documents, we request an extension until at least January 19, 2015 so that we have enough time to compel Coutsodontis to produce these certain, limited documents that he recently admitted possessing. Without such an extension, Plaintiffs will be severely prejudiced in their opposition to summary judgment. Defendants do not consent to an extension. This is Plaintiffs' first request for an extension.

**I-     Summary Judgment is not appropriate where discovery is not complete**

The Second Circuit has held that summary judgment is not proper where plaintiff should have had the opportunity to pursue discovery, which was requested and not received. *See Robinson v. Transworld Airlines, Inc.*, 947 F.2d 40, 43 (2d Cir. 1991) (plaintiff should have had

an opportunity to pursue the discovery afforded by the court's order, and to obtain any relevant evidence, before being required to respond to a motion for summary judgment).

This District has held that summary judgment is premature where a defendant is uncooperative in producing requested documents. *See Usov v. Lazar*, No. 13 CIV. 818 RWS, 2014 WL 4354691, at *7 (S.D.N.Y. Sept. 2, 2014) (documentation which was pertinent to the issues under consideration was in defendant's control and, despite plaintiff's repeated efforts to obtain relevant documents from defendant, defendant had been uncooperative and refused to produce requested materials). This is precisely the situation here.

II- **After five years, Coutsodontis has failed to conduct a good faith search for documents**

As the Court is aware, Plaintiffs have alleged a conspiracy between Defendants Coutsodontis and General Maritime. During the lengthy discovery window, Coutsodontis failed to produce documents in response to virtually all of Plaintiffs' document requests, including documents concerning this crucial issue. Coutsodontis failed to offer an adequate explanation for his failure, or what procedures, if any, he employed to comply with his obligations under Federal Rule of Civil Procedure 34. Worse yet, Coutsodontis never objected to a single document request by Plaintiff and has waived his right to object.

Rather, Coutsodontis responded to almost all of Plaintiffs' requests with the blanket assertion that "[a]fter having made a diligent search of [his] files, Stelios Coutsodontis did not find any documents…" This response is insufficient, especially given Coutsodontis's history of noncompliance with his discovery obligations. After Coutsodontis's deposition, Plaintiffs now know that, not only do responsive documents concerning General Maritime exist, but Coutsodontis failed to undertake any good faith effort to search for them.

In contrast, Plaintiffs have made a good faith effort to resolve these document issues, but to date have been unsuccessful. In compliance with Local Rule 37(a)(1), Plaintiffs sent an October 29, 2014 letter, demanding that Coutsodontis comply with the discovery requests discussed above by November 6, 2014. Specifically, Plaintiffs requested that Coutsodontis either produce the outstanding documents or specify in detail the processes and procedures employed in the search for responsive documents before concluding that none exist. Plaintiffs also requested that Coutsodontis submit an affidavit, certifying that he complied with these required procedures and that no responsive documents exist if, in fact, that is the case.

Coutsodontis responded on November 6, 2014 by only producing minimal additional documents. Further, Coutsodontis's bald assertion that he "searched through pouches of pleadings, exhibits, correspondences, and papers" does not comply with Plaintiffs' request that he specifically identify all computers, portable devices, hard drives and additional files that were searched to find documents responsive to the requests. Coutsodontis even admits, "Other responsive documents may possibly exist somewhere." Thus, Coutsodontis did not conduct a good faith search under Federal Rule of Civil Procedure 34.

**III- Coutsodontis's outstanding documents are highly relevant to the central allegations concerning his ties to General Maritime and their motive to eliminate Sea Trade from the maritime industry**

Plaintiffs contend that Coutsodontis has ties to General Maritime and was partially responsible for the demise of Sea Trade during the time period when Coutsodontis repeatedly had the M/V Athena ("Athena") wrongfully arrested. This was all done for the benefit of both Coutsodontis and General Maritime, as General Maritime managed a constellation of ships on behalf of Coutsodontis that directly competed with the Athena. This contention and the documents concerning it are highly relevant to Plaintiffs' opposition to Defendants' motions for summary judgment.

Plaintiffs' document requests included information concerning wire transfers between Coutsodontis and General Maritime and information concerning Coutsodontis's interests in certain vessels under the control of General Maritime. Specifically, Plaintiffs' "Request Number 3" asked for the following documents:

> All documents reflecting wire transfers sent to General Maritime Enterprises Corp by Stelios Coutsodontis … or by any entity in which Stelios Coutsodontis … ha[s] an interest and all wire transfers sent by General Maritime Enterprises Corp or any corporation or individual owning vessels managed by General Maritime Enterprises Corp to Stelios Coutsodontis…, or any entity in which [he has] an interest.

Counsel for Coutsodontis responded with this standard blanket assertion: "After having made a diligent search of [his] files, Stelios Coutsodontis … did not find any documents with regard to Request Number 3."

This request has been outstanding for five years. Indeed, in a July 28, 2009 letter, counsel for Plaintiffs requested information on a $3 Million payment that went from a trust, in which Coutsodontis had an approximate $11 Million interest, to General Maritime. Specifically, Plaintiffs requested "[c]opies of all wire transfers and credit advices from Stylianos Coutsodontis's receiving bank or financial institutions with respect to the transfer of $3 million from UBS-Mimosa Trust to Stylianos Coutsodontis in May 2003-June 2003." Coutsodontis's lawyers responded that Coutsodontis did not possess "any documentation responsive to the request." This statement was patently false, as Coutsodontis's recent deposition reveals.

**IV- Coutsodontis admits that documents concerning the key $3 Million transfer to General Maritime exist, confirming he willfully failed to comply with his discovery obligations during the last five years**

During a recent November 20, 2014 deposition in a parallel state court action, Coutsodontis was asked questions concerning the $3 Million payment to General Maritime:

> Q. Okay. Do you recall being requested to provide information regarding the $3 million in this litigation?
>
> A. To whom?
>
> Q. Do you recall being requested by George Peters' lawyers, not us, but his previous lawyers, for information regarding the $3 million transfer?
>
> A. Yes.
>
> Q. Did you provide that information?
>
> A. I don't remember. I don't think so.
>
> Q. Did you do a search of your records for any information regarding this $3 million loan that you gave to General Maritime?
>
> A. No.
>
> Q. Did you provide any bank records to General -- George Peters regarding this $3 million loan?
>
> A. To the best of my recollection, and I will stand corrected, I believe we advised his then attorneys that that 3 million was part of my inheritance.
>
> Q. Okay. Part of your inheritance?
>
> A. Yes.
>
> Q. But that doesn't answer the question. I am just saying, did you provide information regarding this $3 million General Maritime loan to George Peters?
>
> A. No.

Coutsodontis admits that he transferred $3 million to General Maritime, but dubiously characterized the transfer as a "loan." Coutsodontis further admits that General Maritime used these funds to purchase a vessel for its "client" Attika, another shipping company. Coincidentally, Coutsodontis, his daughter, Defendant Francesca Coutsodontis, who barely has 7 months shipping experience in her life, and Coutsodontis's cousin who operates General Maritime, constitute the full board of directors of Attika.[1]

---

[1] Coutsodontis also has an ownership interest in Attika, though he self-servingly denied it in his deposition.

Page 5 of 6

Despite making a $3 Million "loan" to General Maritime and serving as a board member of Attika who received the benefit of this loan in the form of a vessel, Coutsodontis incredibly claims that no documentation memorializing the terms of this $3 Million loan exist, no documents concerning any board resolutions authorizing the purchase of the vessel exist, and no documents concerning the purchase of the vessel exist. Ultimately, Coutsodontis claims that the $3 Million he "lent" to General Maritime was repaid to him "through his attorneys." Plaintiffs requested this information:

> Q. Mr. Coutsodontis, I want the information or the wire from General Maritime to whatever attorney received it. And then, I want the information from the wire from your counsel who received it from General Maritime to you.
>
> MR. MOBARGHA: So, that's two different wires I'd like to produce. Okay. I think it's fair, considering the testimony that was given today.
>
> MR. JOHNSTON: And for the third time, I did not tell you I would not cooperate. For the third time I told you I understood you the first time, and the second time, and I understand you now.
>
> ….
>
> MR. MOBARGHA: I am not being belligerent. I just don't mean to. Because the interpretation of these requests are so narrow -- honestly, I am being honest, I just feel that I have to elaborate precisely what I'm looking for, otherwise, someone will say that well, the account – the wire came to my lawyer's escrow fund.
>
> MR. JOHNSTON: Well, you made the request of me yesterday. I got it. Okay?
>
> Q. I also ask for one last wire, the wire from UBS to General Maritime in 2003 time frame when you --
>
> A. I don't have it.
>
> Q. Well, I'd like you to ask General Maritime for it.
>
> A. You want to ask General Maritime, ask them.

> Q. No. I am saying that you can ask General Maritime for that wire. That wire was money from your trust account to General Maritime. I am just trying to make sure that we understand what's involved. Okay.

After five years of attempting to obtain this basic financial information – and after five years of Coutsodontis denying the existence of this information – Coutsodontis has now reversed position and at least admitted that the bank information concerning the $3 Million wires exist and has promised to produce these documents. However, a full week after his deposition, Coutsodontis still has not produced this limited, but highly relevant information.

### V- Coutsodontis is purposely withholding responsive documents until after the deadlines for summary judgment pass

Given Coutsodontis's egregious conduct and recent admissions of his willful failure to produce responsive documents during the past five years, coupled with his new promise to produce documents, Plaintiffs respectfully request an adjournment until they receive this crucial information. Plaintiffs believe Coutsodontis has a financial interest in General Maritime and the ship-owning corporations controlled or managed by them, such as Attika. For years, Coutsodontis has stalled in producing these documents in the hope that discovery would close as to General Maritime and summary judgment would be under way absent any documentation linking the Defendants and illustrating a conspiracy. This is precisely what the record demonstrates has occurred.

In conclusion, summary judgment is not proper where Plaintiffs should have had the opportunity to pursue discovery, which was requested and not received. Consequently, Plaintiffs request an adjournment of their deadline to submit their opposition to both Coutsodontis's and General Maritime's motions for summary judgment until at least January 19, 2015 so that it can raise these issues before Judge Pitman and finally resolve them after five years.

Respectfully submitted,

*/s/ Jason H. Berland*
Jason H. Berland
*Counsel for Plaintiffs*