BEYS STEIN MOBARGHA & BERLAND LLP
Nader Mobargha
646.755.3603 (Direct)
nmobargha@beysstein.com

December 2, 2014

**BY ECF AND BY FAX (212) 805-6111**

The Honorable Henry Pitman U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re: *Sea Trade Maritime Corp. v. Coutsodontis, et al.* **(Index No. 09 Civ. 488 (LGS) (HBP)), Request for Pre-motion Discovery Conference**

Dear Magistrate Judge Pitman:

      We are counsel to Plaintiffs Sea Trade Maritime Corporation ("Sea Trade") and George Peters in the above referenced action. We write to request a pre-motion discovery conference pursuant to Your Honor's Individual Rules Section 2A, and Local Civil Rule 37.2.

**I-**       **Defendants have failed to produce documents responsive to a request served before the close of discovery**

      Defendants Stelios Coutsodontis ("Coutsodontis") and Francesca Eleni Coutsodontis ("Francesca") have failed to produce documents in response to virtually all of Plaintiffs' requests for production in Plaintiffs' April 17, 2014 First Request for Production of Documents to Defendants Stelios Coutsodontis and Francesa ("RFP"). During a September 24, 2014 compliance conference, Your Honor specifically informed Defendants that they were obligated to produce responsive documents since the Plaintiffs served the RFP <u>before</u> the close of discovery, and that Coutsodontis's claim that he is the true shareholders of Plaintiff Sea Trade did not exonerate Defendants from their obligation to produce documents. Your Honor also accepted Plaintiffs' argument that Defendants had waived any objections to those requests since none were made at any time.

      Nevertheless, Defendants have again failed to produce any documents and have admitted during a recent deposition in a parallel case that they have not even conducted a good faith search for those documents.

For instance, Defendants claimed that they did not have any documents responsive to Request No. 3, which states:

> All documents reflecting wire transfers to General Maritime by Coutsodontis and/or Francesca or by any entity in which Coutsodontis and/or Francesca have an interest and all wire transfers sent by General Maritime or any corporation or individual owning vessels managed by General Maritime to Coutsodontis and /or Francesca, or any entity in which they have an interest.

Defendants responded to this document request by making the blanket assertion that "[a]fter having made a diligent search of their files, Coutsodontis and Francesca did not find any documents with regard to Request No. 3."

## II- **Defendants admit responsive documents exist, but still refuse to produce them**

This statement was patently false, as Coutsodontis's recent deposition in a parallel case reveals. In short, Coutsodontis admitted that he transferred $3 million from a trust in which he had an interest to General Maritime. Coutsodontis dubiously characterized the transfer as a "loan." Coutsodontis further admits that General Maritime used these funds to purchase a vessel for its "client" Attika, another shipping company. Coincidentally, Coutsodontis, his daughter Francesca, who barely has 7 months shipping experience in her life, and Coutsdontis's cousin, who operates General Maritime, constitute the full board of directors of Attika, the alleged "client."

Despite making a $3 million "loan" to General Maritime and serving as a board member of Attika who received the benefit of this loan in the form of a vessel, Coutsodontis incredibly claims that no documentation memorializing the terms of this $3 million loan exist, no documents concerning any board resolutions authorizing the purchase of the vessel exist, and no documents concerning the purchase of the vessel exist. However, Coutodsontis admitted that some documents concerning the alleged $3 million loan exist. Coutsodontis also admitted that he did not conduct a good faith search of these documents:

> Q. Okay. Do you recall being requested to provide information regarding the $3 million in this litigation?
>
> A. To whom?
>
> Q. Do you recall being requested by George Peters' lawyers, not us, but his previous lawyers, for information regarding the $3 million transfer?
>
> A. Yes.

> Q. Did you provide that information?
>
> A. I don't remember. I don't think so.
>
> Q. Did you do a search of your records for any information regarding this $3 million loan that you gave to General Maritime?
>
> A. No.
>
> Q. Did you provide any bank records to General -- George Peters regarding this $3 million loan?
>
> A. To the best of my recollection, and I will stand corrected, I believe we advised his then attorneys that that 3 million was part of my inheritance.
>
> Q. Okay. Part of your inheritance?
>
> A. Yes.
>
> Q. But that doesn't answer the question. I am just saying, did you provide information regarding this $3 million General Maritime loan to George Peters?
>
> A. No.

Coutsodontis also admitted that wires reflecting the alleged $3 million "loan" and its alleged repayment exist, but has willfully failed to produce this information:

> Q. Mr. Coutsodontis, I want the information or the wire from General Maritime to whatever attorney received it. And then, I want the information from the wire from your counsel who received it from General Maritime to you.
>
> MR. MOBARGHA: So, that's two different wires I'd like to produce. Okay. I think it's fair, considering the testimony that was given today.
>
> MR. JOHNSTON: And for the third time, I did not tell you I would not cooperate. For the third time I told you I understood you the first time, and the second time, and I understand you now.
>
> ....
>
> MR. MOBARGHA: I am not being belligerent. I just don't

> mean to. Because the interpretation of these requests are so narrow -- honestly, I am being honest, I just feel that I have to elaborate precisely what I'm looking for, otherwise, someone will say that well, the account – the wire came to my lawyer's escrow fund.
>
> MR. JOHNSTON: Well, you made the request of me yesterday. I got it. Okay?
>
> Q. I also ask for one last wire, the wire from UBS to General Maritime in 2003 time frame when you --
>
> A. I don't have it.
>
> Q. Well, I'd like you to ask General Maritime for it.
>
> A. You want to ask General Maritime, ask them.
>
> Q. No. I am saying that you can ask General Maritime for that wire. That wire was money from your trust account to General Maritime. I am just trying to make sure that we understand what's involved. Okay.

To date, Plaintiffs still have not received any documents that Coutsodontis and his counsel promised to produce, including wire transfers from Coutsodontis's trust to General Maritime, and alleged wire transfers from General Maritime to Coutsodontis or his agents or lawyers reflecting the repayment of this "loan." This request has been outstanding for <u>five years</u>. Indeed, in a July 28, 2009 letter, counsel for Plaintiffs requested information on a $3 Million payment to General Maritime. Specifically, Plaintiffs requested "[c]opies of all wire transfers and credit advices from Coutsodontis's receiving bank or financial institutions with respect to the transfer of $3 million from UBS-Mimosa Trust to Coutsodontis in May 2003-June 2003." Back then, Coutsodontis's lawyers made the same blanket response they made to Plaintiffs' recent RFP, namely, that Coutsodontis did not possess "any documentation responsive to the request." The misrepresentation has spanned over five years.

After five years of attempting to obtain this basic financial information – and after five years of Coutsodontis denying the existence of this information – Coutsodontis has now reversed position and at least admitted that the bank information concerning the $3 Million wires exist and has promised to produce these documents. However, almost two weeks after his deposition, Coutsodontis still has not produced this basic, but highly relevant information, despite his promise to do so.

This is not the only document request to which Defendants failed to adequately respond. Indeed, Defendants responded to almost all of Plaintiffs' RFPs with the blanket assertion that "[a]fter having made a diligent search of their files, Stelios Coutsodontis and Francesa Eleni

Coutsodontis did not find any documents..." This response is insufficient, especially given Defendants' history of willfully failing to comply with their discovery obligations. Plaintiffs have reason to believe that responsive documents exist, and do not believe that Defendants undertook a good faith effort to find responsive documents.

### III- Plaintiffs have attempted to resolve the discovery issues in good faith, but have not been successful in obtaining basic responsive documents

In a letter dated October 29, 2014 (the "Letter"), we reached out to Defendants in good faith and in compliance with Local Rule 37(a)(1), demanding that Defendants comply with the discovery requests discussed above by November 6, 2014. Specifically, we requested that Plaintiffs either produce the outstanding documents or specify in detail the processes and procedures they employed in their search for responsive documents before concluding that none exist. We also requested that Coutsodontis submit a certification in the form of an affidavit that he complied with these required procedures and that no responsive documents exist if, in fact, that is the case.

Defendants responded to the Letter on November 6, 2014 by producing minimal additional documents. Specifically, Defendants responded to only two of the twenty RFPs for which they had claimed no documents exist, producing only one document in response to RFP No. 3 and documents that were unresponsive to RFP No. 11. As shown above, Defendants response is indisputably inaccurate.

Further, Defendants' bald assertion that they "searched through pouches of pleadings, exhibits, correspondences, and papers in our office" does not comply with our request that they specifically identify all computers, portable devices, hard drives and additional files that were searched to find documents responsive to our RFPs. Defendants even admit that "other responsive documents may possibly exist somewhere." Thus, Defendants did not conduct a good faith search under Federal Rule of Civil Procedure 34. In contrast, we have made a good faith effort to resolve this issue, but to date have been unsuccessful.

Defendants still have not produced documents in response to eighteen RFPs that are essential to this dispute and which we believe exist. Accordingly, we now request a pre-motion discovery conference with Your Honor.

Respectfully submitted,

Nader Mobargha
*Counsel for Plaintiffs*

Cc: Scott Johnson

Peter Skoufalos