# Poles Tublin Stratakis & Gonzalez, LLP
## 46 Trinity Place – Fifth Floor
## New York, New York 10006-2288

Writer's New York Telephone Ext.: 232
Writer's Email: jpoles@polestublin.com

Telephone (212) 943-0110
Facsimile (212) 269-9875

**Respond to New York, New York Address**

December 8, 2014

**BY ECF**

Honorable Henry B. Pitman
United States District Court – Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York   10007-1312

Re: *Sea Trade Maritime Corporation et al. -v- Stelios Coutsodontis et al.*
1:09-cv-00488 (LGS)(HBP)
Our File No. 26,090

Dear Judge Pitman:

We represent STELIOS COUTSODONTIS and FRANCESCA ELENI COUTSODONTIS ('*Francesca Coutsodontis*'), defendants in the above-reference action. We are writing in response to the December 2, 2014 letter to the Court by Plaintiffs.

Plaintiffs sought an adjournment of Defendants' summary judgment motion on the basis that they have been denied requested discovery. Fed. R. Civ. P. 56(f), in pertinent part, provides that

> a party wishing to "postpone consideration of a motion for summary judgment and to obtain additional discovery" must submit an affidavit or declaration "describing: (I) the information sought and how it will be obtained; (ii) how it is reasonably expected to raise a genuine issue of material fact; (iii) prior efforts to obtain the information; and (iv) why those efforts were unsuccessful." (*Citation omitted.*) The Court then has discretion as to whether to grant the Rule 56(f) motion, based primarily on whether the party has had "a sufficient opportunity to develop and contest the issues on which it now claims to need additional discovery." (*Citation omitted.*)

No such affidavit or declaration was presented with Plaintiff's request. More importantly, Plaintiffs did not explain how this alleged discovery is expected to raise an issue of material fact. Plaintiffs did not even suggest that Defendant Coutsodontis' 2003 USD 3,000,000.00 loan to General Maritime

Enterprises Corporation ('*General Maritime*') in any way related to the vessel arrests at issue in this action, which took place years later. Nor was it suggested that loan was made to harm Plaintiffs.

Defendant Stelios Coutsodontis has already acknowledged making a loan of USD 3,000,000.00 to General Maritime in 2003—many years before the alleged wrongful arrests. General Maritime has also acknowledged the loan in its moving papers for summary judgment before Judge Schofield. What is being sought is a copy of a 2003 wire transfer confirmation from UBS in Switzerland confirming the wiring of the USD 3,000,000.00 to General Maritime already admitted. This is in no way relevant to Defendant Coutsodontis's motion for summary judgment nor, for that matter, for General Maritime's motion for summary judgment. More importantly, this document is not part of what was sought by Plaintiff. Plaintiff's Request No. 3, in pertinent part, sought "All documents reflecting wire transfers sent to General Maritime by Stelios Coutsodontis and/or Francesca Eleni Coutsodontis or by any entity in which Stelios Coutsodontis and/or Francesca Eleni Coutsodontis have an interest." Plaintiffs know that there are no direct transfers to General Maritime from Stelios Coutsodontis and/or Francesca Eleni Coutsodontis. There have been no wire transfers by Stelios Coutsodontis and/or Francesca Eleni Coutsodontis to General Maritime. Further, neither Stelios Coutsodontis or Francesca Eleni Coutsodontis have an interest in UBS. The foregoing notwithstanding, Stelios Coutsodontis has nonetheless already produced to Plaintiffs (on November 6, 2014) his May 14, 2011 confirmation letter to UBS regarding the USD 3,000,000.00 loan to General Maritime. There is nothing more that can be produced. A copy of that letter is annexed hereto as Exhibit A. The questions were merely designed to confuse Coutsodontis.

Second, in an attempt to delay their response to Coutsodontis' motion for summary judgment, Plaintiffs allege that Coutsodontis has not responded to requested discovery and that General Maritime is the "alter ego entity" of Defendant Coutsodontis. Not only is there not a scintilla of evidence to support this allegation "alter ego"—which is why Plaintiff has failed to offer any support—but Plaintiff knows this allegation to be false. Indeed, it was **Christy George Peters, father of Plaintiff George Peters,** who formed General Maritime. See Doc. Nos. 169-4 and 169-5. Defendant Coutsodontis' name appears nowhere in these documents nor do Plaintiffs offer any documents or arguments contesting these documents.

Third, Plaintiffs admit that the vessel in question, the M/V ATHENOULA, was purchased and owned by Attika International Navigation SA, and not General Maritime. In point of fact, Mr. Nikolaos A. Kotakis, treasurer and a director of General Maritime, confirms that General Maritime managed the M/V ATHENOULA for Attika and that the USD 3,000,000.00 was used to purchase the M/V ATHENOULA. See Doc. No. 169, ¶¶13–14. Ultimately, Plaintiffs speciously allege that the M/V ATHENOULA was purchased to compete directly with Sea Trade Maritime Corporation's vessel—again, no relevance to Defendants' motion for summary judgment. Here, some perspective is in order. There are more than 6,000 "bulkers" trading for cargos in the world's markets. With these market statistics, how can one seriously conclude that any specific single vessel is generally competing with another specific vessel. When asked about the alleged issue of direct competition by Defendants hypothetical vessel against Sea Trade, Plaintiff George Peters responded as follows:

> Q. Well, how many times did the M/V ATHENA directly compete for – for charter parties or cargo with any of these aforementioned vessels?
>
> A. Well, when you say "directly," I'm not sure exactly what you mean. There is a limited pool of cargo in the world, and there is so many Panamax ships. So,

every ship in a similar class is always competing with the others.

Q. All right. Do you know of any specific time or any specific event where the M/V ATHENA lost a cargo or a charter party to any of Captain Coutsodontis' vessels?

A. I can't say directly. But for every -- for every cargo taken off the market by a competitor there is one less cargo available for the other ships.

Defendant's motion for summary judgment addresses the issues of the alleged wrongful arrests and the alleged fiduciary duty. Plaintiffs contrived complaints regarding discovery have absolutely no relevance to the summary judgment motions before the Court.

We thank the Court in advance for its consideration.

Very truly yours,
POLES TUBLIN STRATAKIS & GONZALEZ, LLP

/s/ John G. Poles

John G. Poles

**Exhibit A**

J-C Hughes of [illegible]

## Captain S.L. Coutsodontis
9 Northway, Bronxville, NY 10708
Tel. (914) 337-8230 Fax (914) 395-1375

May 14, 2011

The Managing Director
UBS AG, Private Banking
P.O. Box 4012
CH-1002 Lausanne
Switzerland

Dear Sir,

I refer to the MIMOZA TRUST of which my sister Athena Eliades was the Settlor. She passed away in Greece on January 13, 2003. I was left a beneficiary of half of this trust, an amount of approximately US $11,049,982.00

When we met with Mr. Fredy Schwalm in Lausanne very early in the year 2003 I requested of him to remit a portion of the monies due to me, ie US $3,000,000 to General Maritime Enterprises in Greece. He very kindly did so, for which I thank him and UBS.

The balance of US $8,049,982.00 later at my request was remitted to my account with HSBC-USA, which I did receive. I have to prove to authorities that indeed in the year 2003 at my request UBS did remit for me this amount of US $3,000,000 to General Maritime Enterprises in Greece.

Therefore I kindly request that you provide me with proof of this remittance.

Please look to me for any and all expenses in connection with this matter. I wish to thank you in advance for your kind attention.

Very truly yours,

*S.L. Coutsodontis*

SIGNATURE VERIFIED
LESLIE FERGUSON

24.5.2011

1574