BEYS STEIN MOBARGHA & BERLAND LLP
JASON H. BERLAND
646.755.3604 (Direct)
jberland@beysstein.com

January 9, 2015

**VIA ECF**

The Honorable Henry Pitman U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

> Re:   *Sea Trade Maritime Corp. v. Coutsodontis, et al.*; **Index No. 09 Civ. 488 (LGS) (HBP), Response to Defendants' January 8, 2015 Letter**

Dear Magistrate Judge Pitman:

We are counsel to Plaintiffs Sea Trade Maritime Corporation and George Peters ("Peters") in the above referenced action. We write to address certain assertions and misrepresentations made by Defendants in their January 8, 2015 letter.

After reading Defendants' latest missive, what is noteworthy is that not once in their six-page letter do they deny the existence of the documents Plaintiffs have been requesting for quite some time. Instead, Defendants make non-convincing arguments why they are not producing these documents. Quite simply, they have failed to justify their non-compliance, and at a minimum, sanctions are appropriate.

**I-    *Defendants continue to fail to produce evidence of a wire from General Maritime to Coutsodontis (Requests Nos. 2 & 3)***

As previously mentioned, at a December 10, 2014 conference (the "December 10th Conference") before this Court, Defendants' counsel stated that "within two weeks, December 24, we will get the transfer from General Maritime to the attorney, the tax attorney, and then from the tax attorney to the account of our client." Counsel further stated that the only issue remaining was "tracing how that money went from UBS to General Maritime, [and then] from General Maritime back to our client." As Your Honor noted at the conference, "… certainly the $3 million transfer is one of the subjects in issue…." Despite their unequivocal on-the-record representation, Defendants quite simply continue to fail to produce any documentation indicating that $3 million was transferred from General Maritime to Coutsodontis or his tax lawyers.

Defendants misleadingly assert in their letter that Plaintiffs "acknowledge" that Stelios Coutsodontis ("Coutsodontis") was "loaning" $3 million to General Maritime to purchase a

vessel. Plaintiffs do not believe the transfer was a "loan," and it is preposterous to believe that Coutsodontis would loan $3 million to a company he had "no relationship with" without a shred of documentation, such as a promissory note.

In this vain, Defendants state, in a footnote, that "Plaintiffs' document production request never sought documents supporting the fact that Coutsodontis' U.S.D. 3,000,000.00 was a loan to General Maritime for the purchase of a vessel by Attika." Since Plaintiffs did not (and still do not) believe that Coutsodontis "loaned" General Maritime these funds, there was no reason to specifically request documents evidencing a "loan." Moreover, the first time Coutsodontis advanced his "loan" story was at his deposition on November 20, 2014 – more than seven months after Plaintiffs submitted their document requests.

Defendants further mislead the Court in asserting that Plaintiffs "also acknowledge" that Attika sold its assets and liabilities to Beekman in 2007. Plaintiffs have no idea what the terms of that sale were, other than the fact that (i) the M/V Athenoula was sold from Atika to Beekman in what appears to be a sham sale for $1; (ii) the vessel was renamed the M/V Theoniki after the sale; (iii) the Kotakis family was on both sides of the sale; and (iv) Defendants, who were officers and directors of Attika for years, were not named as officers or directors of Beekman – the new sanitized iteration of Attika – in an attempt to distance themselves from General Maritime, which managed both the Athenoula and the Theoniki, because General Maritime was a named co-defendant in a 2007 state court proceeding. The reason Plaintiffs are asking for documents from Attika and Beekman is so they can independently determine the terms of the sale based on documentary evidence.

Moreover, Defendants statement that "Plaintiffs knew Attika's assets and liabilities had been sold to Beekman Shipping and, therefore, Coutsodontis had complied with this Court's Orders" is mindboggling. Whether or not Plaintiffs know this information is irrelevant. The Court directed that Defendants' "assignment is to complete production of all the documents requested in the April 2014 document request by December 24." Whether or not Plaintiffs are aware that certain documents possibly exist in no way excuses Defendants from their crystal clear legal obligation to produce these documents.

## II- *Defendants continue to fail to produce documents from Attika (Requests Nos. 11 & 12)*

First, Plaintiffs in no way believe that Defendants were made officers and directors of Attika "in name only."[1] Moreover, Defendants' statement that they satisfied their discovery obligations by "reaching out" to a Panamanian lawyer and Nikolaos Kotakis ("Kotakis") demonstrates they are missing the gravity of their obligation and illuminates their cavalier approach to discovery. The correspondence from the Panamanian lawyer simply showed the

---

[1] It should be noted that this is the first time Defendants have made the argument they were also officers of Attika. At his November 2014 deposition, Coutsodontis stated he was a nominal director of Attika. Not until Defendants produced documents from a Panamanian lawyer on December 22, 2014 did Plaintiffs know for certain that Defendants had also been officers in the company.

date of incorporation and dissolution of Attika and a list of its officers and directors.  The document produced from Kotakis was a three sentence unsworn statement attesting to similarly general information.

However, as addressed in Plaintiffs' December 30, 2014 letter (the "December 30th Letter"), Defendants have a duty and obligation as former officers and directors of Attika to obtain documents from Attika that are responsive to Plaintiffs' requests, regardless of the location of the documents (and regardless if the Defendants were officers and directors "in name only," as they conveniently claim).  Simply stating the documents were not in Defendants' home is wholly insufficient.  As the Court made clear during the December 10th Conference, "Defendants' obligation extends to obtaining documents from third parties."  Moreover, case law in the Second Circuit, which was cited in Plaintiffs' December 30th Letter, dictates that Defendants, as directors and officers of Attika, have a duty to obtain corporate organizational documents and financial documents requested during the course of discovery, and produce such documents, regardless of where those documents are located.

Instead of addressing the well-settled law (or refuting that officers and directors have certain discovery obligations), Defendants actually make the argument that the law should be overlooked and set aside since Attika is a Panamanian company.  The issue before the Court is not whether former officers and directors of a foreign company have a fiduciary duty to the company, in which the local law of incorporation would indeed apply.  The issue before the Court is whether Defendants, who are litigants **in the Second Circuit**, have an obligation, as former officers and directors, to obtain corporate organizational documents requested in discovery.  Here, discovery obligations under the Federal Rules of Civil Procedure and well-established jurisprudence govern, not Panamanian civil procedures and law.

### III-    *Defendants continue to fail to produce documents from Beekman (Requests Nos. 13 & 14)*

It clearly is Defendants who are attempting to deceive the Court with their amazing, overly semantic, argument that Beekman Corporation and Beekman Shipping Corporation are not one in the same.  Defendants are fully aware that when Plaintiffs requested documents concerning Beekman Corporation, they were referring to Beekman Shipping Corporation.  As previously discussed, Attika became Beekman Shipping after the sham sale of the Athenoula.  In their document requests, Plaintiffs ask for documents relating to Beekman Corporation directly following their request for documents on Attika.  Moreover, in Coutsodontis's deposition, the sale of the Athenoula from Attika to Beekman was discussed at length.  In sum, Defendants are quite aware that there is one Beekman Corporation/Beekman Shipping of relevance in this case, and **that is the Beekman that sent $3.6 million to Coutsodontis**, despite his protestations that he was unaware of the corporation.  Defendants' argument is the epitome of bad faith.

### IV- *Defendants failed to produce documents from Beekman-Wilton (Requests Nos. 15 & 16)*

Here, Defendants are not stating that documents do not exist. They are simply trying to make an excuse why they need not comply with Plaintiffs' requests and produce documents, such as a lease or copies of checks, which relate directly to Plaintiffs' requests for documents reflecting the ownership or board of directors of Beekman-Wilton.

Despite facts that have recently been discovered, such as the reality that Beekman-Wilton purchased Francesca Coutsodontis's ("Francesca") home, Defendants state in their responses to Plaintiffs' document requests that they "have no interest in a company named Beekman Wilton Corp. and have no documents to produce." However, once Plaintiffs unilaterally obtained documents showing that Beekman-Wilton purchased the property that Francesca lives in, Defendants were forced to come clean and acknowledge that Francesca "leases" the property. Plaintiffs contend that it is not a mere coincidence that Beekman-Wilton, the company from which Francesca "leases" the property, happened to include Kotakis, her cousin and fellow Attika officer and board member (and owner of General Maritime), as a director.

Nonetheless, Defendants never objected to this request (or any of the other requests), yet they still fail to turn over responsive documents in their possession, custody or control.

### V- *Defendants continue to fail to produce documents from the IRS blessing Coutsodontis's "loan" to General Maritime*

Defendants raised the issue of IRS documents, without prompting, at the December 10th Conference. Counsel stated that the money transferred from Coutsodontis to General Maritime and then back to Coutsodontis "was a loan and declared a loan to IRS. IRS has accepted that. We have indicated to the other side that we are trying to get from the IRS and from the attorney from the tax attorney information as to the status of this matter with the IRS. Actually, the status is it's completely okay." However, not a single document from the IRS was produced to date. Defendants cannot use the IRS as sword and claim that the transfer was "blessed" as a loan by the IRS and then use the fact that that IRS documents were not specifically mentioned in the requests in order to shield their production obligations. Regardless of the specific wording of the requests, Plaintiffs clearly asked for all documents reflecting wires between General Maritime and Coutsodontis, such as documents concerning the 2003 $3 million transfer. The IRS documents that Defendants placed in issue are clearly related to this transfer.

Moreover, Defendants assertion that Coutsodontis had "no part whatsoever" in an intra family legal dispute between Peters and his sister is misleading to the Court. In fact, Coutsodontis involved himself in the case and testified on the behalf of Peters's adversary. Moreover, the issue of Coutsodontis's $3 million transfer to General Maritime first arose in connection with that matter; the same matter where Coutsodontis first represented that he did not

have to file any IRS forms in connection with his $3 million distribution and subsequent transfer to General Maritime.

**VI-** *Defendants continue to fail to produce correspondence between Coutsodontis and Colonial Navigation Corporation (Request No. 24)*

Defendants misstate that Plaintiffs' position is that "a single letter directed to Plaintiff George Peters c/o Colonial Navigation Corp. is the equivalent of a letter written to Colonial Navigation Corp…." In fact, as stated in Plaintiffs' December 30th Letter, Coutsodontis did send Colonial their own copy of the letter he sent to Peters. The point here is that Defendants persistently fail to produce documents when they clearly exist, and Plaintiffs have no way of knowing what other correspondence actually exists between Coutsodontis and Colonial.

**VII-** *Additional misstatements and failures to address proven untruths*

It is noteworthy that Defendants fail to address certain misstatements raised in Plaintiffs' December 30th Letter, such as Coutsodontis's clearly untruthful statement that he was unaware of Beekman (despite the fact that they sent him $3.6 million), or General Maritime's lawyers' position that Coutsodontis had "no relationship" with General Maritime (despite the fact that he transferred $3 million with absolutely no documentation of the transfer; which in-and-of-itself indicates a significant relationship). Moreover, Defendants do not address the fact that Coutsodontis failed to tell the truth when asked if he corresponded with Colonial; they simply argue that one letter is no big deal.

Moreover, in connection with the reality that both Defendants have more than one social security number, Defendants simply state they "cannot explain the 'mistaken/inaccurate' reporting by Lexis/Nexis" and that they produced the only social security numbers possessed by Defendants. Their latest argument, that a clerk must have inputted the wrong digits, and that they do not in fact have more than one number, is nonsensical, but not surprising. The exhibits attached in Plaintiffs' December 30th Letter are what is known as "Tracer" documents and indicate the number of times in a given year that a social security number was used. In this case, the cards were used multiple times. Moreover, the nine digits in Francesca's known two social security numbers are not merely off by one or two digits, they are completely different numbers. Quite simply, Defendants have no reasonable, good faith explanation as to why they are not providing documents reflecting these multiple numbers, so instead they just say there must be a mistake.

  In light of Defendants' cavalier attitude towards their discovery obligation, coupled with their misstatements and failures to deny certain misrepresentations and inconsistencies, Defendants' failure to comply with the Court's discovery Orders can only be viewed as willful and in bad faith.  Accordingly, Plaintiffs respectfully requests that Your Honor recommend a default judgment be ordered.  In the event that the Court is disinclined to take such a measure, Plaintiffs alternatively request that an adverse inference be ordered, or, at the very least, sanctions be imposed.

            Respectfully submitted,

            */s/Jason H. Berland*
            Jason H. Berland

            *Counsel for Plaintiffs*


cc: John Poles, Esq. (Via ECF)