BEYS STEIN MOBARGHA & BERLAND LLP

JASON H. BERLAND

646.755.3604 (Direct)
jberland@beysstein.com

January 21, 2015

**VIA ECF**

The Honorable Henry Pitman U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

> Re:   *Sea Trade Maritime Corp. v. Coutsodontis, et al.*; Index No. 09 Civ. 488 (LGS)
>        (HBP), Response to Defendants' January 20, 2015 Letter

Dear Magistrate Judge Pitman:

We are counsel to Plaintiffs Sea Trade Maritime Corporation ("Sea Trade") and George
Peters ("Peters") in the above referenced action.  We write in response to Defendants' January
20, 2015 letter to the Court (the "January 20th Letter").

Despite all the evidence to the contrary, Defendants Stelios Coutsodontis
("Coutsodontis") and Francesca Eleni Coutsodontis ("Francesca") continue to assert – without
any basis – that they have adequately complied with Your Honor's September 24, 2014 and
December 10, 2014 orders (the "Orders") and produced all responsive documents in their
possession, custody or control.  Knowing that their contention is unsupportable, Defendants
resort to making the same, tired arguments this Court has rejected numerous times in the past
because they have no relevance to Defendants' discovery obligations.

**I-     Defendants failed to produce documents that unequivocally exist**

There are <u>at least</u> five instances where Defendants have failed to produce documents that
are known to exist and are within their control.  These failures are clear violations of the Court's
Orders and call for the imposition of serious sanctions, including default.

<u>First</u>, Defendants failed to produce any documentation concerning the $3 million transfer
from General Maritime to Coutsodontis or his tax lawyers (the "$3 Million Transfer"), despite
their unequivocal on-the-record representation that such documentation exists, and their promise
to produce such documentation by December 24, 2014.  At a December 10, 2014 conference (the
"December 10th Conference"), Defendants stated, "[W]e will get the transfer <u>from General
Maritime</u> to the attorney, the tax attorney, and then from the tax attorney to the account of our

client." True to form, however, Defendants never produced this document.[1]

Second, Defendants failed to produce a single IRS document concerning the $3 Million Transfer, despite representing that such documents exist and promising at the December 10th Conference to produce them. IRS documents concerning the $3 Million Transfer are responsive to Plaintiffs' document requests, which require the production of all documents concerning the $3 Million Transfer. Despite the relevance of this information and Defendants' in-court representation that they will produce this information, Defendants now reverse their position in bad faith and claim that these documents fall outside the "purview" of Plaintiffs' document requests. Defendants' reversal of position is even more disingenuous given that, at the December 10th Conference, they raised the IRS's alleged "blessing" as a defense to the $3 Million Transfer made without consideration. Even more egregious is Defendants' failure to provide any explanation for this reversal.

Third, Defendants failed to produce correspondence from Colonial even though such documents indisputably exist. Despite Coutsodontis's testimony at his November deposition that he never sent any letters to Colonial, Plaintiffs have proof that Coutsodontis mailed one letter directly to Colonial and a second letter as a "carbon copy" of a letter he wrote to Peters, "care of" Colonial, to Colonial's New York address. These are just two letters that Plaintiffs know exist because they happen to have copies of them. Undoubtedly, more correspondence and documents like these exist. These two letters also show that Coutsodontis's sworn deposition testimony is false, and that Coutsodontis made no effort to search for these responsive documents.

Fourth, Defendants failed to produce information concerning the multiple social security numbers that they have indisputably used on multiple occasions. Defendants' excuse for willfully failing to produce this information is that they cannot explain the "mistaken/inaccurate reporting" on these social security numbers or that Lexis's technology is fallible. What they fail to recognize is that our information on their use of these multiple numbers is not based solely on

---

[1] Defendants only produced a wire from Beekman Shipping Corporation, a company that Coutsodontis claimed in his deposition he had never heard of. In both their January 7, 2015 letter and their January 20th Letter, Defendants try to justify this false testimony by claiming that Plaintiffs' counsel asked about "Beekman Corporation," not "Beekman Shipping Corporation." This is typical of the discovery games that Defendants play. The law, however, does not accept these types of meaningless distinctions, especially where Plaintiffs' counsel did use the most important word, "Beekman," and where a company called "Beekman" transferred $3.6 million to Coutsodontis's lawyers. Indeed, Plaintiffs could not have been asking about any other "Beekman" in the deposition or in their requests for production. *See, e.g., King-Hardy v. Bloomfield Bd. of Educ.,* 2002 WL 32506294, at *5 (D. Conn. Dec. 8, 2002)("A request for production is to be afforded a reasonable construction, rather than straining to find ambiguity when there is none."); *Wool Dev. Int'l Ltd. v. Creaset, Inc.,* 1989 WL 76212, *1 (S.D.N.Y. July 6, 1989)("Common sense should be applied to the construction of ambiguous language in document requests.").

Lexis, but rather on on-line documents, which have traced that they used these numbers on many different occasions.

Fifth, Defendants failed to produce documents concerning Beekman-Wilton, a company they finally acknowledge (after being confronted with documents) exists. Plaintiffs' document requests require the production of documents "reflecting the ownership of Beekman Wilton Corporation." Beekman-Wilton purchased Francesca's multi-million dollar home, and is an integral part of Coutsodontis's constellation of shell companies. Beekman-Wilton is also the lessor of Francesca's property, and Defendants concede that such a lease exists. However, Defendants failed to produce this lease (which would provide information concerning the ownership of the company), or the identity of the entity or the person to whom Francesca writes rent checks. It is indisputable that Francesca, the lessee, has a copy of this lease and information concerning the company that purchased her home.

## II-   **It is indisputable that documents concerning Attika exist, and Defendants, as both Attika's officers and directors, have a legal obligation to produce these documents**

Defendants failed to produce documents concerning Attika, which are responsive to Plaintiffs' requests.

First, these documents certainly exist – indeed, it is factually impossible for Defendants to claim otherwise. Attika was a multi-million dollar operation, involving the transfer of substantial sums of money all over the world. Like any thriving shipping company, Attika had organizational documents; loan documents; documents concerning director business; board resolutions required for the purchase and sale of ships; bank statements; insurance documents; and financial records, reflecting the ownership interests of the corporation – such as who has signatory rights, who has authority to move funds, and who received funds.

Second, Defendants were both officers and directors of Attika. Initially, under oath, Coutsodontis tried to hide the fact that he was the President of the company. In their January 20th Letter, Defendants mischaracterize Coutsodontis's deposition by claiming that Coutsodontis testified that he was "named a director and president of Attika 'out of respect and gratitude.'" This is simply not true. In his deposition, Coutsodontis only claimed that he and Francesca were awarded directorships. Not once in his deposition did Coutsodontis mention that he was Attika's President. In fact, he incredibly testified that he did not know who owned the company; who else was on the board of directors; where the company was headquartered; what assets the company had; or what ship it owned. Recently, we discovered that Coutsodontis and Francesca represented 2/3 of Attika's board of directors (with Nikolaos Kotakis ["Kotakis"], their cousin and the owner of General Maritime, as the final director), and they also represented 2/3 of

Attika's corporate officers (the third being Kotakis).[2]  Consequently, Coutsodontis's claimed ignorance on all matters concerning Attika is not credible.

The progression of lies and omissions in this action should not be overlooked. Defendants are attempting to disassociate themselves from Attika, Beekman, General Maritime and Beekman-Wilton because these entities are, or were, the alter egos of Coutsodontis. Coutsodontis and General Maritime will do anything to prevent the financial ties between Coutosdontis and these entities from coming to light.

Third, courts in the Second Circuit have made it crystal clear that directors and officers of a company have a duty to obtain corporate organizational documents requested during discovery, and produce such documents, regardless of where those documents are located.  *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180-81 (S.D.N.Y. 2006) ("The test for the production of documents is control, not location.  Documents may be within the control of a party even if they are located abroad."); *Wiwa v. Royal Dutch Petroleum Co.*, 2009 WL 529224, at *2-3 (S.D.N.Y. Feb. 17, 2009)("A party's control over third-party documents extends to the records of a corporation for which the party serves as an officer."); *Ssangyong Corp. v. Vida Shoes Int'l, Inc.*, 2004 WL 1125659, at *3 (S.D.N.Y. May 20, 2004)("The test for production of documents is control, not location…Under Rule 34 and Rule 45, the word 'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; [only] that the party has the right, authority, or practical ability to obtain the documents from a non-party to the action."); *Scovin v. Great W. Life & Annuity Ins. Co.*, 2006 WL 2828428 (D. Conn. Sept. 29, 2006) (Former corporate officers and/or directors have control over documents in their former corporate secretary's possession); *Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989)(Owner and corporate officer was directed to produce documents or provide plaintiff's counsel with an affidavit detailing what precise attempts he made to obtain those documents, when he made them, and to whom his demands were addressed).  Defendants have failed to refute this case law.

Rather, Defendants claim that they were officers and directors of Attika "in name only," acting as if this somehow mitigates their obligations as officers and directors to produce

---

[2] Plaintiffs respectfully request that the Court dismiss any affidavits submitted by Kotakis in this action. In the past, Kotakis has made false statements to protect Coutsodontis and General Maritime and allow them to conceal their true interests – as we detailed in previous letters to the Court.  Most relevant, Kotakis has claimed in prior affidavits that any business Coutsodontis "transacted or conducted" with General Maritime was "not with the knowledge and consent of General Maritime."  This statement turned out to be outright false.  Later, Coutsodontis himself admitted under oath that General Maritime requested that Coutsodontis send it $3 million to conduct its maritime business and purchase a ship for its client. Consequently, the Court should give no weight to Kotakis's most recent affidavit, in which he conveniently states that Attika had no shareholders.  It is yet another attempt to cover up Coutsodontis's ties to the company, and as such, should be viewed with suspicion.

documents.  The law makes no distinction between officers and directors "in name only" and those with actual responsibilities.  Even if they were truly courtesy officers and directors, which we assert they were not, Defendants are still saddled with the legal and discovery obligations that come with these positions, courtesy or not.  The case law is clear on this issue.  Here, for instance, Defendants have the authority to request from the banks that hold Attika's accounts relevant statements and documents.  Yet, they failed to do so.  Their failure squarely violates this Court's crystal-clear discovery Orders.

Defendants' defense to their failure – namely, that they are "name only" officers and directors – is self-serving and should not be credited until Plaintiffs and the Court have an opportunity to examine documents concerning the actions taken by Attika's board of directors. Defendants claim that they have satisfied their discovery obligations by simply "reaching out" to Kotakis and a Panamanian lawyer and producing documents that simply show the date of Attika's incorporation and dissolution and a list of its officers and directors.  Defendants' cavalier attitude to their discovery obligations and their willful failure to follow well-settled law is precisely the reason the parties are still embroiled in this discovery dispute almost nine months after Plaintiffs served their document requests.

Logically, Defendants' story of being given directorships "in name only" makes no sense. First, Attika, a multi-million dollar company would not put them on its board of directors and give them no responsibility whatsoever.  That would essentially mean that 66% of Attika's board did absolutely nothing.  Furthermore, based on Coutsodontis's testimony, despite being directors of Attika, he and Francesca did not know who else was on the board or who the owners of the company on which they served as directors were.  This means that the owners of a multi-million dollar corporation ceded control of 66% of their company to complete strangers.  The owners did not stop there.  They also appointed these strangers (i.e., Coutsodontis and Francesca) as the "President," "Vice President" and "Treasurer" of their company, essentially putting them in charge of the day-to-day operations of their company.  Yet, the owners expected them to do nothing.

This fairy-tale simply cannot be believed.  Defendants' tale keeps evolving and becoming more unbelievable as they dig in their heels further in an effort to absolve themselves of their discovery obligations and continue to hide their connection to Attika, Beekman, General Maritime and Beekman-Wilton.

### III-   Defendants make additional red-herring arguments previously rejected by the Court

In addition to ignoring the Court's September 24, 2014 and December 10, 2014 Orders, Defendants also ignore the Court's unambiguous rejections of their previous arguments, most of

which concern the merits of the case.  Instead, Defendants spend a full page in their January 20th Letter recycling these rejected arguments in an effort to cloud the issue and once again distract the Court.  They claim that a Greek court decision, which has not been recognized in this District, somehow renders Peters's standing to bring a suit on behalf of Sea Trade moot.  This is the ultimate red herring argument.  It is a tactic borne out of desperation, especially given the Court's previous ruling that issues concerning the ownership of Sea Trade have no relevance to Defendants' discovery obligations.  Specifically, at the September 24, 2014 conference, the Court stated that "a party's right to discovery does not turn on the strength or weakness of his case" and that "the strength or weakness of the party's position here is really not germane to your obligation to respond to the discovery requests."  Defendants simply chose to ignore the Court's statements.

In addition to being irrelevant, Defendants' arguments also lack merit.  It is well established that United States courts are not obliged to recognize foreign judgments, but may choose to give *res judicata* effect to them on the basis of comity.  Moreover, the doctrine of *res judicata*, or claim preclusion, provides that "a final judgment on the merits in one action bars subsequent re-litigation of the same claim by the same parties and by those in privity with the parties." *Greenberg v. Bd. of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 168 (2d Cir. 1992); *see also Office & Prof'l Employees Int'l Union, AFL-CIO v. Sea-Land Serv., Inc.*, 210 F.3d 117, 125 (2d Cir. 2000) ("It is difficult to conceive how *res judicata* would apply since the two proceedings involved both different parties and different issues"); *Polypro, Inc. v. Noyes*, 1985 WL 201, at *1 (S.D.N.Y. Jan. 17, 1985) (*res judicata* inapplicable where different parties and different claims were involved).  Thus, *res judicta* does not apply to a "later action between different parties or to a later action between the same parties on a different claim or demand." *Haring v. Prosise*, 462 U.S. 306, 315, (1983).  The Greek court's decision only concerned an inheritance dispute between Coutsodontis and his sister. Neither Peters nor Sea Trade were parties to the Greek action, nor were they given an opportunity to be heard on the matter.  Furthermore, the Greek court only held that Coutsodontis is an heir to 250 shares in Sea Trade; it did not hold anything about Peters's shares.  Regardless, as the Court previously stated, these issues have no place in this discovery dispute.

Even more desperate, Defendants argue that Coutsodontis's age somehow absolves him of his discovery obligations.  This is yet another red herring.  First, as we noted at the December 10th Conference, Coutsodontis is "quite sharp" and his "English is quite strong."  Even more telling, this 89-year old man has had no problem arresting ships, filing lawsuits, sitting for depositions, and being intimately involved with the nuances of a multi-track, decade-long litigation campaign.  To now claim that he cannot comply with his legal obligations based on his age is disingenuous and not a legal defense.  Moreover, Coutsodontis's daughter, a co-Defendant, is half his age, a fact conveniently omitted from Defendants' arguments.

Page 7 of 7

        Finally, in this same vein, Defendants argue – again, on the merits – that Peters has been operating Sea Trade for years under an invalid Power of Attorney.  In addition to being irrelevant to Defendants' discovery obligations, this argument epitomizes Defendants' bad faith approach to this case, and parallel litigations.  In fact, Coutsodontis, and his lawyers, have previously conceded that Peters has a valid power of attorney in Sea Trade.  In a 2008 affidavit submitted to the Honorable Naomi Reice Buchwald in a parallel action, Coutsodontis stated, "[b]ased on a power of attorney signed by Athena on August 18, 1992, as President of Sea Trade, [Peters] was authorized to manage [Sea Trade's] assets."  (September 30, 2008 Affidavit of Stelios Coutsodontis, ¶ 6).  In addition, during an oral argument before Judge Buchwald, counsel for Coutsodontis stated, "[W]hen the owner of the ship was alive, she had given her nephew powers to operate the ship" and …. George Peters has proceeded under a power of attorney."  (October 2, 2008 Hearing before Hon. Naomi R. Buchwald, at 20, 36). Furthermore, in 2008, in a Greek lawsuit, Coutsodontis stated George Peters "administers de facto [Sea Trade] by virtue of a general power of attorney which seems to have been given to him by my late sister Athena [Eliades]."  (Coutsodontis's Lawsuit Before the Multimember Court of First Instance of Piraeus, dated October 9, 2008, at ¶ 10).  Most recently, during a 2014 deposition, Coutsodontis admitted that Peters has a power of attorney and that Peters was the "attorney-in-fact" of Sea Trade. (November 20, 2014 Deposition of Stelios Coutsodontis, at 141, 144).  Coutsodontis also admitted that "he had no reason to raise any concerns" about Peters's power of attorney.  (*Id.* at 154).  Again, although these admissions have no bearing on Defendants' failure to comply with their discovery obligations, they show that Defendants' arguments have no basis in fact or in the record.

        Defendants' persistent failure to comply with the Court's discovery Orders can only be viewed as willful and in bad faith.  Accordingly, Plaintiffs' respectfully request that Your Honor recommend a default judgment be ordered.


                                        Respectfully submitted,

                                        */s/Jason H. Berland*
                                        Jason H. Berland

                                        *Counsel for Plaintiffs*


cc: John Poles, Esq. (Via ECF)