UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
SEA TRADE MARITIME CORPORATION
and GEORGE PETERS,

                           Plaintiffs,

              -against-                      Index No. 09 Civ. 488 (LGS) (HBP)

STELIOS COUTSODONTIS, *et al.*,

                           Defendants.
----------------------------------------------------------x

**PLAINTIFFS' LOCAL RULE 56.1(b) RESPONSE TO DEFENDANT GENERAL MARITIME'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS REQUIRING THE DENIAL OF DEFENDANT GENERAL MARITIME'S MOTION FOR SUMMARY JUDGMENT**

       Plaintiffs, by and through their attorney, Beys Stein Mobargha & Berland LLP, hereby submit their Local Rule 56.1(b) Response to Defendant General Maritime Enterprise Corporation's ("General Maritime") Statement of Undisputed Material Facts and their Statement of Additional Undisputed Material Facts Requiring the Denial of Defendant General Maritime's Motion for Summary Judgment as follows.

### Facts Pertaining to Personal Jurisdiction

1.      General Maritime is a Liberian corporation with offices and headquarters in Piraeus, Greece. Declaration of Nikolaos Kotakis, dated November 17, 2014, at ¶ 3.

**Response:**  Plaintiffs lack knowledge or information sufficient to either admit or deny the alleged fact.

2.      General Maritime has never maintained any office or property in the State of New York.

*Id.* ¶ 19.

**Response:** Plaintiffs lack knowledge or information sufficient to either admit or deny the alleged fact, but aver that Stelios Coutsodontis ("Coutsodontis") resides in Bronxville, New York and has transacted business with General Maritime on prior occasions, including transferring $3 Million to General Maritime (the "$3 Million Transfer"). (Exhibit 3 to the Affidavit of Nader Mobargha ("Mobargha Affidavit").[1]

3.      No officers, directors, or employees of General Maritime have resided in New York. *Id.* ¶ 21.

**Response:** <u>Disputed</u>.  Stelios Coutsodontis resides in Bronxville, New York and is the President and Board Member of Attika International Navigation, S.A. ("Attika"), the alter ego corporation of General Maritime.  (Ex. 5; *see also* Ex. 1, at 60:18-21)).  Furthermore, Coutsodontis shares ownership interests in various vessels with General Maritime.  Affidavit of Anna Peters ("Anna Peters Aff.") at ¶¶ 4, 7, 9, 17)

4.      General Maritime has never paid taxes in New York. *Id.* ¶ 23.

**Response:**  Plaintiffs lack knowledge or information sufficient to either admit or deny the alleged fact.

5.      General Maritime has never maintained a telephone listing, answering service, or mailing address in New York. *Id.* ¶ 20.

**Response:**  Plaintiffs lack knowledge or information sufficient to either admit or deny the

---

[1] All exhibits referred to in this Rule 56.1 Statement are attached to the Mobargha Affidavit

alleged fact.

6. General Maritime is not authorized to do business in New York by the New York Department of State. *Id.* ¶ 22.

**Response:** Plaintiffs lack knowledge or information sufficient to either admit or deny the alleged fact.

7. General Maritime has never operated vessels or solicited or transacted business in New York. *Id.* ¶ 24.

**Response:** <u>Disputed</u>. Stelios Coutsodontis resides in Bronxville, New York. Coutsodontis is "a partner and joint venture with General Maritime and has been since 1992." (Ex. 8, Affidavit of G. Peters, dated August 19, 2010, at ¶ 4). Stelios Coutsodontis is the President and Board Member of Attika, the alter ego corporation of General Maritime. (Ex. 5; *see also* Ex. 1, at 60:18-21)). Furthermore, Coutsodontis shares ownership interests in various vessels with General Maritime. (Affidavit of Anna Peters ("Anna Peters Aff." at ¶¶ 4, 7, 9, 17). Coutsodontis made a $3,000,000 Transfer to General Maritime to purchase a ship. (Ex. 1, 47:20-48:12). Athena Eliades, Sea Trade's previous majority shareholder, told Anna Peters "that General Maritime and [Coutsodontis] were sharing ownership interests in General Maritime's ships. Specifically, [Coutsodontis] acquired 40% interest in the M/V Aftokratira Irini, while General Maritime held a 60% interest in it. In addition, [Coutsodontis] had acquired a 40% interest in the M/V Theodorus, while General Maritime held a 60% interest in it. Also, not long after the purchase of the M/V Athena, Theodore Papagelopoulos ("Papagelopoulos"), the founder and

3

principal of General Maritime, persuaded Athena to invest several million dollars as a minority interest in a ship called the M/V Karteria." (Anna Peters Aff. at ¶ 17).

8.      Coutsodontis has never transacted business in New York on behalf of General Maritime, including any activities to harm or injure Sea Trade or Peters. *Id.* ¶ 35.

**Response:** *See* Response No. 7, *supra*. In addition, Coutsodontis, working with General Maritime, called a meeting of Sea Trade shareholders to seize control of the ship and obtain its corporate documents. (Anna Peters Aff. at ¶ 14). This pressure exerted on Athena Eliades, the majority shareholder of Sea Trade, was constant and done in conjunction with General Maritime. (*Id.* at ¶¶ 10, 16, 17)

### Facts Pertaining to Plaintiffs' Conspiracy Allegations

9.      Coutsodontis is not and never was an officer, director, employee, or shareholder of General Maritime. *Id.* ¶ 16.

**Response:** <u>Disputed</u>. *See* response to No. 7, *supra*.

10.     General Maritime was not a party to any action brought by Coutsodontis against Peters, Sea Trade, or the MV ATHENA. *Id.* ¶¶ 27-30.

**Response:** Plaintiffs lack knowledge or information sufficient to either admit or deny the alleged fact.

11.     General Maritime did not authorize, request, or communicate with Coutsodontis regarding any legal proceedings against Peters or Sea Trade, including but not limited to the

4

actions related to the arrest of the MV ATHENA in Spain or Louisiana. *Id.* ¶ 27.

**Response:**  Disputed. General Maritime and Coutsodontis regularly communicated about matters concerning Sea Trade and George Peters.  The examples include:

- **Disparagement of George Peters**   Coutsodontis and Papangelopoulos, the founder and principal owner of General Maritime, regularly disparaged George Peters, accusing him of mismanagement to the shareholders of Sea Trade.  Specifically, they "would tell Sea Trade's shareholders that, among other things [that Peters] (i) was incapable; (ii) did not have the knowledge to run Sea Trade and that, therefore, their investment would be lost; (iii) was lining [his] pockets and (iv) was not looking out for their interest."  (Ex. 8, at ¶ 8(b); *see also* Ex. 4, at 109:6-10("[T]hey were both constantly speaking to [Athena Eliades, the previous majority shareholder of Sea Trade and] and undermining [George Peters] with regards to business, implying that the investment would be lost, and that George Peters was incompetent."); Anna Peters Aff., at ¶7 (describing how Coutsodontis "tarnished [George Peters's] reputation…by falsely alleging [that he] embezzled Sea Trade money, wasted its corporate assets, and acted against the best interests of the company."); at ¶¶ 3 & 10 ("Steve and General Maritime's constant disparagement of George and Trans-Ocean, Sea Trade's management company, continued year after year…and continued under the present owners of General Maritime, Aikaterini and Kotakis").

- **Misrepresentations about the theft of Sea Trade's assets**   General Maritime and Coutsodontis tried to deceive Athena Eliades by telling her that Trans-ocean, the company that was managing Sea Trade's ship, was stealing Sea Trade's assets.  (Ex. 4, at

5

151:17-152:13; *see also* Anna Peters Aff., at ¶ 7(giving consistent testimony on the issue)).

- **Unjustified demands for Sea Trade's corporate documents**.  Coutsodontis and Papangelopoulos, "on many occasions…demanded internal, proprietary corporate documents of Sea Trade (when they had no corporate rights to such information) claiming the failure to provide such information was indicative of fraud on Sea Trade's shareholders." (Ex. 8, at ¶ 8(c)).  Coutsodontis and General Maritime "repeatedly interfered with plaintiff's management asking for the minutes books, stock ledger, all books and records of Sea Trade, all invoices since the purchase of the ship, copies of all bids for dry dock work, the bill of sale, the management agreement…when they had no right to same." (*Id.* at ¶ 9; *see also* Anna Peters Aff., at ¶¶ 14-15 (testifying that Coutsodontis attempted "to gain custody and control of Sea Trade's documents" and all "invoices") & ¶10 (indicating the involvement of General Maritime's lawyers in obtaining Sea Trade documents).

- **Interference with Sea Trade's operations**.  A few years after Sea Trade's inception, when the Athena was in Greece for dry-dock, Coutsodontis and General Maritime, including Kotakis, improperly boarded the Athena for the purpose of disparaging Sea Trade's management before Sea Trade's shareholders." (Ex. 8, at ¶ 8(d); see *also* Anna Peters Aff., at ¶¶ 13 (relaying the same incident and indicating that Coutsodontis and General Maritime's disparagement had the effect of making Athena Eliades, the majority shareholder even more "suspicious" of Peters).

- **Attempts to deplete Sea Trade of capital.**  Coutsodontis attempted to "strip [Sea Trade] of cash so that….Sea Trade would have to cease operations." (Anna Peters Aff., at ¶ 8).

6

>Coutsodontis attempted to achieve this by "convinc[ing] Athena Eliades, who was not sophisticated in business or maritime matters] that "all the net revenue earned by the ship should immediately be paid out to her rather than remain in the company, otherwise, it would be lost." (*Id.*).  Coutsodontis tried to "convince" Athena Eliades that she should "repay a loan in advance" – even though the company might need the cash - just so that he could transfer the management of Sea Trade to General Maritime.  (*Id.* at ¶ 9).  As long as the loan was outstanding, Coutsodontis was restricted from changing Sea Trade's management.  (*Id.*).

Based on these events most of which involve the joint participation of Coutsodontis and General Maritime, a trier of fact could easily conclude that General Maritime and Coutsodontis communicated about the unlawful arrest of the M/V Athena.

12.     No officer, director, or employee of General Maritime entered into an agreement with Coutsodontis to harm or cause injury to Plaintiffs. *Id.* ¶ 31.

**Response:**  Disputed.  *See* Response No. 11, *supra*

13.     Theodore Papangelopoulos passed away in March 2001. *Id.* ¶ 9.

**Response:**  Plaintiffs lack knowledge or information sufficient to either admit or deny the alleged fact.

14.     Theodore Papangelopoulos never entered into an agreement with Coutsodontis on behalf of General Maritime with the purpose of harming Sea Trade or Peters. *Id.* ¶ 12.

 **Response:**  *See* Response No. 11, *supra*

15.     Theodore Papangelopoulos has never been aboard the MV ATHENA. *Id.* ¶ 12.

**Response:** Plaintiffs lack knowledge or information sufficient to either admit or deny the alleged fact, but aver that Kotakis has improperly boarded the M/V Athena for the purpose of disparaging Sea Trade's management before Sea Trade's shareholders." (Ex. 8, at ¶ 8(d); *see also* Anna Peters Aff., at ¶ 13 (relaying the same incident and indicating that Coutsodontis and General Maritime's disparagement had the effect of making Athena Eliades, the majority shareholder even more "suspicious" of Peters).

16.     Francesca Coutsodontis never worked as an intern for General Maritime. *Id.* ¶ 16.

**Response:** <u>Disputed</u>. Peters testifies that "[i]t is also noteworthy that Francesca Eleni Coutsodontis (Coutsodontis's daughter) also served an internship with General Maritime in the past." **(Ex. 8, at ¶ 15(m)).**

## Plaintiffs' Statement of Additional Undisputed Material Facts

1.     In 2003, Coutsodontis authorized the Mimoza Trust, to which he was a beneficiary, to wire $3,000,000 out of $11 Million to General Maritime (the "$3 Million Transfer"). (*See* Ex. 2, Letter from S. Coutsodontis to UBS, dated May 14, 2011; *see also* Ex. 1, at 48:23-49:8).

2.     There is not a single document reflecting the purpose or reason for the $3 Million Transfer. (Ex. 1, at 50:7-10).

3.     There is not a single document, including but not limited to, an agreement, letter, email, memo, or even a handwritten note reflecting that the $3 Million Transfer was a loan to General Maritime. (Ex. 1, at 50:7-10).

4.     There is not a single document, including but not limited to, an agreement, letter, email,

memo, or even a handwritten note, reflecting the repayment terms of the alleged the $3 Million loan.  (Ex. 1, at 50:7-10).

5.      General Maritime never directly wired any money to Coutsodontis to repay him for the alleged $3 Million "loan" Coutsodontis gave General Maritime.  (Ex. 3)

6.      There is not a single document, including but not limited to, an agreement, letter, email, memo, or even a handwritten note, reflecting any agreement between General Maritime and Beekman Shipping Corporation ("Beekman Shipping") showing that Beekman Shipping would repay any of General Maritime's alleged debts to Coutsodontis.

7.      There is not a single document in General Maritime's possession concerning the IRS's alleged approval of the $3 Million Transfer as a loan to General Maritime.  (Transcript of December 10, 2014 hearing before Magistrate Judge Pitman).

8.      General Maritime used the proceeds from the $3 Million Transfer to purchase a ship called the M/V Athenoula for Attika.  (Ex. 1, 47:20-48:12).

9.      The M/V Athenoula is a panamax ship.  (Ex. 4, at 40:14-19).

10.     Board of director minutes or resolutions reflecting the purchase and subsequent sale of the M/V Athenoula do not exist.  (Ex. 1, at 85:10-23)

11.     General Maritime appointed Coutsodontis as the President of Attika and made him a board member of Attika.  (Ex. 1, at 60:18-21; Ex. 5).

12.     General Maritime appointed Francesca Coutsodontis as the Vice President and Treasurer of Attika and made her a board member of Attika.  (Ex. 1, at 60:18-21; Ex. 5).

13.     Attika sold the M/V Athenoula to Beekman Shipping for a nominal amount of money. (Docket Entry No. 190, Letter from J. Berland to Judge Pitman, filed December 30, 2014; Docket Entry No. 191, Letter from J. Poles to Judge Pitman, filed January 8, 2015).

14. Attika sold the M/V Athenoula to Beekman Shipping for $1.  (Docket Entry No. 190, Letter from J. Berland to Judge Pitman, filed December 30, 2014; Docket Entry No. 191, Letter from J. Poles to Judge Pitman, filed January 8, 2015).

15. In the sale of the M/V Athenoula to Beekman Shipping, the Kotakis family, or certain members of it, represented both the purchaser and seller of the ship.   (Docket Entry No. 190, Letter from J. Berland to Judge Pitman, filed December 30, 2014; Docket Entry No. 191, Letter from J. Poles to Judge Pitman, filed January 8, 2015).

16. Coutsodontis did conduct business with General Maritime.

17. Coutsodontis was involved in the business affairs of General Maritime.  (Ex. 8, at ¶¶ 5,7).

18. General Maritime manages Coutsodontis's ships or vessels.  (Ex. 8, at ¶ 5).

19. General Maritime receives fees from managing Coutsodontis's ships or vessels.  (Ex. 8, at ¶ 7).

20. General Maritime requested invoices and corporate documents, through itself or an agent, from Sea Trade.

21. General Maritime and Coutsodontis have shared ownership interests in vessels in the past or present.  (Anna Peters Aff., at ¶ 17).

22. General Maritime "on many occasions…demanded internal, proprietary corporate documents of Sea Trade (when they had no corporate rights to such information) claiming the failure to provide such information was indicative of fraud on Sea Trade's shareholders."  (Ex. 8, at ¶ 8(c); Anna Peters Aff., at ¶ 14-15)).

23. Nikolaos Kotakis boarded the M/V Athenoula during a dry-dock.  (Ex. 8, at ¶ 8(d)); Anna Peters Aff., at ¶ 13)

24. Principals and shareholders of General Maritime communicated with Athena Eliades about the business of Sea Trade. (Ex. 8, at ¶ 8(b); Ex. 4, at 109:6-10)

25. Principals and shareholders of General Maritime communicated with Athena Eliades about George Peters. (Ex. 8, at ¶ 8(b); Ex. 4, at 109:6-10).

Dated: New York, New York
        February 18, 2015

                **BEYS STEIN MOBARGHA & BERLAND LLP**

                By:    *Nader Mobargha /s/*
                      Nader Mobargha, Esq. (NM 7162)
                      Jason Berland, Esq. (JB 4136)
                      The Chrysler Building
                      405 Lexington Avenue – 7th Floor
                      New York, NY 10174
                      Tel: 646-755-3599
                      nmobargha@blmblaw.com
                      *Attorneys for Plaintiffs*