UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SEA TRADE MARITIME CORPORATION, *et al.*,

                No. 09 Civ. 488 (LGS) (HBP)

        *Plaintiffs*,

  -against-

STELIOS COUTSODONTIS, *et al.*,

        *Defendants*.
----------------------------------------------------------------X


# REPLY MEMORANDUM OF LAW IN FURTHER
# SUPPORT OF MOTION FOR SUMMARY JUDGMENT


                BROWN GAVALAS & FROMM LLP
                Attorneys for Defendant
                GENERAL MARITIME ENTERPRISES CORP.
                555 Fifth Avenue
                New York, New York 10017
                Tel: (212) 983-8500
                Fax: (212) 983-5946

*Of Counsel:*
PETER SKOUFALOS
PATRICK R. O'MEA

## **TABLE OF CONTENTS**

I.  PLAINTIFFS DO NOT RAISE ANY MATERIAL FACT SHOWING
    THAT COUTSODONTIS AND GENERAL MARITIME ARE ALTER EGOS ....................2

    A. The Amended Complaint Does Not Plead an Alter Ego Claim.............................................3

    B. Plaintiffs Fail to Show that General Maritime was Used to Commit Wrong ......................5

    C. Plaintiffs Fail to Show that Coutsodontis Dominates General Maritime.............................7

II. PLAINTIFFS FAIL TO RAISE ANY ISSUE OF MATERIAL
    FACT THAT COULD ESTABLISH A CONSPIRACY .......................................................10

CONCLUSION................................................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases**

*Am. Protein Corp. v. AB Volvo*,
 844 F.2d 56 (2d Cir. 1988)......................................................................................................3

*Cardell Fin. Corp. v. Suchodolski Assocs.*,
 2012 U.S. Dist. LEXIS 188295 (S.D.N.Y. July 17, 2012) .......................................................8

*Elec. Switching Indus., Inc. v. Faradyne Elecs. Corp.*,
 833 F.2d 418 (2d Cir. 1987)......................................................................................................6

*In re Morris v. N.Y. State Dept. of Tax. & Fin.*,
 82 N.Y.2d 135 (1993) ...........................................................................................................3, 6

*In re Terrorist Attacks on Sept. 11, 2001*,
 392 F. Supp. 2d 539 (S.D.N.Y. 2005)....................................................................................10

*TNS Holdings Inc. v. MKI Sec. Corp.*,
 92 N.Y.2d 335 (1998) ..............................................................................................................3

*N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*,
 766 F.3d 212 (2d Cir. 2014)......................................................................................................7

*Prescient Acquisition Group, Inc. v. MJ Publ'g Trust*,
 2006 U.S. Dist. LEXIS 73900 (S.D.N.Y. Oct. 6, 2006) ...........................................................4

*Travelers Cas. & Sur. Co. v. Dormitory Auth. of the State of N.Y.*,
 735 F. Supp. 2d 42 (S.D.N.Y. 2010).........................................................................................5

*Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*,
 933 F.2d 131 (2d Cir. 1991)..................................................................................................3, 8

*Zinaman v. USTS N.Y., Inc.*,
 798 F. Supp. 128 (S.D.N.Y. 1992) ..................................................................................3, 4, 5

**Statutes**

Fed. R. Civ. P. 8(a) ...........................................................................................................................4

Plaintiffs' Opposition does not raise any issue of material fact sufficient to overcome summary judgment.  Despite a flurry of inflammatory and disingenuous allegations about General Maritime peppered through their thoroughly misleading brief, Plaintiffs fail to adduce <u>any</u> evidence that connects General Maritime to the acts alleged in the Amended Complaint. Clearly recognizing the fatal infirmity in their conspiracy theory, for which they fail to produce any relevant evidence, Plaintiffs now oppose summary judgment by arguing for the first time that General Maritime and Coutsodontis are alter egos, even though no alter ego claim was pleaded in the Amended Complaint.  Plaintiffs' arguments lack any factual support.

In their attempt to establish an alter ego relationship, Plaintiffs cite a single transaction and mutual connections to a third party, Attika International Navigation S.A. ("Attika"), for which General Maritime acted as agent.  This effort falls far short because Plaintiffs do not raise a material issue of fact that establish an alter ego relationship <u>as to the acts at issue in this action</u>.

In the absence of relevant facts that support their claims, Plaintiffs rely on improper evidence and inappropriate *ad hominem* attacks.  Plaintiffs cite to cherry-picked excerpts of depositions in state court proceedings that were taken long after General Maritime was dismissed from the state court action and after discovery was closed as to General Maritime in this action. Given the fact that the excerpts cited by Plaintiffs are given out of context and full transcripts are not available to General Maritime, they should not be considered by the Court.

Plaintiffs also submit an affidavit by Anna Peters, plaintiff George Peters' mother, in a feeble effort to oppose summary judgment.  This affidavit does not include a jurat and is largely based upon speculation and facts outside of Ms. Peters' direct knowledge, such as other peoples' state of mind and events that occurred outside her presence.  Unsurprisingly, Ms. Peters' affidavit echoes her son's own prior affidavit and simply states that General Maritime and/or

Theodore Papangelopoulos took part in various activities years ago, which do not relate to the acts at issue in the Amended Complaint. Indeed, many paragraphs of Ms. Peters' affidavit refer only to Coutsodontis and are irrelevant to General Maritime's motion for summary judgment.

Plaintiffs also attempt to impugn the veracity of General Maritime's prior submissions in this case and related state court proceedings from which General Maritime was dismissed in 2011. In both cases, General Maritime's secretary/director, Nikolaos Kotakis, submitted affidavits in which he stated that: (1) Coutsodontis is not a director, manager, or shareholder of General Maritime; (2) Coutsodontis did not conduct business on General Maritime's behalf in New York; and (3) if Coutsodontis has purported to act on General Maritime's behalf, it was not with General Maritime's knowledge or consent. Plaintiffs do not contradict these undisputed facts with any evidence, and therefore Plaintiffs do not impeach General Maritime's statement that General Maritime has no relationship with Coutsodontis.

Despite changing their theory of the case, relying on improper evidence, and making numerous *ad hominem* attacks, Plaintiffs simply fail to meet their burden of identifying material facts showing an alter ego relationship or conspiracy between Coutsodontis and General Maritime. Accordingly, General Maritime's motion for summary judgment should be granted.

I.   **PLAINTIFFS DO NOT RAISE ANY MATERIAL FACT SHOWING THAT COUTSODONTIS AND GENERAL MARITIME ARE ALTER EGOS**

Plaintiffs fail to raise an issue of fact supporting an alter ego relationship between Coutsodontis and General Maritime. First, Plaintiffs did not plead veil-piercing in the Amended Complaint, as necessary to raise an alter ego claim. Second, Plaintiffs fail to show that General Maritime's alleged alter ego status was used to harm or defraud Plaintiffs. Finally, Plaintiffs fail to show that Coutsodontis "dominated" General Maritime to such an extent that they are one and the same. Any one of these failures is sufficient to reject Plaintiffs' alter ego claim.

In order to establish alter ego liability, "two elements must be <u>pleaded and proven</u>:" (1) that alleged alter ego entity was completely dominated and controlled "in respect to the transaction attacked" such that the alleged alter ego had no separate will of its own, and (2) that the domination was used to "commit fraud or wrong" against the plaintiff, which proximately caused the plaintiff's injury. *Zinaman v. USTS N.Y., Inc.*, 798 F. Supp. 128 (S.D.N.Y. 1992) (emphasis added) (quoting *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56 (2d Cir. 1988)); *see also In re Morris v. N.Y. State Dept. of Tax. & Fin.*, 82 N.Y.2d 135, 141 (1993); *TNS Holdings Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (1998) (plaintiff "bear[s] a heavy burden" to show that "the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences").

In order to establish the "domination and control" prong of the alter ego test, the Second Circuit considers a number of factors to determine whether the alter ego is merely an extension of the alleged dominator, such as observation of corporate formalities, maintenance of separate offices, adequate capitalization, an arms' length relationship, and comingling of funds. *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991).

In this case, Plaintiffs fail to establish an alter ego relationship between General Maritime and Coutsodontis at every step by: (1) failing to plead an alter ego relationship in the Amended Complaint; (2) completely failing to address the second prong of the alter ego test by alleging that Coutsodontis's use of General Maritime <u>caused the harm complained of in the complaint</u>; and (3) failing to establish any of the "control and domination" factors and instead attempting to shoehorn a loan from Coutsodontis to Attika into satisfying virtually all of the factors.

### A.     The Amended Complaint Does Not Plead an Alter Ego Claim

The Court need not consider the merits (or lack thereof) of Plaintiffs' alter ego claim

3

because this claim was not pleaded in the Amended Complaint.

The Amended Complaint contains only a handful of allegations that even reference General Maritime. Besides vague allegations that Coutsodontis acted "on behalf of" and "for the benefit of" General Maritime (which is the opposite of Plaintiffs' present assertion that General Maritime exists for Coutsodontis's benefit), only two of the 156 paragraphs of the Amended Complaint mention General Maritime: paragraphs 6 and 9.[1]

Paragraphs 6 and 9 do not plead an alter ego claim sufficient to pass the notice pleading requirement of Rule 8(a). *See Prescient Acquisition Group, Inc. v. MJ Publ'g Trust*, 2006 U.S. Dist. LEXIS 73900, at *4 (S.D.N.Y. Oct. 6, 2006) (finding that "as an alter ego or veil piercing claim, the complaint fails even the liberal pleading requirements of Rule 8(a), Fed. R. Civ. P." where no allegations of an alter ego relationship were pleaded and "the words 'alter ego' or 'veil piercing' are no where to be found in the complaint drafted by sophisticated counsel"). It should also be noted that Plaintiff's allegation in paragraph 9 that <u>both</u> Coutsodontis and his daughter own and control General Maritime is inimical to an alter ego claim, as two separate individuals cannot dominate and be one and the same with a company

In this regard, this case is materially indistinguishable from *Zinaman*, *supra*, where the court found that allegations of ownership and control were inadequate to plead an alter ego claim. In *Zinaman*, as here, the complaint stated that one defendant owned and controlled the

---

[1] Paragraphs 6 and 9 state:

    6.    Upon information and belief, [General Maritime] is a corporation registered in Liberia with a principal place of business in Piraeus, Greece, but which transacts business throughout the world, including within this state. Upon information and belief, all of Coutsodontis and Francesca's vessels are managed by General Maritime. Upon information and belief, Coutsodontis and Francesca have material ownership interests in General Maritime (although they have no official ownership interest in General Maritime) and the ships that General Maritime owns and manages, including but not limited to the THEOFYLAKTOS.
                                                \* \* \*
    9.    General Maritime . . . own[s] and manage[s] cargo vessels that operate throughout the world. Upon information and belief, [General Maritime], and the ships that [it] own[s], are ultimately owned and controlled by Coutsodontis, along with Francesca.

other. The court found that this did suffice to plead an alter ego relationship, explaining:

> [Plaintiff] does not allege that USTS was controlled and dominated to such an extent that it "had no existence of its own." The Complaint merely alleges that USTravel "owns and controls USTS." Moreover, [Plaintiff] makes no reference to the factors typically considered in applying the alter ego theory, such as the absence of formalities in corporate decision making, and inadequate capitalization. Hence, [Plaintiff's] allegations fail to plead the "control and domination" necessary to justify bringing the USTravel [*sic*] into this dispute.

798 F. Supp. at 132. Likewise here, the Amended Complaint does not allege that Coutsodontis dominates General Maritime. Instead, Plaintiffs merely allege that General Maritime managed Coutsodontis's vessels and Coutsodontis had a vague "material" ownership interest in General Maritime. Indeed just as in *Zinaman*, the closest that Plaintiffs come to an alter ego allegation is their claim in paragraph 9 that Coutsodontis "owned and controlled" General Maritime, but, as *Zinaman* held, this allegation is insufficient to plead alter ego liability.

Similarly, in *Travelers Casualty & Surety Co. v. Dormitory Authority of the State of New York*, 735 F. Supp. 2d 42 (S.D.N.Y. 2010), the court rejected the defendant's alter ego theory raised for the first time in opposition to summary judgment. The court noted that "DASNY did not plead its alter-ego theory in its Counterclaims nor interpose it as an affirmative defense, and DASNY has also never sought leave to amend its pleadings to assert it." *Id.* at 82. Thus, the Court concluded that "[b]ecause DASNY did not give notice of this claim to Travelers in its pleadings, DASNY may not raise it for the first time in opposing Travelers' motion for summary judgment." *Id.* The same outcome is warranted here.

The Amended Complaint does not assert an alter ego claim and Plaintiffs have made no attempt to properly raise this claim. Thus, the Court should not consider any alter ego theory.

    **B.**    <u>**Plaintiffs Fail to Show that General Maritime was Used to Commit Wrong**</u>

Should the Court consider the merits of Plaintiffs' alter ego claim, it is clear that this

5

claim fails as a matter of law. Indeed, Plaintiffs fail to even cite, much less address, the second prong of the alter ego test, which requires Plaintiffs to establish that Coutsodontis used General Maritime <u>to perpetrate the wrongs alleged in the Amended Complaint</u>. Plaintiffs make no effort to connect General Maritime to these acts, and thus cannot establish the second alter ego prong.

To establish alter ego liability, Plaintiffs must show that Coutsodontis dominated General Maritime **and** "that such domination was used to commit a fraud or wrong against the plaintiff, resulting in the plaintiff's injury." *In re Morris*, 82 N.Y.2d at 141; *Elec. Switching Indus., Inc. v. Faradyne Elecs. Corp.*, 833 F.2d 418, 424 (2d Cir. 1987). Thus, merely showing domination is insufficient unless that domination causes the harm alleged in the complaint.

In this case, Plaintiffs do not analyze the second prong of the alter ego test and, indeed, do not even cite this prong in their opposition memorandum. While Plaintiffs discuss a litany of wrongs they have claim to have suffered at Coutsodontis's hands, and they allege that Theodore Papangelopoulos was also involved in disparaging Peters many years ago[2], Plaintiffs do not claim that General Maritime was involved in any of acts at issue in the Amended Complaint: namely, "Coutsodontis' Improper Acquisition of Sea Trade Shares" (Am. Compl. ¶¶36-62); "Coutsodontis's Unlawful Maritime Arrests" (*Id.* ¶¶63-81); the "Anti-Sale Injunction" (*Id.* ¶¶82-106); "Interference with Sea Trade's Contractual Relationships" (*Id.* ¶¶ 107-114); "Defamation" (*Id.* ¶¶ 115-121); or "Filing Vexatious and Harassing Litigation" (*Id.* ¶¶ 122-128). This is fatal to Plaintiffs' alter ego claim.

On the contrary, the Amended Complaint and Plaintiffs' own opposition papers make clear that Coutsodontis did not use General Maritime to harm Plaintiffs. For example, there is no claim that Coutsodontis brought the arrest actions in General Maritime's name, or that General Maritime's officers, directors, or employees spread defamatory statements about Plaintiffs.

---

[2] Mr. Papangelopoulos died in 2001, many years before the events at issue in this action occurred.

Instead, Plaintiffs unequivocally assert that Coutsodontis did all of these acts himself.  Indeed, Plaintiffs' arguments in support of personal jurisdiction over General Maritime rested on claims that Coutsodontis's New York activities can be imputed to General Maritime.  This forecloses any argument that General Maritime itself undertook the acts alleged in the Amended Complaint.

Because Plaintiffs do not attempt to satisfy the second prong of the alter ego test, they cannot overcome a motion for summary judgment based on an alter ego theory.

### C. Plaintiffs Fail to Show that Coutsodontis Dominates General Maritime

In addition to Plaintiffs' failures to plead alter ego in the Amended Complaint or even address the second prong of the alter ego test in their opposition, Plaintiffs also fail to establish the first alter ego prong by showing that Coutsodontis "dominated" General Maritime.  Instead, Plaintiffs attempt to shoehorn a single transaction between Coutsodontis and Attika into an alter ego relationship with General Maritime.  Nevertheless, Plaintiffs' effort falls flat and reveals itself as a desperate and insincere attempt to raise an issue of fact where none exists.

Courts in this Circuit consider several factors to determine whether one entity dominates another, such as the observation of corporate formalities, amount of business discretion exercised by the putative alter ego, and comingling of funds. *Wm. Passalacqua*, 933 F.2d at 139   In this case, Plaintiffs have taken <u>no</u> discovery from General Maritime that can be used to meet the "heavy burden" of establishing domination. *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 226 (2d Cir. 2014).  Instead, Plaintiffs rely exclusively on connections between Coutsodontis and Attika, such as a loan from Coutsodontis to Attika in which General Maritime received funds as Attika's agent, and Coutsodontis's position on Attika's board of directors.  However, these connections do not indicate that Coutsodontis and General Maritime are virtually one and the same so as to give rise to an alter ego relationship.

Plaintiffs first argue that a single loan that Coutsodontis made to Attika in 2003 satisfies seven of the ten factors cited in *Passalacqua*, simply because General Maritime received these funds on behalf of Attika in its capacity as Attika's agent. This argument is absurd on its face. As explained fully in General Maritime's moving papers, these funds were a loan from Coutsodontis to Attika and were used to purchase a vessel, the ATHENOULA, for Attika. [Decl. of Nikolas Kotakis at ¶ 14 (Dkt. # 169)] As evidenced by Plaintiffs' own submissions, in 2012, Beekman Shipping repaid the principal of the loan to Coutsodontis along with $600,000.00 in interest. [Mobargha Ex. 3 (Dkt. # 214-3)] Thus, there is simply no basis for Plaintiffs to claim that these funds were given as some sort of improper payment to General Maritime.

Plaintiffs' efforts to satisfy the *Passalacqua* factors with this loan are clearly in vain. First, Plaintiffs argue that the loan shows General Maritime's failure to observe corporate formalities, inasmuch as the loan was allegedly insufficiently documented. [Opp. 16] This argument is misplaced, as this prong refers to formalities such as the establishment of management and directors. *See, e.g., Cardell Fin. Corp. v. Suchodolski Assocs.*, 2012 U.S. Dist. LEXIS 188295, at *74 (S.D.N.Y. July 17, 2012). Here, there is no suggestion that General Maritime failed to observe such corporate formalities. The sufficiency of documentation for Coutsodontis and Attika's commercial transactions is utterly irrelevant to this inquiry.

Plaintiffs also speculate that General Maritime lacks adequate capitalization because it was allegedly required to borrow funds to purchase the ATHENOULA on Attika's behalf. Putting aside for the moment the fact that Attika, and not General Maritime, was the beneficiary of those funds, any such payment is hardly evidence of insufficient capitalization. Plaintiffs do not claim - let alone demonstrate by reference to admissible evidence - that General Maritime was inadequately capitalized to conduct its own business, namely conducting commercial

management vessels on behalf of their owners.[3]

Plaintiffs also claim that General Maritime "admits" that it acts as Coutsodontis's personal bank account because General Maritime "had no interest in these funds and acted in purely a representative capacity." [Opp. 18]. Plaintiffs do not explain this argument, but it is undisputed that General Maritime acted in its capacity as Attika's agent. General Maritime's agency business does not render it an alter ego of each of its principals, and Plaintiffs cite no principal of agency law to support this absurd suggestion.

Plaintiffs also attempt to insinuate an alter ego relationship between Coutsodontis and General Maritime by identifying connections between Coutsodontis and Attika. Plaintiffs argue that General Maritime is Coutsodontis's alter ego because General Maritime "appointed" Coutsodontis and his daughter to high level positions at Attika. [*Id.*] Plaintiffs provide no evidence that General Maritime was involved in Attika's personnel decisions, nor do they explain why Attika's activities are relevant to alter ego claims as between General Maritime and Coutsodontis. This is yet another disingenuous statement made in Plaintiffs' ineffectual effort to avoid summary judgment.

Plaintiffs make several other misleading arguments. Plaintiffs claim that there is "testimony in the record showing that, over the years, General Maritime's main function was is [*sic*] manage Coutsodontis's ships." [Opp. 18] Plaintiffs fail to cite evidentiary support for this statement, as their reference to "*supra* at 8-9" does not correspond to relevant material. Apparently Plaintiffs simply hoped that nobody would check their citations.

At bottom, Plaintiffs merely identify a handful of commercial connections between Coutsodontis and one of General Maritime's vessel-owning principals, Attika, without making a

---

[3] Indeed, ship agents necessarily receive funds from their principals to pay debts incurred by the vessels they manage. That is a function of their business model, and does not show inadequate capitalization.

connection to the claims at issue in this action.  Thus, Plaintiffs do not raise an issue of material fact sufficient to overcome General Maritime's motion for summary judgment.

## II.  PLAINTIFFS FAIL TO RAISE ANY ISSUE OF MATERIAL FACT THAT COULD ESTABLISH A CONSPIRACY

Plaintiffs leave only two pages at the very end of their 25-page brief to pay lip service to the meritless conspiracy theory on which they based their opposition to General Maritime's motion to dismiss.  This is a transparent attempt to now avoid closer scrutiny of the conspiracy claim with which Plaintiffs narrowly avoided dismissal at the pleading stage.  However, at the summary judgment stage, in addition to proof of the primary tort, Plaintiffs are required to come forward with admissible evidence for each of the four elements of a conspiracy, namely: '(a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury.'" *In re Terrorist Attacks on Sept. 11, 2001*, 392 F. Supp. 2d 539, 557 (S.D.N.Y. 2005); *see* General Maritime's Mem. in Supp. of Summ. J. pp. 9-15.

Plaintiffs do not provide any evidence whatsoever of an agreement between General Maritime and Coutsodontis to conduct the activities at issue in this action; of an overt act by General Maritime to further the agreement; intentional participation on the part of General Maritime; or actual damages arising from the acts alleged in the Amended Complaint.  Thus, Plaintiffs do not satisfy their burden of production and cannot overcome General Maritime's motion for summary judgment.

## CONCLUSION

The Court should grant summary judgment dismissing the Amended Complaint as to General Maritime along with such further and different relief as the Court deems just and proper.

Dated: New York, New York
February 25, 2015

                                                      BROWN GAVALAS & FROMM LLP
                                                    Attorneys for Defendant
                                                    GENERAL MARITIME
                                                    ENTERPRISES CORPORATION

                                                   /s/ Peter Skoufalos
                                                   Peter Skoufalos (PS-0105)
                                                   Patrick R. O'Mea (PO-0424)
                                                   555 Fifth Avenue
                                                   New York, New York 10017
                                                   Tel: (212) 983-8500
                                                   Fax: (212) 983-5946

11