UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
SEA TRADE MARITIME CORPORATION
and GEORGE PETERS,

                              Plaintiffs,

                -against-
                                     Index No. 09 Civ. 488 (LGS) (HBP)

STELIOS COUTSODONTIS, *et al.*,

                              Defendants.
-----------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION IN LIMINE TO EXCLUDE EVIDENCE OF
AN UNDOMESTICATED FOREIGN JUDGMENT**


                                        Beys Liston Mobargha & Berland LLP
                                        Jason H. Berland
                                        825 3rd Avenue – 2nd Floor
                                        New York, NY  10022
                                        Tel: 646-755-3604
                                        Fax: 646-755-3599
                                        jberland@blmblaw.com

                                        *Attorneys for Plaintiffs*

**PRELIMINARY STATEMENT**

Plaintiffs Sea Trade Maritime Corporation ("Sea Trade") and George Peters ("Peters") (collectively, "Plaintiffs"), by their attorneys, Beys Liston Mobargha & Berland LLP, respectfully submit this pretrial memorandum of law in support of their motion in limine to exclude evidence of an undomesticated Greek court judgment that purports to hold that Coutsodontis is an heir to 250 shares of Sea Trade. As set forth below, the Court should preclude Coutsodontis from introducing such evidence at trial.

**RELEVANT BACKGROUND[1]**

When Sea Trade was formed in 1992, Peters received 25 shares (out of 500) of the corporation. Elias Eliades ("Elias"), the founder of Sea Trade, and Peters's uncle, kept the remaining 475 shares. Elias and Peters agreed to restrict the admission of new shareholders into the corporation to those upon whom they both agreed. This served Elias's purpose of keeping Coutsodontis from participating in the business, because by then he had lost confidence and trust in Coutsodontis based on their past business experience. Accordingly, Sea Trade's Articles of Incorporation (the "Articles") provided that, "No shareholder of the Corporation shall have the right or power to sell, assign, transfer or otherwise dispose of all or any part of the shares of stock of the Corporation to a person who is not already a shareholder without first obtaining the unanimous written consent of all the other shareholders of the Corporation." The restriction was also placed on the stock certificate itself so that the "bearer" would take notice thereof.

In July 1994, Elias decided to give Peters an additional 25 shares of Sea Trade, while at the same time giving his sister, Anna Peters ("Anna"), who is also Peters's

---

[1] All facts contained herein were previously cited in the "Background" section of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiffs' Summary Judgment Memo") (Document No. 210, ECF Filed 02/18/15).

1

mother, 150 shares. Once Anna was given 150 shares and Peters 50, Elias was left with the remaining 300 shares of Sea Trade. Elias died in 1996, and his wife, Athena Eliades ("Athena"), inherited his 300 shares of the company.

Upon Athena's death in Greece in 2003, her brother, Coutsodontis, was left 250 shares of Sea Trade, and her sister, Anna, was left the remaining 50 shares, bringing Anna's total shares to 200. Coutsodontis and Anna received their respective interests in these shares pursuant to two writings purportedly signed by Athena.

Based on the restriction clause in Sea Trade's Articles, Anna contested Athena's writings that left Coutsodontis interest in Sea Trade. Subsequently, Anna commenced an action in Greece against Coutsodontis seeking the writings null and void. Coutsodontis then brought an action in New York State Supreme Court for a declaration that he was a lawful shareholder of Sea Trade. Ultimately, the New York court determined that the inheritance dispute was better left to the Greek courts.

After a lengthy litigation, the Supreme Court of Greece found that Athena's signed writings were valid and that Coutsodontis was an heir to 250 shares of Sea Trade. Neither Sea Trade nor Peters were parties to this litigation. Moreover, no court in the Second Circuit has accepted this foreign decision, nor has Coutsodontis attempted to have it recognized in the United Sates.

## LEGAL STANDARD

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks

2

omitted); *see also Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005); *see generally* Fed. R. Evid. 104.  In limine motions therefore serve the salutary goal of "streamlin[ing] trials and settl[ing] evidentiary disputes in advance." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).

The Court may rely on the Federal Rules of Evidence ("Rules") and its own broad discretion in determining whether or not to exclude certain evidence at trial.  *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 207 (2d Cir. 1984); *United States v. Corr*, 543 F.2d 1042, 1051 (2d Cir. 1976).  Ordinarily, evidence is admissible so long as it is relevant, meaning that it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action" (Fed. R. Evid. 401) and not otherwise barred under the Rules (Fed. R. Evid. 402). The proponent of the evidence, however, bears the burden of proving that it is admissible. *See Evans v. Port Auth. of New York & New Jersey*, 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002) ("The burden of establishing admissibility, of course, is with the proponent of the evidence.").

## ARGUMENT

The finding in Greece that Coutsodontis is an heir to 250 shares of Sea Trade is irrelevant, as this Court has never recognized the finding, nor has it been asked to do so. Coutsodontis has previously based his argument that he has an ownership interest in Sea Trade on the existence of two writings, which were purportedly made in Greece by Athena, Coutsodontis's sister and Peters's aunt, prior to Athena's death in 2003, and which appear to leave Coutsodontis 250 shares of Sea Trade.

The Supreme Court of Greece reviewed these writings in connection with an inheritance dispute between Coutsodontis and his sister, and ruled that Coutsodontis is the heir of 250 shares of Sea Trade.  What Coutsodontis routinely fails to mention, however, is that the Greek court never ruled that Coutsodontis was a shareholder in the company.  (*See*, Exhibit 1, February 4, 2015 Affidavit of Greek attorney Bettina Ulrike Richter, ¶¶ 9.1.1, 9.2, 9.2.1, 9.3) (The question before the Greek courts was only "whether Coutsodontis was a heir" and Coutsodontis "has not asked to be recognized as shareholder." "[T]he object of the litigation was exactly whether Coutsodontis was a heir and not whether he was a shareholder.").

The problem with these writings is that there was a valid transfer restriction clause contained in Sea Trade's Articles.  Accordingly, irrespective of whether this Court is swayed by the Greek court's acknowledgment of Coutsodontis as heir of Athena's shares of Sea Trade, Coutsodontis cannot viably be considered a shareholder in Sea Trade based on the unambiguous shares' restriction clause in the company's corporate documents.

Nonetheless, such a determination that Coutsodontis, as an heir, may be entitled to compensation for the value of half the shares of Sea Trade, holds no legal weight in a Second Circuit court.  As Judge Pitman has stated, "Well, [the Greek decision] hasn't been recognized in this court, has it, and there's no collateral estoppel motion pending." (*See*, Exhibit 2, September 24, 2014 Hearing before Hon. Henry B. Pitman, at 14).  In fact, Plaintiff has never attempted to domesticate the foreign judgment.

It is well established that United States courts are not obliged to recognize judgments rendered by a foreign country, but may choose to give *res judicata* effect to

4

foreign judgments on the basis of comity. Moreover, the doctrine of *res judicata*, or claim preclusion, provides that "a final judgment on the merits in one action bars subsequent re-litigation of the same claim by the *same parties* and by those in privity with the parties." *Greenberg v. Bd. of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 168 (2d Cir. 1992) (emphasis added); *see also Office & Prof'l Employees Int'l Union, AFL-CIO v. Sea-Land Serv., Inc.*, 210 F.3d 117, 125 (2d Cir. 2000) ("It is difficult to conceive how *res judicata* would apply since the two proceedings involved both different parties and different issues"). Thus, it is clear that *res judicata* does not apply to a "later action between different parties or to a later action between the same parties on a different claim or demand." *Haring v. Prosise*, 462 U.S. 306, 315, (1983).

Accordingly, it would be procedurally unfair to Plaintiffs to adopt the Greek court's findings, as that court was tasked to determine an inheritance dispute between Coutsodontis and his sister Anna Peters, who is Peters's mother. Neither Peters nor Sea Trade were parties to the Greek action, nor were they given an opportunity to be heard on the matter.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion in limine to exclude evidence of an undomesticated foreign judgment should be granted in its entirety.

Dated:   New York, New York
         December 3, 2015

                        Beys Liston Mobargha & Berland LLP

                        By: */s/Jason H. Berland*
                            Jason H. Berland, Esq. (JB4136)
                            825 3rd Avenue – 2nd Floor
                            New York, NY  10022
                            *Attorneys for Plaintiffs*