SEA TRADE MARITIME CORPORATION, et al.,

       Plaintiffs,

  -against-

STELIOS COUTSODONTIS, et al.,

      Defendants.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Civil No. 09-488 (LGS)(HBP)

**DEFENDANT STELIOS
COUTSODONTIS'
PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

1.      Sea Trade Maritime Corp. ("Sea Trade") was organized under the laws of the Republic of Liberia in July of 1992.

2.      Athena Eliades ("Athena") was a shareholder of Sea Trade.

3.      Athena was Defendant Coutsodontis' sister.

4.      In 2002, Sea Trade entered into a Loan Agreement with Allfirst Bank.

5.      In connection with the 2002 loan, Athena executed a Shareholders' Written Consent, Secretary's Certificate and Negative Pledge Agreement ("Loan Documents").

6.      The Loan Documents identify Athena as the sole shareholder, officer and director of Sea Trade.

7.      The Shareholders' Written Consent and Negative Pledge Agreement were witnessed by Anna Peters.

8.      George Peters, as "attorney-in-fact," executed an Assignment of Insurances in favor of Allfirst Bank in connection with the 2002 loan.

9.      Athena died on January 13, 2003.

10.     At her death, Athena was the sole shareholder of Sea Trade.

11.     Plaintiff George Peters has never had an interest in Sea Trade.

12.     Plaintiff George Peters did not and does not have the authority to operate and manage Sea Trade.

13.     Peters did not attend the first meeting of the Board of Directors of Sea Trade on July 30, 1992.

14.     Peters did not attend the annual meeting of the stockholders of Sea Trade on July 8, 1993.

15.     Peters did not attend the annual meeting of the Board of Directors of Sea Trade on July 8, 1993.

16.     Sea Trade's corporate documents do not reference George Peters at all.

17.     Athena left a Will, dated September 14, 2000, leaving 250 shares of Sea Trade to Defendant Coutsodontis and 50 shares to Anna Peters.

18.     Anna Peters is the sister of Athena and Defendant Coutsodontis.  Anna Peters is George Peters' mother.

19.     Athena's Will was submitted to probate in Greece.

20.     On January 11, 2005, Anna Peters commenced an action in Greece against Coutsodontis seeking a declaration that Athena's will was null and void.

21.     Coutsodontis filed counterclaims seeking a declaration that he was the rightful owner of 250 shares of Sea Trade.

22.     Ultimately, the Greek Supreme Court upheld Athena's September 14, 2000 Will and held that Defendant Coutsodontis is the owner of at least 250 shares of Sea Trade under Athena's Will.

23.     The Greek Supreme Court also held that Article D of Sea Trade's Articles of Incorporation does not apply to dispositions *mortis causa,* thus making Defendant Coutsodontis a shareholder of Sea Trade.

24.     In 2005, Coutsodontis brought an action in New York State Supreme Court against Peters and Sea Trade relating in part to the ownership of Sea Trade ("2005 Action").

25.     Peters and Sea Trade moved to dismiss the 2005 Action on the basis that the New York court should defer to the prior litigation in Greece regarding Athena's Will.

26.     On February 6, 2006, the 2005 Action was dismissed by the New York Supreme Court in part on the basis that the import and validity of Athena's Will was an issue for the Greek courts.

27.     Plaintiffs George Peters and Sea Trade successfully argued that the issue of ownership of Sea Trade should be decided by the Greek courts.

28.     Plaintiffs are estopped from arguing that the Greek court's decision should be denied conclusive effect.

29.     That George Peters did not appear in the Greek proceedings after moving to dismiss the Cahn Action in New York does not preclude giving effect to the Greek decision. *See Marcus v. Dufour*, 796 F. Supp. 2d 386, 394 (E.D.N.Y. 2011), *aff'd sub nom. Marcus v. Haaker*, 481 F. App'x 19 (2d Cir. 2012) (rejecting claimants' objections and giving conclusive effect to German reparations board's interpretation of decedents' will even though the board was unaware of the existence of claimants, who did not participate in the German proceedings); *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277, 317 N.Y.S.2d 315, 320 (1970) ("[Privity] includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action and [those who are] co-parties to a

prior action."); *McNamara v. Powell*, 256 A.D. 554, 11 N.Y.S.2d 491 (4th Dept. 1939) (holding that "corporation must be deemed to have been in privity" with defendant president, general manager, and owner of 480 of the corporation's 500 shares of stock, who "will not be permitted to use the corporate cloak as a means to avoid the finality of the former adjudication"); *In Matter of Shea*, 309 N.Y. 605, 132 N.E.2d 864 (1956) ("A clearer case for application of the doctrine [of [privity] could hardly be imagined than one involving successive attempts to litigate the same question by a corporation and by its owner or owners.... Manifestly, the situation is no different where all of the stockholders of a family corporation, rather than an individual who owns the entire corporation, have appeared and participated in the prior action which resulted in an unfavorable adjudication."); *Buechel v. Bain*, 97 N.Y.2d 295, 766 N.E.2d 914 (2001) (holding that two partners were collaterally estopped by a decision in an earlier action against the third partner in which they were not named, finding they were linked in privity with that third partner, had a full and fair opportunity to come to his aid and participate, and were therefore bound by the results).

30.     The Greek Supreme Court is a court of competent jurisdiction.

31.     The laws and public policy of the forum state (New York) and the rights of its citizens are not violated by admitting the Greek court judgment and affording it conclusive effect regarding the issue of ownership of shares of Sea Trade.

32.     International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). "Comity will be granted to the decision or judgment of a foreign court if it is shown that the foreign court is a

court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 457 (2d Cir. 1985).  *See also Gross v. German Found. Indus. Initiative*, 456 F.3d 363, 392 (3d Cir. 2006) ("Generally, United States courts will not review acts of foreign governments and will defer to proceedings taking place in foreign countries, allowing those acts and proceedings to have extraterritorial effect in the United States.").

33.     As a matter of comity, the Court admits and gives conclusive effect to the Greek Supreme Court's decision confirming Defendant Coutsodontis' 50% interest in Sea Trade.

34.     The Court lacks subject matter jurisdiction and, therefore, the Amended Complaint is dismissed.

35.     Federal Rule of Civil Procedure 12(h)(3) commands the Court to dismiss an action "at any time" it determines that subject matter jurisdiction is wanting.

36.      Subject matter jurisdiction may not be waived and may be raised at any time. *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); *see also Bernstein v. Universal Pictures, Inc.*, 517 F.2d 976, 979 (2d Cir. 1975) ("The lack of jurisdiction is so fundamental a defect that the rule permits a judge to recognize it *sua sponte* at any time.").

37.     A defect in standing is a defect in subject matter jurisdiction. *See Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) ("If [plaintiff] lacks standing, we lack subject matter jurisdiction to entertain a request for such relief."); *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) ("The requirement that a plaintiff demonstrate constitutional standing is a jurisdictional prerequisite to suit in federal court. Thus, if Plaintiffs lack standing under Article III of the U.S. Constitution, there is no subject matter jurisdiction and the Court must dismiss this

case."), <u>aff'd</u> <u>sub</u> <u>nom</u>. Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund, 761 F.3d 277 (2d Cir. 2014).

38.    Plaintiff George Peters lacks standing or authority to sue on behalf of Sea Trade and lacks standing to recover personally for any damages purportedly caused to Sea Trade, which is a separate and distinct corporate entity and one in which George Peters does not have any personal interest. *See Hirsch v. Qingdao Orien Commercial Equip. Co.*, No. 12-CV-952 (RRM), 2015 WL 1014352, at *10 (E.D.N.Y. Mar. 6, 2015) (dismissing plaintiff's complaint for lack of standing to sue certain defendants because "assignment of claims" relied upon by plaintiff did not give plaintiff the authority to sue those defendants).

39.    The power of attorney purportedly executed by Athena Eliades upon which Plaintiff George Peters relies for authority to act on behalf of Sea Trade does not create standing.

40.    The Dead Man's Statute bars testimony by an interested party regarding his dealings and communications with any decedent who was a prior owner of the property.  N.Y. C.P.L.R. § 4519 ("Upon the trial of an action ..., a party or a person interested in the event ... shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest against the executor, administrator or survivor of a deceased person ..., concerning a personal transaction or communication between the witness and the deceased person ..., except where the executor, administrator, [or] survivor ... is examined in his own behalf, or the testimony of the ... deceased person is given in evidence, concerning the same transaction or communication.").

41.    George Peters cannot authenticate Athena Eliades signature on the purported power of attorney on which he relies for his authority to act on behalf of Sea Trade under the Dead Man's Statute.

42.     Even assuming *arguendo* that the dubious power of attorney was *bona fide* (which it was not), as a matter of law "[a] power of attorney terminates when ... the principal dies." N.Y. Gen. Oblig. Law § 5-1511(1)(a).  *See Billups v. W.*, Civil No. 95-1146 (KMW), 1998 WL 341939, at *1 (S.D.N.Y. June 26, 1998) ("Although Billups executed a [power of attorney] in favor of Mary James, Billups' death automatically terminated the 'Power of Attorney.'") (*citing Wisdom v. Wisdom*, 111 A.D.2d 13, 14–15, 488 N.Y.S.2d 682, 684 (1st Dep't 1985) (holding that death of a principle terminates power of attorney); *Etterle v. Excelsior Ins. Co.*, 74 A.D.2d 436, 441, 428 N.Y.S.2d 95, 98 (4th Dep't 1980) (same)); *In re Coffin's Estate*, 152 Misc. 619, 624, 273 N.Y.S. 974, 980 (Sur. 1934) ("After his death, he cannot perform them in either manner, since an agency or power of attorney terminates on death."); *In re Banks' Will*, 31 N.Y.S.2d 652, 655 (Sur. 1941) (holding that "any acts performed" by a power of attorney after death "would be unauthorized and ineffective").

43.     A Liberian corporation may not act through a power of attorney.

44.     Under Liberian law, a Liberian corporation is authorized to act solely through a board of directors. *See* 5 Associations Law of the 1976 Liberian Codes of Laws Revised (hereinafter "Associations Law") § 6.1 ("Subject to limitations of the articles of incorporation and of this Act as to action which shall be authorized or approved by the shareholders, all corporate powers shall be exercised by or under authority of, and the business and affairs of every corporation shall be managed by, a board of directors.").

45.     George Peters was not an officer of Sea Trade.

46.     George Peters was not a member of Sea Trade's board of directors.

47.     The purported power of attorney is not mentioned anywhere in Sea Trade's corporate records.

48.     Defendant Coutsodontis, who has owned at least 50% of Sea Trade's shares since 2003, never authorized or approved any corporate act by George Peters.

49.     Accordingly, any and all acts by George Peters on behalf of Sea Trade are void *ab initio*.

50.     Plaintiff's wrongful attachment claim is dismissed as a matter of law because Plaintiffs cannot demonstrate that Defendant Coutsodontis did not rely in good faith upon the advice of counsel.

51.     In 2008, Coutsodontis retained counsel in New York (Poles Tublin Stratakis & Gonzalez LLP ("Poles Tublin")) and Spain (Garrigues Law Offices) to seek advice whether he should cause the arrest of the M/V Athena in Spain.

52.     Poles Tublin was counsel of record for Coutsodontis in several pending litigations between Plaintiff Peters and Coutsodontis relating to the dispute over ownership of Sea Trade and the M/V Athena and, therefore, was fully informed of the background and history between the parties.

53.     Coutsodontis disclosed all facts known to him relating to the arrest of the M/V Athena in Spain to Poles Tublin and Garrigues Law Offices.

54.     Poles Tublin and Garrigues Law Office provided advice to Coutsodontis that the arrest was legal.

55.     Coutsodontis relied in good faith upon the legal advice he received from counsel.

56.     On July 10, 2008, Coutsodontis' attorneys in Spain caused the M/V Athena to be arrested in Spain.

57.     The Spanish arrest was lifted on August 4, 2008.

58.     Plaintiff Sea Trade filed a separate action and obtained an award of compensatory damages against Defendant Coutsodontis for loss of income and expenses incurred during the Spanish arrest.

59.     Accordingly, Plaintiffs cannot seek to obtain double damages for the same alleged wrongful conduct.

60.     In 2008, Coutsodontis sought legal advice from Poles Tublin and Louisiana counsel (Chaffe, McCall, LLP) regarding the possible arrest of the M/V Athena in Louisiana.

61.     Coutsodontis disclosed all facts known to him relating to the arrest of the M/V Athena in Louisiana to Poles Tublin and Chaffe, McCall, LLP.

62.     Poles Tublin and Chaffe McCall, LLP provided advice to Coutsodontis that the arrest was legal.

63.     Coutsodontis relied in good faith upon the legal advice he received from counsel.

64.     On August 27, 2008, Coutsodontis' attorneys caused the M/V Athena to be arrested in New Orleans.

65.     The New Orleans arrest was lifted on September 12, 2008.

66.     On August 29, 2008, Hellenic Mutual War Risks Association (Bermuda) Limited ("Hellenic") also caused the M/V Athena to be arrested in Louisiana in connection with a separate matter.

67.     The Hellenic arrest was lifted on September 12, 2008, after the Coutsodontis attachment had already been lifted.

68.     Plaintiff Sea Trade was not damaged by the New Orleans arrest because it was, at the same time, under arrest by a third party in an unrelated matter.

69.     It is well established that "[t]he arrest of a vessel in admiralty 'is an inconvenience to which the owners must submit as one caused by the exercise of a legal right on the part of the plaintiff, and unless the attachment is *mala fide*, or by such gross negligence as to amount to bad faith, no damages can be recovered for ... detention caused by such arrest.'" *Stevens v. F/V Bonnie Doon,* 655 F.2d 206, 209 (9th Cir. 1981) (*quoting The Swedish Bark Adolph,* 5 F. 114, 115 (S.D.N.Y. 1880)). *See also Gow v. William W. Brauer S.S. Co.*, 113 F. 672, 674 (S.D.N.Y. 1902) ("While the ordinary arrest of a vessel in a cause of damage ... is an inconvenience to which the owner is required to submit without a remedy, upon his success in the action, beyond the costs, yet where the libelant proceeds without an honest belief that he is using a rightful remedy, and his action is in the nature of a malicious prosecution, he should be held in any damages suffered by the shipowner through his wrongful act.").

70.     A claim for wrongful seizure of a vessel requires a showing of "bad faith, malice, or gross negligence of the offending party." *Frontera Fruit Co. v. Dowling,* 91 F.2d 293, 297 (5th Cir. 1937); *accord Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 402 n.5 (2d Cir. 1995) ("A plaintiff in a maritime case may be liable in damages for the wrongful attachment of the defendant's property, but only on a showing of bad faith, malice, or gross negligence.").

71.     That a defendant relied upon inaccurate allegations regarding ownership of a vessel is insufficient to establish bad faith.  *See OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.*, Civil No. 06-9441 (RWS), 2007 WL 2900225, at *3 (S.D.N.Y. Oct. 4, 2007) ("In opposition to Defendants' motion to vacate the maritime attachment [before the arresting court], Plaintiff did not assert any allegations of bad faith, malice, or gross negligence. Plaintiff only asserted that Defendants had 'inaccurately alleg[ed] that OGI had an interest in the Vessel' and

that 'OGI did not have an ownership interest in the "UTHAI NAVEE" 'but rather had chartered the vessel.'").

72.    Neither the arresting court in Spain nor the arresting court in Louisiana made any finding of bad faith, malice, or gross negligence on the part of Defendant Coutsodontis.

73.    Defendant Coutsodontis at all times acted in good faith and upon the advice of counsel.

74.    Plaintiffs have not pointed to any evidence whatsoever that Defendant Coutsodontis failed to make a complete disclosure to his attorneys of the relevant facts.

75.    "The advice of competent counsel, honestly sought and acted upon in good faith is alone a complete defense to an action" for wrongful attachment of a vessel. *Sea Trade Mar. Corp. v. Coutsodontis*, Civil No. 09-488 (BSJ) (HBP), 2011 WL 3251500, at *10 (S.D.N.Y. July 25, 2011) (*quoting Frontera Fruit Co.*, 91 F.2d at 297).

76.    "To invoke an advice of counsel defense in the Second Circuit, a party must 'show that he made complete disclosure to counsel, sought advice as to the legality of his conduct, received advice that his conduct was legal, and relied on that advice in good faith.'" *Id.* (*quoting Markowski v. S.E.C.*, 34 F.3d 99, 105 (2d Cir. 1994) (citing cases)).

77.    At all times since 2003, including at the time of both the Spanish arrest and New Orleans arrest, Plaintiffs denied that Defendant Coutsodontis was a lawful shareholder of Sea Trade.

78.    Plaintiffs have continued to deny that Defendant Coutsodontis is a lawful shareholder of Sea Trade even after the Greek Supreme Court held that Coutsodontis is the lawful owner of at least 250 shares of Sea Trade.

79.     At all times since 2003, including at the time of both the Spanish arrest and New Orleans arrest, Plaintiffs refused to include Defendant Coutsodontis in the management of Sea Trade and the M/V Athena or to share with him any of the profits from the M/V Athena's operations.

80.     Plaintiffs are barred from seeking equitable relief or from seeking to prove the existence of a fiduciary duty, by the doctrine of unclean hands.

81.     A party seeking equitable relief "must come with clean hands if relief is to be granted." *Gidatex v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 130 (S.D.N.Y. 1999). Specifically, the "unclean hands" doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).

82.     Defendant Coutsodontis did not breach a fiduciary duty owed to Plaintiffs.

83.     Mere ownership of stock does not give rise to a fiduciary duty. *See Gottesman v. General Motors Corp.*, 279 F. Supp. 361, 383–384 (S.D.N.Y. 1967) ("The New York courts have frequently held that a dominant or majority stockholder does not become a fiduciary for other stockholders merely by reason of his voting power.  It is only when he steps out of his role as a stockholder and begins to usurp the functions of director in the management of corporate affairs that such a [fiduciary] duty is imposed.) (citing cases).

84.     Plaintiffs' claims for wrongful attachment and breach of fiduciary duty must be dismissed, as a matter of law. *See Thypin Steel Co. v. Certain Bills of Lading Issues For A Cargo of 3017 Metric Tons, More Or Less, Of Hot Rolled Steel Plate Laden On Bd. The M/V GEROI PANFILOVSKY, in rem.*, Civil No. 96-2166 (RPP), 2001 WL 1019347, at *5 (N.D.N.Y. Sept. 4, 2001) ("As Asoma has now completed discovery, and has offered no proof of its allegation that

- 12 -

Thypin acted with bad faith, malice or gross negligence, or any evidence that it could prove these allegations, it has made no showing sufficient to overcome the motion for summary judgment.").

85.     Divesting a defendant of his ownership of a company, without compensation, is not a recognized form of equitable relief.

86.     The "Articles of Incorporation of Sea Trade Maritime Corporation" do not provide for the forfeiture of shares by a shareholder.

Mark A. Berman, Esq. (MB4456)
Kelly A. Zampino, Esq. (KZ0721)
**HARTMANN DOHERTY ROSA
BERMAN & BULBULIA, LLC**
666 Fifth Avenue, 28th Floor
New York, NY 10103
(212) 344-4619
mberman@hdrbb.com
kzampino@hdrbb.com
*Attorneys for Defendant
Stelios Coutsodontis*

Dated: December 14, 2015