UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

SEA TRADE MARITIME CORPORATION, et al.,

        *Plaintiffs*,

-against-

STELIOS COUTSODONTIS, et al.,

        *Defendants.*

------------------------------------------------------------x

**No. 09 Civ. 00488 (LGS)(HPB)**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTIONS TO MAGISTRATE JUDGE PITMAN'S REPORT AND RECOMMENDATION**

Dated: January 22, 2019
       New York, New York

BEYS LISTON & MOBARGHA LLP

Nader Mobargha
641 Lexington Avenue, 14th floor
New York, New York 10022
Telephone: (646) 755-3603
Facsimile: (646) 755-5229
Email: nmobargha@blmllp.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………………………1

ARGUMENT……………………………………………………………………………………...3

I.         Standard of Review ……………………………………………………………………3

II.        The Report Does Not Address How the Funds From Coutsodontis' Appeal
             Bond Should Be Distributed…………...…………………………………………………4

III.       The Report Incorrectly Considers Coutsodontis' New Claims and Evidence In His Reply
             In Violation of The Court's Order …………………………………………………….6

IV.       Sea Trade Had No "Retained Profits" Prior to 2003……………………………………..8

V.        The Report Contains a Factual Error About Sea Trade's
             Estimate of Its Own Revenue….…………………………………………………...10

VI.       The Report Incorrectly States That The Court of Appeals Affirmed the Holding That
             Peters Had Unclean Hands…………………………………………………………11

CONCLUSION…………………………………………………………………………..11

# TABLE OF AUTHORITIES

**Cases**

*Coutsodontis v. Sea Trade, et. al.*, 653956/2012……………………………………………5

*McDonaugh v. Astrue*, 672 F. Supp. 2d 542 (S.D.N.Y. 2009) ……….…………………………..3

*Renaissance Search Partners v. Renaissance Ltd. L.L.C., No.* 2013 WL 6840109, at *1 (S.D.N.Y. Dec. 13, 2013)………….…………….………….............................................3

*RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, 2013 WL 4505255 (S.D.N.Y. Aug. 23, 2013) ………..……….………….………….……………..………………….…………....3, 4

*Sea Trade Maritime Corp. v. Coutsodontis*, 2018 WL 3752229 (2d. Cir. Aug. 7, 2018) ………..4

*United States v. Raddatz*, 447 U.S. 667, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980) ………...........4

*United States v. Snow*, 462 F.3d 55 (2d Cir. 2006)  ………….…………….………….……….........3


**Statutes**

28 U.S.C. § 636……………….………….……………..........……………….…………..………1, 3

Federal Rules of Civil Procedure Rule 72………….……….…………….…………….............………..1

Under 28 U.S.C. § 636(b)(1)(C) and the Federal Rules of Civil Procedure Rule 72(b), Plaintiffs Sea Trade Maritime Corp. ("Sea Trade") and George Peters ("Peters"), respectfully submit the following objections to the Magistrate Judge's December 7, 2018 Report (the "Report," cited as "R&R").

## PRELIMINARY STATEMENT

Plaintiffs do not object to the Report overall or its conclusion that Defendant Coutsodontis ("Coutsodontis") should receive "one-half of the proceeds from the sale of the M/V ATHENA (the "Vessel"), plus any accrued interest thereon, currently residing in escrow," with the balance paid to Peters. (R&R, at 40). We accept this conclusion even though the Report recognized Peters as a creditor of Sea Trade who had paid, and incurred, millions of dollars in expenses on its behalf. As a creditor, Peters has priority over any payments to shareholders, including Coutsodontis.

Nevertheless, to end the litigation, Plaintiffs will accept the Report's conclusion that the parties split the remaining sales proceeds of Sea Trade and make only the following objections:

1. The Report does not address how the other funds in escrow – namely, money remaining from Coutsodontis' appeal bond to secure a judgment against him by Sea Trade – should be distributed. Ultimately, Plaintiffs domesticated that judgment in New York (the "New York Judgment"). These funds are what remains from the damages that the Spanish Court ordered Coutsodontis to pay for his unlawful detention of Sea Trade's Vessel.

   As a court of equity, this Court should order that those funds be distributed to Peters as a

shareholder or creditor of Sea Trade, since Coutsodontis should not profit in any way from his tortious unlawful arrest campaign.

2. Procedurally, Judge Pitman erred by not rejecting Coutsodontis' submission of new claims and evidence in violation of His Honor's own December 5, 2016 order (the "Order"). As part of his reply papers, Coutsodontis impermissibly submitted a completely <u>revised</u> report and asserted a <u>new</u> claim for "retained earnings" of $11.678 million when all he was permitted to do was "reply" to Plaintiffs' Findings of Fact and Conclusions of Law. Although the Court did reject Coutsodontis' claims on its merits, it should not have even considered them since they exceeded the permissible scope of Coutsodontis' reply.

3. Contrary to Coutsodontis' claim, Sea Trade did not earn any "retained profits" prior to 2003. Again, the Report rejected Coutsodontis' claim for $11.678 million in "retained profits" <u>prior</u> to 2003 because Coutsodontis was not a shareholder <u>prior</u> to 2003. However, the Court also should have found that Sea Trade's 2003 financial statements do not show any "retained profits" and that these so-called "profits" primarily are the book value of the Vessel at some $9.1 million, which Sea Trade sold in 2009 for only $2.34 million.

Plaintiffs were never able to respond to Coutsodontis' improper claim since he impermissibly raised it for the first time in his reply.

2

4. The Report misstates Sea Trade's expert's report concerning Sea Trade's revenues and mistakenly includes the sale proceeds of the Vessel in that calculation.

5. The Report incorrectly states that the Court of Appeals affirmed the district court's finding of unclean hands by Peters.  The Court of Appeals held that the issue was moot.  This error does not affect the Court's conclusion or findings concerning Sea Trade's revenues and expenses.

## ARGUMENT

**I-   STANDARD OF REVIEW**

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  The Court "must determine 'de novo' any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).  "To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Renaissance Search Partners v. Renaissance Ltd. L.L.C., No.*, 2013 WL 6840109, at *1 (S.D.N.Y. Dec. 13, 2013) (internal citation omitted).  A decision is only "clearly erroneous" when the Court, upon review of the entire record, is "left with the definite and firm conviction that a mistake has been committed." *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, 2013 WL 4505255, at *1 (S.D.N.Y. Aug. 23, 2013) (citing *U.S. v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (internal quotation

marks omitted).

To invoke "de novo" review of the magistrate judge's recommendations, a party's objections "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *McDonaugh v. Astrue*, 672 F. Supp.2d 542, 547 (S.D.N.Y. 2009) (internal quotation marks omitted).  De novo review of a magistrate judge's report does not require the Court to conduct a de novo hearing on the underlying issues.  *See, e.g.*, *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, 2013 WL 4505255 at *1  (citing *U.S. v. Raddatz*, 447 U.S. 667, 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980)).  Rather, Congress intended "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *Id*.

**II-   THE REPORT DOES NOT ADDRESS HOW THE FUNDS FROM COUTSODONTIS' APPEAL BOND SHOULD BE DISTRIBUTED**

The Report does not address and distribute the $233,085.80, plus interest, which remains in an escrow fund, but which is separate from the escrow proceeds from the sale of the Vessel.  This amount is what remains from the appeal bond posted by Coutsodontis to secure the domesticated New York judgment against him by Sea Trade for the wrongful detention of the Vessel in Spain (the "Appeal Bond Escrow").  Plaintiffs object to this apparent oversight, and ask the Court, which is sitting in equity, to award the full amount of the Appeal Bond Escrow to Peters, as a shareholder or recognized creditor of Sea Trade.  To allow Coutsodontis to profit from the damages that he was ordered to pay would be grossly inequitable. (*See* R&R, at 14) (citing Court of Appeals Opinion, *Sea Trade Maritime Corp. v. Coutsodontis, supra,* 2018 WL 3752229 (2d. Cir. Aug. 7, 2018) ("Once parties invoke a court's equity jurisdiction, the court has

4

the power to decide all relevant matters in dispute and to award complete relief, and to assure that equity is done to all parties.") (citations omitted).

As background, a judgment was entered in Spain against Coutsodontis for the wrongful detention of the Vessel in 2008. In October 2014, the New York Supreme Court recognized the judgment for $1,092,445 (the "New York Judgment"). (*See* Dock Entry ("D.E.") No. 338, Declaration of George Peters ("Peters Decl."), at ¶¶ 84-89, 112-114). When Coutsodontis appealed from the New York Judgment, he posted an appeal bond in the sum of $1,174,761.45, to stay enforcement pending appeal (the "Appeal Bond") (*See id.* ¶ 88). In 2016, Sea Trade prevailed on the appeal and had a right to collect the Appeal Bond to satisfy the New York Judgment against Coutsodontis. (*See id.* at ¶ 89).

Thereafter, Sea Trade's former counsel, Anderson Kill P.C., which in November 2013 had obtained a consent judgment against Sea Trade in New York for $951,675.65 (inclusive of post-judgment interest), enforced its judgment against the proceeds of the Appeal Bond in *Coutsodontis v. Sea Trade, et. al.*, 653956/2012 (the "State Action") (*See id.* at ¶ 113). The court in the State Action ordered that the $223,085.80 balance of the Appeal Bond be placed in escrow with Sea Trade's counsel (where those proceeds now reside).[1] (*See Id.* at ¶ 114). In his declaration, Peters listed the Appeal Bond Escrow as an asset of Sea Trade for distribution. (*See id.* at ¶ 136).

Although the Report recognized that the New York Judgment was affirmed on appeal, it

---

[1] Shortly before issuance of the Report, on December 6, 2018, the court in the State Action, upon the agreement of the parties, dismissed the action without prejudice to any positions they took in it. (*See* State Action, D.E. 150).

5

overlooked that the Appeal Bond satisfied the New York Judgement and that what remained in the Appeal Bond Escrow needed to be distributed.

Accordingly, Plaintiffs request the Court to order that the Appeal Bond Escrow be distributed solely to Peters, as a shareholder or creditor of Sea Trade.[2] To do otherwise would be unjust as it would effectively return to Coutsodontis damages he was found liable for in Spain and New York.

### III- THE REPORT INCORRECTLY CONSIDERS COUTSODONTIS' NEW CLAIMS AND EVIDENCE IN HIS REPLY IN VIOLATION OF THE COURT'S ORDER

The Report correctly found that "Coutsodontis has failed to prove with reasonable certainty that Sea Trade actually earned net profits or that Sea Trade had any assets beyond the proceeds from the sale of the [Vessel]..." (R&R, 37). However, the Court should not have considered Coutsodontis' <u>new</u> claims and evidence concerning Sea Trade's alleged profits, which Coutsodontis raised for the first time in his reply papers over Plaintiffs' objection and in violation of Judge Pitman's own Order prohibiting such submissions.

Under the Order, Judge Pitman granted Coutsodontis' motion to file a reply to Plaintiffs' submission, but ordered that such reply be "strictly limited to matters raised for the first time in plaintiff's opposition." (*See* D.E. No. 348). Coutsodontis was not permitted to "raise any new issues." (*Id*.). "[V]iolation of this limitation" would result in the Court's "disregarding the reply papers in their entirety." (*Id*.). Coutsodontis violated the Order in his reply by including (1) a new claim of "retained profits" of $11,678,000, which represented almost 1/3 of what he

---

[2] The Report found that Peters was a creditor of Sea Trade who was owed millions dollars. (R&R at 23-25, 33-35).

maintains Sea Trade earned in total "profits" and (2) a new "revised" 69-page report, dated January 12, 2017, from its expert, Gray Page, ("Reply Report"). (*See* D.E. No. 350-1, Ex. A; *see also* Ex. A at ¶ 16). The Reply Report changes its entire calculation of revenue and expenses by tens of millions of dollars from its initial submission. Ms. Jean Richards ("Richards") of Quantum Shipping Services, Ltd., Sea Trade's expert, never had the opportunity to respond to the Reply Report. (*See* D.E. No. 337, Richards' Expert Report) (only responding to Coutsodontis initial submission). As a result, Plaintiffs object to Coutsodontis' improper reply. (*See* D.E. No. 351 & 353). Although the Court rejected the Reply Report on its merits, it should have rejected it outright because it violated the Court's own Order. (*See* R&R, at 15, 37-39).

Prior to his reply, Coutsodontis' initially submitted two reports, also prepared by Gray Page. But Coutsodontis did not prepare these reports for use in this inquest, but rather years ago for use in his litigation against Sea Trade, including the July 2008 unlawful arrest of the Vessel in Spain. (*See* R&R 15-16). More importantly, neither of these reports considers the <u>actual expenses</u> that Sea Trade had incurred. Coutsodontis' initial reports did not consider any of the banking, financial or other documents concerning Sea Trade's revenues and expenses that Plaintiffs produced to Coutsodontis in 2014. (*See* D.E. 338, Peter Decl. ¶¶ 4-6). Rather, the reports are just estimates based on Gray Page's opinion of the market conditions in the shipping industry. Nevertheless, based on them, Coutsodontis claims that Sea Trade earned almost $36 million in profit, of which Coutsodontis claimed 50%, or $19 million. (D.E. 328, Defendant's Proposed Findings of Fact and Conclusions of Law, at ¶ 57).

In their submission, Plaintiffs and their expert, Richards, showed that the astronomical profits that Gray Page projected in its reports were grossly inaccurate and totally unsupported by

Sea Trade's actual earnings and expenses. (*See* D.E. 337-1, Richards Report, ¶¶ 8.1-8.9).[3]

Rather than simply reply to Richards' arguments and Plaintiffs' submission, Coutsodontis had its expert, Gray Page, completely "revise" its report and change its earlier calculations of revenue and expenses by millions of dollars – while remarkably <u>still</u> failing to consider all the records produced years earlier by Plaintiffs to Coutsodontis. The Reply Report reduced Gray Page's initial opinion of Sea Trade's profits by about 35%, from some $36 million to $23.4 million (excluding the $2.3 million in sale proceeds).[4] (*See* D.E. 350-1, Gray Page Reply Report, Annex 1, Earnings Chart). To compensate for this drastic reduction in profits, Coutsodontis invented non-existing "retained profits." Procedurally, Coutsodontis' revision and outright manipulation of the calculations contained in his earlier Gray Page reports violated the Court's Order, which "strictly limited to matters raised for the first time in plaintiff's opposition." (D.E. 348). These changes also undercut the credibility of all of the Gray Page reports.

**IV-   SEA TRADE HAD NO "RETAINED PROFITS" PRIOR TO 2003**

---

[3] Richards showed that Coutsodontis, and his expert Gray Page, overstated revenues by approximately $16.5 million and understated the few expenses they did consider by about almost $8 million (*See* D.E. 337-1, ¶¶ 8.2-8.7; D.E. 338 at ¶ 37). Plaintiffs also presented evidence of legal fees and expenses, interest on loans and Peters' compensation, in the amount of approximately $18.4 million, which Coutsodontis refused to consider in his submissions. The Court found that these "Disputed Expenses…should be included in the calculation of Sea Trade's profit." (R&R 20-21, 37).

[4] For example, the Reply Report reduced Sea Trade's revenue by $10 million, from $53 million in the earlier Gray Page reports to $43 million in the Reply Report. (*Cf*. D.E. 337-1, ¶¶ 5.29 & 8.2 *with* R&R at 16). Even the lower revenue figure, however, was grossly exaggerated as it exceeded the amounts shown by bank records and financials by millions of dollars. *See* D.E. 338 ¶¶ 25, 27; D.E., ¶ 5.28). Among the many changes made in the Reply Report, Gray Page also revised its <u>own</u> earlier calculation of OPEX (i.e., daily operating expenses) and lowered it by some $3 million. (*Cf*. D.E. 337-1, ¶ 7.2 *with* R&R, 17).

In addition to procedurally violating the Court's Order, Coutsodontis' new claim for $11.678 million profits based on Sea Trade's alleged "retained earnings" from 1992-2002 is just plain wrong and shows a complete misunderstanding of basic accounting. Coutsodontis intentionally disregarded accounting principles and inserted this new figure simply to increase the profits to which he claimed he is entitled.[5]

In his Report, Judge Pitman considers and rejects Coutsodontis' claim for these "retained profits" because Coutsodontis has no valid claim to them. (R&R, at 27-28)(Coutsodontis' claim "was inconsistent with the scope of equitable relief ordered….To permit Coutsodontis to recover amounts earned by Sea Trade when he was not a Sea Trade shareholder would result in an inequitable windfall in his favor."). That is because Coutsodontis is not entitled to Sea Trade's profits or earnings <u>prior</u> to his becoming a shareholder in 2003. (R&R, 16, 27-28). Plaintiffs agree with Judge Pitman's reasoning and conclusion on this issue. However, Plaintiffs have two additional objections to Coutsodontis' claim which the Report did not recognize explicitly.

<u>First</u>, the Court should have rejected this "new" claim in Coutsodontis' Reply Report because it violated the Court's December 5, 2016 Order. Due to this violation, Plaintiffs never had the opportunity to refute this claim.

<u>Second</u>, the Report should have found that Sea Trade did not earn or retain $11,678,000 in "profits." (R&R., 16). The error stems from the inclusion by Sea Trade's managers of the

---

[5] Incredibly, the Reply Report's conclusion is that Coutsodontis is entitled to $19 million in profit, the same figure as Gray Page's initial reports, even though the calculations and claims in each are radically different.

Vessel's 1992 purchase price (or book value) of $9,100,000 million in the item labeled "Reinvested Earnings" in Sea Trade's 2003 "Statement of Cash Flows." (*See* Appendix A to this Memorandum, at 1).[6]

The Vessel is listed as an asset at its 1992 purchase price of $9,100,000 in the Statement of Cash Flows. That figure is then added to its current assets, from which current liabilities in turn are deducted. (*See id*.). The total amount left is $11,678, labeled as "Reinvested Earnings." (*See id*.; *see also id*. at 3 (same figure appears in the "Statement of Income and Reinvested Earnings For The Year Ended December 31, 2003," upon which Coutsodontis relied (*See* R&R, at 16)). Thus, the majority of the "Reinvested Earnings" is the book value of the ship – namely, the price at which Sea Trade purchased the vessel a decade earlier.

Coutsodontis and his expert deliberately mislabeled that amount as "retained <u>profits</u>." As Coutsodontis knows, in January 2009, Sea Trade sold the Vessel for $2.34 million. (R&R, 11). Any so-called "retained earnings" Sea Trade had in 2003 no longer exists as the Vessel was sold at a <u>loss</u> (i.e., $2.34 million). Consequently, the amount that Sea Trade paid for the Vessel in 1992 (i.e., $9.1 million) is irrelevant and cannot be "profit." The only relevant figure – or "profit" – is the $2.34 million that Sea Trade earned from the sale of the Vessel. Those proceeds sit in escrow and Judge Pitman recommended that Coutsodontis receive half of them. As such, the Court should disregard Coutsodontis' "double counting" – counting both the book value of the Vessel in 1992 when Sea Trade purchased it and the proceeds from the sale of the Vessel in

---

[6] For the Court's ease, Plaintiffs attach a copy of the two financial statements as Appendix A. These financial statements are in evidence as Exhibit 4 to the Peters Declaration. (*See* D.E. 338-4).

10

2009 when Sea Trade sold it – in his calculation of Sea Trade's profits.

**V- THE REPORT CONTAINS A FACTUAL ERROR ABOUT SEA TRADE'S ESTIMATE OF ITS OWN REVENUE**

The Report incorrectly states that Richards estimates the revenue earned was $35,236.904.24, inclusive of the ship sale proceeds. (*See* R&R, at 19). However, in her report, Richards estimates the net revenue of the Vessel to be $36,687,740, <u>exclusive</u> of the ship sale proceeds. (*See* D.E. 337-1, ¶ 5.28; D.E. 338, ¶¶ 25, 27, 29, 135).

**VI. THE REPORT INCORRECTLY STATES THAT THE COURT OF APPEALS AFFIRMED THE HOLDING THAT PETERS HAD UNCLEAN HANDS**

Finally, contrary to the Report's finding, the Court of Appeals did <u>not</u> "affirm [] district court's holdings that Peters had unclean hands..." (R& R, at 14).

Rather, the Court of Appeals held that "[i]nsofar Peters challenges the unclean hands finding…we reject the argument as <u>moot</u>." (16-3291, D.E. 184-1, Court of Appeals Opinion., at 11)(emphasis added). The Court of Appeals did "not reach the district court's unclean hands determination as to Peters because [it] conclude[d] that Peters failed in the first instance to prove his breach of fiduciary duty claim against Coutsodontis, without which there is no basis for equitable relief." (*Id*. at 8). Simply put, Coutsodontis' affirmative defense of unclean hands was no longer an issue in the litigation since the Court of Appeals did not find that Coutsodontis breached his fiduciary duty in the first place.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court adopt the Report's conclusion and all of its findings except those to which Plaintiffs objects. Specifically, Plaintiffs request that the Court find the following:

(1) The Appeal Bond Escrow of $233,085.80, and any accrued interest, should be distributed to Peters as a shareholder or creditor of Sea Trade;

(2) Coutsodontis' revised Reply Report should be rejected;

(3) Sea Trade had no "retained profits" prior to 2003;

(4) the net revenue of the Vessel in Richards' Report is $36,687,740, <u>exclusive</u> of the ship sale proceeds; and

(5) the Court of Appeals did not affirm the district court's finding that Peters acted with unclean hands, but instead found that the issue was moot.

Dated: January 22, 2019
New York, New York

                                          **BEYS LISTON & MOBARGHA LLP**

                                          By: _____/s/_____
                                                    Nader Mobargha, Esq.

                                          641 Lexington Avenue, 14th Floor
                                          New York, New York 10022
                                          Telephone: (646) 755-3603
                                          Facsimile: (646) 755-5229
                                          Email: nmobargha@blmllp.com

                                          *Attorneys for Plaintiffs Sea Trade Maritime Corporation and George Peters*

# APPENDIX A

## SEA TRADE MARITIME CORP.

### M/V 'ATHENA'

STATEMENT OF CASH FLOWS
FOR THE YEAR ENDED DECEMBER 31, 2003

-$000-

|  |  | 2002 | 2003 |  |
|---|---|---|---|---|
|  | ASSETS | 9100 | 9100 |  |
|  | CURRENT ASSETS |  |  |  |
| INCREASED | CASH | 327 | 726 | <399> |
| DECREASED | INVENTORIES | 57 | 46 | 11 |
| DECREASED | PREPAID EXPENSES | 488 | 92 | 396 |
| DECREASED | A/C'S RECEIVABLES | 3464 | 3258 | 206 |
|  | LIABILITIES |  |  |  |
|  | CURRENT LIABILITIES |  |  |  |
| INCREASED | A/C'S PAYABLES | 505 | 578 | 73 |
| INCREASED | PROVISION FOR EXPENSES | 63 | 92 | 29 |
| DECREASED | LOAN PAYABLE | 1190 | --- | <1190> |
|  | REINVESTED EARNINGS | 11678 | 12552 | 874 |
|  | NET INCOME FOR THE YEAR END |  |  | 874 |

## SEA TRADE MARITIME CORP.

### M/V 'ATHENA'

STATEMENT OF INCOME AND REINVESTED EARNINGS
FOR THE YEAR ENDED DECEMBER 31, 2003

-$000-

**REVENUES**

| | |
|---|---|
| REVENUES | 3988 |
| VOYAGE EXPENSES | 116 |
| NET VOYAGE REVENUES | 3872 |
| OTHER INCOME | 196 |
| TOTAL INCOME | 4068 |

**OPERATING EXPENSES**

| | |
|---|---|
| CREW COSTS | 944 |
| STORES AND SPARES | 247 |
| INSURANCE | 229 |
| REPAIRS AND MAINTENANCE | 357 |
| GENERAL AND ADMINISTRATIVE EXPNS | 1387 |
| INTEREST EXPENSES | 30 |
| TOTAL OPERATING EXPENSES | 3194 |

| | |
|---|---|
| NET INCOME FROM OPERATION OF SHIP | 874 |
| R/EARNING BEGINNING OF PERIOD | 11678 |
| R/EARNINGS END OF PERIOD | 12552 |

BYZANTINE                                              Trial Balance for the Period From 31/12/2002 To 31/12/2003

*Vessel: 99 ATHENA*

| Code | Account Name | Currency | Beginning of Period | | Period Changes | | End of Period | |
|---|---|---|---|---|---|---|---|---|
| | | | L.C Balance | USD Balance | L.C Balance | USD Balance | L.C Balance | USD Balance |
| 1— | FIXED AND NON CURRENT ASSETS | | | | | | | |
| 11— | VESSEL AT COST | | | | | | | |
| 1101 | BILL OF SALE | 00 USD | 0,00 | 0,00 | 9.100.000,00 | 9.100.000,00 | 9.100.000,00 | 9.100.000,00 |
| | | | | 0,00 | | 9.100.000,00 | | 9.100.000,00 |
| | | | | 0,00 | | 9.100.000,00 | | 9.100.000,00 |
| 2— | CASH AND BANK ACCOUNTS | | | | | | | |
| 25— | BANK (OWNERS ACCOUNT) | | | | | | | |
| 2501 | M & T BANK | 00 USD | 0,00 | 0,00 | 551.949,56 | 551.949,56 | 551.949,56 | 551.949,56 |
| 2502 | ASPIS BANK | 00 USD | 0,00 | 0,00 | 174.175,26 | 174.175,26 | 174.175,26 | 174.175,26 |
| | | | | 0,00 | | 726.124,82 | | 726.124,82 |
| | | | | 0,00 | | 726.124,82 | | 726.124,82 |