UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
                                              :

SEA TRADE MARITIME CORPORATION, et  :
al.,                                             :

                              Plaintiffs,  :       9 Civ. 488 (LGS) (HBP)
                                             :

              -against-             :       **OPINION AND ORDER**
                                             :

STELIOS COUTSODONTIS,                :
                              Defendant.  :
---------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       This action is before the Court after more than a decade of litigation and "much hardship."[1]  The case arises from an intra-family dispute over ownership and control of Plaintiff Sea Trade Maritime Corporation ("Sea Trade").  Sea Trade and its "attorney-in-fact" George Peters commenced this action in 2009 against Defendant Stelios Coutsodontis.  Magistrate Judge Henry Pitman issued a Report & Recommendation (the "Report") on how to allocate Sea Trade's assets.  *See Sea Trade Mar. Corp. v. Coutsodontis*, 9 Civ. 488, 2018 WL 7460028 (S.D.N.Y. Dec. 7, 2018).  The Report recommends that Defendant is entitled to $1,170,645.87, plus interest, or one-half of the proceeds of the sale of the "M/V Athena," a "Panamax"-type, bulk maritime vessel.  *Id*. at *14.  Both parties filed Objections.  For the reasons herein, the recommendation is adopted.  In addition, Defendant is entitled to one-half of $233,085.80, plus interest (i.e., $116,542.90, plus interest) which the Report does not allocate and is currently in escrow.

---

[1] HOMER, THE ODYSSEY, Book XVI (Samuel Butler, trans., Project Gutenberg 2019), https://www.gutenberg.org/files/1727/1727-h/1727-h.htm  (where Odysseus credits the goddess Athena for directing him home to Ithaca, after ten years of "long wandering and much hardship").

## I.    BACKGROUND

Only the facts necessary to address the Objections are included.[2]  Sea Trade's Articles of Incorporation authorize 500 shares.  At formation, Peters was designated as Sea Trade's attorney-in-fact and was effectively made its *de facto* manager through a written power of attorney.[3]  Sea Trade purchased the M/V Athena in 1992 and began chartering in 1993.

Sea Trade, through Peters as attorney-in-fact, entered employment contracts with Peters in 1994 and 1995, and the terms were modified in 2004.  Only Peters signed these agreements.  Peters' employment agreements provide that Sea Trade "shall pay all reasonable costs, including attorney fees in connection with any claims or suits made against [Peters] arising out of his management of the affairs of [Sea Trade]."

As *de facto* manager, Peters managed Sea Trade's bank account at MT&T Bank.  He worked with charter brokers to obtain profitable charters and retained third-party ship management companies.  He also made other management decisions, such as authorizing loan agreements for Sea Trade and litigating on the corporation's behalf.

On January 13, 2003 -- at which time Peters owned 50 shares in Sea Trade and his mother Anna Peters owned 200 shares -- Coutsodontis was bequeathed 250 shares.  Peters and

---

[2] The facts have been more extensively stated in numerous published Opinions.  *See e.g.*, *Sea Trade Mar. Corp. v. Coutsodontis*, 9 Civ. 488, 2011 WL 3251500 (S.D.N.Y. July 25, 2011); *Sea Trade v. Coutsodontis*, 9 Civ. 488, 2012 WL 3594288 (S.D.N.Y. Aug. 16, 2012); *Sea Trade Mar. Corp. v. Coutsodontis*, 9 Civ. 488, 2015 WL 4998638 (S.D.N.Y. Aug. 20, 2015); *Sea Trade Mar. Corp. v. Coutsodontis*, 744 F. App'x 721 (2d Cir. 2018) (summary order); *Sea Trade Mar. Corp. v. Coutsodontis*, 9 Civ. 488, 2018 WL 7460028 (S.D.N.Y. Dec. 7, 2018).

[3] The power of attorney grants Peters the power "[t]o conduct generally the business for and on behalf of the corporation," "to administer and operate for the Corporation any and all vessels[,] . . . to compromise any present or future dispute relating to said vessels or other disputes as said attorney may deem advisable," "to retain legal counsel, solicitors, attorneys at law and agents" and "generally to act in relation with respect to the Corporation's business as fully and effectually in all respects as the Corporation could do if personally present."

his mother refused to acknowledge Coutsodontis as a shareholder.  They sought a declaration from the Multi-Member Court of First Instance of Athens (the "Greek Lower Court") that the bequest was null and void.  In 2009, the Greek Lower Court held that the bequest was valid. This decision was affirmed by the Greek intermediate appellate court, and in 2014 was again affirmed by the Greek Supreme Court.  Plaintiff and his mother did not treat Defendant as a shareholder at any time after the Greek court decisions.

In July 2008, Coutsodontis caused the maritime arrest of the M/V Athena in Tarragona, Spain (the "Spanish Arrest").  He again caused the maritime arrest of the vessel in New Orleans, Louisiana in August 2008 (the "Louisiana Arrest").  Both arrests were vacated.  After the Spanish Arrest, a Spanish court found Coutsodontis liable to Sea Trade.  Sea Trade and Peters sought recognition of the Spanish judgment in the New York Supreme Court (the "2008 State Action").  The New York Supreme Court recognized the judgment for $1,092,445.15 against Coutsodontis, and the judgment was upheld by the Appellate Division in 2016.  Coutsodontis paid Sea Trade the judgment, most of which Sea Trade used to pay off a legal debt, leaving $233,085.80, plus interest, remaining in escrow today.

In January 2009, a buyer paid Sea Trade $2,341,291.73 for the M/V Athena.  The proceeds from the sale were placed in escrow pursuant to an agreement between Sea Trade and Coutsodontis.  The agreement states in relevant part that the sale proceeds shall be disbursed "upon the final non-appealable judicial determination of Coutsodontis' ownership interest in Sea Trade and Coutsodontis' entitlement to the [sale proceeds]."  Because the M/V Athena was Sea Trade's sole source of operating income, the corporation has been dormant since the ship was sold.

Peters and Sea Trade commenced this action against Coutsodontis on the same day as the Greek Lower Court decision.  They asserted claims for wrongful arrest of the vessel, and for breach of fiduciary duty based on the same facts.   After a three-day bench trial, this Court found for Defendant on the wrongful arrest claim, and for Plaintiff on the fiduciary duty claim, but also that Plaintiff had acted with unclean hands by refusing to treat Defendant as a shareholder after the Greek Lower Court decision.  Based on these findings, the Court fashioned an equitable remedy -- that Coutsodontis had a 50% interest in Sea Trade beginning January 13, 2003, but forfeited that interest as of August 23, 2016, because of his breach of fiduciary duty.  *See Sea Trade Mar. Corp. v. Coutsodontis* ("FFCL"), 9 Civ. 488, 2016 WL 11680976, at *16-18 (S.D.N.Y. Aug. 23, 2016).  The matter was referred to Judge Pitman for an inquest on the amount due to Coutsodontis based on his 50% shareholder interest.  *Id.*

The Second Circuit affirmed in part and reversed in part this Court's Order, concluding that Plaintiff had not offered sufficient evidence of damages to find that Defendant had breached his fiduciary duty.  *See Sea Trade Mar. Corp. v. Coutsodontis*, 744 F. App'x 721, 726 (2d Cir. 2018) (summary order).  In light of this decision, the forfeiture of Coutsodontis' interest in 2016 was also reversed.  *Id.*  The Second Circuit noted, however, that "the reversal may have no practical effect in that it affords Coutsodontis no larger share of the sale assets in escrow, and Sea Trade has no assets or ongoing business operations."  *Id.* at 726 n.1.  As a result, Defendant has a 50% ownership interest in Sea Trade beginning January 13, 2003.  The Court of Appeals affirmed the referral for an inquest.  *Id.* at 727.

Based on the parties' submissions, including competing expert reports, the Report recommends that Coutsodontis be awarded $1,170,645.87 plus any accrued interest thereon for his 50% interest in Sea Trade.  *Sea Trade Mar. Corp.*, 2018 WL 7460028, at *14.  This amount

4

represents half of the proceeds of the sale of the M/V Athena.  The Report declined to award any further amount, finding that Coutsodontis had failed to prove that Sea Trade had earned any net profits or had any assets beyond the proceeds from the sale.

## II.   STANDARD

In reviewing a Magistrate Judge's Report, a District Judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  For those findings or recommendations where no timely objection is filed, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72(b) Advisory Committee Notes; *accord Niles v. O'Donnell*, No. 17 Civ. 1437, 2019 WL 1409443, at *1 (S.D.N.Y. Mar. 28, 2019).  A decision is "clearly erroneous" only when the Court is "left with the definite and firm conviction that a mistake has been committed."  *Smith v. Warden of North Infirmary Command*, 18 Civ. 7018, 2019 WL 2866729, at *1 (S.D.N.Y. July 3, 2019) (internal citation omitted).

"A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  To invoke de novo review, the objections "must be specific and clearly aimed at particular findings in the magistrate judge's proposal."  *George v. Professional Disposable Int'l, Inc.*, 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016) (internal citation omitted).  Notably though, "a district court should not entertain new grounds for relief or additional legal arguments that were not before the magistrate judge."  *Berrios v. City of New York*, No. 14 Civ. 8959, 2018 WL 4608211, at *3 (S.D.N.Y. Sept. 25, 2018).

III.    **ANALYSIS**

A.    **De Novo Review and Conclusion**

The purpose of the inquest was to determine what, if any, distribution Defendant is entitled to as a 50% shareholder of Sea Trade.  Defendant objects to the ultimate finding and recommendation in the Report -- that Coutsodontis has failed to sustain his burden to show that Sea Trade has any net assets, apart from the proceeds from the sale of the M/V Athena, and that Coutsodontis is entitled to half of those proceeds, plus interest with regard to his 50% ownership interest in Sea Trade.  This finding and recommendation are adopted on de novo review as explained below.

At the inquest, Plaintiffs -- Sea Trade and its manager Peters -- proffered evidence showing that Sea Trade's liabilities exceed its assets so that it has no net assets to distribute to shareholders.  This evidence included Sea Trade's bank statements from 2004 through 2011, and Peters' declarations that Sea Trade ceased operations in 2008, and that after Sea Trade no longer had a bank account in 2012, Peters paid the company's expenses, primarily legal fees, from his own account.  In addition to showing *de minimis* assets apart from the proceeds from the sale of the ship, Peters proffered evidence of Sea Trade's liabilities exceeding $3.8 million from loans he made to Sea Trade.

Defendant did not attempt to rebut this evidence of assets and liabilities directly.  Instead he sought to discredit this evidence by showing that Sea Trade had millions of dollars of net profits, which should have resulted in the company's having a positive net worth.  Defendant offered an expert's opinion, which in the final revised version asserted that Sea Trade had net earnings between 2003 and 2009 of between $25.7 million and $37.4 million.  This opinion was based largely on estimates of what a similarly situated shipping company would have earned

6

under similar circumstances.  Defendant in substance argued that, with this amount of earnings, Sea Trade must have secret bank accounts holding additional undisclosed assets.

Plaintiff countered with evidence concerning Sea Trade's actual operations, receipts and expenditures.  Plaintiff also submitted an expert report evaluating this evidence and analyzing Defendant's expert opinion.  Plaintiffs' expert concluded that Defendant's expert had grossly overstated Sea Trade's net revenue and found instead for the period between mid 2005 to 2008 net revenue of approximately $3,363,460 versus Defendant's estimate of $19,209,927.

Based on a de novo review, the Court finds that the only Sea Trade assets that Defendant has sufficiently proved are the proceeds remaining from the sale of the M/V Athena principally for two reasons.  First, Defendant's analysis of net profits does not address the traditional measure of shareholder value also referred to as shareholder equity; this amount is generally the excess of a corporation's assets over liabilities.  Although there is intuitively some general relationship between a corporation's net earnings and its equity, profitability is not a measure of equity, and does not result in a number that represents the value of shareholder equity.  Second, even assuming that showing Sea Trade's net profits sheds light on shareholder value, the opinions of Defendant's expert are too speculative since they are largely based on assumptions about Sea Trade's business rather than the available evidence.  In short, Defendant has not sustained his burden of rebutting Plaintiffs' evidence and showing that Sea Trade has any net assets, much less net assets in a particular amount capable of being computed and distributed.  Based on Plaintiff's evidence of Sea Trades liabilities, it is possible that Sea Trade's equity has no value.

Nevertheless, in keeping with my prior opinion and acting as a court of equity, and because of the nature of some of Sea Trade's liabilities (most of which are owed to Peters and his

mother), the Court awards Coutsodontis half of the proceeds from the sale of the M/V Athena. *See Sea Trade Mar. Corp.*, 744 F. App'x at 726-27 (upholding the order for an inquest and stating that a court sitting in equity "may grant any type of relief within its jurisdiction appropriate to the proof . . . imposing such terms as may be just.") (internal quotation omitted). The Court also awards Coutsodontis half of the amount in escrow following the 2008 State Action, plus interest.

### B.    Defendant's Objections

Defendant contends that more discovery should have been permitted.  He complains that the Report applied the wrong standard of proof and as a result did not credit Sea Trade with the correct amount of profits.  Defendant also argues that the Report wrongly reduces Sea Trade's profits with improper expenditures that are not protected by the business judgment rule.  These objections are overruled.

#### 1.    Discovery

Defendant contends that the Report should be rejected because Judge Pitman should have permitted the parties to complete further discovery as to Sea Trade's assets.  This argument fails. After being referred a matter, the Magistrate Judge has "broad authority to oversee and fashion discovery as appropriate."  *City of Almaty, Kazakhstan v. Ablyazov*, 15 Civ. 5345, 2018 WL 2148430, at *1 (S.D.N.Y. May 10, 2018).  This includes Rule 26(b)(2)(C), which authorizes the court to limit discovery if "the party seeking discovery has had ample time to obtain information by discovery in the action.'"  Fed. R. Civ. P. 26(b)(2)(C)).

By the time Judge Pitman received the inquest referral, this action had been ongoing for over seven years and discovery had long been completed, as well as a trial and appeal on the merits.  Defendant had ample time to obtain discovery about Sea Trade's financial condition,

8

which was directly relevant to Plaintiffs' claim that Defendant had breached his fiduciary duty to the company and thereby injured it.  In 2014, Sea Trade provided Defendant with significant discovery in this action and in a state court action, including financial statements, bank statements and records pertaining to revenue and expenses.  It was well within Judge Pitman's authority to determine that additional discovery was unnecessary to ensure the fair and efficient resolution of this matter.  *See Falcon v. Philips Elecs. N. Am. Corp.*, 304 F. App'x 896, 898 (2d Cir. 2008) (summary order) (where the Second Circuit stated that "[a]t this late stage of the litigation [after the close of discovery and dispositive briefing], we cannot say that it was an abuse of discretion for the District Court to deny [Plaintiff's] motion to reopen discovery . . .").

### 2.   The Standard of Proof to Determine Defendant's Interest in Sea Trade

Defendant objects that the Report imposed on him too rigorous a standard of proof for showing the value of his interest in Sea Trade.  The Report states that "[t]he party seeking damages 'bears the burden of proving damages with reasonable certainty.'"  *Sea Trade Mar. Corp.*, 2018 WL 7460028, at \*10 (quoting *New York v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 687 (S.D.N.Y. 2017)) (alterations omitted).  Defendant contends that this Court directed Judge Pitman to use a different standard for proving his share of Sea Trade's assets -- i.e., "ascertaining a fair approximation" in contrast to completing a "more precise" analysis.

Defendant is mistaken.  The FFCL simply directs that "[t]his matter is referred to Judge Pitman for an inquest on the amount, if any, Coutsodontis is due" without reference to any applicable standard.  *Sea Trade Mar. Corp.*, 2016 WL 11680976, at \*17, 18.  The "fair approximation" language to which Defendant refers appears in another part of the FFCL pertaining to Plaintiff's damages for Defendant's breach of fiduciary duty (before that finding was overturned).  *Id*. at 16.  To be clear, the inquest here was not to determine Defendant's

damages for Plaintiff's breach of fiduciary duty; Defendant did not assert such a claim.  The inquest was solely to determine the value of Coutsodontis' one-half ownership in Sea Trade, an equitable remedy giving effect to the Greek Supreme Court decision in 2014.

The Report was not incorrect to require that such a showing be made with "reasonable certainty."  Reasonable certainty simply means that the damages must "be capable of measurement based upon known reliable factors without undue speculation," *Ashland Mgt. Inc. v. Janien*, 82 N.Y.2d 395, 403, 624 N.E.2d 1007 (N.Y. 1992), and cannot be "merely speculative, possible or imaginary," *Kenford Co., Inc. v. Erie Cty.*, 67 N.Y.2d 257, 261, 493 N.E.2d 234 (N.Y. 1986).  Reasonable certainty means that the showing need not be made with "mathematical certainty."  *E.J. Brooks Co. v Cambridge Sec. Seals*, 31 N.Y.3d 441, 449 (N.Y. 2018) (stating that the standard for compensatory damages is not one of "mathematical certainty" but only "reasonable certainty").

Defendant also contends that because Plaintiffs "did not produce or rely on detailed records of Sea Trade's financial operations", the Report should have determined that Sea Trade's assets were their highest reasonably ascertainable value.  This argument is incorrect.  It is based on inapplicable precedent where the offending party has committed a tort, an infringement or some other wrong that "preclude[s] the ascertainment of the amount of damages with certainty." *See, e.g., Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931).  As noted above, Defendant did not assert any counterclaims, and the purpose of the inquest was to give effect to the Greek court's judgment recognizing Defendant's one-half interest in Sea Trade.

Defendant contends that he provided sufficient evidence for Judge Pitman to conclude with reasonable certainty that "Sea Trade's total profits were *at least* \$4,993,0730.00," but could be as high as \$14,338,139.40, relying on his expert's report.  But Judge Pitman did not credit that

report because Defendant failed to explain its inconsistency with Sea Trade's bank account statements. Defendant suggests that the bank records and the opinion of Defendant's expert do not line up because Sea Trade may have had other, secret bank accounts. Defendant makes several arguments in support, which Plaintiffs strongly dispute. None of Defendant's arguments amount to more than speculation that additional accounts may exist. Therefore, these arguments are not credited. *See George*, 221 F. Supp. 3d at 433.

Defendant also contends that the Report should have included in Defendant's share half of Sea Trade's "retained earnings" of $2,578,000.00, as of January 13, 2003, allegedly as reported in Sea Trade's financial statements. However, the financial statements show retained earnings at January 1, 2003, ("R/EARNINGS BEGINNING OF PERIOD") of a different amount -- $11,678,000, s*ee* 9 Civ. 488, at ECF. No. 338-4 at 4, which is the same amount that Defendant claimed at the inquest. Defendant does not say where he found the $2.5 million number nor why the Court should consider it now, when it was not raised at the inquest. The argument is rejected on this basis alone. *See Berrios*, 2018 WL 4608211, at *3. The argument also fails on the merits. Defendant asserts that "retained earnings" were an asset of the company on January 13, 2003, when he became a shareholder, and that he is entitled to one-half of its value now. This argument is unpersuasive because Defendant is entitled to one-half of Sea Trade's net assets now, and it is too speculative to say that $2.5 million of Sea Trade's retained earnings in 2003 continued to be an asset of Sea Trade now, particularly given Sea Trade's substantial liabilities.

### 3. The Business Judgment Rule and its Application

The Report decreases Sea Trade's profits during the relevant period based on a number of "Disputed Expenses" -- Peters' compensation as *de facto* manager, interest paid on loans from Peters and his mother to Sea Trade, and legal fees and expenses. Relying on the business

judgment rule ("BJR"), the Report rejected Defendant's argument that these expenses should be disregarded.  Defendant objects to the Report's definition and application of the BJR.[4]

As Sea Trade is incorporated in Liberia, Liberian law generally governs Peters' conduct as the corporation's *de facto* manager.  *See Winn v. Schafer*, 499 F. Supp. 2d 390, 393 (S.D.N.Y. 2007) ("New York's choice of law rules apply the internal affairs doctrine, which dictates that the law of the state of incorporation governs the adjudication of the corporation's 'internal affairs' . . ."); *accord Sea Trade Mar. Corp.*, 2016 WL 11680976, at *10 (same).  However, neither party contends that Liberian law applies, and both parties cite New York law for purposes of analyzing whether the BJR shields Peters' decisions.  The parties also do not object to the Report's application of New York law for purposes of BJR analysis.  *Sea Trade Mar. Corp.*, 2018 WL 7460028, at *11.  Accordingly, this Opinion also applies New York law.  *See Nuevos Aires Shows LLC v. Büler*, 19 Civ. 1822, 2020 WL 1903995, at *2 n.1 (S.D.N.Y. Apr. 17, 2020) ("New York law applies because both parties rely on it in their submissions to the Court."); *Clarex Ltd. v. Natixis Sec. Am. LLC*, 12 Civ. 7908, 2013 WL 2631043, at *2 n.3 (S.D.N.Y. June 11, 2013) ("Where 'the parties' briefs assume that New York law controls . . . such implied consent . . . is sufficient to establish choice of law.'" (quoting *Wolfson v. Bruno*, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011))).

The BJR "provides that, where corporate officers or directors exercise unbiased judgment in determining that certain actions will promote the corporation's interests, courts will defer to

---

[4] There is some question whether the business judgment rule applies at all because, as noted above, the issue is not whether Peters breached his fiduciary duty in making the disputed expenditures, but rather whether they are properly included in a calculation of Sea Trade's net profits.  Nevertheless, the question of self-dealing inherent in the business judgment analysis provides a useful way to assess whether the disputed expenses are properly included in Sea Trade's net profits.

those determinations if they were made in good faith." *In re Kenneth Cole Prods., Inc.*, 52

N.E.3d 214, 218 (N.Y. 2016). "[T]he substantive determination of [the corporate decision-

maker] is beyond judicial inquiry under the business judgment rule, but . . . 'the court may

inquire as to the disinterested independence of [those who make the business determinations] and

as to the appropriateness and sufficiency of the investigative procedures chosen and pursued.'"

*Id.* (quoting *Auerbach v. Bennett*, 393 N.E.2d 994, 996 (N.Y. 1979)). The BJR does "not protect

corporate officials who engage in fraud or self-dealing, or corporate fiduciaries when they make

decisions affected by inherent conflict of interest." *Sea Trade Mar. Corp.*, 2018 WL 7460028, at

*11 (citing *Wolf v. Rand*, 258 A.D. 2d 401, 404 (1st Dep't 1999)). If the court finds that a

corporate transaction is not protected by the BJR, the burden shifts to the corporate officer to

show good faith and the entire fairness of the transaction. *See In re Kenneth Cole*, 52 N.E.3d at

218 ("[T]he business judgment rule should be applied as long as the corporation's directors

establish that certain shareholder-protective conditions are met; however, if those conditions are

not met, the entire fairness standard should be applied.").

Defendant is incorrect that, as a general matter, the BJR does not accord any presumption

of propriety to the disputed expenses because "the very premise of the inquest was this Court's

judgment that Peters had breached his fiduciary duty to Defendant Coutsodontis." The Report

correctly notes that Defendant did not assert any counterclaim against Peters, and that neither

this Court nor the Court of Appeals concluded that Peters had breached his fiduciary duty to

Defendant by mismanaging the company's affairs. The finding that Peters had "unclean hands"

by not recognizing Coutsodontis as a shareholder does not affect the analysis of Peters' separate

business decisions to make the disputed expenditures.

13

a. **Legal Expenses**

Defendant contends that the BJR does not shield Peters' decision to have Sea Trade pay legal expenses on numerous occasions.  The BJR protects Peters' decision to pursue litigation on Sea Trade's behalf unless Defendant offers sufficient evidence of bad faith, fraud or self-dealing. *See Sciabacucchi v. Burns*, 15 Civ. 7506, 2016 WL 4074446, at *5 (S.D.N.Y. July 29, 2016) ("'[T]he decision whether and to what extent to explore and prosecute [shareholder claims] ultimately lies within the judgment and control of the corporation's board of directors'" (quoting *Auerbach*, 393 N.E.2d at 1000)).  Peters' employment agreement and his written power of attorney grant wide authority to pursue litigation in relation to Sea Trade's business.[5] Accordingly, the BJR protects Peters' decision to pursue most of the actions that Defendant disputes.  It protects the Hellenic Action, where Sea Trade sued its insurer to recover on a claim for damage to Sea Trade's ship, the M/V Athena.  *See Sea Trade Mar. Corp.*, 2018 WL 7460028, at *9.  It also protects expenses related to litigation, such as this action, arising from Defendant's arrest of the M/V Athena in Spain and New Orleans.  The BJR also protects from scrutiny expenses arising from an action brought by Peters' sister against Peters and his mother, where Peters' sister alleged that she was the rightful owner of all of Sea Trade's shares, among other family assets (the "Family Action").  *See e.g.*, *Peters v. Peters*, No. 600456/2004, 2011 WL 11076564, at *1-4 (N.Y. Sup. Ct. July 12, 2011).  Although defending this action was not strictly in the interest of Sea Trade, it was in the interest of all of Sea Trade's shareholders (i.e,

---

[5] As noted above, the employment agreement states that Sea Trade "shall pay all reasonable costs, including attorney fees in connection with any claims or suits made against [Peters] arising out of his management of the affairs of [Sea Trade]."  The written power of attorney states that Peters has the power "to retain legal counsel" and "generally to act in relation with respect to the Corporation's business as fully and effectually in all respects as the Corporation could do if personally present."

Peters, his mother and Coutsodontis). Therefore, the resulting litigation expenses can properly be subtracted from the profit computation to determine what assets are available to distribute to Sea Trade's shareholders.

The BJR does not protect from scrutiny the expenses related to the Defamation Action because in that case Peters sued Coutsodontis, and Sea Trade was not a party. Although Plaintiff asserts that it was in Sea Trade's interest to bring the action in order to protect Peters' reputation and thus Sea Trade's reputation, that argument is unpersuasive. The Defamation Action primarily served Peters' interests and arose from Coutsodontis' allegedly false accusation that Peters had forged the signatures on the documents that gave him management authority over Sea Trade. Accordingly, the business judgment rule does not protect Sea Trade's payment of legal expenses for the Defamation Action. The inquiry is then whether Peters has shown that it was entirely fair and appropriate for Sea Trade to finance the litigation. *See In re Kenneth Cole*, 52 N.E.3d at 218-19.

Judge Pitman was "somewhat troubled" by Peters' use of Sea Trade funds to pay for this action, but included these litigation expenses as a deduction to Sea Trade's profits because Defendant did not dispute that Peters' employment agreement and written power of attorney permitted him to do so. Significantly, the Report notes that the fees and expenses from the Defamation Action were less than $39,000, and "given Sea Trade's poor financial state, they have no impact on the outcome of this inquest." On de novo review, this Court finds that the legal expense from the Defamation Action should not have been paid by Sea Trade and therefore should not have been deducted from Sea Trade's profits, but agrees that this finding has no effect on the ultimate result in this case because Coutsodontis has failed to show that Sea Trade earned any net profits or has any net assets beyond the proceeds from the sale of the M/V Athena.

### b.   Employment Compensation

Defendant asserts that the BJR should not protect the employment contracts that Sea Trade entered into with Peters because the contracts were "not negotiated at arms-length and, of course, [were] not approved by Coutsodontis."

The BJR does not shield Sea Trade's salary payments to Peters from further scrutiny because he represented both himself and Sea Trade in effectuating the employment contracts that authorized the payments.  Peters, however, has shown that the salary payments he actually received were fair and reasonable.  Indeed, he received only about twenty-percent of the salary owed to him under the employment agreements.  And neither the Report nor this Opinion provides for Peters to collect the unpaid millions of dollars that Sea Trade allegedly owes him for unpaid salary and loans he made to Sea Trade.

### c.   The Remaining Disputed Expenses

Defendant argues that the BJR does not shield the remaining Disputed Expenses.  First, Defendant complains about interest payments Sea Trade made to Peters and his mother "at exorbitant interest rates" and for too long a period, because Peters chose to repay bank loans at lower rates before insider loans at higher rates.  The BJR does not protect Peters' decisions regarding loans that he and his mother made to Sea Trade because they were self-interested transactions.  However, Peters has met his burden of showing that the payments were fair to Sea Trade.  It was reasonable to assume that creditors without a personal interest in Sea Trade were more likely to penalize the company for defaulting.  And given the evidence Peters has presented as to Sea Trade's precarious financial state, it was reasonable for Peters and his mother to charge a higher interest rate for unsecured loans.  Moreover, even if one questions whether the terms of

16

these agreements were fair to Sea Trade, Sea Trade did not pay Peters the amounts due under the loans, causing him to sustain "substantial losses," which the inquest does not compensate.

Finally, Defendant objects that the Report does not address the disputed issue of drydocking expenses in 2007. That is true but immaterial. Defendant estimated drydocking expenses of $2 million based on industry standards. Plaintiff produced an actual invoice showing actual drydocking expenses in 2007 of $3,356,121.00. Defendant criticizes the reliability of the documentation, but although the invoice is unsigned, it does include Peters' name and detailed information about the expenses that went into drydocking the M/V Athena and the costs over time. This evidence taken as a whole does not change the conclusion that Defendant failed to prove that Sea Trade has net assets and in what amount.

### C.      Plaintiff's Objections

Plaintiff does not object to the Report's ultimate recommendation that Defendant is entitled to one half of the proceeds from the sale of the M/V Athena. Plaintiff makes other objections, but with one exception they are not addressed here because, even if they were accepted, they would not change the result.[6]

### D.      Shared Objection

Plaintiffs and Defendant both object that the Report does not address and distribute the $233,085.80, plus interest that remains in escrow after the 2008 State Action. In the interest once again of bringing this dispute to a final resolution, and exercising the Court's equitable

---

[6] These objections are (1) that the Report erred in not rejecting Defendant's submission of new claims and evidence; (2) that the Report did not address an argument about "retained earnings" that Plaintiffs were not been able to make at the inquest because Defendant raised the issue of "retained profits" for the first time in his reply; (3) that the Report mistakenly includes the sales proceeds of the vessel in the calculation of Sea Trade's revenues; and (4) that the Report mistakenly states that the Court of Appeals affirmed this Court's finding of unclean hands by Peters.

authority, the $233,085.80, plus interest, which remains in escrow shall be divided equally among the Sea Trade shareholders according to their proportionate shares, i.e., half to Peters and his mother and the other half to Coutsodontis.

Peters argues that he should receive the full amount held in escrow because "to do otherwise would be unjust as it would effectively return to Coutsodontis damages he was found liable for in Spain and New York." This argument is unpersuasive. The $233,085.80 is what remains of an appeal bond posted by Coutsodontis to secure a New York judgment against him for the wrongful arrest of the M/V Athena in Spain as found by a Spanish court. The judgment was affirmed, so that Defendant in effect owes the amount of the appeal bond to Sea Trade for the wrongful arrest. Sea Trade is the rightful owner of the funds. Sitting in equity, the Court awards half to Coutsodontis as a 50% shareholder. Although Sea Trade allegedly owes a substantial amount to Peters, the validity of those liabilities has not been adjudicated. (They were asserted in the inquest, but the focus of proof was to determine net income, and not net assets to which liabilities would be relevant.) A just result is to treat the amount as a stand-alone asset of Sea Trade, to be allocated among its shareholders. *See Sea Trade Mar. Corp.*, 744 F. App'x at 726 ("[A] court sitting in equity may grant any type of relief within its jurisdiction appropriate to the proof . . . imposing such terms as may be just." (internal quotation marks omitted)).

## IV.    CONCLUSION

For the reasons stated, the recommendation in the Report is adopted: $1,170,645.87, representing one-half of the proceeds from the sale of the M/V Athena, plus any accrued interest thereon, currently residing in escrow, shall be distributed to Coutsodontis as the benefit of his 50% ownership in Sea Trade. The balance of the escrow account shall be distributed to Peters

and his mother according to their ownership shares in Sea Trade.  In addition, $116,542.90 or

half of the appeal bond balance shall be distributed to Coutsodontis as an additional benefit of his

50% ownership interest in Sea Trade.  The remaining half of the appeal bond balance shall be

distributed to Peters and his mother according to their ownership shares in Sea Trade.  Having

reviewed the remainder of the Report as to which no objection was made and to the extent not

inconsistent with the above, the Court finds that it is not clearly erroneous.

The Clerk of Court is respectfully directed to close this case.


Dated: May 26, 2020
      New York, New York

                                                LORNA G. SCHOFIELD
                                    UNITED STATES DISTRICT JUDGE